1   Robert A. Bleicher (Bar No. 111334)
    HOLLAND & KNIGHT LLP
2   50 California Street, 28th Floor
    San Francisco, California  94111
3   Telephone: (415) 743-6900
    Facsimile: (415) 743-6910

4

    Shelley G. Hurwitz (SBN 217566)
5   HOLLAND & KNIGHT LLP
    633 W. Fifth Street, 21st Floor
6   Los Angeles, California  90071
    Telephone: (213) 896-2400
7   Facsimile: (213) 896-2450

8   Attorneys for Defendant
    Anthony Rothschild

9

10

11

             **UNITED STATES DISTRICT COURT**

          **NORTHERN DISTRICT OF CALIFORNIA**

12                  **SAN JOSE DIVISION**

13

14  CORCEPT THERAPEUTICS, INC.,      Case No.: C 07-03795 JW
    Corporation, JOSEPH K. BELANOFF, an
15  individual, ALAN F. SCHATZBERG, an   **DEFENDANT DR. ANTHONY**
    individual                           **ROTHSCHILD'S MEMORANDUM OF**
16                                 **POINTS AND AUTHORITIES IN**
          Plaintiffs,            **SUPPORT OF MOTION TO DISMISS**
17                                 **FOR LACK OF PERSONAL**
         vs.                    **JURISDICTION**
18

19  ANTHONY ROTHSCHILD, DOE 1, an
    individual, DOE 2, an individual, and DOES 3  **[Filed concurrently with Notice of Motion,**
    through 20, inclusive,                **Declaration of Dr. Anthony Rothschild,**
20                              **MD, Notice Of Motion And Motion To**
        Defendants.           **Dismiss For Improper Venue, and Non-**
21                               **Federal Authorities]**

22

23                         **Date:        September 17, 2007**
                           **Time:        9:00 am**
24                         **Courtroom:  8**
                           **Judge:     Honorable James Ware**

25

26

27

28

---

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION .................................................................................................. 1

II.  FACTUAL SUMMARY ....................................................................................... 2

    A.   The Parties. .................................................................................................. 2

    B.   Facts Giving Rise To This Action. .............................................................. 3

    C.   Defendant Dr. Anthony Rothschild Does Not Have Sufficient Minimum Contacts With California. ............................................................................ 4

III. ARGUMENT........................................................................................................ 5

    A.   Legal Standard For The Court To Exercise Personal Jurisdiction Over Dr. Rothschild in California. ............................................................................... 5

    B.   Dr. Rothschild Lacks Sufficient Contacts With California To Establish General Jurisdiction. .................................................................................... 5

    C.   Dr. Rothschild Lacks Sufficient Contacts With California To Establish Specific Jurisdiction. ................................................................................... 7

    D.   Plaintiffs Cannot Satisfy The Necessary Requirement Of "Purposeful Availment". ................................................................................................... 7

        1.   Dr. Rothschild Has Not Engaged In Any Activities That Would Cause Him To Reasonably Anticipate Being Haled Into Court In California. ............................................................................................ 7

        2.   The Alleged Yahoo Postings Do Not Provide A Basis For Jurisdiction In California. ................................................................... 8

        3.   The Alleged Telephone Calls Do Not Provide A Basis For The Imposition Of Jurisdiction In California.............................................. 13

    E.   Plaintiffs' Claims Do Not Arise Out Of Defendant's Forum-Related Activities. ................................................................................................... 13

    F.   It Would Be Unreasonable To Subject Dr. Rothschild To Jurisdiction In California. ................................................................................................... 14

IV.  CONCLUSION.................................................................................................. 15

1

**TABLE OF AUTHORITIES**

2

Page No.

3

**FEDERAL CASES**

4

*ALS Scan, Inc. v. Digital Service Consultants, Inc.*
  (4th Cir. 2002) 293 F.3d 707 ................................................................. 11

5

*Amoco Egypt Oil v. Leonis Navigation Co.*
  (9th Cir. 1993) 1 F. 3d 848 n. 3 ............................................................. 5

6

7

*AT&T v. Compagnie Bruxelles Lambert*
  (9th Cir. 1996) 94 F. 3d 586 .................................................................. 5

8

*Bancroft & Masters, Inc. v. Augusta National, Inc.*
  (9th Cir. 2000) 223 F. 3d 1082 ......................................... 5, 6, 7, 9, 13, 14

9

*Barrett v. Catacombs Press*
  (E.D. Penn. 1999) 44 F. Supp. 2d 717 ................................................ 9, 10

10

11

*Burger King Corp. v. Rudzewicz*
  (1985) 471 U.S. 462 ............................................................................. 6, 7

12

*Calder v. Jones*
  (1984) 465 U.S. 783 ................................................... 2, 8, 10, 11, 12

13

14

*Casualty Assurance Risk Ins. Brokerage Co.*
  (9th Cir. 1992) 976 F.2d 596 ................................................................. 11

15

*Dring v. Sullivan*
  (D. Maryland 2006) 423 F.Supp.2d 540 ............................................... 10

16

17

*Gates Learjet Corp. v. Jensen*
  (9th Cir. 1984) 743 F.2d 1325 ............................................................... 6

18

*IMO Industries, Inc. v. Kiekert AG*
  (3rd Cir. 1998) 155 F.3d 254 ................................................................. 12

19

20

*International Shoe Co. v. Washington*
  (1945) 326 U.S. 310 ............................................................................... 5

21

*Jackson v. California Newspapers Partnership*
  (N.D. Ill. 2005) 406 F. Supp. 2d 893 .................................................... 12

22

23

*Loral Terracom v. Valley National Bank*
  (9th Cir. 1995) 49 F. 3d 555 .................................................................. 14

24

*Marathon Oil Co. v. A.G. Ruhrgas*
  (5th Cir. 1999) 182 F.3d 291 ................................................................. 8

25

26

*Miller v. Asensio*
  (D.S.C. 2000) 101 F. Supp. 2d 395 ....................................................... 12

27

28

ii

1     *Panavision Int'l, L.P. v. Toeppen*
       (9th Cir. 1998) 141 F.3d 1316 .................................................................... 9, 15

2     *Panda Brandywine Corp. v. Potomac Elec. Power Co.*
3        (5th Cir. 2001) 253 F.3d 865 ............................................................................ 11

4     *Revell v. Lidov*
       (5th Cir. 2002) 317 F.3d 467 ...................................................................... 9, 11

5     *Ruhrgas AG v. Marathon Oil Com*
6        (1999) 526 U.S. 574 .......................................................................................... 5

7     *Schwarzenegger v. Fred Martin Motor Co.*
       (9th Cir. 2004) 374 F.3d 797 ............................................................................ 9

8     *World-Wide Volkswagen Corp. v. Woodson*
9        (1980) 444 U.S. 286 .......................................................................................... 7

10    *Young v. New Haven Advocate*
       (4th Cir. 2002) 315 F.3d 256 ...................................................................... 10, 11

11    *Ziegler v. Indian River County*
12       (9th Cir. 1995) 64 F.3d 470 ............................................................................ 15

13    *Zippo Manufacturing Co. v. Zippo Dot Com. Inc.*
       (W.D. Pa. 1997) 952 F. Supp. 1119 ........................................................ 12, 13

14

15

                              **STATE CASES**

16    *Competitive Technologies, Inc. v. Pross,*
       836 N.Y.S. 2d 492 (2007) ................................................................................ 13

17    *Griffis v. Luban*
18       (Minn. 2002) 646 N.W.2d 527 ........................................................................ 11

19    *Hammer v. Trendl,*
       2003 WL 21466686 (E.D.N.Y. 2003) ............................................................ 10

20                              **STATUTES**

21    Cal. Code of Civil Procedure
22       § 410.10 .............................................................................................................. 5

23    Federal Rules of Evidence
       Rule 201 .............................................................................................................. 8

24

25

26

27

28

1    Defendant Dr. Anthony Rothschild submits the following Memorandum of Points and

2    Authorities in support of his motion to dismiss for lack of personal jurisdiction.

3    **MEMORANDUM OF POINTS AND AUTHORITIES**

4    **I.    INTRODUCTION**

5        Plaintiff Corcept Therapeutics, Inc. ("Corcept"), a pharmaceutical company, and its

6    principals, filed this defamation action against Dr. Anthony Rothschild, MD ("Dr. Rothschild"),

7    a Professor and Vice Chair for Research in the Department of Psychiatry at the University of

8    Massachusetts Medical School.  Plaintiffs allege that Dr. Rothschild posted defamatory

9    comments on a Yahoo internet message board about the efficacy of a drug that Corcept

10   developed, and that Dr. Rothschild, a well respected professor and clinician, made prank

11   telephone calls that caused plaintiffs emotional distress.

12       Plaintiffs have sued the wrong person: Dr. Rothschild did not post the allegedly

13   defamatory comments, nor make the prank telephone calls.  In any event, he lives and works in

14   the state of Massachusetts.  In addition to his academic practice, Dr. Rothschild has a clinical

15   practice in Massachusetts where he treats severely ill inpatient and outpatient psychiatric

16   patients.  All of Dr. Rothschild's patients reside in the State of Massachusetts.  He has never

17   resided in the State of California, has never owned or rented real property in the State of

18   California, nor has he had any ownership interest in a California entity.  Dr. Rothschild has never

19   maintained any bank accounts in the State of California, nor paid taxes in California, nor filed

20   suit in California.  He does not maintain a mailing address or telephone number in California.

21   He was served with the First Amended Complaint in the State of Massachusetts.  Other than the

22   attorneys that he engaged to represent him in this lawsuit, Dr. Rothschild does not have any

23   representatives in the State California, nor has he designated an agent for the service of process

24   in California.  In the last ten years, Dr. Rothschild has traveled to California on three occasions

25   on matters wholly unrelated to this lawsuit, never staying in California for more than three days.

26       There is simply no basis for this court to assert general or specific personal jurisdiction

27   over Dr. Rothschild in California.  Indeed, the First Amended Complaint does not articulate

28   allegations particular to jurisdiction.  It appears that Plaintiffs speciously rely upon the allegedly

1

defamatory internet postings accessible anywhere in the world, including California. Even assuming that Dr. Rothschild did post the allegedly defamatory remarks on a Yahoo message board (which he did not), courts applying the applicable "effects test" articulated in *Calder v. Jones* (1984) 465 U.S. 783, routinely decline to find jurisdiction in defamation actions, such as this one, based upon internet postings that are not specifically directed at California internet users as distinguished from internet users of other states.

Likewise, jurisdiction is not supported in California by the prank telephone calls alleged in the First Amended Complaint to have been made to persons in New York, Florida, Texas, Washington DC, and Massachusetts. Dr. Rothschild has simply not "purposefully availed" himself of the privileges of conducting activities in this State, and as such there is no basis for this Court to exercise jurisdiction.

Moreover, it would be patently unreasonable to force Dr. Rothschild to litigate this claim three thousand miles away from his home, practice and teaching obligations. He would be taken away from his students at the medical school, and forced to leave his severely ill patients to constantly travel across country to attend depositions, trial, and otherwise participate in this matter. Moreover, as an individual, being forced to travel to California to participate in this matter would operate as a financial hardship.

Therefore, because Dr. Rothschild does not have sufficient minimal contact with California, because he has not purposefully availed himself of the privileges of conducting activities in California, and because the exercise of jurisdiction would be unreasonable, he is not subject to personal jurisdiction in this state. For the reasons discussed herein, Dr. Rothschild respectfully requests that this Court dismiss this action based on a lack of personal jurisdiction

## II.    FACTUAL SUMMARY

### A.    The Parties.

Plaintiff Corcept, a Delaware corporation with its principal place of business in Menlo Park, California, develops drugs for the treatment of severe psychiatric and metabolic diseases. First Amended Complaint ("FAC") ¶¶1&2. Plaintiffs Joseph K. Belanoff ("Belanoff") and Alan F. Schatzberg ("Schatzberg") are co-founders of Corcept, with Belanoff as Corcept's CEO.

2

1  FAC, ¶1.  Corcept's lead product is a drug named CORLUX, targeted for the treatment of the

2  psychotic features of psychotic major depression.  FAC, ¶9.  CORLUX is a brand name for

3  mifepristone, a potent antagonist of the body's cortisol and progesterone receptors, commonly

4  known as RU-486.  Declaration of Anthony Rothschild ("Rothschild Decl."), ¶5.

5        Defendant Dr. Rothschild, a resident of the State of Massachusetts, is a Professor and

6  Vice Chair for Research in the Department of Psychiatry at the University of Massachusetts

7  Medical School.  Rothschild Decl., ¶2.  In addition to his academic practice, he has a clinical

8  practice in Massachusetts where he treats severely ill inpatient and outpatient psychiatric

9  patients.  Rothschild Decl., ¶4.

10       **B.**    **Facts Giving Rise To This Action.**

11        Plaintiffs allege that a person or persons utilizing the internet screen names

12  "corceptisafraud" and "stanfordinsider" posted statements on a Yahoo internet message board

13  regarding the efficacy of Corcept's drug, CORLUX, specifically that there is no scientific

14  evidence that it is effective for psychotic depression, that Corcept was aware that it was

15  ineffective, that Belanoff and Scharzberg and other insiders were selling their Corcept stock, and

16  that there were four cardiac related deaths during clinical trials of the drug.  FAC, ¶¶16&23.

17  Plaintiffs contend that these statements are false and defamatory.  FAC, ¶¶17&24.  While the

18  original complaint was filed almost two years ago, plaintiffs inexplicably now allege that Dr.

19  Rothschild is the person who utilized the internet screen names "corceptisafraud" and

20  "standfordinsider," and posted the allegedly defamatory statements.  FAC, ¶¶16&23.  The First

21  Amended Complaint alleges two causes of action for defamation based upon these alleged

22  postings.

23       In their Third Cause of Action for Intentional Infliction of Emotional Distress, plaintiffs

24  allege that Dr. Rothschild "pursued a calculated strategy to inflict emotional distress on Belanoff

25  and Schatzberg" by, essentially, making prank telephone calls in New York, Florida, Texas,

26  Washington DC, and Massachusetts.  FAC, ¶30.  Again, the First Amended Complaint does not

27  contain any allegations indicating why plaintiffs attribute these alleged prank calls to Dr.

28  Rothschild.

3

1    The First Amended Complaint also contains a Cause of Action for Interference with
2    Prospective Economic Relations wherein plaintiffs allege that Dr. Rothschild interfered with
3    Corcept's prospective relationships with potential shareholders, universities and professional
4    societies by engaging in the conduct alleged above. FAC, ¶¶37-39.

5    **C.    Defendant Dr. Anthony Rothschild Does Not Have Sufficient Minimum**
6    **Contacts With California.**

7    Dr. Rothschild, a Professor of Psychiatry at the University of Massachusetts Medical
8    School, lives and works in the State of Massachusetts. Rothschild Decl., ¶2. He has never
9    resided in the State of California, has never owned or rented real property in the State of
10   California, nor has he had any ownership interest in a California entity. Rothschild Decl.,¶¶2&3.
11   Dr. Rothschild has never maintained any bank accounts in the State of California, nor paid taxes
12   in California. Rothschild Decl.,¶3. He does not maintain a mailing address or telephone number
13   in California. Rothschild Decl.,¶3. He was served with the First Amended Complaint in the
14   State of Massachusetts. Rothschild Decl., ¶6. Other than the attorneys that he engaged to
15   represent him in this lawsuit, Dr. Rothschild does not have any representatives in the State
16   California, nor has he designated an agent for the service of process in California. Rothschild
17   Decl., ¶3. Other than the instant lawsuit, he has never been sued in California, nor filed suit in
18   California. Rothschild Decl., ¶11.

19   In addition to his academic practice, Dr. Rothschild is a practicing psychiatrist in
20   Massachusetts. Rothschild Decl., ¶4. All of Dr. Rothschild's patients reside in the State of
21   Massachusetts. Rothschild Decl., ¶4.

22   In the last ten years, Dr. Rothschild has traveled to California on three occasions, never
23   staying in California for more than three days. Rothschild Decl., ¶5. In March, he attended a
24   meeting in California regarding a new drug for approximately 1 day, and in May he attended the
25   American Psychiatric Association's Annual Meeting in San Diego for 3 days. Rothschild Decl.,
26   ¶5. Approximately 8 years ago, Dr. Rothschild acted as a consultant for Corcept, advising
27   Corcept on the best method of conducting clinical trials of CORLUX. Rothschild Decl., ¶5. In
28

Defendant Anthony Rothschild's MPA ISO Motion                              Case No.: C 07-03795 JW
To Dismiss for Lack of Personal Jurisdiction

1    connection with that consultation, Rothschild traveled to California for one day in approximately

2    1999 or 2000.  Rothschild Decl., ¶5.

3        Therefore, and as discussed below, Dr. Rothschild respectfully submits that personal

4    jurisdiction does not exist in the State of California, and that this action should be dismissed.

5    **III.    ARGUMENT**

6        **A.    Legal Standard For The Court To Exercise Personal Jurisdiction Over Dr.**

7            **Rothschild in California.**

8        Personal jurisdiction is an essential element of a court's jurisdiction.  *Ruhrgas AG v.*

9    *Marathon Oil Com* (1999) 526 U.S. 574, 583.  The burden is on plaintiffs to show that Dr.

10   Rothschild is subject to personal jurisdiction in California.  *AT&T v. Compagnie Bruxelles*

11   *Lambert* (9th Cir. 1996) 94 F. 3d 586, 588.

12       California permits the exercise of personal jurisdiction to the full extent permitted by due

13   process.  *Bancroft & Masters, Inc. v. Augusta National, Inc.* (9th Cir. 2000) 223 F. 3d 1082,

14   1086; *Cal. Code of Civil Procedure* § 410.10 ("A court of this state may exercise jurisdiction on

15   any basis not inconsistent with the Constitution of this state or of the United States").  The Due

16   Process Clause permits personal jurisdiction over a defendant in a state with which the defendant

17   has "certain minimum contacts . . . such that the maintenance of the suit doe not offend

18   'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*

19   (1945) 326 U.S. 310, 316.

20       Whether a California court has personal jurisdiction over Dr. Rothschild thus depends on

21   whether plaintiffs have alleged sufficient "minimum contacts" between Dr. Rothschild and the

22   state of California for purposes of general or specific jurisdiction.  *Bancroft & Masters, Inc.,* 223

23   F. 3d at 1086.  Plaintiffs cannot meet this burden.  Indeed, the First Amended Complaint does

24   not contain any allegations whatsoever indicating that personal jurisdiction exists in California.

25       **B.    Dr. Rothschild Lacks Sufficient Contacts With California To Establish**

26           **General Jurisdiction.**

27       Courts have "regularly declined to find general jurisdiction even when the contacts were

28   quite extensive."  *Amoco Egypt Oil v. Leonis Navigation Co.* (9th Cir. 1993) 1 F. 3d 848 n. 3.  In

5

1    *Bancroft & Masters, Inc. v. Augusta National, Inc.*, the Ninth Circuit defined "general

2    jurisdiction" in the following manner:

> A defendant whose contacts with a state are "substantial" or
> "continuous and systematic" can be haled into court in that state in
> any action, even if the action is unrelated to those contacts. This is
> known as general jurisdiction. The standard for establishing
> general jurisdiction is "fairly high," and requires that the
> defendant's contacts be of the sort that approximate physical
> presence.

7    *Bancroft & Masters, Inc.*, 223 F. 3d at 1086.

8         Here, besides the instant lawsuit, Dr. Rothschild does not have any contact with

9    California, let alone the "continuous and systematic" contact necessary to establish general

10   jurisdiction. He lives and works in Massachusetts, does not own any real or personal property in

11   California, does not pay taxes in California nor maintain a bank account in California, does not

12   have any representatives in California, does not conduct business in California, he has never filed

13   suit in California, does not maintain any telephone numbers or mailing addresses in California,

14   and has only spent several days in California in the last ten years. Rothschild Decl., ¶¶2-5, 11.

15        Moreover, the fact that Dr. Rothschild entered into one engagement as a consultant for

16   Corcept approximately eight years ago, completely unrelated to this lawsuit, does not establish

17   general jurisdiction. *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478 ("If the question

18   is whether an individual's contract with an out-of-state party alone can automatically establish

19   sufficient minimum contacts in the other party's home forum, we believe the answer clearly is

20   that it cannot."); *Bancroft & Masters, Inc.*, 223 F. 3d at 1086 ("[Defendant] continues to have

21   license agreements with two television networks and a handful of California vendors. These

22   agreements constitute doing business with California, but do not constitute doing business in

23   California."); *Gates Learjet Corp. v. Jensen* (9th Cir. 1984) 743 F.2d 1325 (For purposes of

24   asserting general jurisdiction over nonresident defendants in Arizona, one nonresident's

25   solicitation of distributorship agreement in Arizona and defendants' visits to Arizona did not

26   constitute "conducting business" in Arizona).

27        Therefore, no grounds exist for the imposition of general jurisdiction in this state.

28

1    **C.     Dr. Rothschild Lacks Sufficient Contacts With California To Establish**
2          **Specific Jurisdiction.**

3          Where there is no general jurisdiction, a court within California may be able to exercise
4    personal jurisdiction if the case arises out of certain forum-related activities. *Bancroft &*
5    *Masters*, 223 F. 3d at 1086. This 'specific' jurisdiction exists only if: (1) the party has performed
6    some act or consummated some transaction within the forum or otherwise purposefully availed
7    himself of the privileges of conducting activities in the forum, (2) the claim arises out of or
8    results from the party's forum-related activities, and (3) the exercise of jurisdiction is reasonable.
9    *Id.*

10    **D.     Plaintiffs Cannot Satisfy The Necessary Requirement Of "Purposeful**
11          **Availment".**

12          Specific jurisdiction is only proper when the non-resident defendant himself deliberately
13    engages in significant activities or creates continuing obligations within the forum, thereby
14    creating a substantial connection with the forum and manifestly availing himself of the privileges
15    of conducting business in that forum. *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462,
16    475-76. The "purposeful availment" requirement protects a nonresident from being haled into
17    local courts solely as the result of "random, fortuitous or attenuated" contacts over which he had
18    no control. *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 476. In order to exercise
19    jurisdiction, the defendant's conduct and connection with the forum state must be such "that he
20    should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v.*
21    *Woodson* (1980) 444 U.S. 286, 297.

22          **1.     Dr. Rothschild Has Not Engaged In Any Activities That Would Cause**
23                **Him To Reasonably Anticipate Being Haled Into Court In California.**

24          As discussed above, Dr. Rothschild does not do business in California, does not solicit
25    business in California, has never owned any property in California, does not pay taxes in
26    California, does not maintain bank accounts in California, and has not engaged in <u>any</u> activities
27    whatsoever that would cause him to reasonably anticipate being haled into court here. His only
28    attenuated contact with California over the last ten years are three trips that lasted several days,

7

1    including a trip relating to a consultation for Corcept eight years ago, and telephone

2    conversations with his former colleague Dr. Schatzberg.  None of these contacts had any

3    connection to this lawsuit.  *Marathon Oil Co. v. A.G. Ruhrgas* (5th Cir. 1999) 182 F.3d 291, 295

4    (Defendant's attendance at three meeting in Texas on matters unrelated to its alleged business

5    torts did not constitute "purposeful availment" of the benefits and protections of Texas law).

          **2.    The Alleged Yahoo Postings Do Not Provide A Basis For Jurisdiction**

                **In California.**

8          While the First Amended Complaint does not articulate allegations particular to

9    jurisdiction, it does allege that Dr. Rothschild posted messages on a Yahoo message board

10   accessible anywhere in the world, including California.[1]  Dr. Rothschild did not post the

11   allegedly defamatory statements, nor has he ever registered nor used the internet screen names

12   "corceptisafraud" or "standfordinsider."  Rothschild Decl., ¶6.  Despite years of investigation

13   and discovery, including searching Dr. Rothschild's work computer, searching his laptop

14   computer, searching his telephone records at work, hiring technology experts to examine his cell

15   phone and pager, subpoenaing documents from Yahoo and other internet providers, taking his

16   deposition, and subpoenaing records from the American Psychiatric Association, plaintiffs still

17   do not have any reasonable basis to contend that Dr. Rothschild authored the allegedly

18   defamatory postings. Rothschild Decl., ¶8.  Plaintiffs have simply sued the wrong person; there

19   is no basis to connect Dr. Rothschild to the internet postings.

20         Nevertheless, even assuming that Dr. Rothschild did post the allegedly defamatory

21   remarks on a Yahoo message board (which he did not), such activity would not satisfy the

22   necessary "purposeful availment" requirement.  In the context of intentional torts, Courts

23   generally apply the "effects test" articulated in *Calder v. Jones* (1984) 465 U.S. 783[2] which

---

[1]  Dr. Rothschild respectfully requests that the Court take judicial notice of the fact that the
Yahoo internet message board is accessible anywhere in the world, pursuant to Rule 201 of the
Federal Rules of Evidence.

[2]  While the *Calder* court found that jurisdiction existed in California, the facts are entirely
distinguishable from this matter.  The allegedly defamatory article in *Calder* concerned the
California activities of the plaintiff and California was the focal point of the article.  Because the
entertainment industry of which *Calder* was a part was centered in California, the brunt of her
injury was felt in California.  In addition, Calder involved a defendant who had an ongoing

8

1    dictates that the Court may assert jurisdiction only where the defendant allegedly has (1)

2    committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

3    defendant knows is likely to be suffered in the forum state. *Schwarzenegger v. Fred Martin*

4    *Motor Co.* (9th Cir. 2004) 374 F.3d 797, 803; *Panavision Int'l, L.P. v. Toeppen* (9th Cir. 1998)

5    141 F.3d 1316 (applying *Calder* to tortuous on-line conduct). The Ninth Circuit has stated that

6    *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the

7    forum state always gives rise to specific jurisdiction." *Bancroft & Masters, Inc. v. Augusta Nat.*

8    *Inc.* (9th Cir. 2000) 223 F.3d 1082, 1087. Instead, there must be "something more," which the

9    Ninth Circuit concludes is the "express aiming" requirement. *Id.; Schwarzenegger v. Fred*

10    *Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 804.

11          Applying this standard, Courts routinely decline to exercise jurisdiction in defamation

12    actions, such as this one, based upon internet postings. In *Revell v. Lidov* (5th Cir. 2002) 317

13    F.3d 467, a Texas resident and former associate director of the FBI sued an assistant university

14    professor and Columbia University for defamation arising out of the professor's authorship of an

15    article that he posted on an internet bulletin board hosted by the university. The article dealt

16    exclusively with plaintiff's actions as Associate Director of the FBI. *Id.* at 473. In affirming the

17    District Court's finding that specific personal jurisdiction did not exist, the Court reasoned that

18    the article made no reference to Texas, did not refer to the plaintiff's Texas activities, did not rely

19    upon Texas sources, and was not directed at Texas readers as distinguished from readers of other

20    states. *Id.* at 473-474. The Court noted that the professor "must have known that the harm of the

21    article would hit home wherever [the plaintiff] resided. But that is the case with virtually any

22    defamation. A more direct aim is required than we have here." *Id.* at 476.

23          Likewise, in *Barrett v. Catacombs Press* (E.D. Penn. 1999) 44 F. Supp. 2d 717, a

24    Pennsylvania psychiatrist who hosted a website that provided information about consumer health

25    brought a defamation action against an Oregon resident based upon allegedly defamatory internet

26

27    _____

28    commercial relationship with California residents. Finally, the publication at issue circulated
more copies in California than in any other state.

9

1    postings.  In granting the defendant's motion to dismiss for lack of personal jurisdiction, the

2    Court explained:

> We agree with the Plaintiff that posting of messages to listserves
> and USENET discussion groups technically differs from the
> maintenance of a "passive" Web page because messages are
> actively disseminated to those who participate in such groups.
> However, for jurisdictional purposes, we find that these contacts
> are akin to a "passive" Web site and insufficient to trigger this
> court's jurisdiction. Here, the nature and quality of the contacts
> made by the Defendant were accessible around the world and
> never targeted nor solicited Pennsylvania residents.    Every
> listserve or discussion group that the Defendant posted a message
> to was concerned with health care issues and was national in scope.
> Not unlike the maintenance of a "passive" Web site, anyone who is
> interested could become a member of such listserves or USENET
> groups, and we cannot see how from that fact alone, it can be
> inferred that the Defendant directed its efforts towards
> Pennsylvania residents. . . . Unlike distributors of magazines or
> other materials who can affirmatively decide not to sell or
> distribute to certain forums, after posting to a listserve or USENET
> discussion group on the Internet, the option of bypassing certain
> regions is not available . . . Moreover, all of the presumed
> defamatory statements made by the Defendant attacked the
> Plaintiff in his national capacity as an advocate against health care
> fraud and in favor of the fluoridation of water sources.

16    *Id.* at 728-731 (internal citations omitted).

17        The *Barrett* Court further held that "[u]nder the 'effects test' of *Calder,* we do not find

18    that such defamatory statements amount to actions 'expressly aimed' at Pennsylvania." *Id.* at

19    731. *See also Young v. New Haven Advocate* (4th Cir. 2002) 315 F.3d 256 (holding that in

20    defamation action, Virginia could not exercise personal jurisdiction over newspapers in

21    Connecticut who posted articles on the internet that allegedly defamed a Virginia prison warden

22    because "they did not manifest an intent to aim their websites or the posted articles at a Virginia

23    audience"); *Dring v. Sullivan* (D. Maryland 2006) 423 F.Supp.2d 540 (holding in defamation

24    action, Maryland could not exercise jurisdiction over defendant who disseminated allegedly

25    defamatory remarks via an email listserv even though defendant was aware plaintiff resided in

26    Maryland); *Hammer v. Trendl,* 2003 WL 21466686 (E.D.N.Y. 2003) (Illinois resident who

27    posted certain unfavorable reviews of plaintiff's books on Internet web site Amazon.com did not

28    have sufficient minimum contacts with New York for the exercise of personal jurisdiction in

10

1    defamation action where defendant posted the reviews on the internet from Illinois, and did not

2    transact business in New York: "Simply posting book reviews on a website that can be read by

3    New York Internet users does not demonstrate the type of purposeful activity in New York

4    sufficient to support the exercise of personal jurisdiction.").[3]

5        The Yahoo internet postings in this matter make no reference to California, do not refer

6    to plaintiffs as being California residents, and are not expressly aimed at California internet users

7    as distinguished from readers of other states. Exh.2. Indeed, these postings appeared on the

8    Yahoo finance message board that is accessible in every state, and all across the world. Clearly,

9    Corcept intends for CORLUX to be prescribed to patients nationwide, and does not intend to

10   limit distribution of CORLUX to California residents. The efficacy of CORLUX is therefore an

11   issue that is relevant to residents of every state, and not only the residents of California. As such,

12   these postings do not manifest an act "expressly aimed" at California as required by *Calder*.

13       Moreover, the mere fact that defamation plaintiffs reside in California does not satisfy the

14   *Calder* requirement that the harm be felt in California. *Casualty Assurance Risk Ins. Brokerage*

15   *Co.* (9th Cir. 1992) 976 F.2d 596, 599 (no personal jurisdiction under *Calder* in libel action:

16   "[i]ndeed, the only relationship among the defendant, the forum, and the litigation appears to be

17   that the plaintiff is incorporated in the forum jurisdiction; the defendant has almost no contacts

18   with the forum.")(internal quotations omitted); *Revell v. Lidov* (5th Cir. 2002) 317 F.3d 467

19   ("[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support

20   jurisdiction under *Calder*.").[4] In any event, plaintiffs allege injury to their reputation nationwide,

21

22   [3] *See also ALS Scan, Inc. v. Digital Service Consultants, Inc.* (4th Cir. 2002) 293 F.3d 707, 712
     ("If we were to conclude as a general principle that a person's act of placing information on the
23   Internet subjects that person to personal jurisdiction in each State in which the information is
     accessed, then the defense of personal jurisdiction, in the sense that a State has geographically
24   limited judicial power, would no longer exist. The person placing information on the Internet
     would be subject to personal jurisdiction in every State").

25   [4] *See also Young v. New Haven Advocate* (4th Cir. 2002) 315 F.3d 256; *Griffis v. Luban* (Minn.
     2002) 646 N.W.2d 527, 536 ("The mere fact that [the defendant, who posted allegedly
26   defamatory statements about the plaintiff on the internet] knew that [the plaintiff] resided and
     worked in Alabama is not sufficient to extend personal jurisdiction over [the defendant] in
27   Alabama, because that knowledge does not demonstrate targeting of Alabama as the focal point
     of the . . . statements"); *Panda Brandywine Corp. v. Potomac Elec. Power Co.* (5th Cir. 2001)
28   253 F.3d 865, 870 ("If we were to accept Appellants' arguments, a nonresident defendant would
     be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint

11

1    and do not limit the alleged damage to their reputation to California residents. FAC, ¶19. *See*

2    *Jackson v. California Newspapers Partnership* (N.D. Ill. 2005) 406 F. Supp. 2d 893, 896 (injury

3    to plaintiff's reputation alleged to be national, therefore less weight to presumption that plaintiff

4    suffered harm in California).

5           Finally, although Dr. Rothschild does not conduct business over the internet nor maintain

6    a website, the court's consideration should be underscored by the sliding scale Internet analysis

7    set forth in *Zippo Manufacturing Co. v. Zippo Dot Com. Inc.* (W.D. Pa. 1997) 952 F. Supp. 1119

8    applicable to defendants who conduct business over the internet. The *Zippo* court grouped

9    internet cases into three categories, finding that "the likelihood that personal jurisdiction can be

10   constitutionally exercised is directly proportionate to the nature and quality of commercial

11   activity that an entity conducts over the Internet." *Id.* at 1124. First, interactive websites

12   whereby defendants conduct business and elicit sales are enough to grant personal jurisdiction.

13   Second, passive websites that afford internet users no interactivity are not enough to grant

14   personal jurisdiction. Third, interactive website, whereby a user can exchange information with

15   the host computer, may be sufficient to grant personal jurisdiction. *Id.* at 897.

16          Here, Dr. Rothschild does not conduct commercial activities over the internet, and,

17   indeed, does not maintain any type of internet website. Rothschild Decl., ¶12. Moreover, the

18   alleged postings do not constitute commercial activities of the anonymous author as the postings

19   neither advertise any services nor offer any products for sale. If anything, Dr. Rothschild's

20   interaction with the Yahoo message board was passive in that he is alleged to have merely posted

21   information on the site. *Miller v. Asensio* (D.S.C. 2000) 101 F. Supp. 2d 395, 406 ("Unlike the

22   interactive website in *IA, Inc.*, Defendants' website is passive in that Defendants merely posted

23   information on the site; no information may be exchanged with the host computer, nor may the

24   reader enter into contracts with the Defendants via the website or download, transmit or

25   exchange files"). As such, the alleged Yahoo postings also do not provide a basis for jurisdiction

26   _____

27   alleged injury in Texas to Texas residents regardless of the defendant's contacts . . ."); *IMO Industries, Inc. v. Kiekert AG* (3rd Cir. 1998) 155 F.3d 254 ("[T]he mere allegations that the Plaintiff feels the effect of the Defendant's tortuous conduct in the forum because the Plaintiff is

28   located there is insufficient to satisfy *Calder*).

1  under *Zippo*. *See also Competitive Technologies, Inc. v. Pross*, 836 N.Y.S. 2d 492

2  (2007)(posting allegedly libelous statements on a Yahoo internet message board did not confer

3  jurisdiction in New York under New York's long arm statute: "[I]n order to exercise personal

4  jurisdiction over a non-resident defendant, something more than the mere posting of information

5  on a passive web site [such as a Yahoo message board] is required to indicate that the defendant

6  purposefully directed his activities at the forum state").

7          **3.**    **The Alleged Telephone Calls Do Not Provide A Basis For The**

8          **Imposition Of Jurisdiction In California.**

9        Likewise, jurisdiction is not supported by the prank telephone calls alleged in the First

10  Amended Complaint.  Dr. Rothschild, a well respected Professor and Vice-Chair of Clinical

11  Research in the Department of Psychiatry at the University of Massachusetts Medical School,

12  did not make the prank telephone calls alleged by plaintiffs in support of their claim for

13  intentional infliction of emotional distress. Rothschild Decl., ¶8.  In any event, even if he had

14  made the prank telephone calls (which he did not), plaintiffs allege that the calls were made to

15  people in New York, Florida, Texas, Washington DC, and Massachusetts, and were not

16  "expressly aimed" at California. FAC, ¶30.

17        Therefore, plaintiffs cannot establish the necessary element of "purposeful availment" for

18  the exercise of personal jurisdiction.

19          **E.**    **Plaintiffs' Claims Do Not Arise Out Of Defendant's Forum-Related**

20          **Activities.**

21        For a court to exercise specific personal jurisdiction "the contacts constituting purposeful

22  availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc.*, 223 F.

23  3d at 1088.  To meet this requirement, plaintiffs must demonstrate that they would have no need

24  for judicial declaration but for Dr. Rothschild's forum-related activities.  *Id.*  As discussed

25  above, Dr. Rothschild's only contact with California are three trips over the last ten years,

26  including a trip relating to a consultation for Corcept eight years ago, and telephone

27  conversations with his former colleague Dr. Schatzberg.  All of these contacts are wholly

28  unconnected to the allegations of the First Amended Complaint. Rothschild Decl., ¶5.

13

1    Therefore, plaintiffs cannot satisfy the second necessary element for the exercise of personal

2    jurisdiction.

3    **F.    It Would Be Unreasonable To Subject Dr. Rothschild To Jurisdiction In**

4    **California.**

5    Finally, even if the first two requirements are met (which they are not), in order to satisfy

6    the Due Process Clause, the exercise of personal jurisdiction must be reasonable. *Bancroft &*

7    *Masters, Inc.*, 223 F. 3d at 1088. The Ninth Circuit has developed a seven factor test to

8    determine the reasonableness of the exercise of personal jurisdiction: (1) the extent of the

9    defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum;

10   (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's

11   interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;

12   (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

13   (7) the existence of an alternative forum. *Id.* No one factor is dispositive, a court must balance

14   all seven. *Id.*

15   The consideration of these factors demonstrates that the exercise of personal jurisdiction

16   would be unreasonable. As discussed above, Dr. Rothschild has not targeted California, nor

17   interjected himself into the state in any way.

18   The second and sixth factors are related. The "law of personal jurisdiction is

19   asymmetrical and is primarily concerned with the defendant's burden." *Loral Terracom v. Valley*

20   *National Bank* (9th Cir. 1995) 49 F. 3d 555, 561. Dr. Rothschild would be greatly burdened if he

21   were forced to litigate this claim three thousand miles away from his home and teaching

22   obligations. As a professor at the University of Massachusetts Medical School, he would be

23   taken away from his classes, and forced to leave his students to travel across country to attend

24   depositions, trial, and otherwise participate in this matter. In addition, Dr. Rothschild treats

25   severely ill inpatient and outpatient psychiatric patients in Massachusetts. Rothschild Decl., ¶10.

26   He is also the Principal Investigator on a number of research studies at the medical school

27   involving severely ill psychiatric patients for whom he is responsible. Rothschild Decl., ¶10. It

28   would therefore be a extreme burden on his patients and students if he were forced to travel to

14

1  California to participate in this litigation. Rothschild Decl., ¶10. Moreover, as an individual,

2  being forced to travel to California to participate in this matter would operate as a financial

3  hardship.

4         Conversely, "[i]n evaluating the convenience and effectiveness of relief for the plaintiff,

5  we have given little weight to the plaintiff's inconvenience." *Panavision International L.P. v.*

6  *Toeppen* (9th Cir 1998) 141 F. 3d 1316, 1324; *Ziegler v. Indian River County* (9th Cir. 1995) 64

7  F.3d 470, 476 ("[N]either the Supreme Court nor our court has given much weight to

8  inconvenience to the plaintiff.")(internal quotation omitted). In any event, plaintiffs are a

9  publicly traded pharmaceutical company and its principals. Litigating this matter in

10  Massachusetts would not impose the same burdens on plaintiffs as litigating this matter in

11  California imposes upon Dr. Rothschild, his students, and his ill patients.

12         Massachusetts provides an alternative, and more appropriate forum. The remaining

13  factors do not support jurisdiction in California as favorable to jurisdiction in Massachusetts.

14         Therefore, the balance of factors weighs toward the conclusion that subjecting Dr.

15  Rothschild to jurisdiction in California would be unreasonable. Accordingly, this action should

16  be dismissed based on the lack of personal jurisdiction.

17  **IV.  CONCLUSION**

18         For the reasons stated above, defendant Dr. Rothschild respectfully requests that the

19  Court grant his motion to dismiss.

20  Dated: August 8 , 2007           HOLLAND & KNIGHT LLP

21

22                       By: _____

23                            Robert A. Bleicher
                            Shelley G. Hurwitz

24                              HOLLAND & KNIGHT LLP
                            50 California Street, 28th Floor

25                              San Francisco, California  94111
                            Telephone: (415) 743-6900

26                              Facsimile: (415) 743-6910

27                              Attorneys for Defendant
                            ANTHONY ROTHSCHILD

28  # 4715489_v3

                          15