1  Robert A. Bleicher (Bar No. 111334)
   HOLLAND & KNIGHT LLP
2  50 California Street, 28th Floor
   San Francisco, California 94111
3  Telephone: (415) 743-6900
   Facsimile: (415) 743-6910
4
   Shelley G. Hurwitz (SBN 217566)
5  HOLLAND & KNIGHT LLP
   633 W. Fifth Street, 21st Floor
6  Los Angeles, California 90071
   Telephone: (213) 896-2400
7  Facsimile: (213) 896-2450

8  Attorneys for Defendant
   Anthony Rothschild
9

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

14  CORCEPT THERAPEUTICS, INC.,          Case No.: C 07-03795 JW
    Corporation, JOSEPH K. BELANOFF, an
15  individual, ALAN F. SCHATZBERG, an   DEFENDANT DR. ANTHONY
    individual                           ROTHSCHILD'S NON-FEDERAL
16                                        AUTHORITIES IN SUPPORT OF:
17                   Plaintiffs,          1. MOTION TO DISMISS FOR LACK
18         vs.                            OF PERSONAL JURISDICTION
19  ANTHONY ROTHSCHILD, DOE 1, an         2. MOTION TO DISMISS FOR
    individual, DOE 2, an individual, and DOES 3   IMPROPER VENUE, OR IN THE
20  through 20, inclusive,                ALTERNATIVE TO TRANSFER FOR
                                          IMPROPER VENUE (28 U.S.C.
21                   Defendants.          §1406(a)); OR IN THE ALTERNATIVE
                                          TO TRANSFER FOR CONVENIENCE
22                                        (28 U.S.C. §1404(a)

23                                        [Filed concurrently with Declaration of Dr.
                                          Anthony Rothschild, MD, Notice Of Motion
24                                        And Motion To Dismiss For Improper Venue,
                                          and Notice of Motion and Motion to Dismiss
25                                        for Lack of Personal Jurisdiction]

26                                        Date:       September 17, 2007
                                          Time:       9:00 am
27                                        Courtroom:  8
                                          Judge:      Hon. James Ware
28

                                - 1 -

Authorities                                        Case No.: C 07-03795 JW

TO THE HONORABLE COURT AND TO ALL PARTIES OF RECORD:

Defendant Anthony Rothschild files herewith the following authorities in support of his

Motion To Dismiss For Lack Of Personal Jurisdiction and Motion To Dismiss For Improper Venue,

Or In The Alternative To Transfer For Improper Venue (28 U.S.C. §1406(A)); Or In The

Alternative To Transfer For Convenience (28 U.S.C. §1404(A):

      1.   *Hammer v. Trendl* (E.D.N.Y. 2003) 2003 WL 21466686

      2.   *Griffis v. Luban* (Minn. 2002) 646 N.W.2d 527

      3.   *Competitive Technologies, Inc. v. Pross* (2007) 836 N.Y.S. 2d 492

Dated: August 8, 2007             HOLLAND & KNIGHT LLP


                              Robert A. Bleicher
                              Shelley G. Hurwitz
                              HOLLAND & KNIGHT LLP
                              50 California Street, 28th Floor
                              San Francisco, California 94111
                              Telephone: (415) 743-6900
                              Facsimile: (415) 743-6910

                              Attorneys for Defendant
                              ANTHONY ROTHSCHILD

# 4715630_v1

Authorities                                             Case No.: C 07-03795 JW

# EXHIBIT 1

Not Reported in F.Supp.2d, 2003 WL 21466686 (E.D.N.Y.)

Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.
Jeffrey HAMMER, Plaintiff,
v.
Anthony L. TRENDL, Defendant.
No. CV 02-2462(ADS).
Jan. 18, 2003.

Author brought action alleging that reviewer posted certain unfavorable reviews of author's books on Internet web site in violation of federal copyright and state defamation laws. On author's motion for temporary restraining order, and defendant's motion to dismiss, the District Court, Spatt, adopting the report and recommendation of Michael L. Orenstein, United States Magistrate Judge, 2002 WL 32059751, held that: (1) allegation that reviews were defamatory did not justify issuance of temporary restraining order; (2) reviewer's opinions were entitled to protection under First Amendment; (3) reviewer's placement of two links to author's book on website did not infringe author's copyright; (4) Internet retailer was not de facto party to motion for temporary restraining order; and (5) simply posting book reviews on website that could be read by New York Internet users did not demonstrate type of purposeful activity in New York sufficient to support exercise of personal jurisdiction under New York's long arm statute.
Motion for temporary restraining order denied, and motion to dismiss granted.

West Headnotes

[1] KeyCite Notes 

 ⬭➡212 Injunction
  ⬭➡212IV Preliminary and Interlocutory Injunctions
   ⬭➡212IV(A) Grounds and Proceedings to Procure
    ⬭➡212IV(A)4 Proceedings
     ⬭➡212k150 k. Restraining Order Pending Hearing of Application. Most Cited Cases

Any harm arising from reviewer's allegedly defamatory statements about author could be rectified by financial compensation, and thus did not constitute irreparable harm necessary to support temporary restraining order.

[2] KeyCite Notes 

 ⬭➡212 Injunction
  ⬭➡212IV Preliminary and Interlocutory Injunctions
   ⬭➡212IV(A) Grounds and Proceedings to Procure
    ⬭➡212IV(A)4 Proceedings
     ⬭➡212k150 k. Restraining Order Pending Hearing of Application. Most Cited Cases

Author's claims that Internet book reviews were libelous, defamatory, and subjected him to public humiliation, world wide ridicule, character assassination, and ruined reputation were insufficient to justify issuance of temporary restraining order.

[3] KeyCite Notes 

⇐〰92 Constitutional Law
   ⇐〰92XVIII Freedom of Speech, Expression, and Press
      ⇐〰92XVIII(X) Defamation
         ⇐〰92k2167 Particular Issues and Applications
            ⇐〰92k2168 k. In General. Most Cited Cases
               (Formerly 92k90.1(5))


⇐〰237 Libel and Slander KeyCite Notes
   ⇐〰237I Words and Acts Actionable, and Liability Therefor
      ⇐〰237k9 Words Tending to Injure in Profession or Business
         ⇐〰237k9(8) k. Authors and Newspapers. Most Cited Cases

Reviewer's statements in unfavorable public reviews of author's books constituted critical commentary and expressions of opinion protected under First Amendment, precluding defamation liability. U.S.C.A. Const.Amend 1.


[4] KeyCite Notes 

⇐〰99 Copyrights and Intellectual Property
   ⇐〰99I Copyrights
      ⇐〰99I(J) Infringement
         ⇐〰99I(J)1 What Constitutes Infringement
            ⇐〰99k54 Books or Other Literary Works
               ⇐〰99k55 k. In General. Most Cited Cases

Reviewer's placement of two links to author's book on Internet website did not infringe author's copyright by illegally giving reviewer trespass rights to alter author's information at will; links were merely modality by which website enabled user to move from book review web page to actual web page where book was offered for sale.


[5] KeyCite Notes 

⇐〰212 Injunction
   ⇐〰212IV Preliminary and Interlocutory Injunctions
      ⇐〰212IV(A) Grounds and Proceedings to Procure
         ⇐〰212IV(A)4 Proceedings
            ⇐〰212k150 k. Restraining Order Pending Hearing of Application. Most Cited Cases

Internet retailer was not de facto party to motion for temporary restraining order in copyright and defamation lawsuit brought by author against book critic, although critic's review was posted on retailer's website and retailer allegedly provided critic's legal representation; retailer was not named as party, author did not provide any allegations tending to support position that retailer was active participant in writing of alleged defamatory statements, mere provision of attorney for critic did not demonstrate active participation, and there was no indication that retailer was given notice of motion for temporary restraining order.


[6] KeyCite Notes

☞**170B** Federal Courts
   ☞**170BII** Venue
      ☞**170BII(A)** In General
         ☞**170Bk76** Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
            ☞**170Bk76.15** k. Transacting or Doing Business. <u>Most Cited Cases</u>

Simply posting book reviews on a website that can be read by New York Internet users does not demonstrate the type of purposeful activity in New York sufficient to support the exercise of personal jurisdiction under New York's long arm statute relating to the transaction of business within the state or contracting to supply goods or services in the state. <u>McKinney's CPLR 302(a)(1)</u>.

Jeffrey Hammer, Oceanside, NY, Plaintiff, pro se.
Friedman Kaplan Seiler & Adelman LLP, New York, NY, for the Defendant. By:<u>Heather Windt</u>, of counsel.

MEMORANDUM OF DECISION AND ORDER

SPATT, J.
**\*1** Jeffrey Hammer ("Hammer" or the "plaintiff"), proceeding *pro se,* filed this action against Anthony L. Trendl ("Trendl" or the "defendant") alleging that Trendl posted on an Internet website Amazon.com several unfavorable reviews of books written by the plaintiff in violation of federal copyright and state defamation laws. Presently before the Court are (1) Hammer's objections to the Report and Recommendation dated October 10, 2002 issued by United States Magistrate Judge Michael L. Orenstein; (2) the defendant's motion to dismiss the complaint for lack of personal jurisdiction and failure to state a claim; (3) Hammer's motion for reconsideration of the Court's January 3, 2003 Order denying his motion for a default judgment; (4) Hammer's motion to have the defendant and David Zapolsky, an attorney at Amazon.com, arrested; (5) Hammer's motion to compel the defendant's counsel to disclose who is paying her legal fees; and (6) Hammer's motion for an order directing the defendant to pay for various postage. The Court notes that Hammer has filed more than 50 motions in this case in the form of formal motions and letter motions mostly repeating the same requests.

I. BACKGROUND

A. Factual Background

Hammer is a self-published author of several books, including *Mind Reading in Written Form!: The Magic, Power, and Secrets of Handwriting Revealed!* and *An Advanced Guide to "Basic Hypnosis".* According to the plaintiff, the defendant has posted numerous book reviews on an Internet website maintained by book retailer Amazon.com and is considered to be an Amazon.com "top 500 reviewer."

Hammer claims that the defendant posted several unfavorable reviews of the plaintiff's books on Amazon.com. In the reviews, the defendant (1) compared the plaintiff's book on hypnosis to "the dust under [the defendant's] couch;" (2) questioned the plaintiff's "spelling, grammar and teaching on the subject" of hypnosis; (3) entitled the book reviews as a "Shallow Look at Hypnosis" and a "Disappointing Look at Graphology;" and (4) failed to recommend the plaintiff's books.

Hammer claims that as a result of the reviews he has suffered an economic loss due to a decrease in sales of his books. In addition, he claims that these reviews have "ruined his reputation" and subjected him to "public humiliation." According to the plaintiff, the defendant is "targeting [him] and his books out of over 2.2 million products on Amazon.com to prevent [the plaintiff] from selling [his] books."

On April 23, 2002, the plaintiff commenced this action alleging that the defendant is in violation of

federal copyright and state defamation laws. On September 4, 2002, the defendant filed a motion to dismiss the complaint for lack of personal jurisdiction and failure to state a claim pursuant to Rules 12 (b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

### B. Procedural History

On August 16, 2002, the plaintiff filed a motion for a temporary restraining order seeking to: (1) enjoin the defendant from posting any additional unfavorable reviews of his books on the Internet; (2) enjoin Amazon.com from removing his books from its website; and (3) directing Amazon.com to remove the defendant's unfavorable reviews of his books. On August 22, 2002, this Court referred the motion to Judge Orenstein to hold a hearing and to prepare a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**\*2** Judge Orenstein did not conduct a hearing, but issued a Report and Recommendation dated October 10, 2002 finding that, (1) a temporary restraining order prohibiting the defendant from publishing any further reviews of the plaintiff's books in this case would be an impermissible prior restraint on expression; (2) the plaintiff failed to establish any irreparable injury; (3) the plaintiff failed to state a claim for defamation or copyright infringement; and (4) because Amazon.com was not a party named in this action, it could not be enjoined.

Hammer filed a series of objections to Judge Orenstein's Report, and on October 25, 2002, the Court directed the plaintiff to consolidate all of his objections in one motion. The plaintiff asserts, among other things, that, (1) Judge Orenstein failed to conduct a hearing before issuing his Report; (2) a temporary restraining order is warranted in this action; and (3) because Amazon.com provided the defendant with an attorney in this case and "is acting in concert" with the defendant, it is a party to this case and should therefore be enjoined. The plaintiff also requests that this Court alert the United States Attorney General's Office that the defendant is engaging in "Internet fraud" and issue an order to have the defendant arrested.

### II. DISCUSSION

#### A. Objections to Report and Recommendation

At the outset, the Court notes that " 'there is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." ' Maryland Casualty Co. v. Realty Advisory Board on Labor Relations, 107 F.3d 979, 984 (2d Cir.1997) (quoting Redac Project 6426, Inc. v. Allstate Ins. Co., 402 F.2d 789, 790 (2d Cir.1986)). A court may decide a motion for a preliminary injunction without a hearing where material facts are not in dispute. Id. Although the plaintiff vehemently argues that the Judge Orenstein was required to a hold a hearing, he has failed to identify any material fact in dispute. In light of this, Judge Orenstein correctly determined that a hearing was not required on the plaintiff's motion for temporary injunctive relief.

The award of an injunction is not something a plaintiff is entitled to as a matter of right. Rather, it is within the broad discretion of the district court to grant or deny such relief. Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir.1999). A preliminary injunction is an "extraordinary" remedy and is not to be routinely granted. See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, (80) (2d Cir.1990); Hanson Trust PLC v. ML SCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir.1986) (stating that a preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"). To obtain a preliminary injunction, a plaintiff must establish: (1) irreparable harm; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Maryland Casualty Co. v. Realty Advisory Bd. On Labor Relations, 107 F.3d 979, 984 (2d Cir.1997) (internal quotations and citations omitted).

**\*3 [1]**  **[2]**    The plaintiff claims that he is suffering irreparable harm due to the defendant's unfavorable reviews. In particular, Hammer argues that the defendant's reviews have (1) created an economic loss of sales and (2) harmed his reputation. The Second Circuit has determined that "when a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary remedy of a preliminary injunction should be granted." *Twentieth Century Fox Film Corp. v. Marvel Enters.,* 277 F.3d 253, 258 (2d Cir.2002) (quoting *Borey v. National Union Fir. Ins. Co.,* 934 F.2d 30, 34 (2d Cir.1991). Furthermore, it is well-settled that an injury to reputation is insufficient to justify the issuance of a preliminary injunction. *See Stewart v. United States Immigration & Naturalization Serv..,* 762 F.2d 193, 199-200 (2d Cir.1985). Accordingly, the Court agrees with Judge Orenstein that the plaintiff has failed to show that irreparable harm will result if the preliminary injunction is denied.

**[3]**    Nor has the plaintiff demonstrated a likelihood of success on the merits. To state a claim for defamation under New York law, the plaintiff must allege facts sufficient to support a "finding of a published statement concerning the plaintiff that is both false and defamatory." *Belly Basics, Inc. v. Mothers Work, Inc.,* 95 F.Supp.2d 144, 145 (S.D.N.Y.2000) (citations omitted). It is well-settled that a statement of pure opinion is not actionable. *Id.* In order to determine whether a statement is fact or opinion, courts consider, among other things, the context in which the statements are made and the circumstances surrounding the statements. *See Carto v. Buckley,* 649 F.Supp. 502, 507 (S.D.N.Y.1986).

Here, the Court finds that the statements contained in the defendant's book reviews are expressions of pure opinion and are therefore protected. The defendant's statements appear in the context of a book review under the heading "Reviews." As such, the average person understands that such reviews are the reviewer's interpretation and not "objectively verifiable" false statements of facts. *See Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir.1997) (holding that "expressions of opinion are not actionable). Accordingly, because the defendant's reviews are merely his personal opinion about the plaintiff's books, the Court finds that the plaintiff fails to prove a likelihood of success on the merits with respect to his defamation claim.

**[4]**    In addition, to establish copyright infringement, the plaintiff must show both (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pub'n. Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). Here, the plaintiff fails to provide any allegations that the defendant actually copied the plaintiff's work. Therefore, the plaintiff also fails to demonstrate a likelihood of success on the merits with respect to his copyright claim.

**\*4 [5]**    Furthermore, Judge Orenstein correctly determined that the plaintiff's motion for a temporary restraining order against Amazon.com be denied. The plaintiff argues that because Amazon.com provided the defendant with an attorney, it has become a party to this action and is therefore subject to an injunction. The Court finds this argument to be without merit. In general, courts "may not issue an order against a nonparty." *United States v. Paccione,* 964 F.2d 1269, 1275 (2d Cir.1992). There is no indication that Amazon.com was given notice of the motion for a temporary restraining order. Furthermore, the plaintiff provides no allegations tending to support that Amazon.com was in active participation in the writing of the alleged defamatory statements. The defendant is correct in stating that the plaintiff's mere assertion that Amazon.com provided the defendant with an attorney does not demonstrate active participation. Accordingly, the plaintiff's motion for a temporary restraining order against Amazon.com is denied.

Finally, the Court denies the plaintiff's motions (1) for an order to have the defendant arrested and to alert the United States Attorney General's Office of the defendant's alleged internet fraud; (2) for an order to have David Zapolsky arrested; (3) to compel the defendant's counsel to disclose who is

paying her legal fees; and (4) for an order to direct the defendant to pay for various postage, as they are wholly unwarranted and completely nonsensical.

B. Motion to Dismiss

[6]    Trendl, a resident of Illinois, claims that the Court lacks personal jurisdiction over him. In a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. _Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.2001)_. Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by "pleading in good faith ... legally sufficient allegations of jurisdiction, _i.e._, by making a 'prima facie showing' of jurisdiction." _Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir.1998)_ (quoting _Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.1990)_). The facts must be construed in the light most favorable to the plaintiff. _Cooper, Robertson & Partners L.L.P. v. Vail, 143 F.Supp.2d 367, 370 (S.D.N.Y.2001)_ (citing _Hoffritz for Cutlery Inc. v. Amajac, Ltd., 763 F.2d 55, 57 (2d Cir.1985)_).

To determine whether the Court may exercise personal jurisdiction over the defendant, an Illinois resident, the Court must engage in a two-part analysis: (1) whether jurisdiction exists under the law of the forum state, in this instance New York; (2) whether the exercise of jurisdiction under state law satisfies federal due process requirements. _Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.1999)_.

**\*5** The New York long-arm statute authorizes personal jurisdiction over non-domiciliaries under certain circumstances. Under N.Y. C.P.L.R. § 302(a)(1), the Court may exercise jurisdiction over the defendant if (1) the defendant transacts business within New York, and (2) the claims against the defendant arises out of that business activity. N.Y. C.P.L.R. § 302(a)(1) ( McKinney's 2001). A non-domiciliary "transacts business" within the state when he "purposely avails [himself] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." _Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986)_ (internal quotations omitted).

Here, the defendant, a resident of Illinois, wrote the book reviews in Illinois and sent them to Amazon.com from his computer in Illinois. The defendant claims that he does not transact business, or supply goods or services in New York. In addition, the defendant contends that he has been to New York only once in 1987 for a camping trip. The plaintiff does not dispute this. Rather, the plaintiff merely asserts that "the Court would have jurisdiction over defendant precisely under 'New York's Long Arm Statute!," 'but offers no facts indicating how the Court has jurisdiction under the long-arm statute.

The Amazon.com website can be accessed through the Internet from a computer anywhere in the world, including New York. The defendant is correct in stating that "[in] order to exercise personal jurisdiction over a non-resident defendant, something more than the mere posting of information on a passive web site is required to indicate that the defendant purposefully directed his activities at the forum state." _K.C.P.L., Inc. v. Nash_, No. 98-3773, 1998 U.S. Dist. LEXIS 18464, at \*20 (S.D.N.Y. Nov. 23, 1998) (citation omitted).

Simply posting book reviews on a website that can be read by New York Internet users does not demonstrate the type of purposeful activity in New York sufficient to support the exercise of personal jurisdiction. _See Edberg v. Neogen Corp., 17 F.Supp.2d 104, 114 (D.Conn.1998)_ (holding that the exercise of personal jurisdiction is appropriate only where defendants are actively conducting business over the Internet so that they are "intentionally reached beyond their own state to engage in a business with residents in a forum state"). Hammer does not allege that the defendant made any sales to New York; entered into any contracts with the parties in New York; provided any services or products to sell in New York; or received any income from New York. Indeed, the plaintiff provides no facts to support that the defendant directed his activities at New York. Accordingly, the Court lacks personal jurisdiction over the defendant.

The Court notes that even if Hammer sufficiently demonstrated personal jurisdiction under 302(a)(1), the exercise of jurisdiction would not comport with due process because the defendant lacks minimum contacts with New York. Accordingly, the defendant's motion to dismiss the complaint for lack of personal jurisdiction is granted. Because the Court lacks personal jurisdiction over the defendant, it need not address the defendant's motion to dismiss for failure to state a claim.

## C. Motion for Reconsideration

**\*6** On January 3, 2003, the Court denied the plaintiff's motion for a default judgment. On January 9, 2003, Hammer acknowledged the Court's Order, but insisted in his letter that the defendant is in default. The Court will treat his letter as a motion for reconsideration of the Court's January 3, 2003 Order.

To succeed on a motion for reconsideration, Hammer must show that "the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Local Civil Rule 6.3. Here, the Court finds that the plaintiff fails to raise "controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir.1995). Instead, Hammer merely regurgitates his argument previously rejected by the Court. Therefore, his motion for reconsideration of the Court's January 3, 2003 Order is denied.

## III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the plaintiff's motion requesting a hearing for a temporary restraining order is DENIED; and it is further

ORDERED, that the plaintiff's objections to Judge Orenstein's Report are all DENIED; and it is further

ORDERED, that the Court adopts Judge Orenstein's Report in its entirety; and it is further

ORDERED, that the plaintiff's motion for a preliminary injunction is DENIED; and it is further

ORDERED, that the plaintiff's motion for an order to have the defendant arrested and to alert the United States Attorney General's Office of the defendant's alleged internet fraud is DENIED, and it is further

ORDERED, that the plaintiff's motion for an order to have David Zapolsky arrested is DENIED, and it is further

ORDERED, that the plaintiff's motion to compel the defendant's counsel to disclose who is paying her legal fees is DENIED, and it is further

ORDERED, that the plaintiff's motion for an order directing the defendant to pay for various postage is DENIED; and it is further

ORDERED, that the defendant's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) is GRANTED; and it is further

ORDERED, that, as a result of the more than 50 motions made in this case some of which were repetitive and frivolous, Jeffrey Hammer shall not file any papers in connection with this case unless prior to any such submission: (1) he files a one-page written application to the Court for permission to file papers in this case; (2) in that one-page written application, he explains why the case should be reopened and why he seeks permission to file papers; (3) the Court grants his application in a

written order; and (4) Hammer submits a copy of the Court's order granting him permission to file papers with the papers he has been allowed to file; and it is further

ORDERED, that the Court will not accept any papers filed by Hammer in this case unless he complies with the procedures set forth in the preceding paragraph; and it is further

**\*7** ORDERED, that Hammer's failure to comply with the foregoing procedures may result in monetary sanctions including, but not limited to, the defendant's attorney's fees; and it is further

ORDERED, that Clerk of the Court is directed to close this case.

SO ORDERED.

E.D.N.Y.,2003.
Hammer v. Trendl
Not Reported in F.Supp.2d, 2003 WL 21466686 (E.D.N.Y.)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2


 West Reporter Image (PDF)

646 N.W.2d 527

Briefs and Other Related Documents

Supreme Court of Minnesota.
Katherine GRIFFIS, Respondent,
v.
Marianne LUBAN, Petitioner, Appellant.
No. C3-01-296.
July 11, 2002.
Rehearing Denied Aug. 14, 2002.

Judgment creditor sought to enforce Alabama defamation judgment in Minnesota. The District Court, Ramsey County, Manuel Cervantes, Referee, affirmed Alabama judgment, and judgment debtor appealed. The Court of Appeals, 601 N.W.2d 712, vacated. The District Court, Ramsey County, Lawrence Cohen, J., entered judgment for creditor. Debtor appealed. The Court of Appeals, 633 N.W.2d 548, affirmed. Review was granted. The Supreme Court, Blatz, C.J., held that mere fact that judgment debtor, who was Minnesota resident, had known that judgment creditor lived in Alabama and served as instructor at University of Alabama, and had known that allegedly defamatory statements about judgment creditor which judgment debtor posted to Internet newsgroup would affect the judgment creditor in Alabama, did not establish personal jurisdiction in Alabama, and thus, the Alabama defamation judgment would not be enforced in Minnesota.
Reversed and judgments vacated.

West Headnotes

[1] KeyCite Notes ![KC]

⇦ 228 Judgment
  ⇦ 228XVII Foreign Judgments
    ⇦ 228k814 Judgments of State Courts
      ⇦ 228k818 Want of Jurisdiction
        ⇦ 228k818(1) k. In General. Most Cited Cases

Minnesota courts will uphold a foreign court's exercise of personal jurisdiction over a nonresident defendant, and enforce the foreign judgment, when two requirements are met: (1) compliance with the foreign state's law providing jurisdiction, and (2) the exercise of jurisdiction under circumstances that do not offend the Due Process Clause of the federal Constitution. U.S.C.A. Const.Amend. 14.

[2] KeyCite Notes ![KC]

⇦ 30 Appeal and Error
  ⇦ 30XVI Review
    ⇦ 30XVI(F) Trial De Novo
      ⇦ 30k892 Trial De Novo
        ⇦ 30k893 Cases Triable in Appellate Court
          ⇦ 30k893(1) k. In General. Most Cited Cases

⇦ 106 Courts KeyCite Notes ![KC]

&#9758;106I Nature, Extent, and Exercise of Jurisdiction in General
   &#9758;106k39 k. Determination of Questions of Jurisdiction in General. <u>Most Cited Cases</u>

Whether personal jurisdiction exists is a question of law, and therefore, appellate review is de novo.

[3] <u>KeyCite Notes</u> 

&#9758;<u>228</u> Judgment
  &#9758;<u>228XVII</u> Foreign Judgments
    &#9758;<u>228k814</u> Judgments of State Courts
      &#9758;<u>228k818</u> Want of Jurisdiction
        &#9758;<u>228k818(1)</u> k. In General. <u>Most Cited Cases</u>

To determine compliance with the foreign state's law providing jurisdiction, as element for enforcing a foreign judgment, Minnesota courts apply the law of the foreign state, as construed by that state's courts.

[4] <u>KeyCite Notes</u> 

&#9758;<u>92</u> Constitutional Law
  &#9758;<u>92XXVII</u> Due Process
    &#9758;<u>92XXVII(E)</u> Civil Actions and Proceedings
      &#9758;<u>92k3961</u> Jurisdiction and Venue
        &#9758;<u>92k3964</u> k. Non-Residents in General. <u>Most Cited Cases</u>
          (Formerly 92k305(5))

The Due Process Clause limits the power of a state court to exercise personal jurisdiction over a nonresident defendant to circumstances where the defendant has "minimum contacts" with the state so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. <u>U.S.C.A. Const.Amend. 14</u>.

[5] <u>KeyCite Notes</u> 

&#9758;<u>106</u> Courts
  &#9758;<u>106I</u> Nature, Extent, and Exercise of Jurisdiction in General
    &#9758;<u>106k10</u> Jurisdiction of the Person
      &#9758;<u>106k12</u> Domicile or Residence of Party
        &#9758;<u>106k12(2)</u> Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
          &#9758;<u>106k12(2.5)</u> k. Contacts with Forum State. <u>Most Cited Cases</u>

Where the nonresident defendant had continuous and systematic contacts with the forum state, the court can exercise general jurisdiction over the nonresident defendant for all purposes, even for a claim that is not related to the defendant's contacts with the forum state.

[6] <u>KeyCite Notes</u> 

&#9758;<u>106</u> Courts
  &#9758;<u>106I</u> Nature, Extent, and Exercise of Jurisdiction in General
    &#9758;<u>106k10</u> Jurisdiction of the Person
      &#9758;<u>106k12</u> Domicile or Residence of Party

&#8594;106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
&#8594;106k12(2.10) k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases

Where the nonresident defendant's contacts with the forum state are not sufficient for general jurisdiction, the defendant may nonetheless be subject to "specific jurisdiction," that is, jurisdiction over a claim that allegedly arose out of the defendant's contacts with the forum.

[7] KeyCite Notes 

&#8594;92 Constitutional Law
&#8594;92XXVII Due Process
&#8594;92XXVII(E) Civil Actions and Proceedings
&#8594;92k3961 Jurisdiction and Venue
&#8594;92k3964 k. Non-Residents in General. Most Cited Cases
(Formerly 92k305(5))

In judging due process "minimum contacts" for purposes of assessing the validity of specific jurisdiction over a nonresident defendant, a court focuses on the relationship among the defendant, the forum, and the litigation. U.S.C.A. Const.Amend. 14.

[8] KeyCite Notes 

&#8594;92 Constitutional Law
&#8594;92XXVII Due Process
&#8594;92XXVII(E) Civil Actions and Proceedings
&#8594;92k3961 Jurisdiction and Venue
&#8594;92k3964 k. Non-Residents in General. Most Cited Cases
(Formerly 92k305(5))

For the due process "minimum contacts" requirement for personal jurisdiction to be satisfied, the nonresident defendant must have purposefully availed herself of the privilege of conducting activities within the forum state, and the defendant's conduct and connections with the forum state must be such that the defendant should reasonably anticipate being haled into court there. U.S.C.A. Const.Amend. 14.

[9] KeyCite Notes 

&#8594;106 Courts
&#8594;106I Nature, Extent, and Exercise of Jurisdiction in General
&#8594;106k10 Jurisdiction of the Person
&#8594;106k12 Domicile or Residence of Party
&#8594;106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
&#8594;106k12(2.25) k. Tort Cases. Most Cited Cases

A nonresident defendant is not subject to a foreign court's jurisdiction, under the United States Supreme Court's *Calder* "effects test," absent a showing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum, such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum, such that the forum state was the focal point of the tortious activity.



[10] KeyCite Notes 

⇐106 Courts
   ⇐106I Nature, Extent, and Exercise of Jurisdiction in General
      ⇐106k10 Jurisdiction of the Person
         ⇐106k12 Domicile or Residence of Party
            ⇐106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
               ⇐106k12(2.25) k. Tort Cases. Most Cited Cases


⇐228 Judgment KeyCite Notes
   ⇐228XVII Foreign Judgments
      ⇐228k814 Judgments of State Courts
         ⇐228k818 Want of Jurisdiction
            ⇐228k818(3) k. Effect of Want of Jurisdiction. Most Cited Cases

Mere fact that Minnesota resident knew that Egyptologist lived in Alabama and served as instructor at University of Alabama, and knew that allegedly defamatory statements about Egyptologist which Minnesota resident posted to Internet newsgroup would affect the Egyptologist in Alabama, did not establish that Minnesota resident expressly aimed allegedly tortious conduct at Alabama such that Alabama was focal point of tortious activity, as element for applying United States Supreme Court's *Calder* "effects test" for personal jurisdiction, and thus, Alabama defamation judgment against Minnesota resident would not be enforced in Minnesota; the newsgroup was organized around the subjects of archeology and Egyptology, not Alabama or the University of Alabama academic community, there was no evidence that any person in Alabama or in academic community at University of Alabama other than the Egyptologist had read the allegedly defamatory newsgroup posting, and Alabama did not have unique relationship with field of Egyptology.


***529** Syllabus by the Court*

A nonresident defendant is not subject to a foreign court's jurisdiction under the effects test from *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), absent a showing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of tortious activity.

Faegre & Benson LLP, John P. Borger, Eric E. Jorstad, C. David Flower, Patricia R. Stembridge, Minneapolis, for Appellant.
C. Peter Erlinder, St. Paul, Ralph Overholt, Hopkins for Respondent.

Heard, considered, and decided by the court en banc.


OPINION


BLATZ, Chief Justice.
Respondent Katherine Griffis brought suit against appellant Marianne Luban in Jefferson County, Alabama, alleging defamation and invasion of privacy arising out of statements made by Luban on the internet. Luban did not appear in the Alabama action, and the Alabama district court entered a default judgment for $25,000 in damages and issued an injunction prohibiting Luban from making certain statements in the future. Griffis filed the Alabama judgment in Ramsey County District Court, and Luban brought a motion to vacate, challenging the jurisdiction of the Alabama court. The Ramsey

County District **530** Court upheld personal jurisdiction of the Alabama court over Luban, and the court of appeals affirmed. We reverse.

Respondent Katherine Griffis, an Alabama resident, has taught noncredit courses in ancient Egyptian history and culture at the University of Alabama, Birmingham. Griffis also works as a self-employed consultant. Appellant Marianne Luban, a Minnesota resident, maintains a nonprofessional interest in the history and culture of ancient Egypt. Both Luban and Griffis have participated in an internet newsgroup on archeology, the *sci.archaeology* newsgroup, since at least 1996. A newsgroup is a forum for internet users that addresses a specific topic and allows participants to exchange information and engage in discussions or debate by "posting" messages on the website. The *sci.archaeology* newsgroup is public and so messages posted there can be accessed anywhere by any person with internet access.

During the latter part of 1996 a disagreement arose between Luban and Griffis relating to the subject of Egypt and Egyptology. In December 1996 Luban posted a message challenging Griffis's credentials as an Egyptologist, and accusing Griffis of obtaining her degree from a "box of Cracker Jacks." Griffis states that she responded by citing her credentials in an electronic message sent directly to Luban. The disagreement continued into 1997, with both Luban and Griffis continuing to post messages relating to their disagreement on the *sci.archaeology* newsgroup. In May 1997, Griffis's attorney sent a letter to Luban demanding that Luban refrain from attacking Griffis's character and professional reputation. The letter threatened legal action if Luban did not retract the prior statements and refrain from future attacks. Although Griffis asserts that Luban continued posting defamatory messages after receiving this letter, the record before us does not include any statements made by Luban, whether on the *sci.archaeology* newsgroup or elsewhere, after March, 1997.

In September 1997, Griffis brought a defamation action against Luban in Alabama state court. Griffis's complaint alleged that Luban posted statements on the newsgroup asserting that Griffis obtained membership in the International Association of Egyptologists and inclusion on other lists of Egyptologists by misrepresenting her qualifications, that Griffis was a liar, was not affiliated with the University of Alabama, that she did not have a juris doctor degree, and that Griffis's consulting business was not legitimate. Because Luban was advised by her attorney that the Alabama state court did not have personal jurisdiction over her, she did not answer the complaint or make any appearance in the Alabama action. On December 17, 1997, the Alabama court entered a default judgment against Luban. The court assessed damages in the amount of $25,000 and also issued an injunction specifically enjoining Luban from publishing certain statements in the future.[FN1]

> FN1. The injunction prohibited Luban from publishing in any form–including on the internet, world wide web and e-mail–statements asserting or implying that Griffis is a liar, a phony, a con-artist or scam artist, that she has falsified her credentials as an Egyptologist, that she is not affiliated with the University of Alabama, that she does not have a juris doctor degree, and that she is not engaged in a legitimate consulting business.

On May 5, 1998, Griffis filed the Alabama judgment in Ramsey County District Court in order to enforce its terms against Luban. Luban moved to vacate the judgment on the basis that the Alabama court lacked personal jurisdiction over her. A referee initially granted Luban's motion, **531** but on reconsideration concluded that the Alabama court had personal jurisdiction over Luban and ordered entry of a Minnesota court judgment against Luban. On appeal, the court of appeals vacated the referee's order because it had not been confirmed or countersigned by a district court judge. In the interim, Luban petitioned for bankruptcy, and on March 15, 2000, the bankruptcy court discharged the $25,000 judgment from the Alabama court.

In March 2000, Luban renewed her motion in district court to vacate the Alabama judgment, and Griffis filed a cross-motion to enforce the Alabama injunction. The court found that the Alabama district court had personal jurisdiction over Luban and therefore the judgment must be given full faith and credit. Judgment was entered on December 21, 2000. On Luban's appeal, the court of appeals affirmed, ruling that the district court did not err in its determination that the Alabama court properly

exercised personal jurisdiction over Luban. *Griffis v. Luban*, 633 N.W.2d 548, 553 (Minn.App.2001). The court of appeals concluded that Luban was subject to the Alabama court's jurisdiction because she made potentially defamatory statements that were being read in Alabama and had knowledge of the effect of those statements in Alabama. *Id.* Luban sought and was granted review in this court.

[1]  [2]    The question presented is whether the Ramsey County District Court correctly determined that the Alabama district court had personal jurisdiction over Luban so that the Alabama judgment is entitled to full faith and credit in the Minnesota courts. This court recognizes the right of a defendant to contest an action brought on the basis of a foreign court's judgment by demonstrating that the foreign court rendered the judgment in the absence of personal jurisdiction over the defendant. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d 370, 372 (Minn.1977). Such judgments are not entitled to full faith and credit in Minnesota. Uniform Enforcement of Foreign Judgments Acts, Minn.Stat. § 548.27 (2000); *Hutson v. Christensen*, 295 Minn. 112, 117, 203 N.W.2d 535, 538 (1972). Minnesota courts will uphold a foreign court's exercise of personal jurisdiction over a nonresident defendant when two requirements are met: (1) compliance with the foreign state's law providing jurisdiction, and (2) the exercise of jurisdiction under circumstances that do not offend the Due Process Clause of the federal constitution. *Intrex*, 257 N.W.2d at 372. Whether personal jurisdiction exists is a question of law and therefore our review is de novo. *See V.H. v. Estate of Birnbaum*, 543 N.W.2d 649, 653 (Minn.1996); *see also Matson v. Matson*, 310 N.W.2d 502, 506 (Minn.1981) (applying de novo review to issue of whether foreign judgment entitled to full faith and credit).

[3]    For the first requirement, Minnesota courts apply the law of the foreign state, as construed by that state's courts. *See David M. Rice, Inc.*, 257 N.W.2d at 372. Alabama law extends personal jurisdiction over nonresident defendants to the full extent permitted by due process. Ala. R. Civ. P. 4.2(a)(1)(B); *DeSotacho, Inc. v. Valnit Industries, Inc.*, 350 So.2d 447, 449-50 (Ala.1977). Because Alabama provides jurisdiction as broad as due process will allow, the first requirement is subsumed by the second, and we need only determine whether Alabama's exercise of personal jurisdiction over Luban was consistent with due process.

[4]  [5]  [6]    The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exercise personal jurisdiction over a nonresident defendant to circumstances where the defendant has "minimum contacts" with the state so that "maintenance of the suit does not offend **\*532** 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Where the defendant had "continuous and systematic" contacts with the forum state, the court can exercise "general" jurisdiction over a nonresident defendant for all purposes, even for a claim that is not related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Griffis does not contend that the Alabama courts could exercise general jurisdiction over Luban. Where the nonresident defendant's contacts with the forum state are not sufficient for general jurisdiction, the defendant may nonetheless be subject to "specific" jurisdiction—that is, jurisdiction over a claim that allegedly arose out of the defendant's contacts with the forum. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn.1992). Griffis contends that Luban had sufficient contacts with Alabama, out of which her claims arose, to support the Alabama court's exercise of specific jurisdiction.

[7]  [8]    In judging minimum contacts for purposes of assessing the validity of specific jurisdiction, a court focuses on the "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414-16, 104 S.Ct. 1868 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)); *West American Ins. Co. v.*

*Westin, Inc.,* 337 N.W.2d 676, 679 (Minn.1983). For the minimum contacts requirement to be satisfied, the defendant must have "purposefully avail[ed]" herself of the privilege of conducting activities within the jurisdiction. *Imo Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998) (quoting and modifying *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The defendant's conduct and connections with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court has explained that specific jurisdiction may be found where the nonresident defendant has " 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414).

In asserting that the Alabama district court had personal jurisdiction over Luban, Griffis relies in particular, as did the courts below, on *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder* the Supreme Court approved a test that had been employed by the California courts in that case for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum. *Id.* at 787 & n. 6, 104 S.Ct. 1482. Rather than focusing only on the defendant's conduct within or contacts with the forum, the so-called "effects test" approved in *Calder* allowed long-arm jurisdiction to be based on the effects within the forum of tortious conduct outside the forum. *Id.*

*Calder* involved an allegedly libelous *National Enquirer* article written and edited by the defendants in Florida, but concerning the California activities of a California*533 resident. *Id.* at 784-85, 104 S.Ct. 1482. Although the *Enquirer* was distributed nationally, it had its largest circulation in California. *Id.* at 784-85, 104 S.Ct. 1482. Plaintiff was an entertainer whose profession, the Court pointed out, was centered in California. *Id.* at 788, 104 S.Ct. 1482. She brought suit in California against the Florida-based publication, its distributing company, and the reporter and editor of the article. *Id.* at 785-86, 104 S.Ct. 1482. The reporter and editor moved to quash service of process for lack of personal jurisdiction. *Id.* at 785-85, 104 S.Ct. 1482. Although the investigative contacts of one defendant with California, including a visit and several phone calls, were alleged as a basis for jurisdiction, the Court found it unnecessary to consider those direct contacts with the forum. *Id.* at 786-87 & n. 6, 104 S.Ct. 1482. Instead, the Court held that California had personal jurisdiction over the reporter and editor because their Florida conduct was "expressly aimed" at California, knowing that the harmful effects would be felt primarily there. *Id.* at 789, 104 S.Ct. 1482. The Court emphasized that the alleged tort was not "mere untargeted negligence." *Id.* Under these circumstances, the Court found that defendants "must 'reasonably anticipate being haled into court' " in California for their out-of-state actions. *Id.* at 790, 104 S.Ct. 1482 (quoting *World-Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559).

Courts have come to varying conclusions about how broadly the "effects test" approved in *Calder* can be applied to find jurisdiction. The Seventh Circuit Court of Appeals has construed *Calder* very broadly, concluding that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997). However, the other federal courts of appeals that have considered the issue have rejected this expansive view that *Calder* supports specific jurisdiction in a forum state merely because the harmful effects of an intentional tort committed in another jurisdiction are primarily felt in the forum. *E.g., Imo Indus.,* 155 F.3d at 265. Thus, courts have consistently refused to find jurisdiction based on *Calder* merely because the plaintiff was located in the forum state and therefore felt the effects of the alleged intentional tortious conduct there. *E.g., id.; ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625-26 (4th Cir.1997); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1080 (10th Cir.1995); *Southmark Corp. v. Life Investors Inc.,* 851 F.2d 763, 773 (5th Cir.1988). Instead, the courts have construed *Calder* as requiring more than mere effects in the forum state. For example, the Ninth Circuit reasoned that " 'something more' " than mere effects is needed and found that something more in the " 'express aiming' " language of *Calder. Bancroft & Masters v. Augusta Nat'l, Inc.* 223 F.3d 1082, 1087 (9th Cir.2000) (quoting *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998); *Calder,* 465 U.S. at 789, 104 S.Ct. 1482). But the court took a broad view of express aiming by concluding that the requirement is satisfied simply by "wrongful conduct [outside the

forum] individually targeting a known forum resident." *Id.*

The Eighth Circuit adopted a narrower interpretation of *Calder,* stating that it was more than "mere effects" that supported the Supreme Court's holding. *Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir.1992).* The court found that the Iowa court's jurisdiction did not extend over a Michigan company that sent allegedly defamatory letters to customers of the Iowa-based plaintiff company. *Id.* The customers to whom the letters were sent were all located outside of Iowa. *Id.* The **\*534** court stated that while the defendant's statements to the non-Iowa customers were intended to promote the defendant's product to the detriment of the plaintiff's and therefore might have an adverse effect on the Iowa plaintiff, this effect alone was not sufficient to establish jurisdiction. *Id.*

[9]    Within the spectrum of differing circuit court interpretations of *Calder,* we believe the most cogent analysis of the *Calder* effects test is that of the Third Circuit in *Imo Industries.* In *Imo Industries,* the circuit court expressed concern over the possible breadth of *Calder,* asking whether under *Calder* a court can automatically infer that an out-of-state defendant can anticipate being haled into the forum from the fact that the defendant knew that plaintiff resided in the forum. 155 F.3d at 262-63. After examining how a number of other courts construed *Calder,* the Third Circuit concluded that the *Calder* effects test is not satisfied by the "mere allegation that the plaintiff feels the effect of the defendant's conduct in the forum because the plaintiff is located there." 155 F.3d at 263. Instead, the court stated that *Calder's* holding "cannot be severed from its facts." 155 F.3d at 261. The court explained that in *Calder* the Supreme Court relied on three principal findings in reaching its conclusion that the California court properly exercised jurisdiction over the nonresident defendants, and the circuit court incorporated those findings into a three-prong analysis for application of the *Calder* effects test. 155 F.3d at 261. The test requires the plaintiff to show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity. *Id. at 265-66.* Significantly, the court emphasized that to satisfy the third prong, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and *point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 266* (emphasis added).

We, too, are cautious about applying *Calder* too broadly. Although the Supreme Court has engaged in little further discussion of *Calder,* in one post- *Calder* decision the Court did make it clear that foreseeability of effects in the forum is not itself enough to justify long-arm jurisdiction. The Court explained:

[T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *International Shoe Co. v. Washington,* [326 U.S.] at 316, 66 S.Ct. 154. Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S., at 295, 100 S.Ct. 559. Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id., at 297, 100 S.Ct. 559.*

*Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. 2174 (footnote omitted). If foreseeability of injury in the forum is not enough, it follows that something more than defendant's knowledge that the plaintiff is a resident of the forum and will feel the **\*535** effects of the tortious conduct there must be necessary to satisfy the effects test. We conclude that something more than mere effects in the forum state is required, and agree with the Third Circuit that the Supreme Court did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *Imo Indus.,* 155 F.3d at 265. Broad applications of the effects test, such as those of the Seventh and Ninth Circuits, cast too wide a net and incorrectly disregard the factual underpinnings of the Court's holding in *Calder.* We adopt the three-prong analysis

articulated by the Third Circuit in *Imo Industries,* as it properly synthesizes the bases of the Court's decision in *Calder* without effecting an overly broad application.

[10]    The critical question in this case turns on the third prong, whether the defendant expressly aimed the allegedly tortious conduct at the forum such that the forum was the focal point of the tortious activity.[FN2] As noted above, to satisfy the third prong, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Imo Indus., 155 F.3d at 266.*

> FN2. Because all three prongs must be satisfied for jurisdiction to attach, we need address the other two prongs only if this requirement is met.

Griffis argues that Luban directed the defamation at the Alabama forum because she targeted her messages at Griffis, whom she knew to be an Alabama resident, and because Luban knew that messages posted on the *sci.archaeology* newsgroup could be read anywhere in the world and in fact were read by Griffis in Alabama. Griffis further contends that Luban's defamatory statements had "deleterious effects" on Griffis's consulting business and her professional reputation in Alabama. The district court agreed with Griffis, stating that Luban "never denied that she knew Plaintiff was located in Alabama, and that her allegedly defamatory messages would have an 'effect' on Plaintiff's professional career in Alabama."

While the record supports the conclusion that Luban's statements were intentionally directed at Griffis, whom she knew to be an Alabama resident, we conclude that the evidence does not demonstrate that Luban's statements were "expressly aimed" at the state of Alabama.[FN3] The parties agree that Luban published the allegedly defamatory statements on an internet newsgroup accessible to the public, but nothing in the record indicates that the statements were targeted at the state of Alabama or at an Alabama audience beyond Griffis herself. The newsgroup on which Luban posted her statements was **\*536** organized around the subjects of archeology and Egyptology, not Alabama or the University of Alabama academic community. According to Griffis, Luban's messages were widely read by her colleagues-the other amateur Egyptologists who participated in the *sci.archaeology* newsgroup. But Griffis has not presented evidence that any other person in Alabama read the statements. Nor has she asserted that Alabama has a unique relationship with the field of Egyptology, like the close relationship between the plaintiff's profession and the forum state that the Supreme Court found relevant in *Calder.* Therefore, even if we assume Luban's statements were widely read by followers of the *sci.archaeology* newsgroup, the readers most likely would be spread all around the country-maybe even around the world-and not necessarily in the Alabama forum. The fact that messages posted to the newsgroup *could* have been read in Alabama, just as they *could* have been read anywhere in the world, cannot suffice to establish Alabama as the focal point of the defendant's conduct.

> FN3. Luban concedes that she knew Griffis lived in Alabama. But this fact alone is insufficient to conclude that Luban expressly aimed her allegedly tortious conduct at the Alabama forum. We look to the record for other evidence that the Alabama forum was the focal point of the defamatory statements. The record contains only two messages posted by Luban on the *sci.archaeology* newsgroup that identify the Alabama forum in any way. In one, Luban stated Griffis was "from the great state of Alabama." In another, in response to a message by Griffis signed University of Alabama at Birmingham, Special Studies, Luban asked: "What are special studies and what have you to do with them." In response, Griffis posted, "Now for the record, I am an instructor with the University of Alabama at Birmingham, Department of Special Studies, and have been for over 17 years." Luban also acknowledges that she made one phone call to the University of Alabama, in which she asked a receptionist whether Griffis was employed there.

To support her assertion that Luban's statements affected her professional integrity in Alabama,

Griffis relies on the message posted by a dean at the University of Alabama. But that message simply verified that Griffis had taught noncredit classes related to ancient Egypt at the University of Alabama's Department of Special Studies. The statement did not indicate an awareness of Luban's statements, nor did it indicate that Griffis's integrity or reputation had been impugned at the University. Significantly, the dean posted the message to another newsgroup because she did not have access to *sci.archaeology* newsgroup on which Luban made her postings. Griffis later copied the Dean's message onto the *sci.archaeology* newsgroup. Thus nothing in the factual record before us indicates that Luban's messages were read by any other person in Alabama, or by anyone in the academic community at the University of Alabama. Griffis also relies on a letter her attorney wrote to Luban threatening litigation to establish that Luban knew her postings would harm Griffis's consulting business in Alabama. But the letter states only that Luban's statements were "threatening" Griffis's business and did not specify any details about the business. Nor does anything in the record establish that Griffis's consulting business was focused in Alabama, beyond the fact that Griffis herself was located there.[FN4] Unlike the facts in *Calder,* where the defamatory article was focused on California activities of a California plaintiff whose professional industry was centralized in California and was carried by a national newspaper with its highest circulation in California, Luban did not "expressly aim" her statements at the state of Alabama such that Alabama was the focal point of the tortious activity.

> FN4. In fact, a copy of the website of the consulting business in the district court record identifies Griffis Consulting as "a U.S.-based consulting firm * * * involved in both domestic and international services to business, government, and other organizations." There is no mention of Alabama on the website, other than an ad from the hosting site.

In sum, we conclude that the record does not demonstrate that Luban expressly aimed her allegedly tortious conduct at the Alabama forum so as to satisfy the third prong of the *Imo Industries* analysis. The mere fact that Luban knew that Griffis resided and worked in Alabama is not sufficient to extend personal jurisdiction over Luban in Alabama, because that knowledge does not demonstrate targeting of Alabama as the focal point of the allegedly defamatory statements. As a result, even if Luban knew or should have known that defamatory statements about Griffis *537 would affect her in her home state of Alabama, that alone is not enough to demonstrate that Alabama was the focal point of Luban's tortious conduct. Failing this, Griffis cannot rely on *Calder* to confer personal jurisdiction based on Luban's allegedly intentional tortious conduct. Because Griffis does not claim any other basis on which the Alabama court could properly extend personal jurisdiction over Luban, the judgment of the Alabama court is not entitled to full faith and credit in Minnesota. The decisions of the courts below enforcing the Alabama judgment are therefore reversed, and the Alabama judgment filed in Ramsey County District Court on May 5, 1998, under the Uniform Enforcement of Foreign Judgments Acts, Minn.Stat. § 548.27, and the Ramsey County District Court judgment entered on December 21, 2000, based on the Alabama judgment, are vacated.

Reversed and judgments vacated.


GILBERT, J., took no part in the consideration or decision of this case.


Minn.,2002.
Griffis v. Luban
646 N.W.2d 527


Briefs and Other Related Documents (Back to top)

- 2002 WL 32704742 (Appellate Brief) Reply Brief of Appellant Marianne Luban (Feb. 01, 2002) Original Image of this Document (PDF)
- 2002 WL 32704741 (Appellate Brief) Plaintiff/Respondent's Brief (Jan. 15, 2002) Original Image of this Document (PDF)

• 2001 WL 34690496 (Appellate Brief) Brief of Appellant Marianne Luban (Dec. 13, 2001) ▤ Original Image of this Document with Appendix (PDF)
END OF DOCUMENT

▣ West Reporter Image (PDF)

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

14 Misc.3d 1224(A), 836 N.Y.S.2d 492 (Table), 2007 WL 283075 (N.Y.Sup.), 2007 N.Y. Slip Op. 50161(U)
**Unreported Disposition**
Motions, Pleadings and Filings

(The decision of the Court is referenced in a table in the New York Supplement.)

Supreme Court, Suffolk County, New York.
COMPETITIVE TECHNOLOGIES, INCORPORATED and Dr. D.J. Freed, Plaintiffs,
v.
Dr. Arnold H. PROSS, Defendant.
No. 13297/2006.
Jan. 26, 2007.

Greenberg Traurig, LLP, New York, for Plaintiffs.
Charles A. Singer, Esq., Farmingdale, for Defendant.

JOSEPH FARNETI, J.
***1** Defendant, by Notice of Motion, seeks an Order of this Court dismissing plaintiffs' complaint pursuant to CPLR 3211(a)(2), on the grounds that this Court has no jurisdiction over the subject matter of this action, and pursuant to CPLR 3211(a)(8), on the grounds that this Court has no jurisdiction over the person of defendant. For the reasons set forth herein, defendant's motion is hereby *GRANTED,* pursuant to CPLR 3211(a)(8), in that this Court does not have jurisdiction over the person of defendant.

PROCEDURAL HISTORY

Plaintiffs have commenced the instant action for defamation and intentional infliction of emotional distress by Summons and Complaint dated May 16, 2006. The complaint alleges that defendant posted libelous statements on a Yahoo! internet message board, for the time period June 5, 2005 through April 3, 2006, concerning plaintiff corporation and its officers and directors, including plaintiff DR. D.J. FREED, who is the president and chief executive officer of the corporation.

The within complaint recites that plaintiff COMPETITIVE TECHNOLOGIES, INCORPORATED, is a Delaware corporation, with headquarters in Fairfield, Connecticut, but is silent with respect to plaintiff FREED's domicile. The complaint further recites that defendant, upon information and belief, is a New York resident with a usual place of abode at 29 Briarfield Lane, Huntington, New York. In addition, the complaint alleges that the Court has jurisdiction over this case pursuant to CPLR 140-b. The Court is not aware of any such section 140-b of the CPLR, but the Court assumes that plaintiffs intended to refer to section 140-b of the Judiciary Law which sets forth the general jurisdiction of the supreme court. The complaint alleges that venue is proper in Suffolk County, pursuant to CPLR 503, based upon defendant's residence. Defendant now challenges this allegation of residency, arguing that none of the parties to this action were domiciliaries of the State of New York at the time of commencement of the instant action. As such, defendant alleges that this Court does not have personal jurisdiction over defendant. In addition, defendant moves to dismiss upon the ground that this Court has no jurisdiction over the subject matter of the action.

SUBJECT MATTER JURISDICTION

Defendant moves to dismiss, pursuant to CPLR 3211(a)(2), arguing that this Court does not have subject matter jurisdiction to hear the instant action. However, defendant failed to give any reasoning or authority for this argument. In opposition, plaintiffs argue that this Court has subject matter jurisdiction to hear this action, as the supreme court is a court of general original jurisdiction. This

Court agrees. Article VI, section 7(a) of the New York State Constitution provides that, "the supreme court shall have general original jurisdiction in law and equity" (N.Y. Const, art VI, § 7[a] ). "The New York Supreme Court is a court of original, unlimited, and unqualified jurisdiction and is competent to entertain all causes of actions unless its jurisdiction has been specifically proscribed" ( *Fry v. Village of Tarrytown,* 89 N.Y.2d 714 [1997]; *see also Matter of Ballard v. HSBC Bank USA,* 6 NY3d 658 [2006]; *Doe v. Riback,* 7 Misc.3d 341 [2005] ). As such, defendant's allegation that this Court does not have subject matter jurisdiction to hear the instant case is unavailing, and that branch of defendant's motion is denied.

PERSONAL JURISDICTION

**\*2** Turning to defendant's argument with respect to personal jurisdiction, defendant alleges that as of October 2004, he no longer resides in the State of New York, and is a resident and domiciliary of the State of Florida. In support of this allegation, defendant submits a copy of his Florida driver's license, as well as a "Property Information Card" from the Palm Beach County Property Appraiser which indicates that defendant and his wife own real property in Boynton Beach, Florida. Defendant alleges that he currently has no real property, no residences, nor any other contact with the State of New York. Further, defendant argues that this Court does not have long-arm personal jurisdiction over him, pursuant to CPLR 302, as that section specifically excludes long-arm jurisdiction in actions for defamation of character.

Defendant alleges that he was not a domiciliary of the State of New York in May of 2006 when this action was commenced. Assuming defendant's contention to be correct, plaintiffs attempt, in opposition to the instant application, to invoke long-arm personal jurisdiction over defendant pursuant to CPLR 302. Defendant alleges that plaintiffs' complaint suffers from a "critical omission," in that it lacks an affirmative pleading with regard to residency upon which to base jurisdiction. However, a basis for jurisdiction is not required to be pled in the first instance in a complaint ( *see* CPLR 3013; *see also Rung v. United States Fidelity & Guaranty Co.,* 139 A.D.2d 914 [1988]; *Fishman v. Pocono Ski Rental, Inc.,* 82 A.D.2d 906 [1981] ).

Plaintiffs have framed two causes of action in the complaint, to wit: Defamation and intentional infliction of emotional distress, however, both claims arise from the same statements allegedly posted on the internet by defendant. Each cause of action must be analyzed separately by the Court regarding long-arm personal jurisdiction ( *see e.g. Nasso v. Seagal,* 263 F Supp 2d 596 [2003]; *Cosmetech Int'l v. Der Kwei Enter. & Co.,* 943 F Supp 311 [1996]; *Interface Biomedical Laboratories Corp. v. Axiom Medical, Inc.,* 600 F Supp 731 [1985] ).

CPLR 302, New York's long-arm jurisdiction statute, provides in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act;* or

3. commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act,* if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or 4. owns, uses or possesses any real property situated within the state.

**\*3** CPLR 302 (emphasis supplied). As is evident above from CPLR 302, actions sounding in defamation are explicitly excluded as a basis for long-arm jurisdiction.

Plaintiffs submit correspondence from Cablevision Systems Corporation, apparently to show that defendant maintains an internet account in New York with that service provider. However, the documentation provided shows that the account used to post the statements in question was not registered to defendant, but rather to his wife, TRINA PROSS, who is not named as a defendant herein.

Plaintiffs further attempt to rely on defendant's alleged business transactions within the state, i.e. purchasing and selling securities using a broker located in New York, coupled with the alleged libelous statements posted on the internet, as a basis for long-arm jurisdiction. Under CPLR 302(a)(1), a court may exercise jurisdiction over a non-domiciliary if he or she "transacts business" within the state. "Transacting business" is defined as purposely availing himself or herself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws (CPLR 302[a][1]; *see e.g.* Hammer v. Trendl, 2003 U.S. Dist LEXIS 623 [2003] ). For a court to exercise personal jurisdiction over a non-domiciliary defendant under the "transacting business" provision, a defendant must transact business in New York, and the claim against defendant must arise out of the underlying business activity ( *see e.g.* Newbro v. Freed, 337 F Supp 2d 428 [2004] ). Defendant denies the existence of any business transactions, and the Court notes that the libelous statements in question were posted on a passive message board and not in connection with any business transactions.

In addition, in order to exercise personal jurisdiction over a non-resident defendant, something more than the mere posting of information on a passive web site is required to indicate that the defendant purposefully directed his activities at the forum state ( *Hammer v. Trendl*, 2003 U.S. Dist LEXIS 623, *supra* ). Moreover, a defendant whose out-of-state defamatory statements enter New York as a result of a publisher's routine distribution has been held not to have transacted business in New York ( *see* Montgomery v. Minarcin, 263 A.D.2d 665 [1999]; Yanni v. Variety, Inc., 48 A.D.2d 803 [1975]; Streslin v. Barrett, 36 A.D.2d 923 [1971] ). As such, the Court finds that CPLR 302 long-arm jurisdiction is not available to plaintiffs with respect to the cause of action for defamation.

With respect to the cause of action for intentional infliction of emotional distress, the Court finds that the instant facts do not support a basis for jurisdiction pursuant to CPLR 302. CPLR 302(a)(3) provides that if a defendant commits a tortious act without the state causing injury to person or property within the state, jurisdiction may be established, if the defendant (1) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state; or (2) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce (CPLR 302[a][3] ). Assuming, *arguendo*, that defendant posted the statements on the internet message board from a computer in the State of Florida, the Court finds that this conduct does not meet any of the aforementioned requirements of CPLR 302(a)(3).

**\*4** Accordingly, based on the foregoing, defendant's motion to dismiss plaintiffs' complaint is granted based upon lack of personal jurisdiction. The Court finds no basis for jurisdiction over the person of defendant with respect to either cause of action.

The foregoing constitutes the decision and Order of the Court.

N.Y.Sup.,2007.
Competitive Technologies, Inc. v. Pross
14 Misc.3d 1224(A), 836 N.Y.S.2d 492 (Table), 2007 WL 283075 (N.Y.Sup.), 2007 N.Y. Slip Op. 50161(U)
Unreported Disposition

Motions, Pleadings and Filings (Back to top)

• 0013297/2006 (Docket) (Aug. 8, 2006)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.