# EXHIBIT 8
## To Appendix to California State Authorities



1 Cal.Rptr.3d 245                                                                  Page 1

109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal D.A.R. 7120

**(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)**

H

Court of Appeal, Fourth District, Division 3, California.

Joanne COLT et al., Plaintiffs and Appellants,

v.

FREEDOM COMMUNICATIONS, INC., et al., Defendants and Respondents.

No. G029968.

June 27, 2003.
Review Denied Sept. 24, 2003.

**Background:** Stock trader and his mother, who was a city council member, brought action against newspaper and others for libel, invasion of privacy, interference with contractual relations, and interference with prospective economic advantage after newspaper published articles detailing stock manipulation scheme, which was subject of Securities and Exchange Commission (SEC) complaint. Newspaper and others brought motion to strike complaint pursuant to anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, and the Superior Court, Orange County, No. 01CC02946, Robert D. Monarch, J., granted the motion. Stock trader appealed.

**Holdings:** The Court of Appeal, Rylaarsdam, Acting P.J., held that:

(1) newspaper articles and internet postings were "fair and true reports" of SEC action, and thus trader and mother could not show probability of prevailing on action and it was subject to dismissal under anti-SLAPP statute;

(2) reporter's acknowledgement that he made an error in reporting on stock manipulation scheme was not clear and convincing evidence of actual malice; and

(3) reporter's statement that trader used website "solely to offer bogus stock tips to get investors to buy worthless stock that he owned" was not clear and convincing evidence of actual malice.

Affirmed.

West Headnotes

**[1] Pleading ⬅360**
302k360 Most Cited Cases
In order to establish probability of prevailing on claim subject to dismissal under anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. West's Ann.Cal.C.C.P. § 425.16(b)(1).

**[2] Pleading ⬅360**
302k360 Most Cited Cases
When determining whether a plaintiff has met her burden of establishing probability of prevailing on claim subject to dismissal under anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, the court may not weigh the evidence or make credibility determinations, as doing either would violate plaintiff's right to a jury trial. West's Ann.Cal.C.C.P. § 425.16(b)(1).

**[3] Pleading ⬅360**
302k360 Most Cited Cases
When determining whether a plaintiff has met her burden of establishing probability of prevailing on claim subject to dismissal under anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, the court may only consider opposing evidence to determine if it defeats the plaintiff's showing as a matter of law. West's Ann.Cal.C.C.P. § 425.16(b)(1).

**[4] Appeal and Error ⬅893(1)**
30k893(1) Most Cited Cases
The Court of Appeal reviews de novo a trial court decision determining whether a plaintiff has met her burden of establishing probability of prevailing on claim subject to dismissal under anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute. West's Ann.Cal.C.C.P. § 425.16(b)(1).

**[5] Libel and Slander ⬅42(1)**
237k42(1) Most Cited Cases

1 Cal.Rptr.3d 245                                                                                      Page 2
109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal
D.A.R. 7120
**(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)**

[5] **Libel and Slander** 50.5
237k50.5 Most Cited Cases
Statute allowing publication of a "fair and true report" of legal proceedings does not limit the privilege to statements which contain no errors; publication concerning legal proceedings is privileged as long as the substance of the proceedings is described accurately. U.S.C.A. Const.Amend.1; West's Ann.Cal.Civ. Code § 47(d).

[6] **Libel and Slander** 49
237k49 Most Cited Cases
A newspaper report of a legal proceeding is a "fair and true report" if it captures the substance, the gist, the sting of the libelous charge; the news article need not track verbatim the underlying proceeding. U.S.C.A. Const.Amend.1; West's Ann.Cal.Civ. Code § 47(d).

[7] **Libel and Slander** 42(1)
237k42(1) Most Cited Cases
Only if the deviation is of such a substantial character that it produces a different effect on the reader will the privilege to publish a "fair and true report" of legal proceedings be suspended. U.S.C.A. Const.Amend.1; West's Ann.Cal.Civ. Code § 47(d).

[8] **Libel and Slander** 49
237k49 Most Cited Cases
In order to be privileged as a "fair and true report" under state libel law, a news article need only convey the substance of the proceedings on which it reports, as measured by impact on the average reader. U.S.C.A. Const.Amend.1; West's Ann.Cal.Civ. Code § 47(d).

[9] **Pleading** 358
302k358 Most Cited Cases
Newspaper articles and internet postings were "fair and true reports" of Securities and Exchange Commission action against stock trader, despite some errors, and thus trader could not show probability of prevailing in libel action against newspaper and others and action was dismissed under anti-Strategic Lawsuit Against Public Participation (anti-SLAPP) statute; article and statements within it fairly described substance of pump-and-dump

scheme, which was subject of Securities and Exchange Commission (SEC) complaint, and effect of article on readers was same as effect of SEC complaint. U.S.C.A. Const.Amend.1; West's Ann.Cal.Civ. Code § 47(d); West's Ann.Cal.C.C.P. § 425.16(b)(1).
*See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 530-531.*

[10] **Libel and Slander** 112(2)
237k112(2) Most Cited Cases
Newspaper reporter's acknowledgement in e-mails that he made an error in reporting on stock manipulation scheme, stating "I was in a rush when I posted the message and it somehow came out wrong," was not clear and convincing evidence of actual malice in stock trader's libel action against newspaper.

[11] **Appeal and Error** 760(1)
30k760(1) Most Cited Cases
Stock trader and mother failed to cite to record of libel action in support of claim that newspaper reporter acknowledged he had known statements to be untrue when he made them so as to show actual malice, and thus Court of Appeal would ignore the claim.

[12] **Libel and Slander** 112(2)
237k112(2) Most Cited Cases
Newspaper reporter's statement that stock trader used website "solely to offer bogus stock tips to get investors to buy worthless stock that he owned" was not clear and convincing evidence of actual malice in stock trader's libel action against newspaper and others, although statement did not precisely describe the manipulation scheme, as statement describes the gist of the scheme.

**247 *1553 Graham & Martin, Anthony G. Graham and Michael J. Martin for Plaintiffs and Appellants.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Jessica M. Weisel, Los Angeles, for Defendants and Respondents.

***1554 OPINION**
RYLAARSDAM, Acting P.J.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 Cal.Rptr.3d 245                                                                                                    Page 3
109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal
D.A.R. 7120
(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)

Joanne Colt and Douglas Colt sued Freedom Communications, Inc. and Freedom Newspapers, Inc. for libel, invasion of privacy, interference with contractual relations, and interference with prospective economic advantage. The purported causes of action are based on articles published in the Colorado Springs Gazette, a newspaper owned by the defendants, and on an affiliated website. We affirm an order striking the complaint under the anti-SLAPP (strategic lawsuit against public participation) statute. (Code Civ. Proc., § 425.16; unless otherwise indicated, all further statutory references are to this code.) We so hold because plaintiffs failed to establish "that there is a probability that [they] will prevail on the claim." (§ 425.16, subd. (b)(1).)

### FACTS

According to allegations in a complaint filed against him by the Securities and Exchange Commission (SEC), Douglas Colt "carried out an illegal scheme to manipulate the price of four stocks" during a two-month period in 1999 by "using a free subscription internet website called 'Fast-Trades.com.' [¶] ... Through this scheme, centered on recommending stocks, Colt drove up the short-term price for each stock by as much as 700%. By trading in advance of the stock recommendations, Colt generated more than $345,000 in total profits for himself, [and others]." The complaint continues that "[b]y engaging in the transactions, acts, practices and courses of business alleged herein [Douglas] Colt violated the antifraud provisions of the federal securities laws."

The SEC complaint then spells out the details of the scheme and explains the involvement of others, including plaintiff Joanne Colt, a member of the Colorado Springs City Council and Douglas Colt's mother. According to that complaint, both plaintiffs profited from the deceptions. Although the lengthy complaint only names Douglas Colt as a defendant, as noted, it also contains allegations concerning the conduct of Joanne Colt.

Plaintiffs responded to the SEC action by stipulating to the entry of a consent decree. The decree permanently enjoined them from the conduct complained of in the complaint and "direct[ed] them to cease and desist from committing or causing any violation and any future violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder." Plaintiffs also **248 consented to an order requiring them to disgorge their illicit profits; but in their complaint here they allege that "[b]ased on her demonstrated inability to pay, the Commission waived payment of disgorgement ...." The *1555 reference to "her" in this statement seems to indicate that the waiver only applied to Joanne Colt. But Douglas Colt states in his declaration that the SEC waived his payment of disgorgement as well. Plaintiffs emphasize that they stipulated to the consent decree without admitting or denying the allegations of the SEC's complaint.

Plaintiffs' complaint alleges that articles defendants published in the Colorado Springs Gazette and on an associated internet message board libeled them by making false statements about their trading activities, the charges filed against them by the SEC, and the effect of their consenting to the entry of the decree. Plaintiffs also make much of their contention that, although they entered into the consent decree, they did so only because of financial and other pressures and either that they really did not commit the acts charged against them by the SEC or that these acts were not, in fact, fraudulent. The record, which contains a detailed summary of the allegedly libelous statements and defendants' analysis, demonstrates that there were factual discrepancies between the SEC charges and defendants' reports.

Defendants' summary of the evidence filed in support of their motion to strike runs almost 30 pages, and we will not attempt to repeat all of it here. It is the thrust of defendants' position that (1) the articles "accurately convey the 'gist or sting' of the SEC's investigation and settlement," (2) that "such articles are absolutely privileged under the 'fair and true report' privilege in Civil Code Section 47, subd. (d) ... and the First Amendment," (3) plaintiffs are public figures who must prove actual malice to recover, (4) several of the statements complained of do not damage plaintiffs' reputa-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 Cal.Rptr.3d 245                                                                                                    Page 4
109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal
D.A.R. 7120
**(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)**

tions, (5) some of the statements are jokes, "not reasonably susceptible to defamatory meaning," and (6) "many of the statements are substantially true."

Douglas Colt's declaration, filed in opposition to the motion, describes in considerable detail how he conducted his internet operations and asserts that he never published false information. He denies that the SEC alleged that (1) he or his mother engaged in deceptive trading, (2) he or his mother made false statements, (3) his mother made any statements at all, (4) his mother had any involvement in the creation or maintenance of the website, (5) any misstatements were made in connection with the stock transactions, (6) the recommended stock was worthless, (7) he or his mother ever misrepresented themselves as investment advisors, or (8) he ever posted promotional statements. He also denies the truth of the SEC charges.

As does the complaint, the declaration states that he only consented to the entry of the decree against him "because of the enormous financial and **\*1556** personal costs already incurred during the course of a year long investigation, and with even greater costs certain to be associated with defending against the SEC complaint ...." He also articulates statements made by defendants which arguably misstated the allegations made by the SEC and denies the truth of these statements. Finally he contends that because of the "SEC issue and the publicity generated by the numerous articles ...," he was unable to accept employment with the firm of Gibson, Dunn & Crutcher, defendants' lawyers.

The first of several lengthy exhibits to Douglas Colt's declaration is a 36- page submission made on his behalf to the SEC, **\*\*249** before it filed its action, generally denying misdoing in connection with his website operation. Another exhibit is a copy of the SEC complaint. The remaining exhibits are copies of four web pages and two e-mails apparently generated by defendants' reporter.

In the first of the web pages, the reporter chronicles the scheme also described in the SEC complaint, without naming either plaintiff, but stating, inter alia, that the operator of the "pump and dump-type Web Sites, has been caught by the SEC." The reporter alleges that the scheme involved "using false information about the company ...." The second web page is identical except for a handwritten inter-lineation on one reading "never held any shares" opposite the statement "and then dumped his shares." The third web page contains essentially the same information as the first two and, again, the only reference to plaintiffs is "[t]he person who operated fast-trades.com." The last web page attached to the declaration describes the substance of the conduct charged in the SEC complaint, and again fails to name either of the plaintiffs.

The remaining exhibits to Douglas Colt's declaration are two e-mails. The first contains a message from one Johnny Billson addressed to defendants' reporter and asserting "that fast-trades had not provided any false information about the companies they profiled," and the reporter's response indicating his agreement that plaintiff had not posted such information on the internet and that, when the reporter posted his message (presumably on the Internet) he "was in a rush ... and somehow it came out wrong." In the second e-mail, responding to a question posed to him by one John Miller, the reporter again acknowledges that "Fast-Trades didn't post false information" and again explains his mistake as resulting from being "in a rush."

Joanne Colt furnished the court with a 24-page declaration in opposition to the motion. She too disclaims any wrongdoing although she acknowledges "settling" with the SEC. To her declaration she attaches copies of a large **\*1557** number of newspaper articles on which she bases her libel claims. We mention further details of this evidence in our discussion below.

## DISCUSSION

*Standard of Review*

Section 425.16, the anti-SLAPP statute, applies to causes of action "arising from any act of [the defendant] in furtherance of the [defendant's] right of

1 Cal.Rptr.3d 245                                                                                                                              Page 5
109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal
D.A.R. 7120
(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)

petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Plaintiffs do not dispute that the publishing of newspaper articles fits this definition, nor could they in light of the First Amendment rights involved.

[1][2][3][4] But the anti-SLAPP statute does not provide immunity. Instead, it places the burden on a plaintiff to establish "that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) In order to do so, "plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (Wilson v. Parker, Covert & Chidester (2002) 28 Cal.4th 811, 821, 123 Cal.Rptr.2d 19, 50 P.3d 733; see also Navellier v. Sletten (2002) 29 Cal.4th 82, 88-89, 124 Cal.Rptr.2d 530, 52 P.3d 703.) To determine whether plaintiff has met this burden, the test is the same as for a motion for summary judgment. The court may not weigh the evidence or make credibility **250 determinations; doing either would violate plaintiff's right to a jury trial. (Kyle v. Carmon (1999) 71 Cal.App.4th 901, 907-908, 84 Cal.Rptr.2d 303.) Further, the court may only consider the opposing evidence "to determine if it defeats the plaintiff's showing as a matter of law. [Citation.]" (Kashian v. Harriman (2002) 98 Cal.App.4th 892, 906, 120 Cal.Rptr.2d 576.) We review the order de novo using these same standards.

Plaintiffs do not dispute defendants' contention that Joanne Colt was a "public figure" and that Douglas Colt was a "limited purpose public figure." As such, before plaintiffs can recover, they must show that defendants acted with actual malice. (New York Times Co. v. Sullivan (1964) 376 U.S. 254, 283, 84 S.Ct. 710, 11 L.Ed.2d 686.) Thus, we must review plaintiffs' probability of prevailing under this higher standard: "Since ... [a] jury verdict in a defamation case can only be supported when the actual malice is shown by clear and convincing evidence, rather than by a preponderance of evidence as in most other cases, [citation], the evidence and all the

inferences which can reasonably be drawn from it must meet that higher standard." *1558(Rebozo v. Washington Post Co. (5th Cir.1981) 637 F.2d 375, 381, as quoted in Reader's Digest Assn. v. Superior Court (1984) 37 Cal.3d 244, 252, 208 Cal.Rptr. 137, 690 P.2d 610.)

*Effect of the Consent Decree*

Although plaintiffs determinedly deny both the truth of the SEC allegations and that one may infer guilt from their stipulating to the entry of a consent decree, the First Amendment and Civil Code section 47, subdivision (d) permitted defendants to publish a "fair and true report" of the legal proceedings. (See McClatchy Newspapers Inc. v. Superior Court (1987) 189 Cal.App.3d 961, 975, 234 Cal.Rptr. 702.) The question thus becomes whether the newspaper articles and Internet postings qualify as being fair and true. If so, plaintiffs are unable to show a probability of prevailing and we must affirm the dismissal of the action.

[5][6][7][8] As defendants point out, the "fair and true report" requirement does not limit the privilege to statements that contain no errors. Our Supreme Court recognized that " '[e]rroneous statement is inevitable in free debate, and ... must be protected if the freedoms of expression are to have the "breathing space" that they "need ... to survive." ' [Citation.]" (Reader's Digest Assn. v. Superior Court, supra, 37 Cal.3d at p. 261, 208 Cal.Rptr. 137, 690 P.2d 610, quoting from New York Times Co. v. Sullivan, supra, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.) Thus the publication concerning legal proceedings is privileged as long as the substance of the proceedings is described accurately. "Under California law, a newspaper report is 'fair and true' if it captures ' "the substance, the gist, the sting of the libelous charge." ' [Citations.] The news article need not track verbatim the underlying proceeding. Only if the deviation is of such a 'substantial character' that it 'produce[s] a different effect' on the reader will the privilege be suspended. [Citation.] News articles, in other words, need only convey the substance of the proceedings on which they report, as measured by their impact on the av-

1 Cal.Rptr.3d 245                                                                                                                                Page 6
109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal
D.A.R. 7120
(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)

erage reader. [Citations.]" (*Crane v. Arizona Republic* (9th Cir.1992) 972 F.2d 1511, 1519.)

*Discrepancies Between SEC Charges and Defendants' Reports*

Plaintiffs draw fine distinctions between the misconduct charged in the SEC complaint and defendants' descriptions of this misconduct. They asked the trial court, and now ask us, to engage in a detailed **251 parsing of words, phrases, and sentences to note the subtle differences between their misconduct and that noted in the articles. As defendants point out, this court's decision in *Jennings v. Telegram-Tribune Co.* (1985) 164 Cal.App.3d 119, 210 Cal.Rptr. 485 makes it clear that the law does not require us to do so. *Jennings* held that even a newspaper report that plaintiff was "convicted *1559 of tax fraud" accurately conveyed the gist of judicial proceedings where plaintiff had pleaded no contest to failing to file tax returns. (*Id. at p. 127, 210 Cal.Rptr. 485.*) We therefore decline the offer to engage in the hermeneutical exercise to which plaintiffs have challenged us.

[9] We must now examine whether the facts reported by defendants so far deviated from the SEC charges as to go beyond the "the substance, the gist, the sting" of the charges against plaintiffs. The SEC complaint charges that Douglas Colt, then a law student, "carried out an illegal scheme to manipulate the price of four stocks using a free subscription internet website called 'Fast-Trades.com' " and by e-mailing recommendations to subscribers to the website. He made these recommendations after purchasing large quantities of the stock; after the recommendations resulted in an increase in the price of the stock, he and his cohorts would sell at the inflated price. They promoted the website "by posting false and misleading messages on hundred[s] of publicly accessible internet message boards. These messages disguised the authors' connection with the site and misrepresented the investment success they achieved from following Fast-Trades' recommendations.... [¶] Colt also included a false 'track record' on the Fast-Trades.com website ... [¶] and misrepresented their trading intentions ...." Some 9000

persons were potentially deceived by this scheme.

Defendants do not deny that their articles contained some errors concerning the details of plaintiffs' scheme. For example, the articles misattributed ownership of a particular stock to Colt. But while he may not have owned the described stock, his scheme did involve ownership of stock mentioned on the website. Plaintiffs take issue with statements in the articles that the website published false information about the touted stock; even if this was incorrect in an overly literal reading of the phrase, the touting of specific stock constituted an implied representation about its value. The characterization of the scheme as a "pump and dump scenario" fairly described the nature of the scheme detailed in the SEC complaint.

As additional evidence of the libel, plaintiffs point to a message allegedly posted by defendants, reading, "[Douglas Colt] has been caught by the SEC. [He] targeted [name of company] in March of last year. He drove the price up for a matter of hours using false information about the company, thus creating a buying frenzy, and then dumped shares." Plaintiff takes issue with the suggestion he was "caught"; but he was. Had he not been "caught," there would not be a consent decree. He argues that he did not post false information about the companies; but, as we noted, by touting the stocks, he implicitly represented that they were undervalued. The statement fairly describes the substance of plaintiffs' scheme. Were we to accept plaintiffs' *1560 arguments, we would require that newspapers be limited to word-for-word quotations from legal documents. Of course, the law imposes no such requirement.

Plaintiffs also take issue with statements in the articles that the stock was "worthless." They draw comfort from an alleged admission by the reporter that "everyone knows that if a stock is still trading publicly, **252 it is worth something," which is generally true. But the point was that the victims of plaintiffs' scheme parted with valuable consideration for stock that was either substantially worthless or certainly worth a great deal less than they paid

109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal D.A.R. 7120

**(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)**

for it.

It is not necessary to go through each of plaintiffs' parsing of words and sentences in the articles published by defendants to demonstrate that their quarrel with the language of the articles involves a level of exegesis beyond the ken of the average reader of newspaper articles. The articles fairly describe the gist of plaintiffs' misconduct. As noted, the privilege applies unless the differences between the facts and the manner in which they are described are "of such a 'substantial character' that [they] 'produce[ ] a different effect' on the reader.... [Citation.] News articles, in other words, need only convey the substance of the proceedings on which they report, as measured by their impact on the average reader. [Citations.]" (*Crane v. Arizona Republic, supra*, 972 F.2d at p. 1519.) The effect on readers of the articles would have been substantially the same as the effect on readers of the SEC complaint.

As a result, the articles are protected by the First Amendment and Civil Code Section 47, subdivision (d). And therefore, plaintiffs have failed to demonstrate "that there is a probability that [they] will prevail on the claim." (§ 425.16, subd. (b)(1).) The trial court properly granted the anti-SLAPP motion.

*Lack of Actual Malice*

[10] As noted earlier, before plaintiffs can demonstrate the existence of a prima facie case, they must present clear and convincing evidence of actual malice. This they failed to do. Their inability to provide such evidence provides an additional basis requiring us to affirm the judgment.

[11] In support of their claim there was evidence of actual malice, plaintiffs argue that defendants' reporter acknowledged he had known statements to be untrue when he made them. No record reference is furnished for this statement, and we may thus ignore it. **\*1561**(*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205, 277 Cal.Rptr. 401 [on appeal party must provide page citations to record]; *People v. Dougherty* (1982) 138 Cal.App.3d 278, 282-283, 188 Cal.Rptr. 123 [argument of counsel is insufficient; briefs must

contain factual underpinning, record references, argument, and authority].) But although we cannot be sure absent record references, we presume that this contention is based on the e-mails from defendants' reporter wherein he acknowledges having made an error when stating that Fast-Trades posted false information; he explains the error by stating, "I was in a rush when I posted the message and it somehow came out wrong." This may qualify as negligence, but it is hardly clear and convincing evidence of malice.

[12] Plaintiffs offer another bit of evidence, again without a record reference, that they argue constitutes evidence of malice, i.e., a statement made by the reporter that "Doug Colt used the website 'solely to offer bogus stock tips to get investors to buy worthless stock that he owned.' " Although this does not precisely describe the scheme employed by plaintiffs, it certainly describes the gist of it and is far from clear and convincing evidence of malice. Other contentions of the existence of evidence of actual malice are of the same inconsequential nature.

*Conclusion*

Plaintiffs fail to acknowledge that the newspaper was entitled to draw conclusions **\*\*253** from their consenting to the entry of a decree based on the SEC complaint. The fact that they "admitted no wrongdoing" did not provide them with a shield from adverse publicity. The situation is analogous to that of an accused criminal who enters a plea of nolo contendere. His action for defamation against a reporter of the details of the crime with which he was charged would fail. And this would be true even if the reporter noted that he had been charged with attacking his victim with a tire iron when in reality it had been a ball-peen hammer.

### DISPOSITION

The judgment of dismissal is affirmed. Respondents shall recover their costs and attorney fees on appeal.

WE CONCUR: ARONSON and IKOLA, JJ.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1 Cal.Rptr.3d 245

Page 8

109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245, 32 Media L. Rep. 1251, 03 Cal. Daily Op. Serv. 5676, 2003 Daily Journal D.A.R. 7120

**(Cite as: 109 Cal.App.4th 1551, 1 Cal.Rptr.3d 245)**

•Joanne COLT and Douglas Colt, Plaintiffs and Ap-
pellants, v. FREEDOM COMMUNICATIONS,
INC., et al., Defendants and Respondents., 2002
WL 32150639 (Appellate Brief) (Cal.App. 4 Dist.
June 20, 2002), Appellants' Opening Brief

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 9
## To Appendix to California State Authorities



93 Cal.App.4th 993                                                                           Page 1
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

▷

COMPUTERXPRESS, INC., Plaintiff and Respondent,

v.

LEE JACKSON et al., Defendants and Appellants.
**No. E027841.**

Court of Appeal, Fourth District, Division 2, California.

Nov. 15, 2001.

## SUMMARY

A company that sold computer-related products brought an action against owners of businesses, alleging a first group of causes of action for fraud, negligent misrepresentation, negligence, and interference with contractual relations, and a second group of causes for trade libel, interference with prospective economic advantage, abuse of process, conspiracy, and injunctive relief. The first group of causes arose from allegations that defendants falsely represented the profitability of their businesses and disparaged plaintiff to a customer that subsequently cancelled a sales contract with plaintiff; the second group arose from allegations that defendants posted messages on the Internet defaming plaintiff, filed a complaint against plaintiff with the Securities and Exchange Commission, and then posted that complaint on the Internet. The trial court denied defendants' motion to strike plaintiff's complaint as a SLAPP suit (strategic lawsuit against public participation, Code Civ. Proc., § 425.16). (Superior Court of Riverside County, No. RIC341013, Erik Michael Kaiser, Judge.)

The Court of Appeal affirmed the trial court's order denying defendants' motion to strike the first group of causes of action, reversed the order as to the second group, and remanded for the trial court's determination of an award of attorney fees and costs to defendants in connection with their SLAPP motion. A defendant that moves to strike a cause of action under the anti-SLAPP statute must show that the conduct alleged in that cause was connected with an official proceeding, that it concerned a public issue or issue of public interest or took place in a public forum, and that the plaintiff has failed to show a probability of prevailing on the merits of that claim. The court held that while these statutory requisites were not met as to the first group of causes of action, defendants made a prima facie showing under the statute as to the second group. Therefore, the court held that the trial court properly denied defendants' motion to strike the first group of causes of action, but erred in denying defendants' motion to strike the second group. The court also held that defendants were entitled to recover attorney fees and costs incurred in moving to strike the claims on which they prevailed under *994 the SLAPP statute, but not fees and costs incurred in moving to strike the remaining claims. (Opinion by Richli, J., with Ramirez, P. J., and Hollenhorst, J., concurring.)

## HEADNOTES

Classified to California Digest of Official Reports

(1a, 1b) Pleading § 93--Motion to Strike Pleading as a Whole--As SLAPP Suit--Burden of Proof--Trial Court Determination--Appellate Review.
Under Code Civ. Proc., § 425.16 (strategic lawsuit against public participation) (SLAPP), the defendant has the initial burden of making a prima facie showing that the plaintiff's claims constitute a SLAPP suit and are subject to a motion to strike. If the defendant makes that showing, the burden shifts to the plaintiff to establish a probability of prevailing, by making a prima facie showing of facts that would, if proved, support a judgment in the plaintiff's favor. This standard is similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment, in that the court cannot weigh the evidence. However, the plaintiff cannot simply rely on the allegations in the complaint, but must provide the court with sufficient evidence to permit the court to determine whether there is a probability that the plaintiff will prevail on the claim. Whether § 425.16 applies and

93 Cal.App.4th 993                                                                Page 2
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal.

(2) Pleading § 94--Motion to Strike Part of a Pleading--As SLAPP Suit-- Showing Required of Defendant--Conduct Part of Official Proceeding, Issue of Public Interest, or Public Forum.
In an action brought by a company that sold computer-related products against business owners, alleging causes of action for fraud, negligent misrepresentation, and negligence, based on allegations that defendants falsely represented the profitability of their businesses, and a cause of action for interference with contractual relations, based on allegations that defendants disparaged plaintiff to a customer that subsequently cancelled a sales contract with plaintiff, the trial court did not err in denying defendants' motion to strike plaintiff's complaint as a SLAPP suit (strategic lawsuit against public participation, Code Civ. Proc., § 425.16). There was no indication that the conduct alleged in these causes of action occurred in connection with an official proceeding, concerned a public issue or issue of public interest, or took place in a public forum. Further, the fact that defendant's SLAPP motion was *995 properly denied as to these causes of action did not preclude the trial court from granting the motion as to plaintiff's other causes of action for trade libel, interference with prospective economic advantage, abuse of process, conspiracy, and injunctive relief, despite the fact that plaintiff alleged in the complaint that all defendants' acts were taken in furtherance of a single conspiracy, since this second group of claims were not factually or legally intertwined with the others.

[See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 960 et seq.; West's Key Number Digest, Pleading k. 365(3).]

(3a, 3b, 3c, 3d, 3e, 3f) Pleading § 94--Motion to Strike Part of a Pleading--As SLAPP Suit--Public Forum--Internet Web Site--Public Proceeding--Complaint Filed with Securities and Exchange Commission.
In an action brought by a company that sold com-

puter-related products against business owners, in which plaintiff alleged causes of action for trade libel, interference with prospective economic advantage, abuse of process, conspiracy, and sought injunctive relief, arising from allegations that defendants posted defamatory messages on the Internet, filed a complaint against plaintiff with the Securities and Exchange Commission (SEC), and posted that complaint on the Internet, the trial court erred in denying defendants' motion to strike plaintiff's complaint as a SLAPP suit (strategic lawsuit against public participation, Code Civ. Proc., § 425.16). Electronic communication media may constitute public forums, and defendants made a prima facie showing that the Internet Web sites they used were public forums, that the postings concerned an issue of public interest, and that the filing of the SEC complaint qualified as a statement before an official proceeding. In addition, plaintiff failed to demonstrate the requisite probability that it would prevail on the merits of these claims. While defendants' Internet postings were disparaging, their tone and content identified them as statements of opinion and not fact. Further, the tort of abuse of process does not extend to misuse of administrative proceedings, and defendant's filing of the SEC complaint was protected by the litigation privilege (Civ. Code, § 47, subd. (b)).

(4) Libel and Slander § 11--Actionable Words--As to Occupation or Business--Trade Libel.
Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. The tort encompasses all false statements concerning the quality of services or product of a business that are intended to cause that business financial harm and in fact do so. To constitute trade libel, a statement must be *996 false. Since mere opinions cannot, by definition, be false statements of fact, opinions will not support a cause of action for trade libel. In most cases, whether a statement is fact or opinion is a question of law. To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                                Page 3
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

the context. However, where a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the plaintiff to plead the facts showing its defamatory meaning.

(5) Appellate Review § 108--Briefs--Form and Requisites--Reference to Record.
In an appellate brief, the statement of any matter in the record should be supported by an appropriate reference to the record. It is not the duty of a reviewing court to search the record for evidence on a point raised by a party whose brief makes no reference to the pages where the evidence can be found.

(6) Interference § 6--Interference with Prospective Economic Advantage-- Elements.
The tort of interference with prospective economic advantage requires false statements of fact. A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party. Further, a plaintiff cannot state a cause of action for interference with prospective economic advantage based on loose, figurative, or hyperbolic language or mere opinions, unless shown to be not genuinely held and advanced for the sole purpose of harming the plaintiff.

(7) Abuse of Process § 3--Elements and Requisites of Cause of Action-- Application to Administrative Proceedings.
Abuse of process consists of the use of the machinery of the legal system for an ulterior motive. Because the purpose of the tort is to preserve the integrity of the court, it requires misuse of a judicial process. The tort therefore does not extend to misuse of administrative proceedings, even those involving agencies with quasi-judicial powers.

(8) Conspiracy § 13--Civil--Pleading.
A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve. Therefore, conspiracy to commit a tort is not a separate cause of action from the tort itself.

(9) Pleading § 94--Motion to Strike Part of a Pleading--As SLAPP Suit-- Attorney Fees--Partially Successful Defendant:Costs § 20--Statutory Entitlement to Attorney Fees and Costs.

In an action *997 brought against business owners by a company that sold computer-related products, in which plaintiff alleged fraud, negligent misrepresentation, negligence, interference with contractual relations, trade libel, interference with prospective economic advantage, abuse of process, conspiracy, and the necessity of injunctive relief, defendants were entitled to an award of attorney fees and costs under the SLAPP statute (strategic lawsuit against public participation; Code Civ. Proc., § 425.16), despite the fact that defendants' motion to strike plaintiff's complaint under this statute was ultimately successful only as to five of the nine causes of action. Code Civ. Proc., § 425.16, subd. (c), which governs an award of attorney fees and costs incurred in pursuing a SLAPP motion, does not precisely define the term "prevailing defendant." However, under the statute, a prevailing defendant enjoys a preference for attorney fees, as a plaintiff that successfully defends against a SLAPP motion may only recover fees and costs if the motion was frivolous or solely intended to delay. This standard supports the conclusion that partial success on a SLAPP motion should reduce but not eliminate the defendant's entitlement to attorney fees and costs. Therefore, defendants were entitled to recover attorney fees and costs incurred in moving to strike the claims on which they prevailed, but not fees and costs incurred in moving to strike the remaining claims.

COUNSEL

Law Offices of Yvonne M. Renfrew and Yvonne M. Renfrew for Defendants and Appellants.

Best Best & Krieger, Douglas S. Phillips, G. Henry Welles and James C. Turney for Plaintiff and Respondent.

**RICHLI, J.**

Defendants appeal the denial of their motion, pursuant to Code of Civil Procedure section 425.16 (section 425.16), to strike the complaint of ComputerXpress, Inc. (ComputerXpress) as a "SLAPP" suit (strategic lawsuit against public participation). The trial court determined that none of ComputerX-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                                                      Page 4
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

press's claims was subject to section 425.16. There-
fore, it did not require ComputerXpress to establish
a probability of prevailing on its claims.

We agree that some of ComputerXpress's claims
were not subject to section 425.16 and affirm the
denial of the motion to strike those claims. *998
However, we conclude that some of the claims
were subject to section 425.16. We further conclude
ComputerXpress did not show a probability of pre-
vailing on those claims and reverse the denial of the
motion to strike those claims. Finally, we conclude
defendants are entitled to recover attorney fees and
costs incurred in moving to strike the claims subject
to section 425.16.

### I. Procedural Background

The complaint, filed in March 2000, alleged: Com-
puterXpress is a public company selling computer-re-
lated products to the public. In February 1999,
when ComputerXpress was considering a merger
with businesses owned by defendants, defendants
falsely represented that their businesses were profit-
able, causing ComputerXpress to incur expenses
and waste time pursuing the merger. Later, in May
1999, defendants entered into a conspiracy to dam-
age ComputerXpress's reputation and cause it eco-
nomic harm. To that end, beginning in about Au-
gust 1999, defendants made numerous false and
disparaging statements about ComputerXpress on
the Internet and elsewhere to existing and potential
customers and investors, causing monetary damage
to ComputerXpress.

Based on these alleged facts, the complaint asserted
nine causes of action: (1) fraud; (2) negligent mis-
representation; (3) negligence; (4) trade libel; (5)
interference with contractual relations; (6) interfer-
ence with prospective economic advantage; (7) ab-
use of process; (8) conspiracy; and (9) injunctive
relief.

On defendants' motion to strike the complaint, the
court initially ruled the first three causes of action
were not within the scope of section 425.16, but the
remaining causes of action were. Later, however,
the court changed its mind and ruled that defend-
ants had not shown the remaining causes of action
were within the scope of section 425.16. Therefore,
it denied defendants' motion in its entirety, without
ruling on whether ComputerXpress had shown a
probability of prevailing.

### II. Discussion

#### A. Burden of Proof and Standard of Review

(1a) Section 425.16 applies to any cause of action
arising from an " 'act in furtherance of a person's
right of petition or free speech under the United
*999 States or California Constitution in connec-
tion with a public issue.' " (§ 425.16, subds. (b)(1),
(e).) Such a claim "shall be subject to a special mo-
tion to strike, unless the court determines that the
plaintiff has established that there is a probability
that the plaintiff will prevail on the claim." (*Id.*,
subd. (b)(1).) In order to encourage participation in
matters of public significance, section 425.16 "shall
be construed broadly." (*Id.*, subd. (a).)

The defendant has the initial burden of making a
prima facie showing that the plaintiff's claims are
subject to section 425.16. (*Braun v. Chronicle Pub-
lishing Co.* (1997) 52 Cal.App.4th 1036, 1042 [61
Cal.Rptr.2d 58]; *Dixon v. Superior Court* (1994) 30
Cal.App.4th 733, 742 [36 Cal.Rptr.2d 687].) If the
defendant makes that showing, the burden shifts to
the plaintiff to establish a probability of prevailing,
by making a prima facie showing of facts which
would, if proved, support a judgment in the
plaintiff's favor. (*Kyle v. Carmon* (1999) 71
Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].)
Whether section 425.16 applies and whether the
plaintiff has shown a probability of prevailing are
both reviewed independently on appeal. (*Mission
Oaks Ranch, Ltd. v. County of Santa Barbara*
(1998) 65 Cal.App.4th 713, 721 [77 Cal.Rptr.2d 1],
disapproved on another point in *Briggs v. Eden
Council for Hope & Opportunity* (1999) 19 Cal.4th
1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d
564]; *Monterey Plaza Hotel v. Hotel Employees &
Restaurant Employees* (1999) 69 Cal.App.4th 1057,
1064 [82 Cal.Rptr.2d 10].)

#### B. Claims Subject to Section 425.16

As used in section 425.16, an act in furtherance of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                          Page 5
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

person's right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) We must first determine whether defendants met their burden of showing that ComputerXpress's claims were subject to section 425.16.

1. *First, second, third, and fifth causes of action*

(2) ComputerXpress's first three causes of action, for fraud, negligent misrepresentation, and negligence, were based on defendants' alleged false **\*1000** representations in February 1999 that they owned solvent, profitable businesses which were appropriate for merger with ComputerXpress. ComputerXpress's fifth cause of action, for interference with contractual relations, alleged that in February 2000 ComputerXpress entered into a contract to sell computers to Cal Tech Solutions and that defendants then contacted Cal Tech and disparaged ComputerXpress and its officers and directors, causing Cal Tech to cancel the contract.

There was no indication, either in the complaint or in the evidence presented on the section 425.16 motion, that the conduct alleged in these causes of action occurred in connection with an official proceeding, concerned a public issue or issue of public interest, or took place in a public forum. However, defendants argue these causes of action were still subject to section 425.16, because (1) the complaint alleged a conspiracy covering all causes of action, some of which did involve public statements, and (2) in any event, section 425.16 applies to any suit filed after the defendant's exercise of speech or pe-

tition rights, not only to claims which are directly based on such conduct.

*a. Conspiracy allegations*

Defendants note the complaint included causes of action, other than the first three and the fifth, which alleged conduct that did occur in an official or public context, such as defendants' filing of a complaint against ComputerXpress with the Securities and Exchange Commission (SEC) and posting messages on the Internet disparaging ComputerXpress. They argue that, in deciding whether section 425.16 applies, all of the acts alleged in all of ComputerXpress's causes of action must be considered together. They contend this is so because the eighth and ninth causes of action alleged that all of the alleged acts were performed in furtherance of a single conspiracy to interfere with ComputerXpress's business.

The eighth cause of action did allege a conspiracy to "interfere with Plaintiff's business and cause it substantial harm and damage." Nowhere, however, did it allege the conspiracy included the misrepresentations alleged in the first three causes of action. The eighth cause of action did not incorporate the allegations of the first three causes of action. Moreover, the eighth cause of action alleged the conspiracy occurred on or about May 2, 1999, months *after* the February 1999 misrepresentations alleged in the first three causes of action.

The ninth cause of action alleged a conspiracy to "damage the business reputation of Plaintiff and to cause Plaintiff as much economic harm as **\*1001** possible ...." However, it alleged the conspiracy was to be implemented "through the dissemination of false and misleading information on the [I]nternet as set forth in the above counts incorporated herein." The allegations of the first three causes of action were not incorporated into the ninth cause of action, nor was there any allegation that the acts undertaken pursuant to the conspiracy included the misrepresentations during the merger negotiations. And again, the conspiracy was alleged to have begun on or about May 2, 1999, well after the merger negotiations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03795-JW     Document 38     Filed 08/23/2007     Page 16 of 36

93 Cal.App.4th 993                                                    Page 6
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

The fifth cause of action differs from the first three in that the allegations contained in that cause of action were incorporated into the ninth cause of action, and the conduct alleged in the fifth cause of action occurred after the inception of the conspiracy alleged in the eighth and ninth causes of action. However, we are not persuaded that this degree of arguable connection between the fifth cause of action and the rest of the complaint means the fifth cause of action is a claim "arising from" the public speech and petition activity alleged elsewhere in the complaint.

The phrase "arising from" in section 425.16, subdivision (b)(1) has been interpreted to mean that "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must have been an act in furtherance of the right of petition or free speech. (*Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th 1036, 1043; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417 [103 Cal.Rptr.2d 741].) Even assuming, though the complaint did not so allege, that defendants' disparaging statements to Cal Tech Solutions were made pursuant to the conspiracy alleged in the eighth and ninth causes of action, it does not follow that the speech and petition activity alleged elsewhere in the complaint was part of "the act underlying" or "the act which forms the basis for" the fifth cause of action. That cause of action did not attempt to rely on the speech or petition activity as a basis for claiming interference. Rather, it simply alleged a direct contact between defendants and Cal Tech. There was no indication that any public activity, such as the SEC complaint or Internet statements, formed any part of the claim, nor that the alleged disparaging statements related in any way to any public issue or official proceeding.

Defendants note that the fifth cause of action did not specify the content of the alleged statements to Cal Tech Solutions, but merely described them as "disparaging remarks regarding Plaintiff and its officers and directors ...." Defendants suggest we therefore should *infer* that the content of the statements was the same as that of the SEC complaint and Internet statements which, as we determine

later in this opinion, concerned issues of public interest. Making such an inference would permit defendants to invoke *1002 the principle, discussed *post,* that even purely private speech may be covered by section 425.16 if it concerns a public issue. (*Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1174 [50 Cal.Rptr.2d 62].)

We believe that making the inference defendants suggest would effectively relieve them of their burden to make the initial showing that the claims they seek to strike fall within section 425.16, contrary to the authority discussed in part II.A., *ante.* We also note that, when it ruled none of ComputerXpress's causes of action was subject to section 425.16, the court did not preclude the possibility that defendants might later be able to show the fourth through ninth causes of action were subject to the statute. In fact, the court stated that those causes of action "could very well involve conduct described by the statute." It merely ruled that the papers submitted at that point were inadequate to permit that determination. If subsequent developments should reveal that the fifth cause of action was based on statements which concerned a public issue, the court may exercise its discretion, pursuant to section 425.16, subdivision (f), to permit defendants to renew their motion with respect to that cause of action.

  b. *Suit filed after speech or petition activity*
Defendants also argue that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act, whether or not the purported basis for the suit is that act itself. They rely on *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628 [49 Cal.Rptr.2d 620] (*Wollersheim*) and *Averill v. Superior Court, supra,* 42 Cal.App.4th 1170 (*Averill*). [FN1]

    FN1 Defendants also cite *Equilon Enterprises v. Consumer Cause, Inc.* (2000) 85 Cal.App.4th 654 [102 Cal.Rptr.2d 371]. However, after defendants filed their opening brief, the Supreme Court granted review in that case. (S094877, review gran-

93 Cal.App.4th 993                                                                Page 7
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

ted Apr. 11, 2001.)

*Wollersheim* was an action by the Church of Scientology to set aside a judgment Wollersheim had obtained against it in an earlier tort action. The court held section 425.16 applied to the action based, in part, on its finding that the suit was part of an extended course of oppressive litigation conduct designed to discourage Wollersheim's use of the courts. (*Wollersheim, supra,* 42 Cal.App.4th at pp. 648-649.)

*Wollersheim* cannot be read to mean that any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights. To the contrary, *Wollersheim* specifically *1003 found that the church's suit *was* based on Wollersheim's exercise of such a right-it sought to set aside the judgment obtained in his *prior lawsuit* against the church, an exercise of his right of petition. (*Wollersheim, supra,* 42 Cal.App.4th at pp. 647-648.)

In defendants' other citation, *Averill, supra,* 42 Cal.App.4th 1170, a charitable organization sued Averill after she made allegedly slanderous remarks about the organization to her employer. The employer was supporting the organization's home for battered women, which Averill had publicly opposed. As defendants note, even though Averill's remarks were made in a private setting rather than publicly, the court held the suit was subject to section 425.16. (*Averill, supra,* at pp. 1175-1176.)

In *Averill,* however, the court stressed the fact that, while the remarks were private, the subject of the remarks-the home for battered women-had been a topic of considerable public controversy, including city council and planning commission hearings. It characterized the issue as whether section 425.16 covered "private conversations, *regarding a public issue ....*" (*Averill, supra,* 42 Cal.App.4th at p. 1174, italics added.) Thus, *Averill* cannot be read to mean that a private statement is covered by section 425.16 *regardless* of whether it concerns a public

issue, simply because the person who made the statement also made public statements against the plaintiff at other times.

For these reasons, *Wollersheim* and *Averill* do not support defendants' contention that any suit filed after the defendant's exercise of its petition or free speech rights automatically comes within section 425.16. In each case, the conduct *on which the suit was based* occurred in connection with an official proceeding (*Wollersheim*) or related to a public issue (*Averill*). Therefore, these decisions do not warrant a departure from the rule cited *ante,* which requires that "the act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or free speech. (*Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th 1036, 1043; *Dowling v. Zimmerman, supra,* 85 Cal.App.4th 1400, 1417.) Under that rule, the trial court properly found the first three and the fifth causes of action were not subject to section 425.16.

ComputerXpress asserts this court must affirm the order denying defendants' SLAPP motion if it finds the motion was properly denied as to *any* cause of action in ComputerXpress's complaint. Since we have concluded, *ante,* that the motion was properly denied as to the first, second, third, and fifth causes of action, acceptance of ComputerXpress's position would mean we should affirm the order in its entirety. *1004

ComputerXpress bases its position on this court's decision in *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623 [107 Cal.Rptr.2d 504] (*M.G.*). In *M.G.,* this court held that, where the plaintiffs had shown a probability of prevailing on some of their causes of action, the action as a whole could not be said to be without merit. Therefore it was unnecessary to consider whether the plaintiffs had shown they probably would prevail on the remaining causes of action. Instead, all of the causes of action should survive the defendants' SLAPP motion. (*Id.,* at p. 637.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                                                          Page 8
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

Defendants point out that the Court of Appeal for the Second District, Division Five, took the opposite view in *Shekhter v. Financial Indemnity Co.* (2001) 89 Cal.App.4th 141 [106 Cal.Rptr.2d 843] (*Shekhter*), a case decided shortly before *M.G.* In *Shekhter*, the court held that the express language of section 425.16, subdivision (b)(1) "allows a single cause of action to be stricken. The fact that other claims remain does not bar a trial judge from granting a section 425.16 special motion to strike." (*Shekhter, supra*, at p. 150.)

It is not necessary in this case to attempt to resolve the conflicting holdings in *M.G.* and *Shekhter*. We conclude that, no matter which decision is correct, the fact the SLAPP motion was properly denied as to some of ComputerXpress's causes of action does not preclude granting the motion as to the remaining causes of action. In *M.G.*, all of the causes of action were based on the same underlying conduct. Indeed, the court found four of the six causes of action to be, in reality, the same two causes of action, based on four different legal theories. The court also found the remaining two causes of action to be "probably cumulative" of the other four. (*M.G., supra,* 89 Cal.App.4th at p. 637.)

Under those circumstances, it can be said that, if one cause of action survives a SLAPP motion, the rest should too, because the causes of action are factually and legally intertwined. And because the causes of action are so closely related, even "cumulative," a probability of prevailing on one claim shows the rest of the claims are not without merit.

Here, however, the claims are not factually or legally intertwined. The causes of action we have concluded are not subject to being stricken-the first through third and the fifth-are based on entirely different conduct than the remaining causes of action. Moreover, the reason we have concluded the first through third and the fifth causes of action should not be stricken is not that ComputerXpress showed a probability of prevailing on those claims, but that the claims are not subject to the SLAPP statute, and hence ComputerXpress was not required to show a probability of prevailing. Therefore, the *1005 ra-

tionale underlying *M.G.*'s holding-that a showing of a probability of prevailing as to one claim establishes that the lawsuit is not meritless-does not apply here.

Accordingly, we consider whether ComputerXpress's remaining claims are subject to the SLAPP statute and, if so, whether ComputerXpress showed a probability of prevailing on those claims.

## 2. *Remaining causes of action*

(3a) ComputerXpress's fourth cause of action, for trade libel, alleged that beginning in August 1999 defendants published to other persons false and disparaging statements about ComputerXpress and its officers and directors. The statements were published on the Internet and included claims that ComputerXpress's products were inferior, the company was a stock scam and would be out of business within 30 days, the officers and directors were illegally conspiring to manipulate the value of its stock, and one of the officers or directors had filed bankruptcy.

ComputerXpress's sixth cause of action, for interference with prospective economic advantage, alleged that beginning in November 1999 defendants posted thousands of messages on the Internet defaming ComputerXpress and its officers and directors. As a result, potential investors failed to invest in the company.

ComputerXpress's seventh cause of action, for abuse of process, alleged that in March 2000 defendants filed a complaint with the SEC containing "false allegations and accusations," presumably against ComputerXpress. Defendants then misused the legal process by posting the complaint on the Internet, to discourage potential investors.

ComputerXpress's eighth cause of action, for conspiracy, alleged that in May 1999 defendants conspired to file the SEC complaint and take other action to damage ComputerXpress, including creating a Web site and thousands of message board postings.

ComputerXpress's ninth cause of action, for in-

Case 5:07-cv-03795-JW    Document 38    Filed 08/23/2007    Page 19 of 36

93 Cal.App.4th 993                                                    Page 9
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

junctive relief, alleged that beginning in May 1999 defendants conspired to damage the business reputation of ComputerXpress. ComputerXpress sought to enjoin defendants from publishing false and/or disparaging remarks about the company and to require them to withdraw remarks previously published.

As our recitation indicates, the conduct on which these causes of action were based fell into two categories: Internet postings and the SEC *1006 complaint. We must determine whether defendants met their initial burden of making a prima facie showing that these causes of action were subject to section 425.16.

### a. Internet postings

The complaint alleged defendants published their disparaging Internet statements on the message board of a Web site known as "Raging Bull" and also on a site they established known as "Ogravity99." Defendants contend these statements were made in a public forum and concerned an issue of public interest, and therefore they came within section 425.16, subdivision (e)(3). ComputerXpress contends the postings simply involved statements of one company regarding the conduct and products of a competitor company, and therefore they did not involve a public forum or issue of public interest.

### (1) Public forum

Cases construing the term "public forum" as used in section 425.16 have noted that the term "is traditionally defined as a place that is open to the public where information is freely exchanged." (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475 [102 Cal.Rptr.2d 205].) "Under its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication." (*Id., at p. 476.*) Thus, the court in *Damon v. Ocean Hills Journalism Club* held that a homeowners association newsletter was a public forum for purposes of section 425.16, because it was "a vehicle for open discussion of public issues and was widely distributed to all interested parties ...." (*Damon, supra, at p. 478.*) [FN2]

FN2 The court noted two previous decisions had concluded, or suggested in dictum, that a newspaper was not a public forum. (*Zhao v. Wong* (1996) 48 Cal.App.4th 1114 [55 Cal.Rptr.2d 909], overruled on other grounds in *Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1107; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 863, fn. 5 [44 Cal.Rptr.2d 46] [dictum].) It disagreed with these decisions, noting in part that they predated the amendment to section 425.16 stating the statute is to be construed broadly. (*Damon v. Ocean Hills Journalism Club, supra,* 85 Cal.App.4th at p. 478.)

Electronic communication media may also constitute public forums. A federal court recently stated that a widely disseminated television broadcast was "undoubtedly a public forum" for purposes of section 425.16. (*Metabolife Internat., Inc. v. Wornick* (S.D.Cal. 1999) 72 F.Supp.2d 1160, 1165.) Apropos of this case, though not in the context of section 425.16, the court in *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170 [94 Cal.Rptr.2d 453] noted that Internet communications have been described as "classical forum communications." (*Id., at p. 201,* fn. omitted.) *1007

A federal court recently described the Raging Bull Web site as "a financial website that organizes individual bulletin boards or 'chat-rooms,' each one dedicated to a single publicly traded company. The chat-rooms are open and free to anyone who wants to read the messages; membership is also free and entitles the member to post messages.... [¶] Unlike many traditional media, there are no controls on the postings. Literally anyone who has access to the Internet has access to the chat-rooms." (*Global Telemedia Intern., Inc. v. Doe 1* (C.D.Cal. 2001) 132 F.Supp.2d 1261, 1264.)

Defendant Tom Mitchell stated in a declaration in support of defendants' section 425.16 motion that the Ogravity99 Web site is accessible free of charge to any member of the public. Mitchell further stated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the site provides a forum where members of the public may read the views and information posted, and post on the site their own opinions.

Thus, both the Raging Bull and Ogravity99 sites satisfy the criteria for a public forum set forth in *Damon v. Ocean Hills Journalism Club, supra, 85 Cal.App.4th 468:* "a place that is open to the public where information is freely exchanged." (*Id.,* at p. 475.) In fact, the Web sites in this case present even a stronger case for qualification as public forums than did the newsletter involved in *Damon.* While newspapers exercise editorial control over access to their pages, that feature is not shared by the Web sites involved here. We therefore conclude defendants made a prima facie showing that the Web sites involved in this case were public forums for purposes of *section 425.16.*

### (2) Public interest

The remaining issue is whether defendants' statements on the Web sites were made "in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) *Global Telemedia Intern., Inc. v. Doe 1, supra, 132 F.Supp.2d 1261* (*Global Telemedia*) involved closely analogous facts. The plaintiff, a publicly traded company, sued the defendants for trade libel and interference with prospective economic advantage based on messages the defendants posted on the Raging Bull bulletin boards. The messages criticized the plaintiff and its management.

The court held the messages concerned a public issue for purposes of *section 425.16.* It noted the plaintiff was a publicly traded company with as many as 18,000 investors and had inserted itself into the public arena by means of numerous press releases. (*Global Telemedia, supra, 132 F.Supp.2d at p. 1264.*) The court in *Wollersheim* similarly stated, albeit in dictum, that examples of matters of public interest may include activities of private **\*1008** entities that may impact the lives of many individuals, such as "product liability suits, real estate or investment scams, etc." (*Wollersheim, supra, 42 Cal.App.4th 628, 650.*)

Here, like the plaintiff in *Global Telemedia*, Com-

puterXpress is a publicly traded company. Although the record does not appear to indicate how many shareholders it has, indications of the number of ComputerXpress shares outstanding vary from 12,000,000 to 24,000,000. ComputerXpress's allegation that it lost $10,000,000 as a result of failure of potential investors to purchase its stock due to defendants' conduct further suggests its public importance is at least comparable to that of the plaintiff in *Global Telemedia.* We also note ComputerXpress apparently made use of press releases in an effort to promote the company.

ComputerXpress argues that statements of one company regarding a competitor company do not fall within *section 425.16,* citing *Globetrotter Software, Inc. v. Elan Computer Group, Inc. (N.D.Cal. 1999) 63 F.Supp.2d 1127.* The court in *Global Telemedia* distinguished *Globetrotter Software* on the basis that the defendants in *Global Telemedia* were not in the plaintiff's business or a competing business and "were speaking not as competitors, but simply as investors." (*Global Telemedia, supra, 132 F.Supp.2d at p. 1266.*) The same appears to be true here. Although defendants at one time contemplated a merger with ComputerXpress, the record does not indicate that the defendants who published the Web site messages were in competition with ComputerXpress when they made the postings. Further, the tenor of the messages indicates defendants were speaking "as investors" rather than competitors (*ibid.*), as the comments in the messages appear to have been directed at existing or potential shareholders rather than potential customers.

For these reasons, we conclude the record contains adequate prima facie evidence that defendants' Internet messages were made in connection with an issue of public interest.

### b. SEC complaint

Defendants' papers in support of their motion to strike showed that on March 12, 2000, defendants Lee Jackson and Tom Mitchell sent to the SEC a letter of complaint against the corporate predecessor to ComputerXpress and its officers and directors. The complaint stated the company had is-

93 Cal.App.4th 993                                                                                    Page 11
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

sued press releases which allegedly distorted or exaggerated the facts, driving the stock prices up. The complaint also stated the company president had participated in Internet marketing letters that were much like chain letters and had publicly promoted a stock prior to the public release date. Finally, it *1009 stated the authors believed unrestricted stock had been issued to company principals without proper disclosure.

Defendants contend their filing of the complaint with the SEC, and subsequently posting the complaint on the Internet, fell within section 425.16, subdivision (e), as (1) a statement before an official proceeding, (2) a statement in connection with an issue under consideration in an official proceeding, (3) a statement in a public forum in connection with an issue of public interest, and/or (4) other conduct in furtherance of the right of petition or free speech in connection with an issue of public interest.

We have little difficulty concluding that the filing of the complaint qualified at least as a statement before an official proceeding. ComputerXpress contends defendants failed to show the subject of their complaint was ever " 'under consideration or review by' " the SEC. However, the purpose of the complaint was to *solicit* an SEC investigation. In the analogous context of the privilege under Civil Code section 47 for a statement in an official proceeding, the California Supreme Court has observed that the term "official proceeding" "has been interpreted broadly to protect communications to or from *governmental* officials *which may precede the initiation of formal proceedings*." (*Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886], second italics added.) Thus, " 'communication to an official administrative agency ... designed to prompt action by that agency' " is " 'as much a part of the "official proceeding" as a communication made after the proceedings had commenced.' " (*Kim v. Walker* (1989) 208 Cal.App.3d 375, 383 [256 Cal.Rptr. 223]; accord, *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 30 [61 Cal.Rptr.2d 518].)

ComputerXpress notes that investigations and, in

some cases, hearings conducted by the SEC are not public. However, in *Braun v. Chronicle Publishing Co., supra*, 52 Cal.App.4th 1036, the court held that an investigative audit, conducted by the State Auditor, was an official proceeding for purposes of section 425.16 even though it was closed to the public. The court reasoned that the audit was "an authorized, public proceeding" because it was "government-sponsored and provided for by statute." (*Braun, supra*, at p. 1049.) The same is true of SEC proceedings, whether or not they are public.

ComputerXpress contends that, even if the filing of the SEC complaint fell within section 425.16, the posting of it on the Internet was not connected to any official proceeding and therefore was not protected. For the reasons set forth in part II.B.2.a., *ante*, with respect to defendants' other Internet postings concerning ComputerXpress, we conclude the posting of the complaint amounted to a statement in a public forum in connection with an issue *1010 of public interest. ComputerXpress's possible securities law violations qualified as an issue of public interest to the investing public just as its management and performance did. The posting of the complaint therefore also fell within section 425.16.

### C. Probability of Prevailing

As we have determined that the Internet postings and SEC complaint fell within section 425.16, ComputerXpress's fourth and sixth through ninth causes of action based on that conduct were subject to a motion to strike unless ComputerXpress showed a probability of prevailing on those claims. (§ 425.16, subd. (b)(1).) (1b) To show a probability of prevailing for purposes of section 425.16, a plaintiff must " ' "make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor." ' " (*Kyle v. Carmon, supra*, 71 Cal.App.4th 901, 907.) This standard is "similar to the standard used in determining motions for nonsuit, directed verdict, or summary judgment," in that the court cannot weigh the evidence. (*Ibid.*; accord, *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 827 [33 Cal.Rptr.2d 446].) However, the plaintiff "cannot simply rely on the allegations in the complaint" ( *Paul for*

93 Cal.App.4th 993                                                    Page 12
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

*Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364, fn. 5 [102 Cal.Rptr.2d 864]), but "must provide the court with sufficient *evidence* to permit the court to determine whether 'there is a probability that the plaintiff will prevail on the claim.' " (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [92 Cal.Rptr.2d 755], italics added.) We must determine whether the evidence submitted by ComputerXpress satisfied that standard. [FN3]

> FN3 ComputerXpress filed two sets of papers presenting evidence in opposition to defendants' motion to strike. The court refused to consider the second set, which was filed late. We have reviewed the supplemental papers and conclude that, even considering the evidence there set forth, ComputerXpress failed to establish a probability of prevailing on its fourth and sixth through ninth causes of action. We therefore need not decide whether the trial court should have considered the papers.

*1. Fourth cause of action-trade libel*

(4) Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner. (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 572 [264 Cal.Rptr. 883].) The tort encompasses "all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so." (*Ibid.*)

To constitute trade libel, a statement must be false. (*Leonardini v. Shell Oil Co., supra,* 216 Cal.App.3d 547, 572.) Since mere opinions cannot by *1011 definition be false statements of fact, opinions will not support a cause of action for trade libel. (*Hofmann Co. v. E. I. Du Pont De Nemours & Co.* (1988) 202 Cal.App.3d 390, 397 [248 Cal.Rptr. 384].)

In most cases, whether a statement is fact or opinion is a question of law. (*Hofmann Co. v. E. I. Du Pont de Nemours & Co., supra,* 202 Cal.App.3d

390, 397.) To decide whether a statement is fact or opinion, a court must put itself in the place of an average reader and determine the natural and probable effect of the statement, considering both the language and the context. (*Id.,* at p. 398.) However, where a statement is ambiguous or susceptible of an innocent meaning, it is incumbent upon the plaintiff to plead the facts showing its defamatory meaning. (*Nichols v. Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 774 [215 Cal.Rptr. 416].)

(3b) ComputerXpress failed to demonstrate how defendants' Internet postings, on which the fourth cause of action is based, were false or defamatory. In fact, it has not even identified which of the numerous postings included in the record it contends were actionable. Instead, ComputerXpress simply refers this court to the 131 pages of Internet postings contained in the record, apparently assuming it is the court's obligation to determine how they support ComputerXpress's position.

This is a wholly unacceptable method of appellate advocacy. (5) Rule 15(a) of the California Rules of Court provides: "The statement of any matter in the record shall be supported by appropriate reference to the record." It is not the duty of a reviewing court to search the record for evidence on a point raised by a party whose brief makes no reference to the pages where the evidence can be found. (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1093 [234 Cal.Rptr. 835]; *Metzenbaum v. Metzenbaum* (1950) 96 Cal.App.2d 197, 199 [214 P.2d 603].)

(3c) Moreover, having reviewed them, we find nothing in the Internet postings which would satisfy the requirements for trade libel as discussed *ante.* The court in *Global Telemedia, supra,* 132 F.Supp.2d 1261, granted a motion to strike a trade libel claim pursuant to section 425.16 under closely analogous circumstances. The defendants posted allegedly libelous statements about the plaintiff, a publicly traded company, on the Raging Bull message boards. The court concluded the company had not shown a probability of prevailing, because "the general tenor, the setting and the format" of the

93 Cal.App.4th 993                                                                                                Page 13
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

postings strongly suggested they were opinion. The postings "were part of an on-going, free-wheeling and highly animated exchange" about the company and were "full of hyperbole, invective, short-hand phrases and *1012 language not generally found in fact-based documents, such as corporate press releases or SEC filings." Therefore, they lacked "the formality and polish typically found in documents in which a reader would expect to find facts." (*Global Telemedia, supra,* at p. 1267.)

Among the postings the *Global Telemedia* court found not actionable were statements that: the company's public relations documents gave it the appearance of being " 'high tech,' " but its products were " 'slow or non-existent' "; the company was steering a " 'sinking ship' "; investors were " 'being manipulated by the company so that they can fly the coop again' "; shareholders had been " 'screwed out of your hard earned money' " and it was " 'time to talk about a lawsuit' "; and the principals of the company were guilty of " 'blatant mismanagement' " and would hold shareholders' money and " 'dictate after they lie how it will be used.' " (*Global Telemedia, supra,* 132 F.Supp.2d at pp. 1268-1269.) The court found these statements would be seen by a reasonable reader as mere invective of a disgruntled shareholder, "probably not written by someone with authority or firm factual foundations for his beliefs." (*Id.,* at p. 1269.) Therefore, the statements could not have had the alleged defamatory effect of causing the company's stock to lose value.

The Internet postings in this case were comparable in tone and substance to those in *Global Telemedia.* Without citing any specific postings, the complaint alleged four defamatory statements: "that the computer product featured on Plaintiff's own website was of inferior quality, that Plaintiff was merely a stock 'scam' certain to be out of business within thirty days, that the officers and directors of Plaintiff were illegally conspiring with market-makers for the company's stock to manipulate its value, that one of Plaintiff's officers or directors had filed bankruptcy, etc." Our own review of the postings indicates the following disparaging state-

ments:

ComputerXpress's stock fluctuated dramatically because "they never have real substance behind their news, IMO," [FN4] so that "the suckers jump in before verifying anything" and then "jump out when they see it was more BS than PR."

> FN4 It is apparent from another posting that the abbreviation "IMO," which appears in many other postings as well, stands for "in my opinion."

"[A]n officer/director (former?)" of ComputerXpress had "declared recent bankruptcy." Two days later, this statement was clarified to state that a corporation owned by the former president of ComputerXpress had "filed for chapter 7 bankruptcy in October of 1999."

Investors were "either swallowing complete bull" or "participating in what I think is a fraud" and should not be surprised if the ComputerXpress *1013 promoters "try to continue this for another 30 days (the time they have to comply or revert to pink sheets) to suck out as much as they can ...."

The ComputerXpress promoters acted as they did because "greed set in; and a belief that they cou[l]d 'operate under the radar' and get away with whatever they wanted to because there was not enough official care to be concerned about. I firmly believe that they care nothing about generating a genuine business, and everything about selling the stock ...."

When ComputerXpress announced the intended merger with defendants' businesses to the public, it had already filed a letter with the SEC promoting a different type of affiliate program not mentioned to the public until months later. "[I]s that fraud?"

"You guys really seem to think you can sucker a lot of people all the time!"

"When the people who have ... been duped into this stock realize the scam they were coaxed into, my guess is there will be hell to pay."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                                                      Page 14
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

"[W]ill someone please tell me why Anyone would believe Anything these guys and their pump and dump supporters say?"

As is apparent from this recitation, while the postings certainly could be considered disparaging, their tone and content identified them as statements of opinion and not fact. Like the postings in *Global Telemedia*, they were hyperbolic, informal, and lacked the characteristics of typical fact-based documents. Moreover, they were replete with explicit statements of opinion, such as "IMO [in my opinion]," "what I think is a fraud," "I firmly believe," "is that fraud?" and "my guess is."

Other statements, such as the asserted inconsistency between ComputerXpress's public relations releases and its actual operations, or the assertion that its promoters only cared about selling stock and not about generating a genuine business, were too vague to be taken as fact by a reasonable reader. In the few instances in which the postings did contain apparent statements of facts-such as the statement that a company owned by the former president had filed for bankruptcy, or that ComputerXpress had 30 days "to comply or revert to pink sheets"-ComputerXpress failed to present evidence that the statements were false.

This court has observed that, because <u>section 425.16</u>'s requirement that a plaintiff establish a probability of prevailing "is intended to 'provid[e] a fast **\*1014** and inexpensive unmasking and dismissal of SLAPP's,' " a more lenient standard would not be appropriate. (<u>Ludwig v. Superior Court (1995) 37 Cal.App.4th 8, 16 [43 Cal.Rptr.2d 350].</u>) Although ComputerXpress's displeasure at the Internet postings involved here is understandable, despite two opportunities to demonstrate that the postings constituted false and defamatory statements of fact, ComputerXpress failed to do so. ComputerXpress therefore failed to establish a probability of prevailing on its cause of action for trade libel.

*2. Sixth cause of action-interference with prospective economic advantage*

ComputerXpress's claim for interference with prospective economic advantage, like its claim for trade libel, was based on defendants' Internet postings. (6) Like the tort of trade libel, interference with prospective economic advantage requires false statements of fact. "A person cannot incur liability for interfering with contractual or economic relations by giving truthful information to a third party." (<u>Savage v. Pacific Gas & Electric Co. (1993) 21 Cal.App.4th 434, 449-450 [26 Cal.Rptr.2d 305].</u>) Further, a plaintiff cannot state a cause of action for interference with prospective economic advantage based on " 'loose, figurative, or hyperbolic language' " (<u>Morningstar, Inc. v. Superior Court (1994) 23 Cal.App.4th 676, 697 [29 Cal.Rptr.2d 547]</u>) or mere opinions, unless shown to be not genuinely held and advanced for the sole purpose of harming the plaintiff. (<u>Hofmann Co. v. E. I. Du Pont de Nemours & Co., supra, 202 Cal.App.3d 390, 403.</u>)

(3d) As we have concluded in part II.C.1., *ante*, that the Internet postings were not actionable trade libel, they also could not support a claim for interference with prospective economic advantage. ComputerXpress failed to establish a probability of prevailing on its sixth cause of action.

*3. Seventh cause of action-abuse of process*

(7) Abuse of process consists of "[t]he use of *the machinery of the legal system* for an ulterior motive ...." (<u>Trear v. Sills (1999) 69 Cal.App.4th 1341, 1359 [82 Cal.Rptr.2d 281],</u> italics added.) Because the purpose of the tort is "to preserve the integrity of the court," it "requires misuse of a *judicial* process ...." (<u>Stolz v. Wong Communications Limited Partnership (1994) 25 Cal.App.4th 1811, 1822-1823 [31 Cal.Rptr.2d 229].</u>) The tort therefore does not extend to misuse of administrative proceedings, even those involving agencies with " 'quasi-judicial' powers ...." (<u>Id., at p. 1823</u> [misuse of administrative process of Federal Communications Commission not abuse of process].) **\*1015**

(3e) ComputerXpress's seventh cause of action alleged defendants misused the legal process by posting the SEC complaint on the Internet. There was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03795-JW    Document 38    Filed 08/23/2007    Page 25 of 36

93 Cal.App.4th 993                                              Page 15
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

no allegation of any misuse of the *judicial* process. ComputerXpress failed to establish a probability of prevailing on its claim for abuse of process.

#### 4. *Eighth cause of action-conspiracy*

(8) " 'A conspiracy cannot be alleged as a tort separate from the underlying wrong it is organized to achieve.' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513 [28 Cal.Rptr.2d 475, 869 P.2d 454].) Therefore, "conspiracy to commit a tort is not a separate cause of action from the tort itself ...." (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 845 [33 Cal.Rptr.2d 438].)

(3f) ComputerXpress's conspiracy claim was based on the Internet postings and the filing of the SEC complaint. We have previously determined that the postings were not actionable under any tort theory pled in ComputerXpress's complaint. The filing of the SEC complaint clearly was absolutely privileged under Civil Code section 47, subdivision (b), which as stated *ante* protects " 'communication to an official administrative agency ... designed to prompt action by that agency ....' " (*Kim v. Walker, supra,* 208 Cal.App.3d 375, 383; accord, *Slaughter v. Friedman, supra,* 32 Cal.3d 149, 156; *Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th 15, 30.) It follows that ComputerXpress failed to establish a probability of prevailing on its conspiracy cause of action.

#### 5. *Ninth cause of action-injunction*

As ComputerXpress points out, injunctive relief is sometimes available as a remedy for trade libel. (*Leonardini v. Shell Oil Co., supra,* 216 Cal.App.3d 547, 579.) However, while such relief is available "in the ordinary case involving private disputes," it is not available to restrain debate about public issues, even where false statements are involved. (*Id.,* at pp. 578- 579.) " 'The concept that a statement on a public issue may be suppressed because it is believed by a court to be untrue is entirely inconsistent with constitutional guarantees and raises the spectre of censorship in a most pernicious form.' " (*Id.,* at p. 578, quoting *Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658-659 [119 Cal.Rptr. 468,

532 P.2d 1161].)

We have previously determined that the statements ComputerXpress sought to enjoin concerned a public issue, not a mere private dispute. Even if that were not the case, as discussed *ante,* the statements were not actionable as trade libel. Accordingly, ComputerXpress failed to establish a probability of prevailing on its injunction cause of action. **\*1016**

#### D. *Attorney Fees and Costs*

(9) The remaining question is whether defendants are entitled to attorney fees and costs pursuant to section 425.16, subdivision (c). That provision states in relevant part that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Defendants contend this language mandates an award of fees and costs to the defendant any time a SLAPP motion is granted, even in part. ComputerXpress, on the other hand, contends that, because we have concluded defendants' SLAPP motion properly was denied as to four out of the nine causes of action of the complaint, defendants should not be considered to have prevailed on the motion for purposes of section 425.16.

Section 425.16, subdivision (c) does not define the term "prevailing defendant." In particular, it does not state whether a defendant is deemed to have prevailed if its SLAPP motion is granted as to some claims and denied as to others. Recently, the court in *Shekhter, supra,* 89 Cal.App.4th 141, held that, where the defendants successfully argued on appeal that their motion to strike one cause of action as a SLAPP claim should have been granted, they were entitled to attorney fees even though another cause of action remained pending. (*Id.,* at p. 154.) However, the court did not specifically discuss the issue whether the defendants could be considered the prevailing parties under the circumstances.

In the context of contractual fee awards under Civil Code section 1717, the rule is that in cases of "mixed" results, where a party " 'receives only a part of the relief sought,' " the court may determine there is no prevailing party. (*Hsu v. Abbara* (1995)

Case 5:07-cv-03795-JW    Document 38    Filed 08/23/2007    Page 26 of 36

93 Cal.App.4th 993                                                                                            Page 16
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

9 Cal.4th 863, 875 [39 Cal.Rptr.2d 824, 891 P.2d 804]; accord, *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 [86 Cal.Rptr.2d 614, 979 P.2d 974]; see also *Hilltop Investment Associates v. Leon* (1994) 28 Cal.App.4th 462, 468 [33 Cal.Rptr.2d 552] [fees properly denied where result is " 'good news and bad news to each of the parties' "].) In deciding whether there is a prevailing party, the court is to "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu, supra,* at p. 876.) The court has discretion to find there is no prevailing party even though Civil Code section 1717, subdivision (a) states that the prevailing party "shall" be entitled to recover fees.

Civil Code section 1717, unlike Code of Civil Procedure section 425.16, expressly provides that the court may determine there is no prevailing party. (Civ. Code, § 1717, subd. (b)(1).) However, courts in cases involving other **\*1017** statutes which provide that the prevailing party "shall" recover attorney fees also have concluded that a court has the discretion to find there is no prevailing party, even though the statute does not expressly say so. (See, e.g., *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 [26 Cal.Rptr.2d 758] (*Heather Farms*) [Civ. Code, § 1354, subd. (f)]; *Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1277-1278 [64 Cal.Rptr.2d 659] (*Gilbert*) [Civ. Code, § 3344, subd. (a)]; *Damian v. Tamondong* (1998) 65 Cal.App.4th 1115, 1128-1130 [77 Cal.Rptr.2d 262] (*Damian*) [Civ. Code, § 2983.4].) The determination of whether there is a prevailing party is to be made "on a practical level" after considering what each party accomplished via the litigation. (*Heather Farms, supra,* at p. 1574; *Gilbert, supra,* at p. 1277.) In *Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94 [77 Cal.Rptr.2d 600] (*Coltrain*), this court adopted the discretionary approach set forth in *Heather Farms, Gilbert,* and *Damian* for purposes of awarding attorney fees under the SLAPP statute, concluding that the critical issue in determining which party has prevailed is "which

party realized its objectives in the litigation." (*Coltrain,* at p. 107.)

These decisions, however, are of limited assistance in considering the proper application of section 425.16, subdivision (c) in this case. In each of the decisions cited above, the litigation terminated without a court determination of the merits of the suit. In *Heather Farms, Gilbert,* and *Damian,* the actions were dismissed without prejudice prior to trial. (*Heather Farms, supra,* 21 Cal.App.4th 1568, 1570-1571; *Gilbert, supra,* 55 Cal.App.4th 1273, 1275; *Damian, supra,* 65 Cal.App.4th 1115, 1118.) In *Coltrain,* similarly, the plaintiffs voluntarily dismissed their complaint without prejudice before any ruling on the defendants' SLAPP motion. (*Coltrain, supra,* 66 Cal.App.4th 94, 100.) Absent a determination of the merits, it may be difficult or impossible to decide which party has prevailed as a practical matter, and the court may appropriately find there is no prevailing party.

Here, in contrast, we have determined the SLAPP motion was meritorious as to five out of the nine causes of action to which it was directed. As to those five causes of action, at least, defendants clearly prevailed.

The decisions applying Civil Code section 1717 also are of limited assistance in this case. The purpose of section 1717 is "to establish mutuality of remedy when a contract makes recovery of attorney fees available only for one party and to prevent the oppressive use of one-sided attorney fees provisions. [Citation.]" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1090-1091 [95 Cal.Rptr.2d 198, 997 P.2d 511].) The intent of the Legislature, therefore, was to make attorney fees equally available to both sides where they would not have been equally available under the literal terms of the agreement. **\*1018**

Section 425.16, subdivision (c), however, evidences a legislative intent to do more than make fees and costs equally available to both sides. Instead, the statute reflects a clear preference for awarding fees and costs to prevailing defendants. Section 425.16,

Case 5:07-cv-03795-JW    Document 38    Filed 08/23/2007    Page 27 of 36

93 Cal.App.4th 993                                                              Page 17
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
(Cite as: 93 Cal.App.4th 993)

subdivision (c) provides that a prevailing *defendant* on a SLAPP motion to strike "shall be entitled to recover his or her attorney's fees and costs." A prevailing *plaintiff*, however, can only recover fees and costs "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay ...."

This differential standard for awarding fees and costs is in keeping with the statement of legislative purpose in section 425.16, subdivision (a). The Legislature in that provision found "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Accordingly, "it is in the public interest to encourage continued participation in matters of public significance," and to ensure "that this participation ... not be chilled through abuse of the judicial process."

Section 425.16, subdivision (c)'s preference for awarding fees and costs to defendants is analogous to the rule followed in cases arising under the federal civil rights statutes. Title 42 United States Code section 1988 (section 1988) provides that, in such cases, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...." Despite its seeming neutral language, cases applying section 1988 hold that "[a] prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 429, fn. 2 [103 S.Ct. 1933, 1937, 76 L.Ed.2d 40] (*Hensley*); see also *Hughes v. Rowe* (1980) 449 U.S. 5, 14-15 [101 S.Ct. 173, 178-179, 66 L.Ed.2d 163].) In contrast, "a prevailing plaintiff '" should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust. " ' " (*Hensley, supra,* at p. 429 [103 S.Ct. at p. 1937].)

A defendant making a SLAPP motion and a plaintiff in a civil rights action thus enjoy the same preference for attorney fees if they are successful. Given this similarity in approach between Code of Civil Procedure section 425.16, subdivision (c) and United States Code section 1988, authority under section 1988 is particularly helpful in applying section 425.16, subdivision (c).

In *Hensley* the United States Supreme Court considered the proper application of section 1988 where the plaintiff prevails on some but not all of his *1019 or her claims. The court stated that, for purposes of the threshold determination of whether the plaintiff has prevailed at all, " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " (*Hensley, supra,* 461 U.S. at p. 433 [103 S.Ct. at p. 1939].) However, where the plaintiff in one lawsuit presents "distinctly different claims for relief that are based on different facts and legal theories," he or she cannot recover fees incurred in pursuing an unsuccessful claim. (*Id.,* at pp. 434-435 [103 S.Ct. at p. 1940].) On the other hand, if the plaintiff's successful and unsuccessful claims involve a common core of facts or related legal theories, the court should determine "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." (*Id.,* at p. 435 [103 S.Ct. at p. 1940].) "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." (*Id.,* at p. 440 [103 S.Ct. at p. 1943].)

California courts applying the private attorney general statute, Code of Civil Procedure section 1021.5, have adopted the same approach. Thus, in cases under section 1021.5, the courts hold that "a party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of the section. [Citations.]" (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 846 [216 Cal.Rptr. 649].) Rather, "when a plaintiff is successful within the meaning of the section, the fact that he or she has prevailed on some claims but not on others is a factor to be considered in determining the amount of the fee awarded." (*Id.,* at pp. 846-847, citing *Hensley, supra,* 461 U.S. 424.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                                                                Page 18
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

Earlier this year, the court in *Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381 [107 Cal.Rptr.2d 29] (*Los Angeles Times*) applied a similar approach in construing the California Public Records Act. (Gov. Code, § 6250 et seq.) Section 6259, subdivision (d) of that act, which provides for attorney fees and costs, is closely analogous to Code of Civil Procedure section 425.16, subdivision (c). Government Code section 6259, subdivision (d) provides that the court "shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation" seeking disclosure of records from a public agency. However, the court shall award fees and costs to the public agency only if it finds "that the plaintiff's case is clearly frivolous ...." (*Ibid.*)

The court in *Los Angeles Times* held that a plaintiff who sued to obtain disclosure of two documents, but succeeded in obtaining only one, nonetheless was a prevailing party entitled to attorney fees and costs under the *1020 statute. The court acknowledged the possibility that in some cases a plaintiff might obtain documents that are so minimal or insignificant as to justify a finding that it did not prevail. It concluded, however, that, absent such circumstances, fees and costs should be awarded. To do otherwise would be inconsistent with the express purpose of the statute, "to broaden public access to public records," and "would chill efforts to enforce the public right to information." (*Los Angeles Times, supra,* 88 Cal.App.4th at p. 1392.)

These authorities support the conclusion that defendants in this case should be considered prevailing parties, and therefore should recover attorney fees and costs, notwithstanding their partial success on their SLAPP motion. As with the federal civil rights statutes and the California Public Records Act, the differential standard for awarding fees reflects a preference for compensating parties who further the public policies underlying the SLAPP statute through their litigation efforts. The approach adopted in the cases applying those analogous statutes, under which partial success reduces but does not eliminate the entitlement to attorney fees, there-

fore should be applied here.

As discussed previously, the causes of action we have concluded are not subject to being stricken are based on different conduct than the remaining causes of action. Therefore, the problems alluded to in *Hensley* that may arise where the successful and unsuccessful claims are legally or factually related are not present. Defendants consequently are entitled to recover attorney fees and costs incurred in moving to strike the claims on which they prevailed, but not fees and costs incurred in moving to strike the remaining claims. The trial court may determine the appropriate amount of fees and costs, upon a proper application by defendants. (See *Coltrain, supra,* 66 Cal.App.4th 94, 108.)

For the guidance of the trial court, we note in closing that, as the parties seeking fees and costs, defendants "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." (*Hensley, supra,* 461 U.S. at p. 437 [103 S.Ct. at p. 1941].) To that end, the court may require defendants to produce records sufficient to provide " 'a proper basis for determining how much time was spent on particular claims.' " (*Id.,* at p. 437, fn. 12 [103 S.Ct. at p. 1941].) The court also may properly reduce compensation on account of any failure to maintain appropriate time records. (*Id.,* at p. 438, fn. 13 [103 S.Ct. at p. 1942].)

### III. Disposition
The order denying the motion to strike is affirmed with respect to the first, second, third, and fifth causes of action and reversed as to the remaining *1021 causes of action. Upon an appropriate motion and factual showing, defendants may recover attorney fees and costs in connection with their SLAPP motion and on appeal, under section 425.16, subdivision (c), in an amount to be determined by the trial court.

Ramirez, P. J., and Hollenhorst, J., concurred.

Cal.App.4.Dist.,2001.

COMPUTERXPRESS, INC., Plaintiff and Re-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Cal.App.4th 993                                                                                      Page 19
93 Cal.App.4th 993, 113 Cal.Rptr.2d 625, 01 Cal. Daily Op. Serv. 9725, 2001 Daily Journal D.A.R. 12,135
**(Cite as: 93 Cal.App.4th 993)**

spondent, v. LEE JACKSON et al., Defendants and
Appellants.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10
## To Appendix to California State Authorities

70 Cal.App.4th 1446                                                    Page 1
70 Cal.App.4th 1446, 83 Cal.Rptr.2d 443, 99 Cal. Daily Op. Serv. 2341, 1999 Daily Journal D.A.R. 3063
**(Cite as: 70 Cal.App.4th 1446)**

c

MICKEY CONROY et al., Plaintiffs and Appellants,

v.

TODD SPITZER, Defendant and Respondent.
**No. G021750.**

Court of Appeal, Fourth District, Division 3, California.

Mar. 31, 1999.

SUMMARY

A candidate for a seat on a county board of supervisors, who was also a member of the state Assembly at the time of the election, brought a defamation action against his rival, who had publicly discussed during the election the investigation and reprimand of plaintiff for sexual harassment by the state Assembly. The trial court granted defendant's motion to strike the complaint as a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) and ordered plaintiff to pay attorney fees and costs. (Superior Court of Orange County, No. 770744, Daniel S. Pratt, Judge. [FN*] )

>  FN* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The Court of Appeal affirmed the judgment and order to pay attorney fees and costs. The court held that the trial court did not err in granting defendant's motion to strike the complaint, since plaintiff failed to show a probability of prevailing on his defamation claim. The factual statements defendant made during the election were either true or based on reliable evidence. Therefore, defendant did not make the statements with actual malice. Also, defendant's expressions of personal opinion about plaintiff's fitness for office were not actionable. The court also held that, since defendant was the prevailing party, the trial court did not err in ordering

plaintiff to pay attorney fees and costs. (Opinion by Sills, P. J., with Sonenshine and Rylaarsdam, JJ., concurring.)

HEADNOTES

Classified to California Digest of Official Reports

(1) Pleading § 93--Motion to Strike Complaint as SLAPP Suit--Statutory Purpose.
SLAPP suits (strategic lawsuits against public participation) (Code Civ. Proc., § 425.16) are meritless suits filed primarily **1447** to chill a defendant's exercise of U.S. Const., 1st Amend., rights. The purpose of § 425.16 is to encourage continued participation in matters of public significance by eliminating meritless litigation at an early stage in the proceedings.

(2a, 2b, 2c) Pleading § 93--Motion to Strike Complaint as SLAPP Suit--Showing That Plaintiff Could Not Prevail--Political Campaign:Libel and Slander § 38--Failure to Show Actual Malice.
In a defamation action brought by a candidate for a seat on a county board of supervisors, who was also a member of the state Assembly at the time of the election, against his rival, who had publicly discussed during the election the investigation and reprimand of plaintiff for sexual harassment by the state Assembly, the trial court did not err in granting defendant's motion to strike the complaint as a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16). Plaintiff failed to show a probability of prevailing on his defamation claim. The factual statements defendant made during the election were either true or based on reliable evidence, including a formal letter of reprimand from the Speaker of the Assembly, the findings and conclusions of the Assembly Rules Committee, which conducted the investigation, and numerous newspaper reports. Therefore, as defendant's statements were based on reliable evidence, he did not make them with actual malice. Also, defendant's expressions of personal opinion about plaintiff's fitness for office were not actionable.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

70 Cal.App.4th 1446                                                                    Page 2
70 Cal.App.4th 1446, 83 Cal.Rptr.2d 443, 99 Cal. Daily Op. Serv. 2341, 1999 Daily Journal D.A.R. 3063
**(Cite as: 70 Cal.App.4th 1446)**

[See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 963.]

(3) Libel and Slander § 26--Qualified Privilege--Matters Concerning Candidates--Application of Anti-SLAPP Statute.
Code Civ. Proc., § 425.16, the anti-SLAPP suit (strategic lawsuit against public participation) statute, may be utilized to bring a motion to strike a complaint arising from statements made during political campaigns. The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the U.S. Const., 1st Amend.

(4) Libel and Slander § 48--Action Based on Statements Made During Political Campaign--Evidence of Malice--Weight and Sufficiency.
In a candidate's defamation action based on statements made during a political campaign concerning the candidate's fitness for office, the candidate, as a public official, could only recover damages if **\*1448** the candidate proved by clear and convincing evidence that the statements were made with actual malice-that is, with knowledge that they were false or with reckless disregard of whether they were false or not.

(5) Costs § 20--Attorney Fees--Statutory Provisions--SLAPP Suit--Prevailing Party.
In a defamation action brought by a candidate for a seat on a county board of supervisors against his rival who had publicly discussed the investigation and reprimand of plaintiff for sexual harassment by the state Assembly, in which the trial court granted defendant's motion to strike the complaint as a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16), the trial court did not err in ordering plaintiff to pay attorney fees and costs under Code Civ. Proc., § 425.16, subd. (c), since defendant was the prevailing party.

COUNSEL

Knypstra & Associates and Bradley P. Knypstra for Plaintiffs and Appellants.

Ufkes & Bright and Jamie Morris Spitzer for Defendant and Respondent.

**SILLS, P. J.**

Code of Civil Procedure section 425.16 was enacted to discourage the filing of SLAPP suits-otherwise known as strategic lawsuits against public participation. SLAPP suits are, by definition, aimed at chilling the valid exercise of political rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.

The present case involves what the trial court characterized as a SLAPP suit, and after reviewing the entire record we agree. Mickey Conroy filed a defamation suit against Todd Spitzer, his political rival in the 1996 elections for the Orange County Board of Supervisors. At that time Conroy was a California State Assemblyman whose former assistant had filed sexual harassment charges against him. Conroy was investigated by the Assembly and reprimanded for violating the Assembly's sexual harassment policy. Various newspapers reported on the sexual harassment suit, Conroy's reprimand and the cost of Conroy's defense. During his campaign, Spitzer made numerous comments about the sexual harassment suit, which became the basis for Conroy's defamation suit.

The trial court granted Spitzer's motion to strike the complaint as a SLAPP suit, noting that Spitzer's campaign statements were either true or **\*1449** based on reliable evidence. Conroy was ordered to pay $3,421 in attorney fees and costs. We affirm because, as explained below, Conroy failed to show a probability of prevailing on his defamation claim.

Facts
In 1996, Conroy and Spitzer were candidates for a seat on the Orange County Board of Supervisors. At that time, Conroy, a member of the California State Assembly, was facing a sexual harassment suit filed by a former assistant. The Assembly in-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

vestigated the allegations and reprimanded Conroy "for engaging in conduct ... that constituted violations of the [Assembly's] Sexual Harassment Policy ...." Various newspapers-including the San Francisco Examiner, the Sacramento Bee, the Orange County Register, and the Los Angeles Times-printed reports of the sexual harassment suit, Conroy's reprimand and the cost of Conroy's defense. [FN1]

> FN1 The San Francisco Examiner reported that "[t]he state has already paid $291,000 to outside lawyers: $226,000 to [a] Sacramento employment law firm ... and $66,000, to [a] legal and lobbying firm ... which conducted the original probe."

Spitzer used this information in his campaign against Conroy. In a letter to absentee voters, Spitzer stated that Conroy "is also spending $583,000 of taxpayer money to fight sexual harassment charges, for which he has already been found guilty in the Assembly Rules Committee." Spitzer's campaign mailers contained the following statements: "Fact: The bi-partisan Assembly Rules Committee conducted a thorough investigation and found that Mickey Conroy was guilty of sexual harassment of one of his employees .... [¶] Fact: Conroy has done everything he can to delay the lawsuit until after the November 5th election. [¶] Fact: Taxpayers have already spent more than $583,000 in legal fees, including helping Conroy delay the trial, despite the Legislature's findings. [¶] Fact: Taxpayers will spend at least another $250,000 in legal fees helping Conroy defend himself against charges that have already been proven. [¶] Fact: Conroy stated on KOCE-TV that he will 'probably settle' the case after the election." Spitzer spoke about Conroy on local television and radio programs, stating that "the state legislative committee which investigated him has already found him guilty"; "he's already been found guilty of sexual harassment"; and "he has used every trick in the book to postpone his trial until after election."

Conroy filed suit against Spitzer, claiming libel, slander per se, intentional infliction of emotional distress and negligent infliction of emotional distress. Spitzer filed a special motion to strike Conroy's complaint pursuant to **1450** section 425.16 of the Code of Civil Procedure. The trial court granted Spitzer's motion to dismiss the entire action with prejudice and ordered Conroy to pay $3,421 in attorney fees and costs. The court found that: "Plaintiffs have failed to carry their burden of demonstrating a probability that they will prevail on their claims pursuant to *Code of Civil Procedure section 425.16(b)*. Plaintiffs have not demonstrated by clear and convincing evidence that defendant possessed the requisite actual malice required under *New York Times v. Sullivan* ... [and] *Robertson v. Rodriguez* ...." From the judgment of dismissal Conroy now appeals.

Discussion
*Background of Code of Civil Procedure Section 425.16*

(1) Strategic lawsuits against public participation or SLAPP suits (as they are more commonly known) have "been described as '... meritless suit[s] filed primarily to chill [a] defendant's exercise of First Amendment rights.' " (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 672 [64 Cal.Rptr.2d 222], quoting *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446].) Finding a "disturbing increase" in such lawsuits, the Legislature enacted Code of Civil Procedure section 425.16. This anti-SLAPP statute provides that a cause of action arising from a person's exercise of the constitutional rights of petition or free speech in connection with a public issue is "subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) The purpose of section 425.16 [FN2] is to "encourage continued participation in matters of public significance" by "eliminat[ing] meritless litigation at an early stage in the proceedings...." (*Macias v. Hartwell, supra,* 55 Cal.App.4th at p. 672, citation omitted.)

> FN2 All statutory references are to the Code of Civil Procedure.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2a) Under the anti-SLAPP statute, once Spitzer showed that his statements were acts in furtherance of his right of free speech and made in connection with a public issue, then, in order to defeat Spitzer's motion to strike, Conroy had the burden of showing a probability of prevailing on his defamation claim. *1451

### Spitzer's Statements Involved His Right of Free Speech inConnection With a Public Issue

(3) Section 425.16 applies to suits involving statements made during political campaigns. (See _Beilenson v. Superior Court (1996) 44 Cal.App.4th 944, 950 [52 Cal.Rptr.2d 357]_ [applying § 425.16 to a libel action by a losing political candidate against the winner for statements made in campaign mailers]; _Matson v. Dvorak (1995) 40 Cal.App.4th 539, 542 [46 Cal.Rptr.2d 880]_ [applying § 425.16 to statements made in a campaign flyer concerning a candidate]; _Robertson v. Rodriguez (1995) 36 Cal.App.4th 347 [42 Cal.Rptr.2d 464]_ [applying § 425.16 to statements made in a mailer in connection with a recall election].) "The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. 'Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment.' " (_Matson v. Dvorak, supra_, 40 Cal.App.4th at p. 548, quoting _Aisenson v. American Broadcasting Co. (1990) 220 Cal.App.3d 146, 154 [269 Cal.Rptr. 379].)_

(2b) Here, Spitzer's statements obviously fell within the purview of section 425.16 because they addressed a matter of public concern-a candidate's qualifications and conduct in office. Therefore, the only issue is whether Conroy established a probability of prevailing on his defamation claim.

### Conroy Failed to Show a Probability of Prevailing onHis Defamation Claim

(4) In order to establish a "probability" of prevailing on his defamation claim against Spitzer, Conroy had to make a prima facie showing of facts which would, if credited, support a judgment in his favor. (_Wilcox v. Superior Court, supra_, 27 Cal.App.4th at pp. 823-824.) As a public official, Conroy could not recover damages for Spitzer's statements about his fitness for office unless he proved by clear and convincing evidence that the "statement[s] [were] made with 'actual malice'-that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." (_New York Times Co. v. Sullivan (1964) 376 U.S. 254, 279-280 [84 S.Ct. 710, 726, 11 L.Ed.2d 686, 95 A.L.R.2d 1412].)_ Therefore, in addressing the issue of whether Conroy demonstrated the existence of a prima facie case for defamation, we "bear in mind the higher clear and convincing standard of proof." (_Robertson v. Rodriguez, supra_, 36 Cal.App.4th at p. 358; *1452 cf. _Looney v. Superior Court (1993) 16 Cal.App.4th 521, 538 [20 Cal.Rptr.2d 182]_ ["Section 425.13 ... require[s] only that a plaintiff demonstrate the existence of sufficient evidence to establish a prima facie case for punitive damages, having in mind the higher clear and convincing standard of proof."].)

(2c) Here, the trial court found that the factual statements Spitzer made during the campaign were either true, i.e., Conroy was indeed reprimanded by the Assembly for sexual harassment, or based on reliable evidence, i.e., the Assembly investigation report and reprimand letter, newspaper articles, and Conroy's own statements. A complete review of the record shows no reason to doubt the trial court's determination.

First, Conroy was sent a formal letter of reprimand from then Speaker of the Assembly, Willie Brown, on March 8, 1994, after an investigation by the Assembly Rules Committee revealed that Conroy's "conduct was inappropriate and violative of the Assembly policy." [FN3] The committee recommended peer review and additional sexual harassment and sensitivity training for Conroy and his staff because "the general conduct in the office was inappropriate." The reprimand letter informed Conroy that the investigation clearly established he had participated in acts in violation of the Assembly's sexual harassment policy and that his conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

70 Cal.App.4th 1446                                                                 Page 5
70 Cal.App.4th 1446, 83 Cal.Rptr.2d 443, 99 Cal. Daily Op. Serv. 2341, 1999 Daily Journal D.A.R. 3063
**(Cite as: 70 Cal.App.4th 1446)**

"failed to meet the standard expected by this House of each of its Members." It then went on to declare: "I hereby reprimand you, Assembly Member Mickey Conroy, for engaging in conduct described in the above-referenced Findings that constituted violations of the Sexual Harassment Policy duly adopted by this House."

> FN3 Findings by the Assembly Rules Committee concluded that between March and May of 1993, Conroy subjected his then staff assistant, Robyn Boyd, to unwelcome and unsolicited physical contact. Conroy kissed Ms. Boyd in his car, once greeted her with a kiss in front of a peer, and put his arm around her on several occasions. Ms. Boyd did not initiate this contact, nor did she expressly consent to it.

Spitzer mentioned this letter in one of his mailers, stating that "[t]he bi-partisan Assembly Rules Committee conducted a thorough investigation and found that Mickey Conroy was guilty of sexual harassment of one of his employees ...." Spitzer also spoke about Conroy's reprimand on local radio programs, stating that "the state legislative committee which investigated him has already found him guilty" and "he's already been found guilty of sexual harassment." Here, Spitzer simply reported the findings and conclusions of the committee; he made no false statements regarding the sexual harassment allegations against Conroy. As the trial court explained, *1453 "Conroy was reprimanded for sexual harassment and thus found guilty by the Assembly ...."

Conroy argues that Spitzer's use of the term "guilty" denotes that he was found guilty of a crime. This argument fails because Conroy's definition of "guilty" is overly narrow. (See *Robertson v. Rodriguez, supra,* 36 Cal.App.4th at pp. 359-360 [city council member who filed a SLAPP suit failed to make an adequate prima facie showing of actual malice because his "definition of a 'fine' [was] overly narrow in that fines are not limited to criminal cases"].) Even by the late 20th century not everyone has attended law school-yet-and thus the

ordinary person still does not equate the colloquial use of "guilty" with *criminal* guilt. We agree with the trial court that "there is no merit to the argument that the term 'guilty' would connote, in the minds of an average reader, a finding of guilt by a court of law." Webster's dictionary recognizes this distinction and defines guilty, inter alia, as "justly chargeable with or responsible for a usu[ally] grave breach of conduct *or* a crime." (Webster's Collegiate Dict. (10th ed. 1996) p. 517, italics added.)

Second, numerous newspapers-including the Los Angeles Times, the Orange County Register, and the Sacramento Bee-reported that the Assembly Rules Committee reprimanded Conroy for violating the Assembly's Sexual Harassment Policy. In discussing the sexual harassment suit against Conroy, the San Francisco Examiner reported that "[t]he state has already paid $291,000 to outside lawyers: $226,000 to [a] Sacramento employment law firm ... and $66,000, to [a] legal and lobbying firm ... which conducted the original probe." As the trial court noted, newspapers are generally thought to be reliable sources of information. Spitzer's statements about the costs of Conroy's defense and his sexual harassment reprimand are virtually the same as those reported in the newspaper articles. [FN4] Therefore, as Spitzer's statements are based on reliable evidence, he did not make them with actual malice. *1454

> FN4 In support of his special motion to strike Conroy's complaint, Spitzer stated in his declaration that the San Francisco Examiner documented Conroy's legal fees as of September, 1996, to be $583,000-$291,000 to outside lawyers, $226,000 to an employment law firm defending Conroy, and $66,000 to the firm which conducted the original investigation. It appears as though Spitzer made a miscalculation by not reading the punctuation in the article carefully. Rather than stating that Conroy's legal fees included $291,000 ☞ $226,000 ☞ $66,000, as Spitzer read it, the newspaper actually stated that Conroy's legal fees were $291,000, which

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

70 Cal.App.4th 1446                                                                                              Page 6
70 Cal.App.4th 1446, 83 Cal.Rptr.2d 443, 99 Cal. Daily Op. Serv. 2341, 1999 Daily Journal D.A.R. 3063
(Cite as: 70 Cal.App.4th 1446)

consisted of $226,000 to an employment law firm and $66,000 to a legal and lobbying firm. Spitzer's mistake is understandable in light of the fact that $226,000 ⟵⟶ $66,000 equals $292,000, and not the $291,000 reported by the newspaper.

And finally, Spitzer's expressions of personal opinion about Conroy's fitness for office are not actionable. [FN5] An individual who seeks public office invites public criticism of his fitness and qualifications and, in so far as the statements might imply that, in the defendant's *opinion*, the plaintiff was unfit for the office he was seeking, no complaint can be made because the defendant has the right to express his opinion. (*Aisenson v. American Broadcasting Co., supra,* 220 Cal.App.3d at p. 155.)

> FN5 Spitzer's statements include: "Conroy has done everything he can to delay the lawsuit until after the November 5th election"; "He has used every trick in the book to postpone his trial until after election"; "Conroy stated on KOCE-TV that he will 'probably settle' the case after the election"; and "Taxpayers will spend at least another $250,000 in legal fees helping Conroy defend himself against charges that have already been proven."

Section 425.16 required Conroy to demonstrate he would "probably" prevail on his claims. Under *New York Times* and its progeny, Conroy was required to "show a likelihood that he could produce clear and convincing evidence" that Spitzer's statements were made with actual malice. (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 953.) However, as Spitzer's statements were either true or based on reliable evidence, Conroy failed to make a prima facie showing of facts to sustain a favorable judgment. Because Conroy failed to establish a probability of prevailing on his defamation claim, the trial court properly granted Spitzer's motion to strike.

Conroy argues that the trial court erred in its application of the clear and convincing standard, citing the trial court's ruling that "[p]laintiffs have not demonstrated by clear and convincing evidence that defendant possessed the requisite actual malice required under *New York Times* ...." The court's statement, however, must be taken in context. In granting Spitzer's motion to strike, the trial court also stated that "[p]laintiffs have failed to carry their burden of demonstrating a probability that they will prevail on their claims pursuant to *Code of Civil Procedure* section 425.16(b)." Even if the trial court did apply a clear and convincing standard rather than the appropriate standard of showing a probability of producing clear and convincing evidence of actual malice at trial, this is a distinction without a difference. While it is doubtful, in light of the findings of the Assembly Rules Committee, that Conroy could show even the *falsity* of Spitzer's statements, it is clear that Conroy failed to produce any evidence of actual malice. Therefore he could not prevail on his defamation claim regardless of which standard the trial court applied.

### Attorney Fees

(5) Section 425.16, subdivision (c) authorizes an award of attorney fees and costs to the prevailing party. Further, the right of a prevailing defendant *1455 to recover attorney fees and costs adequately compensates him for "the expense of responding to a baseless lawsuit." (*Robertson v. Rodriguez, supra,* 36 Cal.App.4th at p. 362.) Therefore, as Spitzer is the prevailing party, the trial court's order for Conroy to pay $3,421 in attorney fees and costs was correct.

### Conclusion

The judgment and order to pay attorney fees and costs are affirmed. Spitzer is to recover his attorney fees and costs on appeal.

Sonenshine, J., and Rylaarsdam, J., concurred.
*1456

Cal.App.4.Dist.,1999.

MICKEY CONROY et al., Plaintiffs and Appellants, v. TODD SPITZER, Defendant and Respondent.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.