# EXHIBIT 27
## To Appendix to California State Authorities



▷

EDWARD R. STOLZ II, Plaintiff and Appellant,
v.
KSFM 102 FM et al., Defendants and Respondents.
No. C016759.

Court of Appeal, Third District, California.

Nov 18, 1994.
[Opinion certified for partial publication.   [FN*]
]
    FN* Pursuant to California Rules of Court,
rule 976.1, this opinion is certified for pub-
lication with the exception of parts II, III,
IV and V of the Discussion.

SUMMARY

An individual who was the owner, operator, and
general manager of a radio station brought a defam-
ation action against another radio station, a broad-
casting company, and an employee from defendant
station, arising from statements made on defendant
station's program. The radio program was on the
topic of irresponsible broadcasting, and reference
was made to specific remarks and acts by persons
employed at plaintiff's station. The trial court de-
termined that plaintiff was a public figure and that
the speech involved matters of public concern,
thereby imposing upon plaintiff the burden to prove
falsity of the allegedly defamatory communica-
tions, and actual malice. A jury rendered a verdict
in favor of defendants. (Superior Court of Sacra-
mento County, No. CV519825, Gary S. Mullen,
Judge. [FN†] )

    FN† Judge of the Sacramento Municipal
Court sitting under assignment by the
Chairperson of the Judicial Council.

The Court of Appeal affirmed. It held that
plaintiff's station was a public figure for purposes
of the lawsuit. The record demonstrated that
plaintiff's station was an "all purpose" public figure
by virtue of occupying a position of general fame

and pervasive power and influence in the com-
munity in which the allegedly defamatory speech
was broadcast. The court further held that plaintiff
himself was a public figure. He brought the action
in his own name, alleging he was "an individual
conducting business as" his station. The allegedly
defamatory remarks referred to plaintiff's station by
name, and by extension to plaintiff as the station's
owner and operator. It was sufficient to conclude
that, at least for matters directly related to the oper-
ation of his station, plaintiff was a "limited pur-
pose" public figure for the same reasons the station
itself was a public figure. The court also held that
the trial court did not err in finding that the subject
matter of the allegedly defamatory speech involved
matters of public concern. Although plaintiff  *196
asserted there was no public concern regarding his
condoning racist remarks over the air or allowing
sex with minors in his station's van, whether speech
addresses a matter of public concern must be de-
termined by the expression's content, form, and
context, as revealed by the whole record. In this
case, the matter of public concern was irresponsib-
ility in radio broadcasting, which was the topic of
defendant station's program when the allegedly de-
famatory statements were made. (Opinion by Sims,
J., with Puglia, P. J., and Sparks, J., concurring.)

HEADNOTES

Classified to California Digest of Official Reports

(1a, 1b, 1c) Libel and Slander § 26--Privileged
Communications-- Matters Concerning Public Fig-
ures--Determination of Who Constitutes Public Fig-
ure--Radio Station Owner and Operator.
In a defamation action by a radio station owner
against a competing radio station and others, arising
from statements that were broadcast on the compet-
ing station's program, plaintiff was a public figure
for purposes of the lawsuit, as the owner, operator,
and general manager of his station. Although the
public figure issue was determined in limine, the
entire record was subject to review, and the record
sufficiently supported the ruling. Plaintiff brought

30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
(Cite as: 30 Cal.App.4th 195)

the action in his own name, alleging he was "an individual conducting business as" his station. The allegedly defamatory remarks referred to plaintiff's station by name, and by extension to plaintiff as the owner and operator. It was unnecessary to determine if plaintiff was a public figure for all purposes; at least for matters directly related to the operation of his station, plaintiff was a "limited purpose" public figure for the same reasons the station itself was a public figure (i.e., the station's control of the airwaves allowed it to reach a wide audience, and it occupied a position of general fame and pervasive power and influence in the community in which the remarks were broadcast).

[See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 519 et seq.]

(2a, 2b, 2c) Libel and Slander § 26--Privileged Communications-- Matters of Public Concern--Determination of What Constitutes Public Concern-- Radio Station Program on Responsibility in Broadcasting.
In a defamation action by a radio station owner against a competing radio station and others, arising from statements broadcast on *197 the competing station's program, the trial court did not err in finding that the subject matter of the allegedly defamatory speech involved matters of public concern, thereby imposing upon plaintiff the burden to prove falsity of the statements. Plaintiff asserted there was no public concern regarding his condoning racist remarks over the air or allowing sex with minors in his station's van. However, whether speech addresses a matter of public concern must be determined by the expression's content, form, and context, as revealed by the whole record. In this case, the matter of public concern was irresponsibility in radio broadcasting, which was the topic of the competing station's program. The fact that some statements, such as the "sex with minors in the van" remarks, did not directly implicate broadcasting did not detract from the conclusion that matters of public concern were involved; freedoms of expression require "breathing space."

(3) Libel and Slander § 26--Privileged Communica-

tions--Matters Concerning Public Figures--Burden of Proof--Malice.
In a defamation action the burden is normally on the defendant to prove the truth of the allegedly defamatory communications. However, in accommodation of U.S. Const., 1st Amend., considerations (which are implicated by state defamation laws), where the plaintiff is a public figure, he or she must show the falsity of the statements at issue in order to prevail in a suit for defamation. Additionally, a public figure cannot recover unless he or she proves, by clear and convincing evidence, that the libelous statement was made with actual malice-that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

(4) Libel and Slander § 26--Privileged Communications--Matters Concerning Public Figures--Burden of Proof--Malice--Rationale.
The rationale for requiring public figure plaintiffs in defamation actions to show the falsity of the statements at issue, and to show that the libelous statements were made with actual malice, is twofold: first, public figures are generally less vulnerable to injury from defamation because of their ability to resort to effective "self help." Such persons ordinarily enjoy considerably greater access than private individuals to the media and other channels of communication. This access in turn enables them to counter criticism and to expose the fallacies of defamatory statements. Second, and more significantly, public figures are less deserving of protection than private persons because public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them. Thus, public figures can be said to have voluntarily exposed themselves to public scrutiny and must accept the consequences. *198

(5) Libel and Slander § 2--Definitions and Distinctions--"All Purpose" Public Figures and "Limited Purpose" Public Figures:Words, Phrases, and Maxims--"All Purpose" Public Figure--"Limited Purpose" Public Figure.
In the context of defamation actions, those who attain the status of public figure have, for the most part, assumed roles of especial prominence in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
**(Cite as: 30 Cal.App.4th 195)**

affairs of society. Some occupy positions of such persuasive power and influence that they are deemed and designated "all purpose" public figures. For a plaintiff to be deemed an "all purpose" public figure, there must be clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society. More commonly, public figures have thrust themselves to the forefront of particular public controversies to influence the resolution of the issues involved. This "limited purpose" or "vortex" public figure voluntarily injects himself or herself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. Unlike the "all purpose" public figure, the "limited purpose" public figure loses certain protection for his or her reputation only to the extent that the allegedly defamatory communication relates to his or her role in a public controversy. The designation of public figure may rest on either of these two alternative bases. In either event, they invite attention and comment.

(6)    Libel    and    Slander    §
50--Actions--Trial--Province of Court and Jury--Determination of Who Constitutes Public Figure.
The question whether a plaintiff in a defamation action is a public figure is to be determined by the court, not the jury. The trial court's decision is a mixed question of law and fact. The trial court must determine the predicate facts upon which it then concludes whether, as a matter of law, a plaintiff is or is not a public figure. When the appellate court is called upon to review the trial court's decision in this regard, its standard of review is whether, after an independent review of the entire record, substantial evidence supports the trial court's decision.

(7) Libel and Slander § 26--Privileged Communications--Matters    Concerning    Public    Figures--Determination of Who Constitutes Public Figure--Radio Station.
In a defamation action by an individual who was the owner, operator, and general manager of a radio station, against a competing radio station and others, arising from statements that were broadcast on the competing station's program, plaintiff's station

was a public figure for purposes of the lawsuit. The record demonstrated that plaintiff's station was an "all purpose" public figure by virtue of occupying a position of general fame and pervasive power and influence in the community in which the allegedly defamatory speech was broadcast. The station's control of the airwaves allowed it to reach a wide audience. It thrust itself into the public eye on *199 a daily basis, seeking public attention, and it had pervasive involvement in the affairs of society by selecting and presenting public affairs programs on a wide range of topics. Moreover, plaintiff's station was less vulnerable to injury from defamation because of its ability to resort to effective self-help through access to the media.

(8) Libel and Slander § 26--Privileged Communications--Matters of Public Concern--Plaintiff as Public Official or Public Figure--Media Defendant.
In a defamation action, when the speech is of public concern and the plaintiff is a public official or public figure, there is a constitutional requirement that the plaintiff surmount a much higher barrier before recovering damages from a media defendant than is raised by the common law.

COUNSEL

John S. Sargetis for Plaintiff and Appellant.

Hardy, Erich, Brown & Wilson and Bruce E. Salenko for Defendants and Respondents.

**SIMS, J.**

In this defamation action, plaintiff Edward R. Stolz II, doing business as KWOD 106.5 FM, appeals from a judgment upon a jury's verdict in favor of defendants KSFM 102 FM, Genesis Broadcasting Co., and Chris Collins. Plaintiff contends the trial court erred in (1) determining he is a public figure and the speech involved matters of public concern, (2) instructing the jury that to establish falsity of the allegedly defamatory statements the "gist" of the information must be false, (3) admitting negative evidence of plaintiff's reputation, and (4) failing to instruct the jury that certain statements were slanderous per se. Plaintiff also contends no sub-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30 Cal.App.4th 195                                                                                          Page 4
30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
**(Cite as: 30 Cal.App.4th 195)**

stantial evidence supports the defense verdict.

In the published portion of this opinion we conclude the trial court correctly ruled plaintiff was a public figure and the speech involved matters of public concern. In an unpublished portion of the opinion, we reject plaintiff's remaining contentions of error. We shall therefore affirm the judgment. *200

Factual and Procedural Background

Plaintiff is the owner, operator, and general manager of radio station KWOD 106.5 FM in Sacramento, licensed and regulated by the Federal Communications Commission (FCC).

On June 13, 1989, KWOD disc jockey Pat Garrett made derogatory remarks about homosexuals on the air. He began by saying his girlfriend had left him for someone named Bruce, a name which undoubtedly belonged to a "limp-wristed queer," a "faggot." Garrett encouraged listeners to call in during the broadcast with similar comments. One caller stated words to the effect that all homosexuals should be killed.

The broadcast generated a reaction in the Sacramento community. An article in the Sacramento News and Review reported that KWOD's broadcast had inflamed the homosexual community, which was planning a boycott of KWOD and its advertisers. Another radio station, KFBK, devoted a program to the incident. In response to complaints from members of the homosexual community, a mediator from the Sacramento Human Rights and Fair Housing Commission met with KWOD representatives, who after some resistance ultimately broadcast an apology.

On June 30, 1989, Sacramento radio station KSFM made the incident the subject of an on-the-air discussion about irresponsible radio broadcasting during KSFM's "Morning Zoo" program. KSFM employees Chris Collins and Mike Reynolds specifically referred to KWOD as the subject of their comments, took calls from listeners during the two-and-one-half-hour program, and encouraged listeners to contact the FCC to complain about KWOD.

One caller stated he had called KWOD after KWOD's broadcast to complain the derogatory remarks about homosexuals were comparable to racist remarks such as "nigger" or "jungle bunny," which certainly would not be uttered on the air. According to the caller, the KWOD disc jockey said he accepted the challenge and would utter such racial slurs on the air in the future. Although the KWOD disc jockey did not make racist remarks on the air, this call to KSFM generated the following comments on the air by KSFM employees, *related to the issue of race*:

1. "The radio station should be part of your life to educate you and it shouldn't, in fact, promote violence within you to go out and beat up ... people such as gays or *blacks* because they happen to be gay or *black*." (Italics added.) *201

2. "It's so bad when people hear on the radio 'yeah, you faggot, you queer, *you're nothing but a Nigger*.' " (Italics added.)

3. "Instead, a snot-nosed runty little punk who thinks his ego can run the radio station, goes on and calls people faggot and queers, *and calls black people Niggers and jungle bunnies*." (Italics added.)

4. "I don't think a[] []responsible act is for a manager of a radio station to allow a gentleman to call gay people faggots and queers and *to call black people niggers and jungle bunnies*." (Italics added.)

Toward the end of the Morning Zoo program, Collins also made the following comments on the air:

1. "[I]f you allow your station van to allegedly have underaged girls in it performing sex with members of your staff which allegedly has happened with other radio stations in town, then you are an irresponsible broadcaster no matter what it is."

2. "If yours is a station that has people with underaged girls screwing them in the back of the van."

The source of these references, as explained by Collins at trial, was a former KWOD employee,

30 Cal.App.4th 195                                                    Page 5
30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
(Cite as: 30 Cal.App.4th 195)

who in 1985 told Collins that while employed at KWOD he had on one occasion had sex in the KWOD van with underage high school girls.

In proceedings *in limine*, the trial court ruled that plaintiff is a public figure, thereby imposing upon plaintiff the burden to prove falsity of the allegedly defamatory communications and "actual malice," i.e., that defendants made the statements with knowledge or reckless disregard of their falsity. The trial court further found the speech involved matters of public concern, thereby imposing upon plaintiff the burden to prove falsity regardless of his status as a public figure. The trial court also ruled that the statements about sex with minors were slanderous per se, because they imputed criminal conduct, but left to the jury the question whether the race-related statements were slanderous per se, as alleged by plaintiff. Plaintiff's trial theory, as presented to the jury, was that all the statements were defamatory per se, such that injury to reputation was presumed and no actual damages needed to be shown.

Following a two-week jury trial, the jury returned a general verdict in favor of defendants. *202

Additional facts appear in our discussion.

### Discussion

I. *Public Figure and Issues of Public Concern*

(1a) Plaintiff contends the trial court erred in ruling that he is a public figure and that the speech involved matters of public concern. We disagree.

The trial court ruled plaintiff is both (1) an "all purpose" public figure and (2) a "limited purpose" public figure by reason of having injected himself into the particular public controversy giving rise to the defamation. As will appear, the effect of the ruling that plaintiff is a public figure was to impose upon plaintiff the burden to prove that the allegedly defamatory statements were false and that defendants made the statements with knowledge or reckless disregard of their falsity.

(2a) The trial court also ruled the allegedly defamatory speech involved matters of public concern.

This ruling independently imposed on plaintiff the burden to prove falsity of the statements, regardless whether plaintiff is a public figure or private figure. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 753, fn. 37 [257 Cal.Rptr. 708, 771 P.2d 406], citing *Philadelphia Newspapers, Inc.* v. *Hepps* (1986) 475 U.S. 767, 775 [89 L.Ed.2d 783, 792, 106 S.Ct. 1558].)

(3) Thus, in a defamation action the burden is normally on the defendant to prove the truth of the allegedly defamatory communications. (*Lipman v. Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 233 [11 Cal.Rptr. 97, 359 P.2d 465].) However, in accommodation of First Amendment considerations (which are implicated by state defamation laws), where the plaintiff is a public figure, the "public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation." (*Philadelphia Newspapers, Inc.* v. *Hepps, supra,* 475 U.S. at p. 775 [89 L.Ed.2d at p. 792]; *Brown v. Kelly Broadcasting Co., supra,* 48 Cal.3d at p. 753, fn. 37.) Additionally, "[i]f the person defamed is a public figure, he cannot recover unless he proves, by clear and convincing evidence [citation], that the libelous statement was made with '"actual malice"'-that is, with knowledge that it was false or with reckless disregard of whether it was false or not.' " (*Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 256 [208 Cal.Rptr. 137, 690 P.2d 610], citing *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706, 84 S.Ct. 710].)

(4) The rationale is twofold: "First, [] public figures are generally less vulnerable to injury from defamation because of their ability to resort to *203 effective 'self help.' Such persons ordinarily enjoy considerably greater access than private individuals to the media and other channels of communication. This access in turn enables them to counter criticism and to expose the fallacies of defamatory statements. [Citation.] Second, and more significantly, [] public figures are less deserving of protection than private persons because public figures [] have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concern-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03795-JW     Document 48     Filed 08/23/2007     Page 7 of 32

30 Cal.App.4th 195                                                      Page 6
30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
**(Cite as: 30 Cal.App.4th 195)**

ing them.' [Citations.]" (*Reader's Digest Assn. v. Superior Court, supra*, 37 Cal.3d at p. 253, citing *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 345 [41 L.Ed.2d 789, 808, 94 S.Ct. 2997].) Thus, public figures " 'can be said to have voluntarily exposed themselves to public scrutiny and must accept the consequences ....' " (*Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1289 [286 Cal.Rptr. 198].)

(5) "For the most part those who attain this status [of public figure] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." (*Gertz v. Robert Welch, Inc.*, 418 U.S. at p. 345 [41 L.Ed.2d at p. 808].) This category is designated "all purpose" public figure. (418 U.S. at p. 351 [41 L.Ed.2d at p. 812].) All-purpose public figurehead will not be lightly assumed; in order for a plaintiff to be deemed an all-purpose public figure, there must be "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society ...." (418 U.S. at p. 352 [41 L.Ed.2d at p. 812].)

"More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." (*Gertz v. Robert Welch, Inc., supra*, 418 U.S. at p. 345 [41 L.Ed.2d at p. 808].) This "limited purpose" or "vortex" public figure is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." (418 U.S. at p. 351 [41 L.Ed.2d at p. 812].) "Unlike the 'all purpose' public figure, the 'limited purpose' public figure loses certain protection for his reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy." (*Reader's Digest Assn. v. Superior Court, supra*, 37 Cal.3d at pp. 253-254.)

The designation of public figure may rest on either of these two alternative bases-all-purpose or limited-purpose. (*Gertz v. Robert Welch, Inc., supra*,

418 U.S. at p. 352 [41 L.Ed.2d at p. 812].) "In either event, they invite attention and comment." (*Id.* at p. 345 [41 L.Ed.2d at p. 808].)

(6) The question whether a plaintiff is a public figure is to be determined by the court, not the jury. (*204Denney v. Lawrence* (1994) 22 Cal.App.4th 927, 933 [27 Cal.Rptr.2d 556].) The trial court's decision is a "mixed question of law and fact. [The trial court] must determine the predicate facts upon which it then concludes whether, as a matter of law, a plaintiff is or is not a [] public figure. [Citation.] When the appellate court is called upon to review the trial court's decision in this regard, its standard of review is whether, after an independent review of the entire record, substantial evidence supports the trial court's decision. [Citation.]" (*Ibid.*; see also *McCoy v. Hearst Corp.* (1986) 42 Cal.3d 835, 842 [231 Cal.Rptr. 518, 727 P.2d 711].)

(1b) Here, plaintiff complains the trial court improperly made the public figure determination based upon argument rather than evidence. However, although the issue was determined *in limine* without presentation of evidence, our review looks to the entire record to see if substantial evidence supports the public figure determination. (*Denney v. Lawrence*, 22 Cal.App.4th at p. 933.)

(7) We will first discuss whether KWOD is a public figure. [FN1]

> FN1 A business entity may be the subject of defamation. (*Vegod Corp. v. American Broadcasting Companies, Inc.* (1979) 25 Cal.3d 763, 770 [160 Cal.Rptr. 97, 603 P.2d 14] [corporation].)

At trial plaintiff testified KWOD has been in operation since 1975 and is a 50,000-watt station, which is "the maximum power which is allowed by law in this region of the country." Plaintiff conceded KWOD is "well known to the public." Plaintiff testified he promoted KWOD in the mid-1980's with the slogan "the number one hit music station, KWOD." A decline in ratings since that time would not mean that people were no longer aware of the radio station. In 1993, the Sacramento News and

Review published an article identifying KWOD as "Sacramento's best radio station."

Additionally, in testifying at trial about KWOD's good reputation, plaintiff spoke of KWOD's pervasive power and influence on community affairs. Thus, he testified KWOD "is there for the purpose of entertaining and informing the public and, hopefully, committing to a degree of community service." He also stated: "Since the first day of operation, KWOD has been committed to a variety of good works in the community including participation in fund raisers for a variety of charitable organizations and foundations. [¶] Furthermore, we have developed and programmed large numbers of independently produced radio programs which have been tuned to meeting certain problems and needs within the community. [¶] Lastly, the radio station has been engaged in providing free services to literally, literally tens of thousands of community organizations, clubs, groups, since day one in publicizing their events and matters that they believe are of significance to their own members." *205

According to plaintiff, KWOD engages in much more public service programming than other radio stations. He gave examples of some of the issues addressed in KWOD's public service programming-youth suicides, causes and treatment of birth defects, lung ailments, the common cold, stress, consumer affairs, taxes, Sacramento light rail system, and an open forum on Sacramento transportation issues. "There were thousands" of such programs. Plaintiff also testified KWOD regularly participates in fund raising events for the March of Dimes, Sacramento SPCA, American Heart Association, and other organizations. According to plaintiff, the reason for involving the station with community service is that "this is the only independently owned and locally owned radio station in the entire community. As a local resident, this is a way of giving something back to the community. It is, in fact, a good proposition in order to maintain close contact and rapport with our audiences."

The allegedly defamatory communications were broadcast by a Sacramento radio station which competes in the same market as KWOD.

This record sufficiently demonstrates that KWOD is an all-purpose public figure by virtue of occupying a position of general fame and pervasive power and influence in the community in which the allegedly defamatory speech was broadcast. (*Waldbaum v. Fairchild Publications, Inc.* (D.C. Cir. 1980) 627 F.2d 1287, 1295-1296, fn. 22 [201 App. D.C. 301, 627 F.2d 1287] [nationwide fame is not required; question is whether plaintiff has achieved notoriety in community where he was defamed].) Thus, KWOD's control of the airwaves allows it to reach a wide audience. KWOD thrusts itself into the public eye on a daily basis, seeking public attention. KWOD has pervasive involvement in the affairs of society by selecting and presenting public affairs programs on a wide range of topics. Thus, KWOD has "voluntarily exposed [itself] to public scrutiny and must accept the consequences ...." (*Live Oak Publishing Co. v. Cohagan supra*, 234 Cal.App.3d at p. 1289.) Moreover, KWOD is less vulnerable to injury from defamation because of its ability to resort to effective self-help through access to the media. (*Reader's Digest Assn. v. Superior Court, supra*, 37 Cal.3d at p. 256 [access to media is a key factor in determining public figure status].) Indeed, KWOD not only has *access* to the media; it *is* a medium. [FN2]

> FN2 Defendants contend the fact that KWOD is subject to FCC regulation is another factor in assessing public figure status. (*Reliance Insurance Co. v. Barron's* (S.D.N.Y. 1977) 442 F.Supp. 1341, 1348].) However, *Blue Ridge Bank v. Veribanc, Inc.* (4th Cir. 1989) 866 F.2d 681, criticized *Reliance* and rejected the proposition that a business enterprise loses the protection of defamation law by being subject to government regulation in the public interest. (866 F.2d at p. 688, citing cases in fn. 11.) We find it unnecessary to rest our opinion on the matter of government regulation.

We conclude KWOD is an all-purpose public fig-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

30 Cal.App.4th 195
30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
(Cite as: 30 Cal.App.4th 195)

Page 8

ure. *206

(1c) This leaves the question whether plaintiff is a public figure as owner, operator, and general manager of KWOD. We conclude the answer is yes.

Thus, plaintiff brought this lawsuit in his own name "dba KWOD 106 FM," alleging he was and is "an individual conducting business as Radio Station KWOD 106 FM ...." The allegedly defamatory remarks referred to KWOD by name and only by extension to plaintiff as owner and operator of the radio station.

In *Live Oak Publishing Co. v. Cohagan, supra,* 234 Cal.App.3d 1277, we held a newspaper's managers were public figures for purposes of a slander suit. There, the newspaper published an article about a political candidate. A supporter of that candidate accused the newspaper and its managers of intentionally garbling the article to influence the outcome of the election, intentionally "crucifying" the candidate, and lying. (234 Cal.App.3d at pp. 1281-1282, 1287.) We determined both the newspaper and its managerial employees were public figures. (234 Cal.App.3d at pp. 1289-1290.)

"[A]n author, and especially a newspaper, often acts with the purpose of fostering public debate. ' "The Constitution specifically selected the press ... to play an important role in the discussion of public affairs.... " ' [Citations.] A newspaper is uniquely possessed of 'sufficient access to the means of counterargument to be able "to expose through discussion the falsehood and fallacies" of the defamatory statements. []' [Citations.]" (*Live Oak Publishing Co. v. Cohagan, supra,* 234 Cal.App.3d at pp. 1289-1290.)

As to the newspaper's managers, we said: "[T]hese managerial individuals [] operated the newspaper. The owner and publisher, general manager and editors of the Escalon Times are intimately involved in public political debate in their community and the community has a legitimate and substantial interest in their conduct regarding the operation of the newspaper. [Citation.] We do not believe these plaintiffs were 'more vulnerable to injury,' justify-

ing any special protection. [Citation.] They, too, are public figures." (*Live Oak Publishing Co. v. Cohagan, supra,* 234 Cal.App.3d at p. 1290.)

In *Live Oak Publishing Co.,* we did not specify whether the newspaper's managerial employees were all-purpose or limited-purpose public figures. However, we noted the community has a legitimate interest in their conduct "*regarding the operation of the newspaper.*" (234 Cal.App.3d at p. 1290, *207 italics added.) This language suggests the employees' public figure status might be limited to matters regarding the operation of the newspaper.

In this case, we have no occasion to determine whether plaintiff, as owner/operator of a radio station, might be deemed a public figure for all purposes. Thus, for example, we do not face a situation where plaintiff is accused of purely personal wrongful conduct, such as child abuse. Here, the offensive speech related directly to the operation and management of plaintiff's radio station. Thus, for present purposes, it is sufficient to conclude (and we do) that, at least with respect to matters directly related to the operation and management of his radio station, plaintiff is a limited-purpose public figure. We reach this conclusion for all the reasons, described above, that the radio station itself is a public figure. These reasons apply equally to plaintiff as the owner/operator of the station. (See *Live Oak Publishing Co. v. Cohagan, supra,* 234 Cal.App.3d at p. 1290.)

(2b) We also conclude the trial court did not err in determining the subject matter of the allegedly defamatory speech involved matters of public concern. As indicated, this ruling independently imposed upon plaintiff the burden to prove falsity of the statements.

(8) "When the speech is of public concern and the plaintiff is a public official or public figure, the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages from a media defendant than is raised by the common law." (*Philadelphia Newspapers, Inc. v. Hepps, supra,* 475 U.S. at p. 775 [89 L.Ed.2d at

30 Cal.App.4th 195                                                                                                      Page 9
30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 23 Media L. Rep. 1233
(Cite as: 30 Cal.App.4th 195)

p. 792].)

(2c) Plaintiff argues that at the time of defendants' broadcast, there was no public concern regarding plaintiff condoning racist remarks over the air or allowing sex with minors in the KWOD van. However, plaintiff takes too narrow a view. " '[W]hether ... speech addresses a matter of public concern must be determined by [the expression's] content, form, and context ... as revealed by the whole record.' " (*Dun & Bradstreet, Inc. v. Greenmoss Builders* (1985) 472 U.S. 749, 761 [86 L.Ed.2d 593, 604, 105 S.Ct. 2939].) Here, the matter of public concern was irresponsibility in radio broadcasting. That was the topic of defendant's two-and-one-half-hour program. The trial court indicated that almost every page of the Morning Zoo transcript contained a reference to responsibility in broadcasting. The conceded purpose of radio is to inform as well as entertain. The pervasive power and influence of radio reaches into homes and offices, schoolyards and street corners. Radio reaches large numbers of people and even children away from parental supervision. For these reasons, we believe responsibility in broadcasting is a matter of public concern. That some statements, such as the "sex *208 with minors in the van" remarks, do not directly implicate broadcasting does not detract from our conclusion. "Freedoms of expression require ' "breathing space." ' " (*Philadelphia Newspapers, Inc. v. Hepps, supra,* 475 U.S. at p. 772 [89 L.Ed.2d at p. 790].)

We conclude the trial court properly determined plaintiff is a public figure for purposes of this lawsuit and the speech at issue is of public concern.

II. -V. [FN*]
FN* See footnote, *ante,* page 195.

. . . . . . . . . . .
Disposition

The judgment is affirmed. Defendants shall recover their costs on appeal.

Puglia, P. J., and Sparks, J., concurred.

Appellant's petition for review by the Supeme

Court was denied February 16, 1995. *209

Cal.App.3.Dist.,1994.

Stolz v. KSFM 102 FM

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 28
## To Appendix to California State Authorities

Westlaw.

25 Cal.Rptr.3d 298                                                                     Page 1
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)

▷

Supreme Court of California
VARIAN MEDICAL SYSTEMS, INC., et al.,
Plaintiffs and Respondents,
v.
Michelangelo DELFINO et al., Defendants and Appellants.
No. S121400.

March 3, 2005.

**Background:** Former corporate employer and individual executives brought action alleging defamation, invasion of privacy, and conspiracy against former employees who were posting thousands of disparaging messages on Internet bulletin boards. The Superior Court, Santa Clara County, No. CV780187, Jack Komar and Ronald Kline, JJ., denied defendants' motions to strike complaint as strategic lawsuit against public participation (anti-SLAPP motions). Defendants appealed, and filed petition for writ of supersedeas seeking to stay further trial court proceedings pending appeal. The Court of Appeal summarily denied petition, the trial court proceeded to trial and entered judgment for plaintiffs in accordance with jury verdict, and the Court of Appeal dismissed as moot defendants' appeal from order denying their anti-SLAPP motions. Defendants appealed the judgment. The Court of Appeal affirmed as modified. The Supreme Court granted review, superseding the opinion of the Court of Appeal.

**Holdings:** The Supreme Court, Brown, J., held that:

(1) appeal from denial of anti-SLAPP motion automatically stays all further trial court proceedings on causes of action affected by motion, and

(2) trial court lacked subject matter jurisdiction during pendency of appeal, and thus judgment for plaintiffs was void.

Reversed and remanded.

George, C.J., filed concurring and dissenting opinion.

Opinion, 6 Cal.Rptr.3d 325, superseded.

West Headnotes

**[1] Appeal and Error** ⬅➝458(1)
30k458(1) Most Cited Cases
Purpose of statute providing that perfecting of appeal stays trial court proceedings on judgment or order appealed from or matters embraced or affected by appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided; the automatic stay prevents the trial court from rendering an appeal futile by altering the appealed judgment or order or by conducting other proceedings that may affect it. West's Ann.Cal.C.C.P. § 916(a).

**[2] Appeal and Error** ⬅➝460(2)
30k460(2) Most Cited Cases
Whether a matter is "embraced" or "affected" by a judgment or order, within the meaning of the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, depends on whether postjudgment or postorder proceedings on the matter would affect the "effectiveness" of the appeal; if so, the proceedings are stayed and, if not, the proceedings are permitted. West's Ann.Cal.C.C.P. § 916(a).

**[3] Appeal and Error** ⬅➝460(2)
30k460(2) Most Cited Cases
The fact that a postjudgment or postorder proceeding may render the appeal from such judgment or order moot is not, by itself, enough to establish that the proceeding affects the effectiveness of the appeal and should be stayed under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or
affected by the appeal; the trial court proceeding must directly or indirectly seek to enforce, vacate, or modify the appealed judgment or order, or the proceeding must substantially interfere with the appellate court's ability to conduct the appeal. West's

25 Cal.Rptr.3d 298                                                    Page 2

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531

**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

Ann.Cal.C.C.P. § 916(a).

**[4] Appeal and Error** ☞460(1)
30k460(1) Most Cited Cases
A trial court proceeding affects the effectiveness of an appeal, and thus is subject to a stay under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, if the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable. West's Ann.Cal.C.C.P. § 916(a).

**[5] Divorce** ☞284
134k284 Most Cited Cases
An appeal from the denial of a motion to vacate a spousal support order precludes the trial court from terminating its jurisdiction over spousal support, under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, because the termination of jurisdiction is irreconcilable with possible outcomes on appeal. West's Ann.Cal.C.C.P. § 916(a).

**[6] Mortgages** ☞575
266k575 Most Cited Cases
An appeal from an order declaring that the plaintiffs take nothing by way of deficiency after a judicial foreclosure precludes the trial court from setting aside the foreclosure, under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, because it would permit the plaintiffs to recover a deficiency judgment notwithstanding the appeal. West's Ann.Cal.C.C.P. § 916(a).

**[7] Appeal and Error** ☞485(1)
30k485(1) Most Cited Cases
An appeal from a judgment on the pleadings precludes a trial court from granting leave to amend the complaint, under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, because affirmance of the judgment is irreconcilable with an order

granting leave to amend. West's Ann.Cal.C.C.P. § 916(a).

**[8] Appeal and Error** ☞485(1)
30k485(1) Most Cited Cases
A trial court proceeding affects the effectiveness of an appeal in the case, and thus must be stayed under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, if the very purpose of the appeal is to avoid the need for that proceeding, in which case the proceeding itself is inherently inconsistent with a possible outcome on appeal. West's Ann.Cal.C.C.P. § 916(a).

**[9] Alternative Dispute Resolution** ☞213(1)
25Tk213(1) Most Cited Cases
    (Formerly 33k23.30 Arbitration)
An appeal from the denial of a motion to compel arbitration automatically stays all further trial court proceedings on the merits under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal. West's Ann.Cal.C.C.P. § 916(a).

**[10] Appeal and Error** ☞485(1)
30k485(1) Most Cited Cases
An appeal does not stay proceedings on ancillary or collateral matters in the trial court which do not affect the judgment or order on appeal, even though the proceedings may render the appeal moot. West's Ann.Cal.C.C.P. § 916(a).

**[11] Appeal and Error** ☞438
30k438 Most Cited Cases
A motion for a new trial is collateral to the judgment and may proceed despite an appeal from the judgment.

**[12] Appeal and Error** ☞442
30k442 Most Cited Cases
The language and history of the lis pendens statute establish that a proceeding to expunge a lis pendens is collateral to an appeal from the judgment in the underlying action, and thus such proceeding is not subject to an automatic stay under the statute

25 Cal.Rptr.3d 298                                                    Page 3
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal. West's Ann.Cal.C.C.P. § 916(a); § 409.1 (Repealed).

**[13] Appeal and Error** ☞485(1)

30k485(1) Most Cited Cases

A postjudgment or postorder proceeding is ancillary or collateral to the
appeal, and thus is not subject to an automatic stay under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal despite its potential effect on the appeal, if the proceeding could or would have occurred regardless of the outcome of the appeal. West's Ann.Cal.C.C.P. § 916(a).

**[14] Appeal and Error** ☞460(2)

30k460(2) Most Cited Cases

An appeal from the denial of a preliminary injunction does not stay further trial court proceedings on the merits under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal; because the injunction amounts to a mere preliminary or interlocutory order to keep the subject of litigation in status quo pending the determination of the action on its merits, the affirmance or reversal of its denial does not and cannot eliminate the need for additional proceedings on the merits. West's Ann.Cal.C.C.P. § 916(a).

**[15] Appeal and Error** ☞460(2)

30k460(2) Most Cited Cases

An appeal from an order denying a motion to disqualify counsel does not automatically stay further trial court proceedings on the merits, under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, because such proceedings would occur regardless of whether the reviewing court affirms or reverses the order. West's Ann.Cal.C.C.P. § 916(a).

**[16] Appeal and Error** ☞460(2)

30k460(2) Most Cited Cases

Appeal from denial of motion to strike complaint as strategic lawsuit against public participation (anti-SLAPP motion) automatically stays all further trial court proceedings on causes of action affected by motion, under statute providing that perfecting of appeal stays trial court proceedings on matters embraced or affected by the appeal; appellate reversal of order denying such motion could result in dismissal of action, which outcome would be irreconcilable with judgment for plaintiff, and proceeding to merits of affected causes of action would be inherently inconsistent with appeal, which would seek to avoid that very result. West's Ann.Cal.C.C.P. §§ 425.16(j), 916(a).

*See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2003) ¶ 7:91:10 (CACIVAPP CH. 7-B).*

**[17] Pleading** ☞358

302k358 Most Cited Cases

In determining whether an action should be stricken as a strategic lawsuit against public participation under the anti-SLAPP statute, the court must determine whether the defendant has made a threshold showing that the challenged cause of action arises from an act in furtherance of the right of petition or free speech in connection with a public issue, and then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. West's Ann.Cal.C.C.P. § 425.16(b)(1).

**[18] Pleading** ☞358

302k358 Most Cited Cases

**[18] Pleading** ☞360

302k360 Most Cited Cases

Because meritless strategic lawsuits against public participation (SLAPP suits) seek to deplete defendant's energy and drain his or her resources, the Legislature sought to prevent SLAPP suits by ending them early and without great cost to the SLAPP target, and so enacted the anti-SLAPP statute, which establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary judgment-like procedure at an early stage of the lit-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005 Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

igation, in order to limit the costs of defending against such a lawsuit. West's Ann.Cal.C.C.P. § 425.16.

**[19] Appeal and Error ☞460(1)**
30k460(1) Most Cited Cases
The effect of an appeal from the judgment is purely a matter of statutory regulation, to be determined by a construction of the statute under which the appeal is taken, and thus courts have consistently looked to such statutes and their history for guidance in determining whether an appeal effects an automatic stay of a trial court proceeding under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal. West's Ann.Cal.C.C.P. § 916(a).

**[20] Appeal and Error ☞103**
30k103 Most Cited Cases
The Legislature enacted a provision making an order granting or denying a motion to strike a complaint as a strategic lawsuit against public participation (anti-SLAPP motion) appealable because, without the ability to appeal, a SLAPP defendant would have to incur the cost of a lawsuit before having his or her right to free speech vindicated. West's Ann.Cal.C.C.P. § 425.16(j).

**[21] Appeal and Error ☞449**
30k449 Most Cited Cases
Trial court lacked subject matter jurisdiction over trial of suit by former corporate employer and individual executives against former employees who were posting thousands of disparaging messages on Internet bulletin boards, alleging defamation, invasion of privacy, and conspiracy, while appeal of trial court's denial of defendants' motions to strike complaint as strategic lawsuit against public participation (anti-SLAPP motions) was pending, and thus judgment for plaintiffs on jury verdict during pendency of appeal was void. West's Ann.Cal.C.C.P. §§ 425.16, 916(a).
*See 2 Witkin, Cal. Procedure (4th ed. 1997) Jurisdiction, § 319; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 228.*

**[22] Courts ☞4**
106k4 Most Cited Cases
The principle of matter jurisdiction relates to the inherent authority of the court involved to deal with the case or matter before it and thus, in the absence of subject matter jurisdiction, a trial court has no power to hear or determine the case.

**[23] Judgment ☞16**
228k16 Most Cited Cases
Any judgment or order rendered by a court lacking subject matter jurisdiction is void on its face.

**[24] Appeal and Error ☞436**
30k436 Most Cited Cases
Under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, the trial court is divested of subject matter jurisdiction over any matter embraced in or affected by the appeal during the pendency of that appeal. West's Ann.Cal.C.C.P. § 916(a).

**[25] Appeal and Error ☞440**
30k440 Most Cited Cases
Under statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal, any proceedings taken after the notice of appeal was filed, even subsequent proceedings curing any purported defect in the judgment or order appealed from, are a nullity. West's Ann.Cal.C.C.P. § 916(a).

**[26] Appeal and Error ☞436**
30k436 Most Cited Cases
The portion of the state constitution providing that a cause shall not be reversed except for errors resulting in a miscarriage of justice has no bearing on the divestment of a trial court's subject matter jurisdiction when proceedings in the trial court are subject to an automatic stay under the statute providing that the perfecting of an appeal stays trial court proceedings on the judgment or order appealed from or matters embraced or affected by the appeal; the statute as a matter of logic, policy, and overwhelm-

25 Cal.Rptr.3d 298                                                                                      Page 5
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)

ing precedent, divests a trial court of jurisdiction of the subject matter on appeal, and the constitutional provision cannot reconfer such jurisdiction. West's Ann.Cal. Const. Art. 6, § 13; West's Ann.Cal.C.C.P. § 916(a).

[27] Courts ⬤══89
106k89 Most Cited Cases
Where numerous precedents applying authoritative, settled statutory construction, which has been central to the analysis and holdings of these decisions, exist and the Legislature has done nothing, the principles underlying the doctrine of stare decisis apply with special force and it would be inappropriate to overrule or disapprove these precedents.

[28] Appeal and Error ⬤══1166
30k1166 Most Cited Cases
When there is an appeal from a void judgment, the reviewing court's jurisdiction is limited to reversing the trial court's void acts.

[29] Mandamus ⬤══187.9(1)
250k187.9(1) Most Cited Cases
An appellate court must judge a writ petition on its procedural and substantive merits if the petition was the only authorized mode of appellate review, but the appellate court need not do so if the ruling could also be reviewed on appeal from the judgment ultimately entered in the action.
***302 Horvitz & Levy, Jon B. Eisenberg, Jeremy B. Rosen, Encino;   Law Offices of Randall M. Widmann, Randall M. Widmann, Palo Alto; and Glynn P. Falcon, for Defendants and Appellants.

Cyrus Sanai, Los Angeles, as Amicus Curiae on behalf of Defendants and Appellants.

Levy, Ram & Olson, Karl Olson, San Francisco; Karlene W. Goller, Los Angeles; Thomas W. Newton; Harold W. Fuson, Jr., La Jolla; Stephen J. Burns, Sacramento; Jonathan Donnellan; Davis Wright Tremaine, Duffy Carolan, San Francisco; Levine Sullivan Koch & Schulz, James E. Grossberg, Palm Springs; Riegels Campos & Kenyon and Charity Kenyon, Sacramento, for California Newspaper Publishers Association, Los Angeles Times, Hearst Communications, Inc., The Copley Press,

Inc., Ang Newspapers, Inc., McClatchy Newspapers, Inc., Press-Enterprise,***303 Inc., Freedom Communications, Inc., and McNaughton Newspapers as Amici Curiae on behalf of Defendants and Appellants.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Tom Greene, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, Edward G. Weil and Susan S. Fiering, Deputy Attorneys General, for Bill Lockyer, Attorney General of the State of California as Amicus Curiae on behalf of Defendants and Appellants.

Mark Goldowitz, Berkeley; Margaret C. Crosby, Los Angeles; Peter Eliasberg, Los Angeles; and Jordan Budd, for California Anti-SLAPP Project, American Civil Liberties Union Foundation of Northern California, ACLU Foundation of Southern California and American Civil Liberties Union Foundation of San Diego and Imperial Counties as Amici Curiae on behalf of Defendants and Appellants.

Orrick, Herrington & Sutcliffe, Lynne C. Hermle, Matthew H. Poppe, Menlo Park; Law Offices of Gerald Z. Marer, Gerald Z. Marer; Farella, Braun & Martel, Douglas R. Young, San Francisco; Pillsbury Winthrop, Thomas V. Loran III, Craig E. Stewart and Renée A. Jansen, San Francisco, for Plaintiffs and Respondents.

BROWN, J.

*186 **962 Under Code of Civil Procedure section 425.16, subdivision (b)(1), [FN1] a defendant may move to strike any cause of action " arising from any act ... in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue...." If the plaintiff cannot demonstrate a "probability" of prevailing on that cause of action (§ 425.16, subd. (b)(1)), then the trial court must strike the cause of action and award the defendant attorney's fees and costs (§ 425.16, subd. (c)). In 1999, the Legislature made the denial of a special motion to strike under section 425.16 appealable.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                    Page 6
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

We now determine whether the perfecting of an appeal from the denial of a special motion to strike automatically stays all further trial court proceedings on the merits upon the causes of action affected by the motion. We conclude that it does.

> FN1. All further undesignated statutory references are to the Code of Civil Procedure unless otherwise indicated.

## I.

Plaintiffs and respondents Varian Medical Systems, Inc. (Varian Medical) and Varian Semiconductor Equipment Associates, Inc. (Varian Semiconductor) are publicly traded companies. Varian Medical manufactures a variety of medical products, and Varian Semiconductor manufactures equipment for use in the semiconductor chip manufacturing process. For purposes of this action, Varian Medical and Varian Semiconductor are the successors in interest to the **\*187** original plaintiff, Varian Associates, Inc. (Varian Associates). [FN2] At the time of trial, plaintiff and respondent George Zdasiuk was a vice-president of Varian Medical, and plaintiff and respondent Susan **\*\*963** Felch was a director at a Varian Semiconductor research center.

> FN2. In 1999, Varian Associates reorganized into three independent public companies: Varian Medical, Varian Semiconductor, and Varian, Inc.

Defendants and appellants Michelangelo Delfino and Mary Day are former employees of Varian Associates. Zdasiuk fired Delfino in October 1998 for harassing Felch and other coworkers. Two months later, Day resigned in sympathy.

**\*\*\*304** After leaving Varian Associates, Delfino and Day began posting numerous derogatory messages about plaintiffs on the Internet. In response, plaintiffs filed the instant action against Delfino in February 1999, alleging numerous federal and state causes of action [FN3] and seeking injunctive and monetary relief. Delfino then removed the action to federal court. In federal court, plaintiffs added Day as a defendant in July 1999. In April 2000, the federal court granted defendants partial summary judgment on plaintiffs' federal claim and remanded the action back to the superior court.

> FN3. The original complaint alleged the following causes of action: (1) unfair competition (Bus. & Prof.Code. § 17200 et seq.); (2) false advertising (Bus. & Prof.Code. § 17500 et seq.); (3) libel; (4) slander per se; (5) violation of the Lanham Act (15 U.S.C. § 1125a); (6) violation of Penal Code section 637.1; (7) invasion of privacy-- false light; (8) invasion of privacy--appropriation of name; and (9) conspiracy.

On remand, plaintiffs filed a third amended complaint in August 2000, alleging seven causes of action predicated on defendants' Internet postings about plaintiffs. [FN4] Each defendant then filed, for the first time, a special motion to strike plaintiffs' complaint as a strategic lawsuit against public participation (SLAPP) under section 425.16 (the anti-SLAPP motions). The trial court denied the motions, finding that: (1) the motions were untimely; (2) plaintiffs' causes of action did "not arise from 'any act ... in furtherance of [the] right of petition or free speech under the United States or California Constitution in connection with a public issue' "; and (3) plaintiffs demonstrated a "probability they will prevail on their claims."

> FN4. These causes of action included: (1) unfair competition (Bus. & Prof.Code. § 17200 et seq.); (2) false advertising (Bus. & Prof.Code. § 17500 et seq.); (3) libel; (4) invasion of privacy--false light; (5) invasion of privacy--appropriation of name; (6) conspiracy; and (7) breach of contract.

Defendants appealed. Delfino also filed an ex parte application with the trial court and a petition for writ of supersedeas with the Court of Appeal, seeking to stay further trial court proceedings pending resolution of the **\*188** appeal pursuant to section 916. The trial court denied the application, and the Court of Appeal summarily denied the petition. We also denied Delfino's petition for review.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                                    Page 7
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

After a trial, the jury found defendants liable for libel, invasion of privacy (appropriation of name), breach of contract, and conspiracy, and awarded plaintiffs a total of $425,000 in compensatory damages. The jury further found that defendants acted with malice, fraud, or oppression, and awarded Zdasiuk and Felch $350,000 in punitive damages. The trial court also issued a permanent injunction against defendants.

Following the entry of judgment, the Court of Appeal dismissed as moot defendants' appeal from the order denying their anti-SLAPP motions. Soon after, defendants appealed the judgment. The Court of Appeal modified the injunction but affirmed in all other respects. In doing so, the court disagreed with _Mattel, Inc. v. Luce, Forward, Hamilton & Scripps_ (2002) 99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794 (_Mattel_ ), and held "that Code of Civil Procedure section 916 did not automatically stay trial of the lawsuit ... and that therefore the trial court did not lack jurisdiction to conduct the trial." According to the court, the denial of an anti-SLAPP motion **964 is a matter separate from the merits of the lawsuit itself, and the subsequent trial had " no direct impact on the appeal from the order" denying the ***305 motion. Thus, the courts in this case had the _discretion_ to grant a stay but did not have to do so. Acknowledging that courts may erroneously refuse to grant a stay despite a meritorious appeal, the court nonetheless concluded "that the benefit of preventing such rare mistakes by automatically staying all trials pending an appeal from an order denying an anti-SLAPP motion is outweighed by the danger of encouraging meritless anti-SLAPP motions and appeals as trial strategy to simply delay the trial of meritorious cases."

We granted review solely on the issue of whether "an appeal from the denial of a special motion to strike under the anti-SLAPP statute (§ 425.16) effects an automatic stay of the trial court proceedings."

## II.

Defendants contend an appeal from the denial of an anti-SLAPP motion automatically stays all further

trial court proceedings on the merits. Plaintiffs counter that such an appeal does not effect an automatic stay of any trial court proceedings on the merits because those proceedings would have no effect on the appeal. According to plaintiffs, courts have the discretion to stay further proceedings but are not compelled to do so. As explained below, we agree with defendants.

[1] *189 Subject to certain exceptions not relevant here, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." [FN5] (§ 916, subd. (a).) The purpose of the automatic stay provision of section 916, subdivision (a) "is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it." (_Elsea v. Saberi_ (1992) 4 Cal.App.4th 625, 629, 5 Cal.Rptr.2d 742 (_Elsea_ ).)

> FN5. Section 916, subdivision (a) states in full: "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

[2] To accomplish this purpose, section 916, subdivision (a) stays all further trial court proceedings "upon the matters embraced" in or "affected" by the appeal. In determining whether a proceeding is embraced in or affected by the appeal, we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results. "[W]hether a matter is 'embraced' in or 'affected' by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

a judgment [or order] within the meaning of [section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the 'effectiveness' of the appeal." (_In re Marriage of Horowitz_ (1984) 159 Cal.App.3d 377, 381, 205 Cal.Rptr. 880 (_Horowitz_ ).) "If so, the proceedings are stayed; if not, the proceedings are permitted." (_Betz v. Pankow_ (1993) 16 Cal.App.4th 931, 938, 20 Cal.Rptr.2d 841 (_Betz_ ).)

[3] The fact that the postjudgment or postorder proceeding may render the appeal moot is not, by itself, enough to establish that the proceeding affects the effectiveness of the appeal and should be ***306 stayed under section 916. Rather, something more is needed. For example, the trial court proceeding must directly or indirectly seek to "enforce, vacate or modify [the] appealed judgment or order." [FN6] **965(_Elsea, supra,_ 4 Cal.App.4th at p. 629, 5 Cal.Rptr.2d 742 ["The trial court's power to enforce, vacate or modify an appealed judgment or order is *190 suspended while the appeal is pending"].) Or the proceeding must substantially interfere with the appellate court's ability to conduct the appeal. (See, e.g., _Hollaway v. Scripps Memorial Hosp._ (1980) 111 Cal.App.3d 719, 723-724, 168 Cal.Rptr. 782 [holding that a pending appeal precludes the trial court from issuing an order relieving the parents as plaintiff's guardians and appointing new counsel for plaintiff because the order interferes with the conduct of the appeal].)

FN6. (See, e.g., _Lerner v. Superior Court_ (1952) 38 Cal.2d 676, 684, 242 P.2d 321 [holding that an appeal from a custody order precludes the trial court from, as a practical matter, enforcing the appealed order by permitting the father to send the child to school in New Jersey]; _Sacks v. Superior Court_ (1948) 31 Cal.2d 537, 540, 190 P.2d 602 [holding that an appeal precludes the trial court from retrying the issues on appeal]; _Williams v. Wells Fargo Bank & Union Trust Co._ (1941) 17 Cal.2d 104, 107, 109 P.2d 649 [holding that an appeal precludes the trial court from executing the appealed order]; _Statler v. Su-_

_perior Court_ (1895) 107 Cal. 536, 539, 40 P. 949 (_Statler_ ) [same]; _Betz, supra,_ 16 Cal.App.4th at pp. 938-940, 20 Cal.Rptr.2d 841 [holding that an appeal precludes the trial court from vacating the appealed judgment or order]; _Elsea, supra,_ 4 Cal.App.4th at p. 629, 5 Cal.Rptr.2d 742 [same]; _Socialist Workers etc. Committee v. Brown_ (1975) 53 Cal.App.3d 879, 890-891, 125 Cal.Rptr. 915 [holding that an appeal precludes the trial court from issuing a subsequent order that effectively enforces the appealed order]; _Environmental Coalition of Orange County, Inc. v. Avco Community Developers, Inc._ (1974) 40 Cal.App.3d 513, 525, 115 Cal.Rptr. 59 [holding that an appeal from a preliminary injunction precludes the trial court from modifying or dissolving the injunction]; _Dallman v. Dallman_ (1958) 164 Cal.App.2d 815, 817-818, 331 P.2d 245 [holding that an appeal precludes the trial court from modifying the appealed order]; _Agnew v. Superior Court_ (1953) 118 Cal.App.2d 230, 234, 257 P.2d 661 (_Agnew_ ) [holding that an appeal precludes the trial court from enforcing the appealed order].)

[4][5][6][7] A trial court proceeding also affects the effectiveness of an appeal if the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable. Thus, an appeal from the denial of a motion to vacate a spousal support order precludes the trial court from terminating its jurisdiction over spousal support because the termination of jurisdiction is irreconcilable with possible outcomes on appeal. (See _In re Marriage of Varner_ (1998) 68 Cal.App.4th 932, 937, 80 Cal.Rptr.2d 628.) Similarly, an appeal from an order declaring that the plaintiffs take nothing by way of deficiency after a judicial foreclosure precludes the trial court from setting aside the foreclosure, because it would permit the plaintiffs to recover a deficiency judgment notwithstanding the appeal. (See _Nelson v. Orosco_ (1981) 117 Cal.App.3d 73, 80, 172 Cal.Rptr. 457.) And an appeal from a judgment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531

**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

on the pleadings precludes a trial court from granting leave to amend the complaint because affirmance of the judgment is irreconcilable with an order granting leave to amend. (*Olson v. Superior Court* (1969) 274 Cal.App.2d 311, 314, 79 Cal.Rptr. 136.)

[8][9] Finally, a proceeding affects the effectiveness of the appeal if the very purpose of the appeal is to avoid the need for that proceeding. In that situation, the proceeding itself is inherently inconsistent with a possible outcome on appeal and must therefore be stayed under section 916, subdivision (a). Thus, an appeal from the denial of a motion to compel arbitration ***307 automatically stays all further trial court proceedings on the merits. (See *Prudential-Bache Securities, Inc. v. Superior Court* (1988) 201 Cal.App.3d 924, 925, 247 Cal.Rptr. 477 (*Prudential-Bache* ).)

[10][11][12] *191 By contrast, an appeal does not stay proceedings on "ancillary or collateral matters which do not affect the judgment [or order] on appeal" even though the proceedings may render the appeal moot. (*Betz, supra,* 16 Cal.App.4th at p. 938, 20 Cal.Rptr.2d 841.) For example, the Legislature has established that certain proceedings, by law, are collateral to the merits of an appeal despite their potential effect on the appeal. Thus, the Legislature, through its enactments, has established that a motion for a new trial is collateral to the judgment and may proceed despite an appeal from the judgment. (See *In re Estate of Waters* (1919) 181 Cal. 584, 587, 185 P. 951 (*Waters* ); see also *Neff v. Ernst* (1957) 48 Cal.2d 628, 634, 311 P.2d 849.) And the language and history of the lis pendens statute establish that a proceeding to expunge a lis pendens is collateral to an appeal from the judgment in the underlying action. (See *United Professional Planning, Inc. v. Superior Court* (1970) 9 Cal.App.3d 377, 383-386, 88 Cal.Rptr. 551 (*United Professional* ).)

[13][14][15] A postjudgment or postorder proceeding is also ancillary or collateral to the appeal despite its potential effect on the appeal, if the proceeding could or would have occurred regardless of the outcome of the appeal. (See *Horowitz, supra,* 159 Cal.App.3d at pp. 382-383, 205 Cal.Rptr. 880

[finding no automatic stay because the result of the proceeding could have been achieved through other procedures regardless of the outcome of the appeal].) Thus, an appeal from the denial of a preliminary injunction does not stay further trial court proceedings on the merits. Because the injunction "amounts to a mere preliminary or interlocutory order to keep the subject of litigation *in status quo* pending the determination of the **966 action on its merits" (*Gray v. Bybee* (1943) 60 Cal.App.2d 564, 571, 141 P.2d 32 (*Gray* )), the affirmance or reversal of its denial does not and cannot eliminate the need for additional proceedings on the merits. Section 916 therefore does not automatically stay such proceedings. (See *Major v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618, 623, 9 Cal.Rptr.2d 237; *Gray,* at p. 571, 141 P.2d 32.) Likewise, an appeal from an order denying a motion to disqualify counsel does not automatically stay further trial court proceedings on the merits because such proceedings would occur regardless of whether the reviewing court affirms or reverses the order. (See *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 453-455, 111 Cal.Rptr.2d 842 (*Reed* ).)

[16] With these principles in mind, we now consider whether trial court proceedings on the merits following an appeal from the denial of an anti-SLAPP motion are embraced in or affected by that appeal. We conclude they are, and such proceedings are therefore stayed under section 916, subdivision (a).

*192 We begin with the appealed order--the denial of an anti-SLAPP motion under section 425.16. Section 425.16, subdivision (b)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[17] Section 425.16, subdivision (b)(1) establishes

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                              Page 10
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)

"a two-step process for determining" ***308 whether an action should be stricken as a SLAPP. *(Navellier v. Sletten* (2002) 29 Cal.4th 82, 88, 124 Cal.Rptr.2d 530, 52 P.3d 703.) First, the court must determine "whether the defendant has made a threshold showing that the challenged cause of action" arises from an act in furtherance of the right of petition or free speech in connection with a public issue. *(Ibid.)* Second, the court must "determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *(Ibid.)* If the defendant makes a threshold showing that the cause of action arises from an act in furtherance of the right of petition or free speech in connection with a public issue and the plaintiff fails to demonstrate a probability of prevailing, then the court must strike the cause of action (§ 425.16, subd. (b)(1)) and award the defendant "attorney's fees and costs" (§ 425.16, subd. (c)). Section 425.16, subdivision (j) then provides that "[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1."

[18] The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" *(Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1074, 112 Cal.Rptr.2d 397), the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target' " *(Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65, 124 Cal.Rptr.2d 507, 52 P.3d 685). Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary judgment-like procedure at an early stage of the litigation. (See *Simmons,* at p. 1073, 112 Cal.Rptr.2d 397.) In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit. (See *Equilon Enterprises,* at p. 65, 124 Cal.Rptr.2d 507, 52 P.3d 685 [noting that the "short time frame for anti-SLAPP filings and hearings" and the "stay of discovery" pending resolution of the motion evidences the Legislature's in-

tent to minimize the litigation costs of SLAPP targets].)

*193 Because granting a motion to strike under section 425.16 results in the dismissal of a cause of action on the merits (see *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, 123 Cal.Rptr.2d 19, 50 P.3d 733 [holding that the court should grant an anti-SLAPP motion "if, as a matter of law, the defendant's evidence supporting the motion **967 defeats the plaintiff's attempt to establish evidentiary support for the claim"] ), an appellate reversal of an order denying such a motion may similarly result in a dismissal. Such an appellate outcome is irreconcilable with a judgment for the plaintiff on that cause of action following a proceeding on the merits. Moreover, such a proceeding is inherently inconsistent with the appeal because the appeal seeks to avoid that very proceeding. Indeed, "[t]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." *(People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317, 9 Cal.Rptr.3d 844 *(Brar* ); see also *Fabre v. Walton* (2002) 436 Mass. 517, 781 N.E.2d 780, 784 ["The protections afforded by the anti-SLAPP statute against the harassment and burdens of litigation are in large measure lost if the petitioner is forced to litigate a case to its conclusion before obtaining a definitive judgment through the appellate process"].) In this respect, an appeal from the denial of an anti-SLAPP motion is no ***309 different than an appeal from the denial of a motion to compel arbitration. (See *Prudential-Bache, supra,* 201 Cal.App.3d at p. 925, 247 Cal.Rptr. 477.)

In reaching this conclusion, we reject plaintiffs' analogy of an appeal from the denial of an anti-SLAPP motion to an appeal from the denial of a preliminary injunction (see *Gray, supra,* 60 Cal.App.2d at p. 571, 141 P.2d 32) or a motion to disqualify counsel (see *Reed, supra,* 92 Cal.App.4th at pp. 453-455, 111 Cal.Rptr.2d 842). Neither a motion for preliminary injunction nor a motion to disqualify counsel resolves the merits of a cause of action. Thus, the granting or denying of these motions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                                           Page 11
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

is reconcilable with any subsequent judgment on the merits. By contrast, an anti-SLAPP motion goes "to the merits of the issues involved in the main action" (*Union Oil Co. v. Reconstruction Oil Co.* (1935) 4 Cal.2d 541, 542-545, 51 P.2d 81) to the extent it addresses the "probability ... the plaintiff will prevail on the claim" (§ 425.16, subd. (b)(1)). The granting of an anti-SLAPP motion is therefore irreconcilable with a judgment in favor of the plaintiff. Moreover, unlike a motion to strike under section 425.16, both a motion for a preliminary injunction and a motion to disqualify counsel contemplate further proceedings on the merits regardless of how the trial court resolves these motions. Thus, for purposes of section 916, an appeal from the denial of an anti-SLAPP motion is not analogous to an appeal from the denial of a preliminary injunction or an appeal from the denial of a motion to disqualify counsel.

[19] The legislative history of the anti-SLAPP statutes makes this clear. Contrary to plaintiffs' assertions, this history is undoubtedly relevant to our determination of the effect of an appeal from the denial of an anti-SLAPP *194 motion on further trial court proceedings on the merits. " ' "The effect of an appeal from the judgment ... is purely a matter of statutory regulation, to be determined by a construction of the statute under which the appeal is taken, and by the terms of which, when clear and ambiguous, we are concluded." ' " (*In re Lukasik* (1951) 108 Cal.App.2d 438, 444, 239 P.2d 492 (*Lukasik* ), quoting *Vosburg v. Vosburg* (1902) 137 Cal. 493, 497, 70 P. 473.) Thus, our courts have consistently looked to such statutes and their history for guidance in determining whether an appeal effects an automatic stay of a trial court proceeding. [FN7]

> FN7. (See, e.g., *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1091, 86 Cal.Rptr.2d 602, 979 P.2d 963 [Code Civ. Proc., § 206]; *Waters, supra,* 181 Cal. at p. 587, 185 P. 951 [Code Civ. Proc., former § 963]; *People v. Schulz* (1992) 5 Cal.App.4th 563, 571, 7 Cal.Rptr.2d 269 [Pen.Code, § 1160]; *United Professional,*

*supra,* 9 Cal.App.3d at pp. 384-385, 88 Cal.Rptr. 551 [Code Civ. Proc., former § 409.1].)

[20] The history of the anti-SLAPP statutes confirms our conclusion that section 916 stays all further proceedings on the merits during the pendency of an appeal from the denial of an anti-SLAPP motion. In 1999, the Legislature enacted section 425.16, subdivision (j)--which makes "[a]n order granting or denying a special motion to strike ... appealable under Section 904.1"--as part of Assembly Bill No. 1675 (1999-2000 Reg. Sess.). The Legislature found it necessary to enact subdivision (j) because, without the ability to appeal, a SLAPP "defendant will **968 have to incur the cost of a lawsuit before having his or her right to free speech vindicated." (Assem. Com. on Judiciary, conc. in Sen. amends. on Assem. Bill. No. 1675 (1999-2000 Reg. Sess.) as amended July 12, 1999, p. 2.)

As originally introduced, Assembly Bill No. 1675 provided that "[a]n order denying ***310 a special motion to strike shall be appealable under Section 904.1. *Upon the filing of such an appeal, all proceedings on any cause of action which is the subject of the appeal shall be stayed unless the plaintiff demonstrates to the appellate court probable success on the appeal and that the plaintiff will otherwise sustain irreparable injury.*" (Assem. Bill No. 1675 (1999-2000 Reg. Sess.) as introduced Mar. 16, 1999, p. 2, italics added.) The Legislature later deleted the conditional stay language italicized above. (See Assem. Bill No. 1675 (1999-2000 Reg. Sess.) as amended July 6, 1999, p. 2.) In analyzing the proposed deletion, the Senate Committee on the Judiciary reported that "the perfecting of an appeal [from an order granting or denying a special motion to strike] stays proceedings in the trial court." (Sen. Com. on Judiciary, analysis of Assem. Bill No. 1675 (1999-2000 Reg. Sess.) as amended May 28, 1999, p. 3.) Following the deletion, the Senate Rules Committee echoed this understanding in a subsequent analysis of Assembly *195 Bill No. 1675. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1675 (1999-2000 Reg. Sess.) as amended July 12,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                    Page 12
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005 Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

1999, p. 3 ["This bill would provide that an order granting or denying a special motion to strike shall be immediately appealable, and therefore, the perfecting of the appeal would stay proceedings in the trial court"].) Thus, the Legislature, in enacting section 425.16, subdivision (j), clearly intended that the perfecting of an appeal from the denial of an anti-SLAPP motion stay further trial court proceedings on the merits.

The Legislature reiterated this intent in 2003 when it enacted section 425.17--which exempted certain types of actions from the special motion to strike procedure established in section 425.16. (See *Eu v. Chacon* (1976) 16 Cal.3d 465, 470, 128 Cal.Rptr. 1, 546 P.2d 289 ["Although a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed"].) In creating this exemption, the Legislature expressly made the denial of an anti-SLAPP motion based on the section 425.17 exemption not appealable. (§ 425.17, subd. (e).) The Legislature did so because "[e]xisting law provides that an order denying a special motion to strike is appealable to the court of appeal" and "that the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended July 8, 2003, p. 4.) Thus, the Legislature found it necessary to render the "*stay* and appeals provisions inapplicable when a trial court denies a special motion to strike on the grounds that a cause of action is exempt" under section 425.17. (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Sen. Bill No. 515 (2003-2004 Reg. Sess.) as amended July 8, 2003, p. 4, italics added.) In doing so, the Legislature confirmed its intent that an appeal from the denial of an anti-SLAPP motion on non-section-425.17 grounds automatically stays further trial court proceedings on the merits. Because we must follow the Legislature's intent, we agree with *Mattel, supra, 99 Cal.App.4th 1179, 121*

*Cal.Rptr.2d 794,* and hold that an appeal from the denial of an anti-SLAPP motion automatically stays further trial court proceedings on the merits. [FN8]

> FN8. Such an appeal does not, however, stay proceedings relating to causes of action not affected by the motion.

***311** In light of our holding today, some anti-SLAPP appeals will undoubtedly delay litigation even though the appeal is frivolous or insubstantial. As the Court of Appeal observed and plaintiffs contend, such a result may encourage defendants to "misuse the [anti-SLAPP] motions to delay meritorious litigation or for other purely strategic purposes." **969** And " the benefit of preventing" *196** the rare situation where a trial court erroneously denies an anti-SLAPP motion and refuses to automatically stay "all trials pending an appeal ... is [arguably] outweighed by the danger of encouraging meritless anti-SLAPP motions and appeals as a trial strategy to simply delay the trial of meritorious cases."

Such an assessment is, however, a question for the Legislature, and the Legislature has already answered it. Thus, we can only minimize this danger by encouraging our courts to resolve these motions and appeals as expeditiously as possible. To this end, reviewing courts should dismiss frivolous appeals as soon as practicable and do everything in their power to " 'prevent ... frustration of the relief granted.' (Cal. Rules of Court, rule 24(b)(3).)" *(Brar, supra,* 115 Cal.App.4th at p. 1320, 9 Cal.Rptr.3d 844.) And trial courts should not hesitate to award attorney's fees and costs to prevailing plaintiffs if the "special motion to strike is frivolous or is solely intended to cause unnecessary delay." (§ 425.16, subd. (c).) Hopefully, these measures will somewhat reduce the risk of abuse.

### III.

[21] We now turn to the judgment in this case. Despite defendants' appeal from the denial of their anti-SLAPP motions, the trial court held a trial and entered a judgment for plaintiffs. The trial, however, should have been automatically stayed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                   Page 13

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

under section 916, subdivision (a). (See *ante*, 25 Cal.Rptr.3d at pp. 307-311, 106 P.3d at pp. 966-969.) Consequently, we find that the trial court lacked subject matter jurisdiction over the matters on trial and that the resulting judgment is therefore void.

[22][23] "The principle of 'subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it." (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087, 56 Cal.Rptr.2d 386.) Thus, in the absence of subject matter jurisdiction, a trial court has no power "to hear or determine [the] case." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288, 109 P.2d 942 (*Abelleira* ).) And any judgment or order rendered by a court lacking subject matter jurisdiction is "void on its face...." (*Rochin v. Pat Johnson Manufacturing* (1998) 67 Cal.App.4th 1228, 1239, 79 Cal.Rptr.2d 719 (*Rochin* ).)

[24][25] Under section 916, "the trial court is divested of" subject matter jurisdiction over any matter embraced in or affected by the appeal during the *197 pendency of that appeal. (*Betz, supra,* 16 Cal.App.4th at p. 938, 20 Cal.Rptr.2d 841.) "The effect of an appeal is to remove the subject matter of the order from the jurisdiction of the lower court...." (*Statler, supra,* 107 Cal. at p. 539, 40 P. 949.) [FN9] Thus, "that court is without **970 power ***312 to proceed further as to any matter embraced therein until the appeal is determined." (*Ibid.;* see also 2 Witkin, Cal. Procedure (4th ed. 1997) Jurisdiction, § 319, p. 893 ["when the cause is taken over by a reviewing court on appeal or other proceeding in review, the trial court is divested of jurisdiction of the subject matter during the period of review, and has no power to vacate or modify the judgment or otherwise to deal with the cause"].) And any "proceedings taken after the notice of appeal was filed are a nullity." (*Davis v. Thayer, supra,* 113 Cal.App.3d at p. 912, 170 Cal.Rptr. 328; see also *Kinard v. Jordan* (1917) 175 Cal. 13, 16, 164 P. 894 [finding that the lower court order "must be deemed a nullity"].) This is true even if the subsequent proceedings cure any purported defect in

the judgment or order appealed from. (See *Sacks v. Superior Court, supra,* 31 Cal.2d at p. 541, 190 P.2d 602 [" 'after the appeal was perfected, the lower court lost jurisdiction of the cause and could take no step to defeat appellants of the right to prosecute *198 their appeal with effect.... A recognition of any other rule would lead to uncertainty and confusion in litigation, and in effect would enable the lower court to review its own proceedings' "]; *People v. Sonoqui* (1934) 1 Cal.2d 364, 367, 35 P.2d 123 [reversing a judgment of conviction because the trial occurred before the remittitur issued].)

FN9. (See also, e.g., *People v. Cunningham* (2001) 25 Cal.4th 926, 1044, 108 Cal.Rptr.2d 291, 25 P.3d 519 [" 'an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court' "]; *Gantner v. Gantner* (1952) 38 Cal.2d 691, 692, 242 P.2d 329 ["The effect of an appeal is to remove the subject matter of the appeal from the jurisdiction of the trial court"]; *Lerner v. Superior Court, supra,* 38 Cal.2d at p. 680, 242 P.2d 321 ["The loss of jurisdiction is so complete that even the consent of the parties is ineffective to reinvest the trial court with jurisdiction over the subject matter of appeal"]; *People v. Mayne* (1897) 118 Cal. 516, 522, 50 P. 654 ["By the appeal from the order denying a new trial the subject matter of that order was removed from the superior court, and while the appeal was pending that court had no jurisdiction to change the order"]; *Ruggles v. Superior Court* (1894) 103 Cal. 125, 128, 37 P. 211 ["By the appeal the order or decree is set at large, and the subject matter removed from the jurisdiction of the lower court, until the appeal has been determined, and the matter remitted back from the appellate court"]; *Ehret v. Congoleum Corp.* (1999) 73 Cal.App.4th 1308, 1317, 87 Cal.Rptr.2d 363 ["When an appeal was filed, the effect was to ' "remove[ ] from the jurisdiction of the superior court the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                    Page 14
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)

subject matter of the judgment" ' "]; *Davis v. Thayer* (1980) 113 Cal.App.3d 892, 912, 170 Cal.Rptr. 328 [" 'An appeal removes from the jurisdiction of the trial court the subject matter of the judgment or order appealed from, including all issues going to the validity or correctness of such judgment or order' "]; *Beresh v. Sovereign Life Ins. Co.* (1979) 92 Cal.App.3d 547, 552, 155 Cal.Rptr. 74 ["It is clear that '[i]n effect the appeal removed from the jurisdiction of the superior court the subject matter of the judgment' "]; *People v. Mason* (1960) 184 Cal.App.2d 182, 192, 7 Cal.Rptr. 525 [" 'The effect of an appeal is to remove from the jurisdiction of the trial court the subject matter of the judgment or order appealed from' "]; *People v. Blume* (1960) 183 Cal.App.2d 474, 477, 7 Cal.Rptr. 16 ["An appeal removes the subject matter thereof from the jurisdiction of the trial court"]; *Agnew, supra,* 118 Cal.App.2d at p. 234, 257 P.2d 661 ["The effect of an appeal is to remove from the jurisdiction of the trial court the subject matter of the judgment or order appealed from"]; *Lukasik, supra,* 108 Cal.App.2d at p. 444, 239 P.2d 492 [same]; *Danley v. Superior Court* (1923) 64 Cal.App. 594, 598, 222 P. 362 [" 'When the appeal was perfected the effect thereof was to remove the subject matter of the order from the jurisdiction of the lower court' "]; *Colusa etc. R.R. Co. v. Superior Court* (1916) 31 Cal.App. 746, 761, 161 P. 1011 ["The effect of the appeal being to remove the subject matter of the order from the jurisdiction of the lower court"].)

Indeed, section 916, as a matter of logic and policy, divests the trial court of jurisdiction over the subject matter on appeal--i.e., jurisdiction in its fundamental sense. (See *Abelleira, supra,* 17 Cal.2d at p. 288, 109 P.2d 942.) The purpose of the automatic stay under section 916 is to preserve "the status quo until the appeal is decided" (*Elsea, supra,* 4 Cal.App.4th at p. 629, 5 Cal.Rptr.2d 742), by main-

taining "the rights of the parties in the same ***313 condition they were before the order was made" (*Wolcott v. Hudner* (1924) 67 Cal.App. 704, 707, 228 P. 46). Otherwise, the trial court could render the "appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it." (*Elsea,* at p. 629, 5 Cal.Rptr.2d 742.)

[26][27] In order to preserve the status quo and return the parties to "the same condition they were before the order was made" (*Wolcott v. Hudner, supra,* 67 Cal.App. at p. 707, 228 P. 46), section 916 necessarily renders any subsequent trial court proceedings on matters "embraced" in or "affected" by the appeal void--and not merely voidable (§ 916). A contrary conclusion would allow the trial court to render an appeal futile. If trial court proceedings during the pendency of the appeal are consistent with the reviewing court's resolution of the appeal, then the appeal is, in effect, futile because the trial court has already granted the relief that would have been granted on appeal. And if trial court proceedings during the pendency of the appeal conflict with the reviewing court's resolution of the appeal, then the appeal will likely be futile because the prevailing party, in most instances, will have no adequate remedy left. Because "the remedy by appeal *cannot be denied* to an aggrieved party dissatisfied with the judgment or the order appealed from by an act of the trial court in the action, at the behest or on the motion of the respondent, after an appeal has been taken and is pending" (*Durbrow v. Chesley* (1913) 23 Cal.App. 627, 629, 138 P. 917, italics added), the automatic stay under section 916 *must* divest the trial court of fundamental jurisdiction over the matters embraced in or affected by the appeal (see *Mulvey v. Superior Court* (1913) 22 Cal.App. 514, 516, 135 P. 53 [" 'Common fairness and a sense of justice readily suggests that while plaintiffs were in good faith prosecuting their appeals, they should be in some manner *199 protected in having the subject matter of the litigation preserved intact until the appellate **971 court could settle the controversy' "] ). Indeed, the only way to ensure that the appealing party has a remedy on appeal is to deprive the trial court of jurisdiction in its fundamental sense. [FN10]

25 Cal.Rptr.3d 298                                                                                      Page 15
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)

FN10. Citing article VI, section 13 of the California Constitution and _People v. Pompa-Ortiz_ (1980) 27 Cal.3d 519, 165 Cal.Rptr. 851, 612 P.2d 941, the concurring and dissenting opinion contends we should disregard the purpose behind Code of Civil Procedure section 916 and over a century of unequivocal case law and apply an harmless error analysis. Neither citation, however, supports this contention.

First, article VI, section 13 has no bearing on the question of whether Code of Civil Procedure section 916 divests the trial court of fundamental jurisdiction over matters on appeal. Indeed, jurisdiction " 'over the subject matter is given by law' " and " 'nothing but an additional grant from the legislative authority can extend that power over a class of cases formerly excepted.' " _(Grannis v. Superior Court_ (1905) 146 Cal. 245, 255, 79 P. 891.) Here, Code of Civil Procedure section 916, as a matter of logic, policy, and overwhelming precedent, divests the trial court of jurisdiction over the subject matter on appeal, and article VI, section 13 does not and cannot reconfer such jurisdiction. (See _Johnson v. Superior Court_ (1926) 77 Cal.App. 599, 604, 247 P. 249 [holding that lack of subject matter jurisdiction cannot be cured under the miscarriage of justice provision of the California Constitution].)

Second, _People v. Pompa-Ortiz, supra,_ 27 Cal.3d 519, 165 Cal.Rptr. 851, 612 P.2d 941--which did not address the scope of the automatic stay--is inapposite. Unlike the error at issue in _Pompa-Ortiz_--an irregularity in the preliminary hearing procedure--which may be forfeited (see Pen.Code, § 996), the parties cannot invest a trial court with jurisdiction during the pendency of an appeal. (See, e.g., _In re Johannes_ (1931) 213 Cal. 125, 131, 1 P.2d 984 ["But when we are dealing with the question of the jurisdiction of the subject matter of an offense, agreement of the parties or estoppel cannot confer it"].) Moreover, the situation in _Pompa-Ortiz_ is hardly analogous. In _Pompa-Ortiz,_ the defendant could have avoided the error by seeking writ review. If the defendant had done so, the matter could have been "expeditiously returned to the magistrate for proceedings free of the charged defects." _(Pompa-Ortiz,_ at p. 529, 165 Cal.Rptr. 851, 612 P.2d 941.) And even if the defendant had prevailed by writ, he could still have been tried and convicted. (See Pen.Code, § 999 ["An order to set aside an indictment or information ... is no bar to a future prosecution for the same offense"].) By contrast, in this case, defendants, by promptly appealing, did everything they could to avoid the subsequent trial. And defendants, unlike the defendant in _Pompa-Ortiz,_ would have avoided the trial that subsequently occurred if they had prevailed on appeal.

In any event, the precedent overruled in _Pompa-Ortiz_ is far different than the precedents at issue here. In _Pompa-Ortiz,_ we overruled a 20- year-old decision that had erroneously construed the word "jurisdiction" to mean jurisdiction in its fundamental sense. (See _People v. Elliot_ (1960) 54 Cal.2d 498, 6 Cal.Rptr. 753, 354 P.2d 225.) By contrast, the concurring and dissenting opinion proposes to overrule several decisions, including a 70-year-old decision from this court. And, unlike the lone precedent at issue in _Pompa-Ortiz,_ the many California decisions construing the scope of the automatic stay have consistently and unequivocally referred to the trial court's lack of _subject matter jurisdiction_--and not just its lack of jurisdiction. Where, as here, numerous "precedent[s]" applying authoritative, settled statutory construction that ha[ve] been central to the analysis and holdings of these decisions" exist and the Legislature has done nothing, "[t]he principles underlying the doctrine of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                 Page 16
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

stare decisis apply with special force" and it would be inappropriate "to overrule or disapprove" these precedents. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 685, fn. 2, 102 Cal.Rptr.2d 97, 13 P.3d 704.)

***314 [28] *200 In this case, defendants' anti-SLAPP motions encompassed all of plaintiffs' causes of action. As such, all of the matters on trial were embraced in and affected by defendants' appeal from the denial of that motion (see *ante,* 25 Cal.Rptr.3d at pp. 307-311, 106 P.3d at pp. 966-969), and the trial court lacked subject matter jurisdiction over these matters (see *Betz, supra,* 16 Cal.App.4th at p. 938, 20 Cal.Rptr.2d 841). Because the court lacked subject matter jurisdiction over the matters on trial, the judgment in this case is "void on its face...." (*Rochin, supra,* 67 Cal.App.4th at p. 1239, 79 Cal.Rptr.2d 719.) "When, as here, there is an appeal from a void judgment, the reviewing court's jurisdiction is limited to reversing the trial court's void acts." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701, 107 Cal.Rptr.2d 149, 23 P.3d 43 (*Griset*).) We therefore reverse the judgment in its entirety.

Plaintiffs do not dispute that the trial court lacked subject matter jurisdiction over the matters on trial if the trial should have been automatically stayed under section 916, subdivision (a). Plaintiffs also do not dispute that the judgment is void if the trial court lacked subject matter jurisdiction over the matters on trial. Instead, plaintiffs contend the court may affirm on other grounds. We do not, however, find these alternative grounds persuasive.

**972 First, plaintiffs contend an untimely anti-SLAPP motion is not appealable despite section 425.16, subdivision (j), and therefore does not invoke the automatic stay provision of section 916, subdivision (a). (See *Central Savings Bank of Oakland v. Lake* (1927) 201 Cal. 438, 442, 257 P. 521.) But we have long held that even a void judgment or order is appealable if that judgment or order is otherwise appealable. (*Ewing v. Richvale Land Co.* (1917) 176 Cal. 152, 154, 167 P. 876; see also *Griset, supra,* 25 Cal.4th at p. 701, 107 Cal.Rptr.2d

149, 23 P.3d 43 [implicitly recognizing that a void judgment is appealable].) We see no reason to deviate from this principle where, as here, the order is unquestionably appealable with no apparent exceptions. (See § 425.16, subd. (j).)

***315 [29] Second, plaintiffs contend the Court of Appeal's summary denial of defendants' earlier petition for writ of supersedeas seeking a stay pending appeal is law of the case and requires affirmance. Recognizing that we previously held that "a summary denial of a writ petition" should "not be given law of the case effect" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 897, 12 Cal.Rptr.2d 728, 838 P.2d 250), plaintiffs propose an exception to this rule in cases where, as here, the defendant argued that the court had no discretion to deny relief. We have, however, rejected such an exception in the past because it would hamper judicial economy (*id.* at p. 898, 12 Cal.Rptr.2d 728, 838 P.2d 250), and see no reason to reconsider it here. *Leone v. Medical Board* (2000) 22 Cal.4th 660, 94 Cal.Rptr.2d 61, 995 P.2d 191, does not compel a different conclusion. In *Leone,* we held that "an appellate court must judge [a writ] petition on its *201 procedural and substantive merits" if the "petition was the only authorized mode of appellate review." (*Id.* at p. 670, 94 Cal.Rptr.2d 61, 995 P.2d 191.) An appellate court need not do so, however, if the ruling "could also be reviewed on appeal from the judgment ultimately entered in the action." (*Ibid.*) As evidenced by this appeal, the trial court's and Court of Appeal's refusals to stay proceedings pending appeal could be reviewed on an appeal from the judgment. *Leone* is therefore inapposite. Accordingly, we find the judgment void and reverse the judgment of the Court of Appeal. [FN11]

> FN11. The Court of Appeal dismissed defendants' appeal from the denial of their anti-SLAPP motions following the trial. In this appeal, defendants do not challenge this dismissal or the trial court's order denying the motions.

### DISPOSITION

We reverse the judgment of the Court of Appeal

25 Cal.Rptr.3d 298                                                                                    Page 17
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)

with instructions to remand the case for a new trial in accordance with our opinion. [FN12]

> FN12. Following our grant of review, defendants filed a petition for writ of supersedeas, seeking to stay enforcement of the judgment. Because we reverse the judgment of the Court of Appeal, we now dismiss the petition as moot.

WE CONCUR: KENNARD, BAXTER, WERDEGAR, CHIN, and MORENO, JJ.

GEORGE, C.J., CONCURRING AND DISSENTING:

I agree with the majority's conclusion that the trial court erred in proceeding with the trial in this matter while an appeal from the denial of defendant's anti-SLAPP (strategic lawsuit against public participation) motion (Code of Civ. Proc., § 425.16) still was pending in the Court of Appeal, but I believe the error should be found harmless and thus, unlike the majority, I would affirm the judgment.

There can be little question but that, under the circumstances of this case, a reversal of the trial court's judgment and a remand for a new trial would serve no legitimate purpose. The trial court's error--going forward with the trial while its pretrial ruling on defendants' anti-SLAPP motion still was on appeal--did not affect the actual trial of the case, the jury's verdict, or the content of the judgment in any respect whatsoever. All that will be accomplished by a reversal is the wasting of considerable time, effort, and resources.

The California Constitution provides that "[n]o judgment shall be set aside ... in any cause ... for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the **973 court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) By statute, trial court error ***316 provides a ground for reversal only if it affects "the substantial rights of the *202 parties." (Code Civ. Proc., § 475.) No judgment may be reversed on the basis of

an error or defect in the proceedings unless "a different result would have been probable if such error ... or defect had not occurred or existed." (Ibid.) In the present case, it is undisputed that the error complained of--the failure of both the trial court and the Court of Appeal to stay proceedings pending appeal of the denial of defendant's anti-SLAPP motion--did not result in a miscarriage of justice.

Cases cited in the majority opinion contain language indicating that a trial court lacks subject matter jurisdiction pending an appeal, but most of these cases were decided in the procedural context of a petition that sought an extraordinary writ to prohibit the trial court from conducting further proceedings pending an appeal. (See maj. opn., ante, 25 Cal.Rptr.3d at pp. 311-312 & fn. 9, 106 P.3d at pp. 969-970 & fn. 9.) But, as this court has observed, the term "jurisdiction," which is used in a variety of situations, "has so many different meanings that no single statement can be entirely satisfactory as a definition." (Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 287, 109 P.2d 942.) Most of the cases relied upon by the majority employ the language of fundamental jurisdiction but were decided in a context that did not require reference to jurisdiction in the fundamental sense, as opposed to jurisdiction in the broader sense used in the context of writ proceedings.

There have been a few cases, procedurally analogous to the present one, in which a judgment after trial was reversed because a prior appeal was pending at the time of trial, based on the theory that the trial court lacked fundamental jurisdiction pending the appeal. (See, e.g., People v. Sonoqui (1934) 1 Cal.2d 364, 35 P.2d 123 [after the defendants' motion for a new trial was granted, the defendants were retried and convicted while the People's appeal of the decision on the new trial motion was still pending; convictions reversed]; People v. Owens (1945) 71 Cal.App.2d 831, 164 P.2d 28 [pending the People's appeal from the trial court's postconviction order granting the defendant's motion for an arrested judgment, the defendant was tried on new information; convictions reversed]; Rosenberg v. Bullard (1934) 2 Cal.App.2d 118, 37

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                Page 18
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

P.2d 521 [pending the plaintiff's appeal from order granting the defendant's motion to set aside default judgment, case was tried and judgment was entered for the plaintiff; judgment reversed].) These cases applied the principle that the trial court lacked jurisdiction pending the appeal, but did not address the question of whether reversal of such a judgment after trial in this context was in fact consistent with the California Constitution's provision prohibiting reversal absent a miscarriage of justice. In each of these cases, a criminal conviction or civil judgment was reversed even though there clearly was no miscarriage of justice--the trial in each case was not affected in any way by the trial court's error in going forward during the pendency of the appeal. Indeed, in these cases, it was not the party who took the pretrial appeal who benefited from the characterization of the trial court proceedings *203 as lacking in subject matter jurisdiction. Under these authorities, if defendants rather than plaintiffs had prevailed after trial in the present case, *plaintiffs* would be entitled to reversal of the judgment on the theory that the trial court lacked subject matter jurisdiction to enter it, even though it would be obvious that plaintiffs had suffered no harm. In short, I see no justification for the anomalous results reached in these few cases and would overrule or disapprove them.

***317 In other contexts, this court has not hesitated to overrule or disapprove earlier California decisions that applied a rule of automatic reversal without giving due consideration to the California Constitution's requirement that no judgment be set aside absent a miscarriage of justice. (See, e.g., *People v. Braxton* (2004) 34 Cal.4th 798, 22 Cal.Rptr.3d 46, 101 P.3d 994 [trial court's failure to rule on a motion for new trial is subject to harmless error analysis], overruling *People v. Sarazzawski* (1945) 27 Cal.2d 7, 161 P.2d 934; **974*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298 [no category of instructional error in civil cases requires automatic reversal], overruling and disapproving contrary implications in prior decisions; *People v. Cahill* (1993) 5 Cal.4th 478, 509-510, fn. 17, 20 Cal.Rptr.2d 582, 853 P.2d 1037 [holding that the

erroneous admission of an involuntary confession is subject to harmless error analysis under the California Constitution], overruling a line of inconsistent cases.)

We faced an issue analogous to the one presented here, in the context of the previously well-settled rule that denial of a substantial right at the preliminary hearing in a criminal case rendered the ensuing commitment illegal and entitled the defendant to have the information set aside on timely motion. (See, e.g., *People v. Napthaly* (1895) 105 Cal. 641, 644-645, 39 P. 29.) The defendant may seek writ relief to compel the setting aside of an information before trial on the ground that, because of substantial error at the preliminary hearing, his or her commitment for trial was illegal. (See, e.g., *Jennings v. Superior Court* (1967) 66 Cal.2d 867, 880-881, 59 Cal.Rptr. 440, 428 P.2d 304.) Applying reasoning very similar to that embraced in the majority opinion in the present case, we held in *People v. Elliot* (1960) 54 Cal.2d 498, 6 Cal.Rptr. 753, 354 P.2d 225, that the denial of a substantial right at the preliminary hearing required reversal of a subsequent conviction without a showing of prejudice. The theory behind this automatic reversal rule was that "where the accused is not legally committed within the meaning of *section 995 of the Penal Code*, the commitment is voidable. Upon proper objection, the superior court has *no jurisdiction* to proceed." (*Greenberg v. Superior Court* (1942) 19 Cal.2d 319, 121 P.2d 713.)

*204 Subsequently, however, this court reconsidered and rejected the per se reversal rule that had been adopted in *People v. Elliot. (People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 528-530, 165 Cal.Rptr. 851, 612 P.2d 941.) We explained in *Pompa-Ortiz* that the "source of the difficulty in *Elliot* is the uncritical use of the term 'jurisdiction' when assessing the effect of an illegal commitment on the trial in superior court." (*Id.* at p. 528, 6 Cal.Rptr. 753, 354 P.2d 225.) "The presence of a jurisdictional defect which would entitle a defendant to a writ of prohibition prior to trial does not necessarily deprive a trial court of the legal power to try the case if prohibition is not sought." (*Id.* at p. 529, 6 Cal.Rptr. 753,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                                    Page 19
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

354 P.2d 225.) We concluded that irregularities in preliminary hearing procedures that are not jurisdictional in the fundamental sense must be reviewed, after trial, under the appropriate standard of prejudicial error. Although the holding in *Pompa-Ortiz* is not directly applicable here, that decision demonstrates that we should not uncritically apply jurisdictional language from writ cases when considering whether an error requires reversal on appeal from a final judgment.

We have acknowledged that an exception may be made to the general rule that an error does not require reversal absent a showing of prejudice when the error involves a structural defect in the conduct of the proceedings that results in an unfair ***318 trial or "defies evaluation for harmlessness." (*Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 579, 34 Cal.Rptr.2d 607, 882 P.2d 298; *People v. Cahill, supra,* 5 Cal.4th at p. 501, 20 Cal.Rptr.2d 582, 853 P.2d 1037.) Although an actual absence of jurisdiction in the fundamental sense would be the type of fundamental defect that constitutes a miscarriage of justice and requires reversal, the trial court's lack of jurisdiction pending an appeal of a pretrial order is not comparable to the type of jurisdictional problem that is properly characterized as an absence of jurisdiction in its fundamental sense. In *Abelleira v. District Court of Appeal, supra,* 17 Cal.2d at page 289, 109 P.2d 942, we described lack of jurisdiction "in its most fundamental sense" as "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." As examples of lack of jurisdiction "in its most fundamental or strict sense," we noted that a state court has no jurisdiction to (1) determine title to land outside its borders; (2) adjudicate the marital status of persons when neither is domiciled within the state; (3) render a personal judgment against one not personally served with process within its **975 borders; or (4) determine a case where the type of proceeding or amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional provision. (*Ibid.*)

In these examples, the absence of jurisdiction is complete. In such circumstances, it is impossible

for a reviewing court to conclude that "a different result would have been probable if such error ... or defect had not occurred or existed." (Code Civ. Proc., § 475.) If a trial court proceeds to issue a judgment even though it lacks fundamental jurisdiction over a party or the subject matter (such as a piece of property or a marriage that exists outside *205 the state), a different result would be inevitable if the error had not occurred, because in the absence of error the case would have been dismissed.

The temporary absence of jurisdiction in a trial court while an appeal is pending is not comparable to these examples of the absence of fundamental jurisdiction. Rather, it is more consistent with the description in *Abelleira* of the broader meaning of lack of jurisdiction that justifies writ review, in which the trial court lacks only the power "to act without the occurrence of certain procedural prerequisites." (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d at pp. 289-290, 109 P.2d 942.) The procedural prerequisite that was lacking in the case before us was a resolution of the pending appeal, which would permit the trial court properly to go forward with the trial. Unlike the situation in which fundamental jurisdiction is lacking, the absence of jurisdiction in this case was only temporary and only partial. Once the appeal on the motion is resolved, the trial court regains jurisdiction to try the case. Under Code of Civil Procedure section 916, the trial court was not completely divested of jurisdiction over the case, and still could conduct proceedings in collateral matters that did not affect the appeal. The trial court (and the Court of Appeal as well) simply made an error in determining whether or not trial of the case was a proceeding that was affected by or embraced in the pending appeal, within the meaning of section 916. [FN1]

> FN1. As the majority notes, plaintiffs do not rely on the theory that the trial court did not lack fundamental jurisdiction in the sense described in *Abelleira.* The parties' failure to advance this position, however, does not preclude us from upholding the judgment. This court is not bound by the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

25 Cal.Rptr.3d 298                                                                                                        Page 20
35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

parties' concessions on issues of law. _(Desny v. Wilder_ (1956) 46 Cal.2d 715, 729, 299 P.2d 257.)

**\*\*\*319** Although it may be conceivable that, under some circumstances, the conduct of proceedings in the trial court pending an appeal might constitute such a fundamental defect in the proceedings that automatic reversal is required, that is not the case where, as here, the case is tried pending the appeal of a pretrial order and the pretrial order is ultimately upheld. In this situation, the reviewing court readily can ascertain that the error had no effect on the outcome of the case and that the result would have been the same even if the error had not occurred and the trial had been stayed until after the resolution of the appeal.

Contrary to the majority's conclusion, I do not believe that requiring automatic reversal is necessary or effective to ensure a party's right to preserve the status quo pending an appeal, any more than automatic reversal is necessary to preserve other legal rights, including constitutional rights, that are subject to harmless error analysis. (See, e.g., _People v. Cahill, supra,_ 5 Cal.4th at pp. 506-507, 20 Cal.Rptr.2d 582, 853 P.2d 1037 [rejecting the argument that the erroneous admission of an involuntary confession requires automatic reversal in order to deter **\*206** improper law enforcement conduct].) To recognize the possibility that an error may be deemed _harmless_ does not transform a trial court's erroneous action into a _correct_ one, nor does it encourage trial courts to act unlawfully. If the trial court correctly interprets and follows the mandate of Code of Civil Procedure section 916, the status quo will be maintained until the appeal is resolved. If the trial court does not understand or follow the law, the appellate court has the authority to protect the appealing party's interests, as well as its own power to act pending an appeal, by issuing a writ to require the trial court to comply with section 916.

In the presumably rare instance in which both the trial court and the appellate court **\*\*976** misunderstand or fail to enforce the law, and proceedings continue to judgment despite a pending appeal, the appellate court must examine all the circumstances to determine whether the failure to stay the trial was prejudicial. If the judgment is tainted by the trial court's erroneous actions, reversal of the judgment would be appropriate and consistent with California Constitution, article VI, section 13. [FN2] Reversing a judgment that ultimately was not affected by the pending appeal, however, does not further the interests of justice in any way and is not necessary to enforce the requirements of Code of Civil Procedure section 916.

> FN2. It is true that if it is ultimately determined that the defendant should not have been required to go to trial, a reversal of the judgment will not totally cure the harm because the defendant already will have been required to bear the anxiety and expense of a trial. But the inadequacy of reversal as a complete remedy exists whether reversal is mandated on a per se basis (based on the theory that the trial court's error resulted in an absence of jurisdiction in the fundamental sense) or is mandated only upon a finding that the error actually was prejudicial. The vice of the unwarranted invocation of lack of fundamental jurisdiction is that it compels a reversal of the judgment even when it is clear that the error did not in the least affect the validity of the judgment.

Accordingly, I would overrule or disapprove prior California decisions to the extent they purport to hold that a trial court's action in erroneously going forward with a trial while an appeal is pending constitutes an action taken in the absence of fundamental subject matter jurisdiction that necessarily requires automatic reversal of the judgment. I conclude that under article VI, section 13 of the California Constitution and the applicable statutory provisions set forth above, a trial court's **\*\*\*320** error of this nature may not properly be treated as reversible per se, but rather justifies a reversal of a judgment rendered after trial only when there is an appropriate basis for finding the error to constitute a miscarriage of justice. In the present case, the error

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298, 33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv. 1871, 2005
Daily Journal D.A.R. 2531
**(Cite as: 35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298)**

clearly was not prejudicial, and I believe it defies
both common sense and the logic and policy of our
state constitutional harmless error provision to re-
verse the judgment and require a new trial in these
circumstances.

**\*207** The counterintuitive result arrived at by the
majority is not the creature of constitutional or stat-
utory compulsion; it emanates entirely from earlier
decisions rendered by this court and the Courts of
Appeal. I believe it is time to disavow these self-
imposed formalistic constraints and arrive at a
fairer and more logical outcome in this case and in
future proceedings.

35 Cal.4th 180, 106 P.3d 958, 25 Cal.Rptr.3d 298,
33 Media L. Rep. 1396, 05 Cal. Daily Op. Serv.
1871, 2005 Daily Journal D.A.R. 2531

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.