# EXHIBIT 31
## To Appendix to California State Authorities

Westlaw.

27 Cal.App.4th 809                                                      Page 1
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
**(Cite as: 27 Cal.App.4th 809)**

►

SONDRA WILCOX et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent; RONALD J. PETERS et
al.,
Real Parties in Interest.
**No. B080282.**

Court of Appeal, Second District, California.

Aug 16, 1994.

SUMMARY

Certified shorthand reporters brought suit against
defendants, a certified shorthand reporters' alliance,
alleging "direct contracting," as practiced by de-
fendants, constituted an unfair business practice, in-
tentional interference with plaintiffs' prospective
economic advantages and interference with existing
contracts. Defendants filed a cross-complaint
against plaintiffs as well as other individuals for de-
famation and conspiracy to unlawfully restrain
trade through a boycott of defendants' reporting ser-
vices. The trial court denied a motion by one cross-
defendant to strike the cross-complaint against her
for damages and injunctive relief. The motion to
strike was based on California's anti-SLAPP
(strategic lawsuits against public participation) suit
statute (Code Civ. Proc., § 425.16). (Superior Court
of Los Angeles County, No. BC072147, David A.
Workman, Judge.)

The Court of Appeal ordered issuance of a writ of
mandate directing the trial court to vacate its order
and enter an order striking the cross-complaint in
its entirety as to cross-defendant. The court held
that under Code Civ. Proc., § 425.16, subd. (b)
(procedural remedy allowing prompt exposure and
dismissal of SLAPP suits), the requirement that the
plaintiff establish a "probability that the plaintiff
will prevail on the claim," means that the plaintiff
must demonstrate the complaint is legally sufficient
and supported by a sufficient prima facie showing
of facts to sustain a favorable judgment if the evid-

ence submitted by the plaintiff is credited; if either
of these requirements is not met, the motion to
strike must be granted; if both are satisfied, it must
be denied. The court held that cross-defendant
made a sufficient showing under Code Civ. Proc., §
425.16, that the cross-complaint arose from acts in
furtherance of her rights of petition and free speech
in connection with a public issue. The issue of "dir-
ect contracting" was concededly a public issue, and
the alleged defamatory statements were made in
connection with the underlying judicial challenge to
direct contracting; they were made in the context of
exhorting shorthand reporters to contribute to the
cost of pursuing the litigation. As to claims in-
volving restraint of trade, **\*810** there is no antitrust
liability for petitioning any branch of government,
even if the motive is anticompetitive, and the fact
the activity may include an economic boycott does
not necessarily deprive that activity of constitution-
al protection. It did not matter that the speech at is-
sue could be characterized as commercial speech. It
further held that the fundamental right to petition
the government for redress of grievances provided
cross-defendant with at least a qualified privilege
which the cross-complainants did not demonstrate
they could overcome. As to the conspiracy count,
the court held that cross-complainants failed to pro-
duce legally sufficient evidence that cross-de-
fendant concurred with at least one other person in
the alleged tortious scheme. (Opinion by Johnson,
J., with Lillie, P. J., and Woods (Fred), J., concur-
ring.)

HEADNOTES

Classified to California Digest of Official Reports

(1) Actions and Special Proceedings §
2--Definitions and Distinctions-- SLAPP
Suits:Words, Phrases, and Maxims--SLAPP Suits.
Litigation which has come to be known as SLAPP
(strategic lawsuits against public participation) are
civil lawsuits that are generally meritless and
brought by large private interests to prevent citizens
from exercising their political rights or punishing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 Cal.App.4th 809    Page 2
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
**(Cite as: 27 Cal.App.4th 809)**

those who have done so. They are brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.

(2) Pleading § 93--Motion to Strike Pleadings as a Whole--SLAPP Suits.
Code Civ. Proc., § 425.16, enacted to allow prompt disclosure and dismissal of SLAPP suits (strategic lawsuits against public participation), requires the defendant in such an action to make a prima facie showing that the plaintiff's suit arises "from any act of defendant in furtherance of defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue." The defendant may meet this burden by showing the act that forms the basis for the plaintiff's cause of action was a written or oral statement made before a legislative, executive, or judicial proceeding, or such a statement in connection with an issue under consideration or review by a legislative, executive, or judicial body, or that such a statement was made in a place open to the public or a public forum in connection with an issue of public interest. An "act in furtherance of" a person's rights under U.S. Const., 1st Amend., is not limited to oral and written statements, but may arise out of a defendant's constitutionally protected conduct. *811

(3) Pleading § 93--Motion to Strike Pleadings as a whole--SLAPP Suit--Prima Facie Showing.
A certified shorthand reporter made a sufficient showing under Code Civ. Proc., § 425.16 (motion to strike SLAPP suit), that a cross-complaint filed against her by a shorthand reporters' alliance alleging libel, defamation, and unlawful restraint of trade-filed in response to plaintiff's action against the alliance alleging its "direct contracting" was an unfair business practice-arose from acts in furtherance of her rights of petition and free speech in connection with a public issue. Thus, the trial court erred in denying the reporter's motion to strike the cross-complaint. The issue of "direct contracting" was a public issue, and the alleged defamatory statements were made in connection with the underlying judicial challenge to direct contracting; they were made in the context of exhorting shorthand re-

porters to contribute to the cost of pursuing the litigation. As to claims involving restraint of trade, there is no antitrust liability for petitioning any branch of government, even if the motive is anticompetitive, and the fact the activity may include an economic boycott does not necessarily deprive that activity of constitutional protection. It did not matter that the speech at issue could be characterized as commercial speech.

(4) Pleading § 93--Motion to Strike Pleading as a Whole--SLAPP Suit-- Showing of Probability of Successive Suit.
Under Code Civ. Proc., § 425.16, subd. (b) (procedural remedy allowing prompt exposure and dismissal of SLAPP suits), the requirement that the plaintiff establish a "probability that the plaintiff will prevail on the claim," means that the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited; if either of these requirements is not met, the motion to strike must be granted; if both are satisfied, it must be denied. Thus, the plaintiff must demonstrate the merits of its cause of action by showing the defendant's purported constitutional defenses are not applicable to the case as a matter of law, or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses. Although the statute requires only a showing of "probability" and similar statutes require showing "a reasonable probability," the Legislature did not intend by eliminating the adjective "substantial" from the original version of the statute to permit a threshold lower than a "reasonable probability."

[See 5 **Witkin**, Cal. Procedure 3d ed. (1985) 85) Pleading, § 607A.]

(5) Pleading § 93--Motion to Strike Pleadings as a Whole--SLAPP Suits-- Prima Facie Showing of Prevailing on Defamation Claim.
*812 Under Code Civ. Proc., § 425.16, subd. (b) (procedural remedy allowing prompt exposure and dismissal of SLAPP suits), a certified shorthand reporter against whom a cross-complaint was filed by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a shorthand reporters alliance alleging libel, defamation, and unlawful restraint of trade-in response to the reporter's action against the alliance alleging its "direct contracting" was an unfair business practice-the fundamental right to petition the government for redress of grievances provided cross-defendant with at least a qualified privilege which the cross-complainants did not demonstrate they could overcome. Common law malice-ill will-does not defeat the protection afforded by the right to petition the government. If the privilege is defeated at all, it is only by a showing of "actual malice," and the cross-complaint did not allege cross-defendant knew her assertions about what she claimed in the complaint were false when she made them or that she made them in reckless disregard for their truth or falsity.

(6) Conspiracy § 13--Civil--Pleading--Complaint.
A complaint seeking to impose liability on a defendant on the basis of conspiracy must allege: (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting.

(7)                    Conspiracy              §
15--Civil--Actions--Evidence--Sufficiency.
In order to establish civil liability based on conspiracy, the plaintiff must show the defendant and at least one other concurred in the tortious scheme with knowledge of its unlawful purpose. The requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators as well as other circumstances. However, a reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. It must logically flow from other facts established in the action.

(8)                    Conspiracy              §
15--Civil--Actions--Evidence--Sufficiency:Pleading § 93-- Motion to Strike Pleadings as Whole--SLAPP Suit--Conspiracy--Prima Facie Showing.
On a cross-complaint alleging that a certified shorthand reporter conspired to injure a shorthand reporters alliance in the reporters' reputations and

business ventures, in connection with a suit against the alliance alleging unfair business practices, cross-complainants failed to produce legally sufficient evidence that cross-defendant concurred with at least one other person in the alleged tortious scheme. There was no direct evidence of an agreement between cross-defendant and any other person. Inferences drawn **\*813** from a memorandum distributed by cross-defendant, similarities between it and memoranda distributed by two other reporters, a telephone conversation between cross-defendant and the lead plaintiff in the underlying complaint against cross-complainants, and a declaration relating multiple hearsay, failed to establish a reasonable probability cross-complainants would prevail, as required on a motion to strike under Code Civ. Proc., § 425.16, subd. (b) (procedural remedy allowing prompt exposure and dismissal of SLAPP suits). The underlying lawsuit was meritorious and a statement in the memoranda about "banding together" was made in the context of the contemplated litigation, and there was nothing unlawful in it or the other two similar memoranda.

(9) Pleading § 93--Motion to Strike Pleadings as a Whole--SLAPP    Suit--Prima    Facie    Case--Admissible Evidence.
Under Code Civ. Proc., § 425.16 (procedural remedy allowing prompt exposure and dismissal of SLAPP suits), declarations submitted for the purpose of demonstrating a probability of prevailing in the action must contain admissible evidence. It is not sufficient to only demonstrate the existence of sufficient evidence to establish a prima facie case. While it is only necessary that plaintiff provide a sufficient prima facie showing of facts to sustain a favorable decision if the evidence submitted is credited, implicit therein is the assumption the evidence referred to was admissible, or at least not objected to, since otherwise there would be nothing for the trier of fact to credit.

COUNSEL

Yvonne M. Renfrew for Petitioners.

No appearance for Respondent.

27 Cal.App.4th 809

Page 4

27 Cal.App.4th 809, 33 Cal.Rptr.2d 446

**(Cite as: 27 Cal.App.4th 809)**

Hadsell & Stormer, Dan Stormer, Carol A. Klauschie and Dori E. Miles for Real Parties in Interest.

**JOHNSON, J.**

In her petition for writ of mandate Sondra Wilcox, a cross-defendant below, challenges the ruling of the trial court denying her motion to strike the cross-complaint against her for damages and injunctive relief based on restraint of trade and defamation. The motion to strike was based on California's anti-SLAPP (strategic lawsuits against public participation) suit statute (Code Civ. Proc., § 425.16). We issued an alternative writ **\*814** of mandate and stayed proceedings in the trial court pending our decision on the merits. For the reasons set forth below we have determined the cross-complaint is subject to a motion to strike under the anti-SLAPP-suit statute and cross-complainants have failed to establish a probability they will prevail on their claims against petitioner.

Facts and Proceedings Below

This cause and its companion, *Saunders v. Superior Court, post,* 832 [33 Cal.Rptr.2d 438], arise out of the practice of "direct contracting" under which a certified shorthand reporter or association of reporters contracts with a major consumer of reporter services, such as an insurance company, for the exclusive right to report depositions taken by attorneys representing that consumer.

Plaintiffs in *Saunders* are certified shorthand reporters who brought suit against defendants, also certified shorthand reporters, alleging "direct contracting" as practiced by defendants constitutes an unfair business practice, intentional interference with plaintiffs' prospective economic advantages and interference with existing contracts. [FN1] The reporter defendants in *Saunders* are members of an association known as the California Reporting Alliance, referred to by the parties as CRA or the Alliance. Also named as defendants are two insurance companies which entered into "direct contracting" agreements with the reporter defendants through CRA. Petitioner Wilcox is not a plaintiff in the

*Saunders* suit but she did make a financial contribution to support the litigation.

> FN1 In *Saunders*, filed concurrently, we hold the trial court erred in sustaining defendants' demurrers to plaintiffs' complaint.

The reporter defendants in *Saunders* filed a cross-complaint against the plaintiffs in that action as well as other individuals including Wilcox and her reporting agency for defamation and conspiracy to unlawfully restrain trade through a boycott of defendants' reporting services. (We will refer to Wilcox and her agency together as Wilcox or petitioner.)

The first amended cross-complaint alleges Wilcox distributed a memorandum to various other shorthand reporters which stated, among other things: many shorthand reporting agencies were banding together "to 'permanently put the Alliance to rest once and for all' "; reporters were suing CRA and its members for extortion and racketeering; and reporters should tell attorneys representing insurance companies and their policyholders about this litigation so that the "threat" might be enough to make the insurers "back off" from entering into direct contracting agreements with CRA. The memorandum asked each reporter to contribute $100 to the lawsuit against CRA. The **\*815** cross-complaint also alleges Wilcox told CRA members she would no longer refer them any work or network with them because they were affiliated with CRA.

Characterizing the cross-complaint as a SLAPP suit, [FN2] Wilcox filed a motion to strike as to her and her reporting agency pursuant to Code of Civil Procedure section 425.16. [FN3] The trial court denied the motion on the ground "the responding parties have proffered sufficient evidence in opposition to the motion to establish the probability they will prevail on their claims."

> FN2 The nature of a SLAPP suit is discussed more fully below. (See pt. I, pp. 815-817, *post.*) In very general terms it is a meritless suit filed primarily to chill the

defendant's exercise of First Amendment rights. (See *Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1769 [17 Cal.Rptr.2d 457].)

FN3 As discussed more fully below, see pages 817-819, Code of Civil Procedure section 425.16 authorizes a "special motion to strike" an alleged SLAPP suit based on the pleadings and declarations of the parties.

Wilcox filed a petition for writ of mandate in this court seeking to overturn the trial court's denial of her motion to strike. As previously noted, we issued an alternative writ and stayed the proceedings below.

Discussion
I. *Overview of Strategic Lawsuits Against Public Participation ("SLAPP" Suits).*

(1) Litigation which has come to be known as SLAPP is defined by the sociologists who coined the term as "civil lawsuits ... that are aimed at preventing citizens from exercising their political rights or punishing those who have done so." (Canan & Pring, Strategic Lawsuits Against Public Participation (1988) 35 Social Problems 506.) The paradigm SLAPP is a suit filed by a large land developer against environmental activists or a neighborhood association intended to chill the defendants' continued political or legal opposition to the developers' plans. (See, e.g., *Gordon v. Marrone* (1992) 155 Misc.2d 276 [590 N.Y.S.2d 649, 651]; *Protect Our Mountain v. District Court* (Colo. 1984) 677 P.2d 1361, 1364; *Webb v. Fury* (1981) 167 W.Va. 434 [282 S.E.2d 28]; Note, *Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions* (1975) 74 Mich. L.Rev. 106, 112, 113.) SLAPP's, however, are by no means limited to environmental issues (see, e.g., *Brownsville Golden Age Nursing Home, Inc. v. Wells* (3d Cir. 1988) 839 F.2d 155, 157 [suit by nursing home against private citizens who had complained to government officials about conditions in plaintiff's facility]), nor are the defendants neces-

sarily local organizations with limited resources. (See, e.g., *Sierra Club v. Butz* (N.D.Cal. 1972) 349 F.Supp. 934.) *816

The favored causes of action in SLAPP suits are defamation, various business torts such as interference with prospective economic advantage, nuisance and intentional infliction of emotional distress. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs* (1993) 26 Loyola L.A. L.Rev. 395, 402-403.) Plaintiffs in these actions typically ask for damages which would be ruinous to the defendants. (See, e.g., *Protect Our Mountain v. District Court, supra,* 677 P.2d at p. 1364 [developer sought $10 million compensatory and $30 million punitive damages]; Barker, *supra,* 26 Loyola L.A. L.Rev. at p. 403 [estimating damage claims in SLAPP's average $9.1 million].)

SLAPP suits are brought to obtain an *economic* advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. (Comment, *Strategic Lawsuits Against Public Participation: An Analysis Of The Solutions* (1991) 27 Cal. W. L.Rev. 399, 402; Barker, *supra,* 26 Loyola L.A. L.Rev. at p. 406.) Indeed, one of the common characteristics of a SLAPP suit is its lack of merit. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs, supra,* 26 Loyola L.A. L.Rev. at pp. 396, 399.) But lack of merit is not of concern to the plaintiff because the plaintiff does not expect to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient length of time to accomplish plaintiff's underlying objective. (*Id.* at p. 405.) As long as the defendant is forced to devote its time, energy and financial resources to combating the lawsuit its ability to combat the plaintiff in the political arena is substantially diminished. (*Gordon v. Marrone, supra,* 590 N.Y.S.2d at p. 656; Brecher, *The Public Interest and Intimidation Suits: A New Approach* (1988) 28 Santa Clara L.Rev. 105, 114; Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions, supra,* 27 Cal. W. L.Rev. at p. 404.) The SLAPP strategy also works even if the matter is already in litigation because the defendant/cross-complainant hopes to drive up the cost of lit-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 Cal.App.4th 809                                                                                                    Page 6
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
**(Cite as: 27 Cal.App.4th 809)**

igation to the point where the plaintiff/ cross-defendant will abandon its case or have less resources available to prosecute its action against the defendant/cross-complainant and to deter future litigation. (Note, *Counterclaim and Countersuit Harassment of Private Environmental Plaintiffs: The Problem, Its Implications, and Proposed Solutions, supra,* 74 Mich. L.Rev. at pp. 109-110.)

Thus, while SLAPP suits "masquerade as ordinary lawsuits" the conceptual features which reveal them as SLAPP's are that they are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. (Pring, *SLAPPs: Strategic Lawsuits Against Public Participation* (1989) 7 **\*817** Pace Envtl. L.Rev. 3, 5-6, 9.) [FN4] Because winning is not a SLAPP plaintiff's primary motivation, defendants' traditional safeguards against meritless actions, (suits for malicious prosecution and abuse of process, requests for sanctions) are inadequate to counter SLAPP's. Instead, the SLAPPer considers any damage or sanction award which the SLAPPee might eventually recover as merely a cost of doing business. (Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs, supra,* 26 Loyola L.A. L.Rev. at pp. 406-407.) By the time a SLAPP victim can win a "SLAPP-back" suit years later the SLAPP plaintiff will probably already have accomplished its underlying objective. Furthermore, retaliation against the SLAPPer may be counterproductive because it ties up the SLAPPee's resources even longer than defending the SLAPP suit itself. (*Id.* at p. 432; Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions, supra,* 27 Cal. W. L.Rev. at p. 403.)

> FN4 In enacting <u>Code of Civil Procedure section 425.16</u> the Legislature found and declared, "[T]here has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued par-

ticipation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." (<u>Code Civ. Proc., § 425.16</u>, subd. (a).)

For these reasons, courts and legislatures have looked for procedural remedies which would allow prompt exposure and dismissal of SLAPP suits. (See, e.g., <u>*Protect Our Mountain v. District Court, supra,* 677 P.2d at pp. 1368-1369</u> [motion to dismiss with heightened standard applied to plaintiff]; <u>*Webb v. Fury, supra,* 282 S.E.2d 28, 47</u> (dis. opn. of Neely, J.) [require plaintiff to plead more specifically where defendant's conduct is prima facie protected by First Amendment; early hearing on merits of plaintiff's claim and defendant's constitutional defenses].)

California's response to SLAPP suits was to enact <u>Code of Civil Procedure section 425.16</u>, discussed below.

> II. *California's Legislative Response to SLAPP Suits.*

Senate Bill No. 1264, 1991-1992 Regular Session, added a new <u>section 425.16 to the Code of Civil Procedure</u> [FN5] effective January 1, 1993. (Stats. 1992, ch. 726, § 2.)

> FN5 Future statutory references are to the Code of Civil Procedure, unless otherwise noted.

This legislation provides in relevant part:

"(b) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue **\*818** shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact if that determination shall be admissible in evidence at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.

. . . . . . . . . . .

"(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; or any written or statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

"(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper.

"(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The motion shall be noticed for hearing not more than 30 days after service unless the docket conditions of the court require a later hearing. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."

The parties raise four issues under the anti-SLAPP statute. (1) Do any of the causes of action against petitioner arise from an act of petitioner in furtherance of her First Amendment rights so as to trigger a special motion to strike under the statue? (2) Who has the burden of proof on this issue? (3) Assuming a special motion to strike is triggered by the cross-complaint, what showing must the cross-complainants make in order to establish a *819 " probability" they will prevail on their claims? (4) Did the trial court err in finding cross-complainants established such a probability? We address these issues below.

### III. *Petitioner Made a Sufficient Showing the Causes of Action Against Her Arose From Acts in Furtherance of Her Rights of Petition and Free Speech in Connection With a Public Issue.*

### A. *The Defendant in an Alleged SLAPP Suit Bears the Initial Burden of Showing the Suit Falls Within the Class of Suits Subject to the Special Motion to Strike.*

As noted above, section 425.16 does not apply in every case where the defendant may be able to raise a First Amendment defense to a cause of action. Rather, it is limited to exposing and dismissing SLAPP suits-lawsuits "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" "in connection with a public issue." (§ 425.16, subds. (a), (b).)

Although the statute clearly places the burden on the plaintiff or cross-complainant to establish a probability of prevailing on the claim (§ 425.16, subd. (b)), this burden does not arise unless the claim is one falling within the ambit of the statute. The statute is silent as to whether the defendant, as the moving party, has the burden of establishing the action arises out of acts in furtherance of defendant's First Amendment rights in connection with a public issue or whether the plaintiff bears the burden of showing its claim does not arise out of such acts by the defendant. A related question is what the statute means by the "furtherance" of the defendant's "right of petition or free speech." If the defendant's act is not constitutionally protected how can doing that act be "in furtherance" of the defendant's constitutional rights? On the other hand, if the defendant's act *is* constitutionally protected then, by definition, there is no probability the plaintiff will

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 Cal.App.4th 809
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
(Cite as: 27 Cal.App.4th 809)

Page 8

prevail on its claim. (*Protect Our Mountain v. District Court, supra*, 677 P.2d at pp. 1368-1369)

Traditionally, a party seeking to benefit from a statute bears the burden of making a prima facie showing the statute applies to her. We see no reason why that rule should not apply to a party seeking a special motion to strike under section 425.16. It is not only logical to put this burden on the party seeking the benefit of section 425.16, it is fundamentally fair that before putting the plaintiff to the burden of establishing probability of success on the merits the defendant be required to show imposing that burden is justified by the nature of the plaintiff's complaint. **\*820**

The legislative history of section 425.16 supports our conclusion. The first legislative proposal to deal with SLAPP suits would have erected a pleading bar to suits infringing on constitutional rights thus putting the burden of justifying the action entirely on the plaintiff. (Cf. Civ. Code, § 1714.10, subd. (a).) The Governor vetoed this proposal. (Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992* (Cont.Ed.Bar Dec. 1992) 14 Civ. L. Rep. 485, 487.) The Legislature rejected subsequent proposals to deal with SLAPP's through motions to strike or motions for summary judgment which would result in putting the burden entirely on the defendant. (*Ibid.*) Section 425.16 appears to compromise between these two positions by placing the initial burden on the defendant to show the action should be tested under the provisions of subdivision (b) and the burden on the plaintiff to show the action meets that test.

We do not believe the Legislature intended that to invoke the special motion to strike the defendant must first establish its actions are constitutionally protected under the First Amendment as a matter of law. If this were so the second clause of subdivision (b) of section 425.16 would be superfluous because by definition the plaintiff could not prevail on its claim. (See discussion, *supra*, p. 819)

(2) We conclude, therefore, the statute requires the defendant to make a prima facie showing the

plaintiff's suit arises "from any act of [defendant] in furtherance of [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b).) The defendant may meet this burden by showing the act which forms the basis for the plaintiff's cause of action was a written or oral statement made before a legislative, executive, or judicial proceeding; or such a statement in connection with an issue under consideration or review by a legislative, executive, or judicial body; or such a statement was made in a place open to the public or a public forum in connection with an issue of public interest. (§ 425.16, subd. (e).) Thus, if the defendant's act was a lawsuit against a developer the defendant would have a prima facie First Amendment defense. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1136-1137 [270 Cal.Rptr. 1, 791 P.2d 587].) But, if the defendant's act was burning down the developer's office as a political protest the defendant's motion to strike could be summarily denied without putting the developer to the burden of establishing the probability of success on the merits in a tort suit against defendant.

It should be noted the definition of an "act in furtherance of" a person's First Amendment rights is not limited to oral and written statements. **\*821** (§ 425.16, subd. (e).) Thus if the plaintiff's suit arises out of the defendant's constitutionally protected conduct, such as a peaceful economic boycott the plaintiff should be required to satisfy the statute's requirements. (*NAACP v. Claiborne Hardware* (1982) 458 U.S. 886 [73 L.Ed.2d 1215, 102 S.Ct. 3409]; *State of Mo. v. Nat. Organization for Women* (8th Cir. 1980) 620 F.2d 1301.)

B. *Petitioner Made a Sufficient Showing the Causes of Action Against Her Arose*
*From Acts in Furtherance of Her Rights of Petition and Free Speech in*
*Connection With a Public Issue.*

(3) In ruling cross-complainants had established a probability of success on their claims, the trial court impliedly found petitioner had satisfied the threshold requirement of showing the claims arose

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 Cal.App.4th 809                                                    Page 9
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
**(Cite as: 27 Cal.App.4th 809)**

from an act in furtherance of her right of petition or free speech. (§ 425.16, subd. (b).) The record supports the trial court's determination on this threshold issue.

Cross-complainants concede the issue of "direct contracting" is a public issue within the meaning of section 425.16, subdivisions (b) and (e). They contend, however, petitioner failed to show the acts alleged in the cross-complaint were done "in connection with" the consideration of direct contracting by any legislative, executive or judicial body as required by those same subdivisions. They argue there is no rational connection between legislative, administrative and judicial challenges to direct contracting and petitioner's alleged defamatory statements and conspiracy with others to injure cross-complainants in their businesses.

This argument points up why traditional pleading-based motions such as demurrers and motions to strike are ineffective in combating SLAPP's and why the Legislature believed there was a need for a "special motion to strike" as authorized by section 425.16. In a SLAPP complaint the defendant's act of petitioning the government is made to appear as defamation, interference with business relations, restraint of trade and the like. For this reason the Legislature provided, in determining a motion under the anti-SLAPP statute, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)

Here petitioner's alleged defamatory statements were clearly made in connection with the underlying judicial challenge to direct contracting. As shown by the cross-complaint itself those statements were made in the *822 context of exhorting shorthand reporters to contribute to the cost of pursing that litigation. Thus, there is a strong showing those statements are rationally connected to the litigation itself. (*Pacific Gas & Electric Co. v. Bear Stearns & Co., supra, 50 Cal.3d at pp. 1132, 1135-1136; City of Long Beach v. Bozek (1982) 31 Cal.3d 527, 535 [183 Cal.Rptr. 86, 645 P.2d 137]; cf. McDonald v. Smith (1985) 472 U.S. 479,*

484-485 [86 L.Ed.2d 384, 389-390, 105 S.Ct. 2787].) (See discussion, *post,* p. 826.)

As to the claims involving restraint of trade, "the constitutional right to petition for redress of grievances [establishes] that there is no antitrust liability for petitioning any branch of government, even if the motive is anticompetitive." (*Pacific Gas & Electric Co. v. Bear Stearns & Co., supra, 50 Cal.3d at p. 1133.*) The only exception to this rule is for sham petition ing. (*Hi-Top Steel Corp. v. Lehrer (1994) 24 Cal.App.4th 570, 574 [29 Cal.Rptr.2d 646].*) There is case law supporting the proposition petitioning includes acts designed to influence public opinion concerning an issue before a legislative or administrative body. (*Eastern R. Conf. v. Noerr Motors (1961) 365 U.S. 127, 142-144 [5 L.Ed.2d 464, 473-475, 81 S.Ct. 523]* [hereafter *Noerr*]; (*Webb v. Fury, supra, 282 S.E.2d at p. 42.*) Moreover, the fact a defendant's petitioning activity includes an economic boycott does not necessarily deprive that activity of constitutional protection. (*NAACP v. Claiborne Hardware, supra, 458 U.S. at pp. 913-914 [73 L.Ed.2d at pp. 1236-1237]; State of Mo. v. Nat. Organization for Women, supra, 620 F.2d at p. 1315.*) Assuming petitioner engaged in a conspiracy to boycott the cross-complaining shorthand reporters, an allegation she denies, such activity is at least arguably protected by the petition clause of the First Amendment and the trial court properly shifted the burden to the cross-complainants on this issue. [FN6] *823

FN6 At oral argument cross-complainants argued for the first time the Wilcox memorandum involved "commercial speech" and the Legislature did not intend the anti-SLAPP legislation to protect this form of expression. The statute, however, refers to a "person's right of ... free speech" without qualification. (§ 425.16, subd. (b).) Cross-complainants have not cited, nor has our research disclosed, any legislative history suggesting the Legislature intended to exclude commercial speech from the protection afforded by section 425.16. To the contrary, the statute has been criticized for

the very reason it *does* cover commercial speech. (Stokes, *supra*, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992*, *supra*, 14 Civ. L. Rep. at p. 488.) Furthermore, the view SLAPP suits do not include suits aimed at commercial speech was rejected by the Ninth Circuit in *In re Airport Car Rental Antitrust Litigation* (9th Cir. 1982) 693 F.2d 84, 86. Alternatively, cross-complainants argued for commercial speech to be afforded First Amendment protection it must concern lawful activity. (*Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557, 566 [65 L.Ed.2d 341, 351, 100 S.Ct. 2343].) They contended using the threat of litigation to get the insurers to "back off" from entering into contracts with CRA was an unlawful activity. We have found no authority to support this proposition where, as here, the threatened lawsuit is meritorious. (See *Saunders v. Superior Court*, *supra*, *post*, at p. 832.)

### IV. The Cross-complainants Failed to Satisfy the Requirement of Showing a Probability They Will Prevail on Their Claims Against Petitioner.

### A. To Establish "A Probability That the Plaintiff Will Prevail on the Claim" the Plaintiff Must Make a Prima Facie Showing of Facts Which Would, If Proved at Trial, Support a Judgment in Plaintiff's Favor.

(4) Section 425.16, subdivision (b) requires the plaintiff to establish "a probability that the plaintiff will prevail on the claim." We must first determine what the Legislature meant by a "probability" the plaintiff will prevail. In doing so we look to the Legislative purpose behind the statute as well as the constitutional rights of the plaintiff to due process and a jury trial.

As discussed above, the common features of SLAPP suits are their lack of merit and chilling of defendants' valid exercise of free speech and the

right to petition the government for a redress of grievances. (See discussion, *ante*, pp. 815-817.) Section 425.16 was intended to address those features by providing a fast and inexpensive unmasking and dismissal of SLAPP's. (§ 425.16, subds. (a), (b), (f) and (g); Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992*, *supra*, 14 Civ. L. Rep. at p. 486.) It is also presumed the Legislature intended to enact a valid statute. (*People v. Davenport* (1985) 41 Cal.3d 247, 264 [221 Cal.Rptr. 794, 710 P.2d 861].) Anti-SLAPP legislation, therefore, must be fast, inexpensive and *constitutional* or it is of no benefit to SLAPP victims, the court or the public. In order to satisfy due process, the burden placed on the plaintiff must be compatible with the early stage at which the motion is brought and heard (§ 425.16, subds. (f) and (g)) and the limited opportunity to conduct discovery (subd. (g)). In order to preserve the plaintiff's right to a jury trial the court's determination of the motion cannot involve a weighing of the evidence. (*Looney v. Superior Court* (1993) 16 Cal.App.4th 521, 537- 538 [20 Cal.Rptr.2d 182].)

Cases involving similar statutes have held the requirement of establishing a substantial or reasonable probability of success means only that the plaintiff must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. If either of these requirements is not met, the motion to strike must be granted; if both are satisfied, it must be denied. (*Hung v. Wang* (1992) 8 Cal.App.4th 908, 931 *824 [11 Cal.Rptr.2d 113].) This standard is much like that used in determining a motion for nonsuit or directed verdict. (See *Hung v. Wang*, *supra*, 8 Cal.App.4th at pp. 929, 931 [construing Civil Code section 1714.10]; *Rowe v. Superior Court* (1993) 15 Cal.App.4th 1711, 1723 [19 Cal.Rptr.2d 625] [construing section 425.14]; *Looney v. Superior Court*, *supra*, 16 Cal.App.4th at p. 538 and *Aquino v. Superior Court* (1993) 21 Cal.App.4th 847, 856 [26 Cal.Rptr.2d 477] [construing section 425.13].)

We believe section 425.16, subdivision (b) should

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be given a similar construction. As discussed above, SLAPP suits are distinguishable from ordinary tort suits by their lack of merit. One of the purposes of section 425.16, like Civil Code section 1714.10 construed in *Hung*, is to eliminate such meritless litigation at an early stage. (§ 425.16, subd. (a); *Hung v. Wang, supra,* 8 Cal.App.4th at p. 931.) This statutory purpose is met by requiring the plaintiff to demonstrate sufficient facts to establish a prima facie case.

Section 425.16, however, is not totally analogous to sections 425.13, 425.14 and Civil Code section 1714.10. One difference is that section 425.16 places an added burden on the plaintiff to meet the defendant's constitutional defenses. (§ 425.16, subd. (b); Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992, supra,* 14 Civ. L. Rep. at p. 491.) Nevertheless, we believe this burden should be met in the same manner the plaintiff meets the burden of demonstrating the merits of its causes of action: by showing the defendant's purported constitutional defenses are not applicable to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.

Another distinction, one which cross-complainants find significant, is that section 425.16 requires only a showing of "probability" of prevailing while other statutes require the plaintiff to show "a reasonable probability" (Civ. Code, § 1714.10) or "a substantial probability" (§ 425.13) of prevailing. According to cross-complainants, absence of the adjectives "reasonable" or "substantial" suggests the Legislature intended to impose a lower threshold under section 425.16 than it imposed in similar statutes. There is some support for this argument in *Hung v. Wang, supra,* 8 Cal.App.4th at page 929 in which the court observed, "The adjective ' reasonable ' requires the petitioner to do more than demonstrate *some* chance of winning; the petitioner must show that, given the evidence, he or she has a substantial case." We note, too, Senate Bill No. 1264 originally required a "substantial" probability but was amended in the Assembly to eliminate the adjective

"substantial."

We do not believe by eliminating the adjective "substantial" the Legislature intended a threshold lower than a "reasonable probability." Surely it did **\*825** not mean the court should accept an "unreasonable" probability. Rather, it appears the Legislature eliminated the word "substantial" in order to avoid the implication the trial court was to weigh the evidence which, as noted above, would raise a serious constitutional problem. (See Stokes, *SLAPPing Down the Right to Trial by Jury: The SLAPP Legislation Confusion of 1992, supra,* 14 Civ. L. Rep. at p. 489.) Thus, we believe the test formulated in *Hung v. Wang, supra,* for determining a "reasonable probability" should apply to motions under section 425.16.

*B. Cross-complainants Failed to Establish a Probability of Prevailing on the Defamation Claim Against Petitioner.*

The cross-complaint for defamation is based on a memorandum circulated by petitioner to other shorthand reporters in which she describes a lawsuit to be filed against CRA and exhorts the recipients of the memorandum to contribute financially to the cost of this litigation. The memorandum is part of the record on the motion to strike. In referring to the lawsuit to be filed against CRA, the memorandum states in relevant part, "Some of the things they are being sued for are: anti-trust, violations of the Business and Professions Code, interference with business opportunities, predatory recruitment tactics by CRA, violation of the NSRA Code of Ethics, extortion and racketeering. [¶] The fight for the injunction requires $200,000. Each agency is contributing $2,000 to this end. [¶] Reporters within agencies are each being asked to contribute $100. I think that is a fair amount and hope that you do, too."

The cause of action for libel alleges in relevant part, "Sondra Wilcox published to a number of shorthand reporters a written memorandum which falsely stated, among other things, that cross-defendants were suing cross-complainants and other CRA members/subcontractors for, among other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

things, violations of the NSRA Code of Ethics, extortion and racketeering." The cross-complaint seeks punitive damages against petitioner on the ground she published this memorandum "maliciously, fraudulently, oppressively and despicably, and with the wrongful intention of injuring cross-complainants, with an improper and evil motive amounting to malice, and in conscious disregard of cross-complainants' rights."

(5) We conclude the fundamental right to petition the government for redress of grievances provides Wilcox with at least a qualified privilege which the cross-complainants have not demonstrated they can overcome. [FN7]

> FN7 We assume for purposes of discussion Wilcox's statements were defamatory although this is far from clear.

It is well settled the First Amendment creates a privilege from civil liability for actions constituting the exercise of the right to petition the *826 government for redress of grievances (*Noerr, supra,* 365 U.S. 127) and this right encompasses the act of filing a lawsuit whether it be to vindicate individualized wrongs or draw attention to issues of broad public significance and interest. (*City of Long Beach v. Bozek, supra* 31 Cal.3d 527, 533-534; *Protect Our Mountain v. District Court, supra,* 677 P.2d at p. 1365; *Sierra Club v. Butz, supra,* 349 F.Supp. at p. 937.)

In *Pacific Gas & Electric Co. v. Bear Stearns & Co., supra,* our Supreme Court made clear the tort defense based on the right to petition applies not only to litigants but to those who induce, encourage and support a lawsuit involving a "colorable claim." (50 Cal.3d at p. 1136.) In *Pacific Gas & Electric,* plaintiff brought an action against defendant, an investment brokerage firm, for various business torts alleging the firm had encouraged and financed a local water agency's suit for declaratory relief as to whether the agency could terminate its contract with plaintiff. In holding the petition privilege applicable to a defendant who finances litigation the court stated: "It is important to remember what

PG&E is trying to achieve through this lawsuit. It seeks to enjoin Bear Stearns from further participation in the lawsuit in order to avert what it considers to be the irreparable harm of an adverse judgment. It is essentially seeking to abort the lawsuit by starving the litigant of funds. In *Sierra Club v. Butz,* [*supra*], too, there were, doubtless, persons who induced the representatives of the club to bring the action, and who provided financial assistance in support of the lawsuit, but were not named parties. Yet it would defeat the purpose of assuring free access to the courts, and cause a flood of oppressive derivative litigation, to assess tort liability for their activities." (*Ibid.*) [FN8]

> FN8 In a footnote accompanying the quoted text, the court implied PG&E's lawsuit was a SLAPP suit.

If the defendant's financing of a lawsuit is constitutionally protected it follows that speech exhorting others to do the same is also protected. The only question is whether the protection is absolute or qualified. Courts which have considered defamation claims in the context of the right to petition have generally applied a qualified immunity. (*Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1615 [284 Cal.Rptr. 244]; *McDonald v. Smith, supra,* 472 U.S. 479, 485 [86 L.Ed.2d 384, 389-390]; *Harris v. Adkins* (1993) 189 W.Va. 465 & fn. 8 [432 S.E.2d 549, 552], citing cases.) We have found no California case addressing this question in the present context although we note that had Wilcox been a *party* to the *Saunders'* action she would have enjoyed an absolute immunity from suit under the litigation privilege of Civil Code section 47, subdivision (b). (See *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194-1195 [17 Cal.Rptr.2d 828, 847 P.2d 1044].)

We need not determine whether the right to petition confers an absolute privilege as to statements made in furtherance of that right. Nor do we *827 consider whether the litigation privilege of Civil Code section 47, subdivision (b) applies to a nonparty who participates in the litigation through financial contributions and other support activities such as fund raising. Even if petitioner's statements are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 Cal.App.4th 809                                            Page 13
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
**(Cite as: 27 Cal.App.4th 809)**

only entitled to a qualified protection, cross-complainants have failed to produce any evidence negating such protection. Courts have universally declared common law malice-ill will-does not defeat the protection afforded by the right to petition the government. As the Supreme Court affirmed in *Noerr, supra,* the freedom to petition the government cannot reasonably be allowed to disappear merely because the petitioner acts with "malice." (365 U.S. at p. 139 [5 L.Ed.2d at p. 472].) "[T]he motive, even if malicious, of defendants is unimportant if legal ground existed upon which to predicate" their petition. (*Paskle v. Williams* (1931) 214 Cal. 482, 487 [6 P.2d 505]; see also *Matossian v. Fahmie* (1980) 101 Cal.App.3d 128, 136-137 [161 Cal.Rptr. 532]; *Sierra Club v. Butz, supra,* 349 F.Supp. at p. 938.) The petition privilege is defeated, if at all, only by a showing of "actual malice"-knowledge of the falsity of the allegations or with reckless disregard for their truth or falsity. (*City of Long Beach v. Bozek, supra,* 31 Cal.3d at p. 534.) The cross-complaint does not allege Wilcox knew her assertions about what would be claimed in the complaint were false when she made them or that she made them in reckless disregard for their truth or falsity nor have cross-complainants produced any evidence showing actual malice on the part of Wilcox. Thus cross-complainants have failed to meet either of the requirements imposed by section 425.16 and the defamation claim against Wilcox must be stricken. (*Hung v. Wang, supra,* 8 Cal.App.4th at p. 931.)

C. *Cross-complainants Failed to Establish a Probability of Prevailing on the Conspiracy Claims Against Petitioner.*
In addition to the claim for defamation based on petitioner's own statements, the cross-complaint seeks to impose liability on petitioner for conspiring with the other cross-defendants to defame cross-complainants, injure them through unlawful and unfair business practices and intentional interference with their prospective business relationships.

(6) A complaint seeking to impose liability on a defendant on the basis of conspiracy must allege: "(1) the formation and operation of the conspiracy; (2)

the wrongful act or acts done pursuant thereto; and (3) the damage resulting." (*Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616, 631 [102 Cal.Rptr. 815, 498 P.2d 1063].) The cross-complaint contains the necessary allegations. However, the cross-complainants have failed to make a prima facie showing of facts to support the first of those allegations.

As we explained above (p. 823), to determine whether the plaintiff has met its burden of establishing a probability of prevailing on its claim the **\*828** court applies a standard similar to that applied to motions for nonsuit. On a motion for nonsuit the court may not weigh the evidence or determine questions of credibility but must accept all evidence favorable to the plaintiff as true and indulge every legitimate favorable inference that may be drawn from it. Only when no evidence of sufficient substantiality exists to support a judgment for the plaintiff may the defendant's motion be granted. (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839 [206 Cal.Rptr. 136, 686 P.2d 656].) The difference between a motion for nonsuit and a motion to strike under section 425.16 is that on a motion for nonsuit the court ignores conflicting evidence (36 Cal.3d at p. 838) while on a motion under section 425.16 "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)

(7) In order to establish liability based on conspiracy, the plaintiff must show the defendant and at least one other concurred in the tortious scheme with knowledge of its unlawful purpose. (*Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1150 [243 Cal.Rptr. 420].) The requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators as well as other circumstances. (*Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 316 [70 Cal.Rptr. 849, 444 P.2d 481].) However, "[a] reasonable inference ' "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work." ' ... It must lo-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 Cal.App.4th 809
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
(Cite as: 27 Cal.App.4th 809)

Page 14

gically flow from other facts established in the action. (Evid. Code, § 600, subd. (b).)" (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1604 [28 Cal.Rptr.2d 885].)

(8) The cross-complainants in this action have failed to produce legally sufficient evidence Wilcox concurred with at least one other person in a tortious scheme to injure cross-complainants.

Cross-complainants have no direct evidence of an agreement between Wilcox and any other person to injure them in their reputations or business ventures. Instead, they rely on inferences they contend can be drawn from: (1) a memorandum distributed by Wilcox stating in part, "We are all banding together ... to permanently put the Alliance to rest once and for all" and exhorting other shorthand reporters to contribute to the lawsuit against CRA and its members; (2) the similarities between the memorandum distributed by Wilcox and memoranda distributed by two other reporters; (3) a meeting between Wilcox and Mark Saunders, the lead plaintiff in the underlying complaint; (4) a declaration from Claudia Blake, a CRA member, relating similar calls from Wilcox and other cross-defendants telling Blake they *829 would no longer "network" with her agency because of her affiliation with CRA. We examine each of these items of evidence below.

*(1) The Wilcox memorandum.*
As we have previously explained, there is nothing unlawful about contributing to a lawsuit or urging others to do the same unless the suit is a mere sham to cover the true purpose of interfering with the business dealings of a competitor. (See discussion, *ante*, p. 822.) There is no showing the underlying *Saunders* litigation is a sham. Indeed, in light of our opinion in that case, filed concurrently, such a claim would be untenable. Furthermore, the statement by Wilcox about "banding together ... to permanently put the Alliance to rest ..." was made in the context of the contemplated litigation and no reasonable juror could interpret it otherwise.

*(2) The Wilcox memorandum and the two memor-*

*anda from other cross-defendants.*
Cross-complainants contend an agreement can be inferred from the similarities between the Wilcox memorandum discussed above and memoranda distributed by reporter Beverly Izen and an anonymous author (presumably a reporter). The Wilcox and anonymous memoranda are similar in that they were both written in the summer of 1992 and both discuss the contemplated lawsuit against CRA. There are no other similarities. The anonymous memorandum discusses making the public aware of CRA's practices; the other two do not. The Izen memorandum urges free-lance reporters not to work for certain reporter agencies associated with CRA. Neither of the other two memoranda contains such a statement. Furthermore, the Izen memorandum was written in the spring 1993.

Again, nothing unlawful is suggested in the Wilcox or anonymous memoranda. Even if the Izen memorandum could be construed as calling for a boycott of certain reporting firms and assuming such a boycott would be unlawful, there is no evidence Wilcox was a recipient of that memorandum much less that she agreed with it or agreed to take the action urged in it.

*(3) The telephone conversation* between Wilcox and Saunders.
There is no evidence anything unlawful was agreed to in that telephone conversation.

*(4) The Blake declaration.*
Wilcox objected to introduction of this declaration at the hearing on the ground of hearsay. Presumably the trial court sustained the objection although it is not clear from the record. Ms. Blake states she received a *830 telephone call from another reporter, Tom Golding, who told her he would no longer network with her because of her affiliation with CRA. There is no objection to this statement. However, she goes on to state: "My agency received similar calls from Sondra Wilcox & Associates [and other reporters]." Cross-complainants argue the statement in reference to Wilcox is not hearsay because it was not introduced to prove the truth of the statement Wilcox would no longer network with Blake but

27 Cal.App.4th 809                                                                Page 15
27 Cal.App.4th 809, 33 Cal.Rptr.2d 446
**(Cite as: 27 Cal.App.4th 809)**

merely to prove Wilcox spoke those words in order to show concerted action and agreement between Wilcox and other reporters.

Cross-complainants' argument might have merit if, for example, Wilcox had made the statement directly to Blake. It is clear from the declaration, however, the statement was made to someone else in Blake's office. How many people passed the message along before it got to Blake is anybody's guess but there would have to be a hearsay exception for each person in the chain for Blake's statement to be admissible. No such exceptions have been suggested.

(9) Cross-complainants argue declarations submitted for the purpose of demonstrating a probability of prevailing in the action need not contain admissible evidence. Rather the plaintiff or cross-complainant need only "demonstrate the *existence* of sufficient evidence to establish a prima facie case." (*Rowe v. Superior Court, supra,* 15 Cal.App.4th at p. 1723, italics added.) The plaintiff need not actually produce such evidence at the hearing on the motion to strike. We reject this construction of the statute. In the very next sentence of its opinion the *Rowe* court stated: "[I]t is only necessary that plaintiff provide 'a sufficient prima facie showing of facts to sustain a favorable decision *if the evidence submitted* is credited.' " (*Ibid.;* quoting from *Hung v. Wang, supra,* 8 Cal.App.4th at p. 931, italics added.) Implicit in this statement is the assumption the evidence referred to was admissible, or at least not objected to, otherwise there would be nothing for the trier of fact to credit. Here, Wilcox objected to the admissibility of the Blake declaration on hearsay grounds.

Even if Blake's statement were admissible it is much too thin a thread on which to hang the probability of proving conspiracy at trial.

#### Disposition

Let a peremptory writ issue directing the respondent court to vacate its order denying petitioner's motion to strike and to enter a new and different **\*831** order striking the cross-complaint in its entirety as to cross-defendants Sondra Wilcox and Sondra K. Wilcox & Associates, Inc.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied September 15, 1994, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 17, 1994. **\*832**

Cal.App.2.Dist.,1994.

Wilcox v. Superior Court (Peters)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 32
## To Appendix to California State Authorities



28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

▷

Supreme Court of California
RAUL WILSON et al., Plaintiffs and Appellants,
v.
PARKER, COVERT & CHIDESTER et al., Defendants and Respondents.
RAUL WILSON et al., Plaintiffs and Appellants,
v.
MARK WILLIAMS, Defendant and Respondent.
RAUL WILSON et al., Plaintiffs and Appellants,
v.
CARL AXUP et al., Defendants and Respondents.
**No. S097444.**

Aug. 1, 2002.

SUMMARY

Teachers and administrators of a school brought an action for harassment and defamation against organizers of, and participants in, a protest at the school. Some of the protesters moved to strike the action under the anti-SLAPP statute ( Code Civ. Proc., § 425.16; motion to strike strategic lawsuit against public participation). The trial court denied the motion, partly on the ground that the teachers and administrators had demonstrated a probability they could prevail on the merits by establishing a sufficient prima facie showing of facts to sustain a favorable judgment. The Court of Appeal vacated the order denying the motion as to two of the protesters, and on remand the trial court granted the motion as to them. Those protesters then filed the present action for malicious prosecution against the teachers and administrators and their attorneys. The trial court sustained the demurrers of the attorneys and two of the teachers, and dismissed the action as to them. (Superior Court of Riverside County, No. 326517, Joan F. Ettinger, Temporary Judge. [FN*] ) The Court of Appeal, Fourth Dist., Div. Two, Nos. E025710, E025832 and E026853, affirmed.

FN* Pursuant to California Constitution, article VI, section 21.

The Supreme Court affirmed the judgment of the Court of Appeal. The court held that in the underlying action, the trial court's denial of the anti-SLAPP motion, on the ground that the plaintiffs had established the requisite probability of success, established probable cause to bring the action, and precluded the maintenance of the subsequent malicious prosecution action, since the prior ruling was not shown to have been obtained by fraud or perjury. The rights of litigants and attorneys to bring nonfrivolous civil actions, even if it was extremely unlikely that they would win, would be unduly burdened were they exposed to tort liability for malicious prosecution for actions that had been found potentially meritorious under Code Civ. Proc., § 425.16. In order to establish a probability of prevailing on the claim, a plaintiff responding to an anti-SLAPP motion must state and substantiate a legally sufficient claim. The court also held that the Court of Appeal's *812 partial vacation of the trial court's § 425.16 order in the underlying action did not vitiate its effect-although the Court of Appeal held the evidence insufficient to proceed, it did not hold that a reasonable attorney could not have believed the case had potential merit. (Opinion by Werdegar, J., with George, C. J., Kennard, Baxter, Chin, and Moreno, JJ., concurring. Concurring opinion by Brown, J. (see p. 826).)

HEADNOTES

Classified to California Digest of Official Reports

(1) Malicious Prosecution § 6--Essentials to Maintenance of Action--Want of Probable Cause--Determination.
The existence or nonexistence of probable cause is a legal question to be resolved by the court in a malicious prosecution case; litigants are thus protected against the danger that a lay jury would mistake a merely unsuccessful claim for a legally untenable one. Probable cause is determined objectively, i.e., without reference to whether the attorney bringing the prior action believed the case was tenable, and the standard of probable cause to bring a civil suit is equivalent to that for determining the frivolous-

28 Cal.4th 811                                                                                    Page 2
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
(Cite as: 28 Cal.4th 811)

ness of an appeal. This lenient standard for bringing a civil action reflects the important public policy of avoiding the chilling of novel or debatable legal claims. Attorneys and litigants have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win. Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis of a malicious prosecution suit.

(2) Malicious Prosecution § 6--Essentials to Maintenance of Action--Want of Probable Cause--Judgment or Verdict for Plaintiff.
In a malicious prosecution action, a trial court's judgment or verdict in favor of the plaintiff or prosecutor in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court. Claims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness.

(3a, 3b, 3c) Malicious Prosecution § 6--Essential to Maintenance of Action--Want of Probable Cause--Existence of Probable Cause--*813 Denial of Anti-SLAPP Motion.
The trial court's denial of a motion to strike an anti-SLAPP suit under Code Civ. Proc., § 425.16 (motion to strike strategic lawsuit against public participation), on the ground that the plaintiffs had established the requisite probability of success, established probable cause to bring the action, and precluded the maintenance of a subsequent malicious prosecution action by the underlying defendants, where the prior ruling was not shown to have been obtained by fraud or perjury. The rights of litigants and attorneys to bring nonfrivolous civil actions, even if it is extremely unlikely that they will win, would be unduly burdened were they exposed to tort liability for malicious prosecution for actions that had been found potentially meritorious under § 425.16. In order to establish a probability of prevailing on the claim, a plaintiff responding to an

anti-SLAPP motion must state and substantiate a legally sufficient claim. Also, the Court of Appeal's partial vacation of the trial court's § 425.16 order did not vitiate its effect-although the Court of Appeal held the evidence insufficient to proceed, it did not hold that a reasonable attorney could not have believed the case had potential merit. (Disapproving *Lucchesi v. Giannini & Uniack (1984), 158 Cal.App.3d 777 [205 Cal.Rptr. 62]* to the extent it is contrary to the holding that, for purposes of a malicious prosecution action, denial of a defense summary judgment motion on the ground that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict.)

[See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 424 et seq.; West's Key Number Digest, Malicious Prosecution ⟨⟩ 25(1).]

(4) Malicious Prosecution § 6--Essentials to Maintenance of Action--Want of Probable Cause--Plaintiff's Awareness of Strong Evidence Against Claim.
A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if he also is aware of evidence that will weigh against the claim. Plaintiffs and their attorneys are not required, on penalty of tort liability for malicious prosecution, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think is unlikely to succeed, so long as it is arguably meritorious.

(5) Malicious Prosecution § 6--Essentials to Maintenance of Action--Want of Probable Cause.
The determination of probable cause in a *814 malicious prosecution action does not operate, like collateral estoppel, to preclude relitigation of an issue of fact. Probable cause is a legal issue, not a factual one.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Cal.4th 811                                                                          Page 3
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
(Cite as: 28 Cal.4th 811)

COUNSEL

Law Offices of Yvonne M. Renfrew and Yvonne
M. Renfrew for Plaintiffs and Appellants.

Armen L. George, in pro. per., and for Alan D. Bar-
bour and Miyoko O. Barbour as Amici Curiae on
behalf of Plaintiffs and Appellants.

Ericksen, Arbuthnot, Kilduff, Day & Lindstrom,
Mark L. Kiefer, Laine E. Hedwall and Matthew E.
Voss for Defendants and Respondents Parker, Cov-
ert & Chidester, Spencer E. Covert and Mark Willi-
ams.

Reich, Adell, Crost & Cvitan, Paul Crost and Car-
los R. Perez for Defendants and Respondents
Reich, Adell, Crost & Cvitan and Marianne Rein-
hold.

Stream & Stream, David D. Werner and Jamie E.
Wrage for Defendants and Respondents Carl Axup
and K. T. Bowers.

Rutan & Tucker and David C. Larsen for California
School Boards Association Education Legal Alli-
ance as Amicus Curiae on behalf of Defendants and
Respondents Parker, Covert & Chidester, Spencer
E. Covert, Mark Williams, Carl Axup and K. T.
Bowers.

Hinshaw & Culbertson, Ronald E. Mallen and Paul
E. Vallone as Amici Curiae on behalf of Defend-
ants and Respondents.

Sidley Austin Brown & Wood and Mark E. Haddad
for Amoco Corporation and Amoco Technology
Company as Amici Curiae on behalf of Defendants
and Respondents.

Best Best & Krieger, Jack B. Clarke, Jr., John F.
Walsh, Angelica Y. Castillo and Megan K. Starr for
David Kuzmich, Carole Castle and Ellen Schwartz
as Amici Curiae on behalf of Defendants and Re-
spondents.

**WERDEGAR, J.**

One of the elements of an action for malicious pro-

secution is the absence of probable cause for bring-
ing the prior action. (*815*Sheldon Appel Co. v. Al-
bert & Oliker (1989) 47 Cal.3d 863, 874 [254
Cal.Rptr. 336, 765 P.2d 498].) The question presen-
ted here is whether the trial court's denial, in the
prior action, of a special motion to strike under
California's anti-SLAPP (strategic lawsuit against
public participation) statute (Code Civ. Proc., §
425.16) establishes that probable cause did exist for
bringing the action, precluding maintenance of the
malicious prosecution suit absent proof the ruling
was obtained by fraud. We conclude that denial of
the motion to strike does establish the existence of
probable cause where, as in this case, the trial
court's denial ruling was predicated on a finding
that the action had potential merit. We therefore af-
firm the judgment of the Court of Appeal, which af-
firmed the trial court's sustaining of demurrers to
this malicious prosecution action.

Factual and Procedural Background

The underlying action, *Kuzmich v. Mexican Politic-
al Assn.* (Super. Ct. Riverside County, 1996, No.
283066) arose from demonstrations and personal
confrontations occurring in and around a public
school. The plaintiffs were teachers and adminis-
trators at the school who alleged that the demon-
strators' actions and speech amounted to harassment
and defamation; the defendants were allegedly par-
ticipants in, or organizers of, the protests and ac-
companying confrontations.

Several of the *Kuzmich* defendants, including the
Mexican Political Association (MPA), which or-
ganized the demonstrations, and Raul Wilson, an
officer of the MPA, moved to strike the action un-
der the anti-SLAPP statute (Code Civ. Proc., §
425.16 (hereafter section 425.16)). The trial court
denied the motion on three grounds: the motion was
untimely; the defendants had not established that
the action arose from acts "in furtherance of [their]
right of petition or free speech" (§ 425.16, subds.
(b)(1), (e)); and the plaintiffs had demonstrated a
probability they could prevail on the merits (id.,
subd. (b)(3)) by establishing, in the trial court's
words, "a sufficient prima facie showing of facts to
sustain a favorable judgment." [FN1]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 Cal.4th 811
Page 4
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

FN1 In a separate ruling, the *Kuzmich* trial court also issued a permanent injunction against harassment. The *Kuzmich* Court of Appeal reversed the grant of injunctive relief on procedural grounds. In the present case, the Court of Appeal held that the *Kuzmich* trial court's grant of injunctive relief established probable cause for that cause of action, but neither plaintiffs' petition for review nor any of defendants' answers raises for our review the correctness of that holding. We therefore do not address the effect of the order for injunctive relief.

The *Kuzmich* defendants sought review of this ruling by petition to the Court of Appeal for a writ of mandate. The Court of Appeal granted the petition in part, vacating the superior court's order denying the motion to *816 strike as to Wilson and the MPA. The reviewing court held that the organized protests came within the protective scope of section 425.16, though some of the personal insults and slurs alleged to have been made did not. Finding insufficient evidence of a conspiracy to harass or defame, and therefore examining each defendant's conduct individually, the Court of Appeal held that "[a]s for Wilson, there is no evidence that he personally committed tortious conduct and he is entitled to a dismissal." The MPA, the court further held, "cannot be held liable for the actions of certain of its members, and it has no liability in tort for sponsoring a protest on an issue of public significance." (*Martinez v. Superior Court* (Aug. 29, 1997, E020044) [nonpub. opn.].) On remand, the superior court granted the motion to strike and dismissed the action as to Wilson and the MPA.

Wilson and the MPA then brought this suit for malicious prosecution and other causes of action against the *Kuzmich* plaintiffs and their attorneys. The superior court sustained demurrers to the complaint by the attorney defendants and by teachers Carl Axup and K. T. Bowers, and dismissed the action as to them.

The Court of Appeal affirmed. Observing that "the

denial of a SLAPP suit motion to strike parallels the denial of a motion for summary judgment," the court followed *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375 [90 Cal.Rptr.2d 408] (*Roberts*), which held that denial of a defense summary judgment motion normally establishes probable cause. As did the *Roberts* court (*id.* at p. 384), the Court of Appeal reasoned that the foundation for the contrary view, enunciated in *Lucchesi v. Giannini & Uniack* (1984) 158 Cal.App.3d 777 [205 Cal.Rptr. 621] (*Lucchesi*), had been undermined by this court's intervening decision in *Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d 863 (*Sheldon Appel*), adopting an objective standard of probable cause for malicious prosecution actions. One justice dissented from this holding, arguing that, because survival of a section 425.16 motion to strike requires only a prima facie case, denial of such a motion does not establish probable cause. The dissenter maintained that *Roberts* conflicted with this court's approving citation of *Lucchesi* in *Crowley v. Katleman* (1994) 8 Cal.4th 666, 692-693, footnote 15 [34 Cal.Rptr.2d 386, 881 P.2d 1083].

We granted plaintiffs' petition for review.

## Discussion

We addressed the probable cause element of malicious prosecution comprehensively in *Sheldon Appel, supra,* 47 Cal.3d 863. We first considered the policy reasons for adhering to limitations on the malicious prosecution tort, *817 reiterating that the tort is disfavored both because of its "potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court" (*id.* at p. 872) and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself (*id.* at p. 873). A preferable approach is "the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself." (*Ibid.*)

(1) Applying that policy perspective to the delin-

28 Cal.4th 811                                                                        Page 5
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

eation of the probable cause element, this court held, first, that the existence or nonexistence of probable cause is a legal question to be resolved by the court in the malicious prosecution case; litigants are thus protected against the danger that a lay jury would mistake a merely unsuccessful claim for a legally untenable one. (*Sheldon Appel, supra, 47 Cal.3d at pp. 874-877.*) We further held that probable cause is determined objectively, i.e., without reference to whether the attorney bringing the prior action believed the case was tenable (*id.* at pp. 877-882), and that the standard of probable cause to bring a civil suit was equivalent to that for determining the frivolousness of an appeal (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]), i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." (*Sheldon Appel, supra,* at p. 886.) This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." (*Id.* at p. 885.) Attorneys and litigants, we observed, " 'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win ....' " (*Ibid.,* quoting *In re Marriage of Flaherty, supra,* at p. 650.) Only those actions that " 'any reasonable attorney would agree [are] totally and completely without merit' " may form the basis for a malicious prosecution suit. (*Ibid.*)

(2) Long before *Sheldon Appel* was decided, decisions in California and elsewhere established that a trial court judgment or verdict in favor of the plaintiff or prosecutor in the underlying case, unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action, even though the judgment or verdict is overturned on appeal or by later ruling of the trial court. [FN2] Although this rule predates *Sheldon Appel,* it is motivated by much the same policy concern. Because malicious prosecution *818 suits have the potential to penalize and deter the legitimate invocation of the judicial process for redress of grievances, only claims that a reasonable litigant or attorney would have seen as lacking all merit should form the basis for such a suit. Claims that have succeeded at a hearing on the merits, even if that result is sub-

sequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness.

> FN2 *Bealmear v. So. Cal. Edison Co.* (1943) 22 Cal.2d 337, 340 [139 P.2d 20]; *Carpenter v. Sibley* (1908) 153 Cal. 215, 218 [94 P. 879]; *Holliday v. Holliday* (1898) 123 Cal. 26, 32 [55 P. 703]; *Cowles v. Carter* (1981) 115 Cal.App.3d 350, 356, 359 [171 Cal.Rptr. 269]; *Fairchild v. Adams* (1959) 170 Cal.App.2d 10, 15 [338 P.2d 191]; see also *Crescent Live Stock Co. v. Butchers' Union* (1887) 120 U.S. 141, 149-151 [7 S.Ct. 472, 476-477, 30 L.Ed. 614]; Restatement Second of Torts, section 675, comment b, page 458; Prosser and Keeton, The Law of Torts (5th ed. 1984) section 120, page 894.

Thus, in *Fairchild v. Adams, supra,* 170 Cal.App.2d 10, the superior court jury in the underlying case, a will contest, found the will to have been made under undue influence; the Court of Appeal affirmed, but this court reversed, holding the evidence insufficient to show that undue pressure had been brought to bear on the testamentary act itself. (*Id.* at pp. 11-12.) In the devisee's ensuing malicious prosecution action against the objector, the appellate court held the jury's verdict in the underlying case established probable cause for the contest despite its reversal on appeal. The jurors had "considered the evidence produced in the will contest alone sufficient, not only to justify the commencement of the proceeding, but also to support the judgment that the will and codicil were results of such undue influence. *They were declared by the Supreme Court to be in error-but not unreasonable-in their opinions.* [¶] ... [¶] The favorable outcome of the proceedings in the court below is conclusive evidence, in the absence of fraud, of the existence of probable cause ... notwithstanding reversal by the Supreme Court." (*Id.* at p. 15, italics added.)

Similarly, in *Cowles v. Carter, supra,* 115 Cal.App.3d 350, in the underlying case, a civil ac-

28 Cal.4th 811                                                                                                    Page 6
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

tion for child stealing and kidnapping, the jury returned a verdict for the plaintiffs, but the trial court granted judgment for the defense notwithstanding the verdict. (*Id.* at pp. 353-354.) In the defendant's ensuing malicious prosecution action, the appellate court held the jury's favorable verdict for the plaintiffs in the underlying case established probable cause for the action despite its vacation by the trial court. Quoting from a Georgia decision, the court explained, " 'it would be hard law which would render a plaintiff liable in damages for instituting an action, wherein he made a truthful and honest statement of the facts, in the event that, notwithstanding a judge of the superior court was satisfied that upon those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside.... [T]he inquiry [is] *not whether the plaintiff had in fact a good and valid cause of action, but whether this was apparently true, and it was accordingly the right of the plaintiff to invoke a judicial decision concerning the merits of the case presented for determination* ....' " (*Id.* at p. 357, quoting *Short v. Spragins* (1898) 104 Ga. 628 [30 S.E. 810], italics added.) *819

The Court of Appeal in *Roberts, supra, 76 Cal.App.4th 375,* relied upon much the same reasoning to hold that denial of a defense motion for summary judgment in the prior case established probable cause. In the underlying case in *Roberts,* an insurer's action against a physician for fraud and other causes of action, the trial court denied a defense motion for summary judgment on the fraud claim, finding material questions of fact existed. At trial, however, the fraud claim was resolved in the defendant's favor. (*Id.* at pp. 380-381.) In the physician's subsequent malicious prosecution action, the appellate court held the prior summary judgment denial was "a reliable indicator that probable cause [was] present." (*Id.* at p. 383.) Just as a trial victory by the underlying plaintiff "shows that the suit was not among the least meritorious of meritless suits, those which are totally meritless and thus lack probable cause," so too "[d]enial of a defendant's summary judgment motion provides similarly persuasive evidence that a suit does not totally lack merit." (*Ibid.*) A trial court's conclusion that issues

of material fact remain for trial "necessarily impl[ies] that the judge finds at least some merit in the claim. The claimant may win, if certain material facts are decided favorably. This finding (unless disregarded) compels [the] conclusion that there is probable cause, because probable cause is lacking only in the *total absence* of merit." (*Ibid.*) Giving effect to this conclusion "serves the policy expressed in *Sheldon Appel* to discourage dubious malicious prosecution suits." (*Id.* at p. 384.) [FN3]

> FN3 *Roberts* is the only published California decision holding denial of a defense summary judgment motion demonstrates the existence of probable cause. That holding, however, was prefigured in *Hufstedler, Kaus & Ettinger v. Superior Court* (1996) 42 Cal.App.4th 55, 69 [49 Cal.Rptr.2d 551], where the appellate court observed that denial of summary judgment in the underlying libel case, while not dispositive, supported the conclusion that probable cause existed for that action, since "if the statements [sued upon in the libel case] were so clearly expressions of opinion that any reasonable attorney would have so viewed them, [the underlying defendant's] motion for summary judgment would have been granted."

Several recent cases from other jurisdictions have reached the same conclusion as to denial of defense summary judgment motions, directed verdict motions, and similar efforts at pretrial termination of the underlying case. In *Davis v. Butler* (1999) 240 Ga.App. 72 [522 S.E.2d 548], for example, an action for abusive civil litigation (which required proof that the prior litigation was groundless, frivolous or vexatious) was held precluded where a defense motion for summary judgment had been denied in the underlying suit: "[S]uch denial of summary judgment constitutes a legal determination that the action has substantial justification, because it is not groundless or frivolous and can proceed to jury trial. Thus, it was not groundless, frivolous, or vexatious in fact or in law." (*Id. at p. 550.*) Again, in *Porous Media Corp. v. Pall Corp.*

28 Cal.4th 811                                                                                Page 7
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

(8th Cir. 1999) 186 F.3d 1077, the court, applying Minnesota law, held denial of a directed verdict for the *820 defense established probable cause for the underlying suit: "If reasonable jurors could find in Pall's favor, it follows that there was probable cause for bringing the counterclaims .... This is fatal to an essential element of Porous's claims for malicious prosecution." (Id. at p. 1080.) [FN4]

> FN4 Accord, Butler v. Ratner (1994) 210 A.D.2d 691 [619 N.Y.S.2d 871, 874] (issuance of temporary restraining order creates presumption of probable cause); Skinder-Strauss v. Mass. Continuing Legal Educ. (D.Mass. 1994) 870 F.Supp. 8, 11 (claim that survives summary judgment does not lack objective merit); contra, Kirk v. Marcum (Ky.Ct.App. 1986) 713 S.W.2d 481, 485 (denial of directed verdict for defense does not establish probable cause).

The same result has been held to follow under the federal Noerr-Pennington doctrine, [FN5] which immunizes plaintiffs from counterclaims for, e.g., violation of antitrust law, based merely on having initiated non-sham business litigation. Sham litigation, for this purpose, is the "pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." (Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. (1993) 508 U.S. 49, 62 [113 S.Ct. 1920, 1929, 123 L.Ed.2d 611].) A finding of probable cause to bring the action therefore precludes a finding the action was a sham. (Id. at pp. 62-63 [113 S.Ct. at pp. 1929-1930].) Significantly for our purposes, the denial of summary judgment in the underlying action has been held to demonstrate the action was not a sham. (Harris Custom Builders, Inc. v. Hoffmeyer (N.D.Ill. 1993) 834 F.Supp. 256, 261-262.) "An action that is well enough grounded, factually and legally, to survive a motion for summary judgment is sufficiently meritorious to lead a reasonable litigant to conclude that they had some chance of success on the merits. Consequently, plaintiffs' infringement action is not a sham and, under Noerr-Pennington, cannot subject Harris to antitrust liability." (Ibid., italics added; accord, Por-

ous Media Corp. v. Pall Corp., supra, 186 F.3d at p. 1080, fn. 4; Gen-Probe, Inc. v. Amoco Corp., Inc. (S.D.Cal. 1996) 926 F.Supp. 948, 958.)

> FN5 So called after Eastern R. Conf. v. Noerr Motors (1961) 365 U.S. 127 [81 S.Ct. 523, 5 L.Ed.2d 464] and Mine Workers v. Pennington (1965) 381 U.S. 657 [85 S.Ct. 1585, 14 L.Ed.2d 626].

(3a) The same considerations lead us to conclude that a trial court's denial of a motion to strike under section 425.16, on the ground that the plaintiff has established the requisite probability of success, establishes probable cause to bring the action, and precludes the maintenance of a subsequent malicious prosecution action, unless the prior ruling is shown to have been obtained by fraud or perjury. The rights of litigants and attorneys to bring nonfrivolous civil actions, " 'even if it is extremely unlikely that they will win' " (Sheldon Appel, supra, 47 Cal.3d at p. 885), would be unduly burdened were they exposed to tort liability for malicious prosecution for actions that had been found potentially meritorious under section 425.16. *821

In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must " 'state [] and substantiate[] a legally sufficient claim.' " (Briggs v. Eden Council for Hope & Opportunity (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564], quoting Rosenthal v. Great Western Fin. Securities Corp. (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (Matson v. Dvorak (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880]; accord, Rosenauer v. Scherer (2001) 88 Cal.App.4th 260, 274 [105 Cal.Rptr.2d 674].) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or

28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365 [102 Cal.Rptr.2d 864].)

In denying a motion to strike on the ground that the plaintiff has established the requisite probability of success, therefore, the trial court necessarily concludes that the plaintiff has substantiated a legally tenable claim through a facially sufficient evidentiary showing and that the defendant's contrary showing, if any, does not defeat the plaintiff's as a matter of law. This determination establishes probable cause to bring the claim, for such an action clearly is not one that " 'any reasonable attorney would agree ... is totally and completely without merit.' " (*Sheldon Appel, supra,* 47 Cal.3d at p. 885.) A claim that is legally sufficient and can be substantiated by competent evidence is, on the contrary, one that a "reasonable attorney would have thought ... tenable." (*Id.* at p. 886.) The opposite rule, permitting such claims to form the basis for malicious prosecution liability, would unduly limit the right to invoke judicial remedies in pursuit of nonfrivolous claims. (Cf. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., supra,* 508 U.S. at p. 56 [113 S.Ct. at p. 1926] [imposition of antitrust liability for the initiation of non-sham litigation would tend to infringe First Amendment right of petition].)

We are not persuaded by plaintiffs' argument, echoing the dissenter in the Court of Appeal, that the denial of a section 425.16 motion does not demonstrate probable cause because the trial court, in deciding such a motion, determines only whether the plaintiff has substantiated a prima facie case and does not weigh one side's evidence against the other in the manner *822 of a jury or court trying the merits. (4) A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim. Plaintiffs and

their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious. (*Sheldon Appel, supra,* 47 Cal.3d at p. 885.) [FN6] That the trial court does not, pursuant to section 425.16, weigh the evidence or decide disputed questions of fact does not, therefore, undermine the conclusion that a claim found to have a probability of success under that statute was brought with probable cause.

> FN6 Indeed, a plaintiff or his or her attorney may *not* be aware, when initiating the action, of evidence in the defendant's possession that weighs against the claim. Considering the plaintiff's prima facie case alone is appropriate for this reason as well, for probable cause to bring an action depends on the facts known to the litigant or attorney at the time the action is brought. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 880- 884.)

(3b) Nor, in this case, did the *Kuzmich* Court of Appeal's partial vacation of the trial court's section 425.16 order vitiate its effect. The appellate court in *Kuzmich* held the superior court legally erred in finding potential merit to the claims against two of the *Kuzmich* defendants, but not that the lower court decided the case irrationally. (See *Fairchild v. Adams, supra,* 170 Cal.App.2d at p. 15 [Supreme Court held jurors "to be in error-but not unreasonable-in their opinions"].) [FN7] That the *Kuzmich* plaintiffs prevailed in the trial court shows their action was not so clearly and completely without merit as to justify tort liability for its initiation; though the Court of Appeal held the evidence of Wilson's and the MPA's liability insufficient to proceed, it did not hold or imply that a reasonable attorney could not have believed the case had potential merit. It would be a " 'hard law,' " indeed, that " 'would render a plaintiff liable in damages for instituting an action ... in the event that, notwithstanding a judge of the superior court was satisfied that upon

Case 5:07-cv-03795-JW    Document 50    Filed 08/23/2007    Page 26 of 41

28 Cal.4th 811                                                                Page 9
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily Journal D.A.R. 8635
(Cite as: 28 Cal.4th 811)

those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside.' " (*Cowles v. Carter, supra,* 115 Cal.App.3d at p. 357.)

> FN7 See also *Butler v. Ratner, supra,* 619 N.Y.S.2d at pages 873-874 (issuance of temporary restraining order, though vacated by appellate court, creates presumption of probable cause); *Chapman v. Grimm & Grimm, P.C.* (Ind.Ct.App. 1994) 638 N.E.2d 462, 464-465 (contempt citation against defendant in child visitation action, though reversed by appellate court for lack of jurisdiction, conclusively establishes probable cause to bring action).

To support their contention that denial of a section 425.16 motion should not be deemed to establish probable cause, plaintiffs rely heavily on *Lucchesi, supra,* 158 Cal.App.3d 777, and on this court's favorable citation of **\*823** *Lucchesi* in *Crowley v. Katleman, supra,* 8 Cal.4th 666 (*Crowley*), both of which we now examine. [FN8]

> FN8 The dissenting justice below, in addition to relying on *Lucchesi* and *Crowley,* cited decisions refusing effect to preliminary rulings in *criminal* cases. (See, e.g., *Diemer v. Herber* (1888) 75 Cal. 287, 290 [17 P. 205] [magistrate's holdover order]; *De La Riva v. Owl Drug Co.* (1967) 253 Cal.App.2d 593, 595-597 [61 Cal.Rptr. 291] [denial of motion to set aside information].) These decisions are inapposite, however, because our decision here rests on the relatively low standard of probable cause required to bring a *civil* action. (*Sheldon Appel, supra,* 47 Cal.3d at p. 885.)

In the underlying action in *Lucchesi,* an action to cancel a deed and to quiet title, the court denied a defense motion for summary judgment; the *Lucchesi* opinion does not state, however, whether the motion was denied because of the existence of triable issues of material fact (Code Civ. Proc., § 437c, subd. (c)) or for other reasons. (*Lucchesi, supra,* 158 Cal.App.3d at p. 784.) The defendant ultimately prevailed at trial. (*Ibid.*)

In the defendant's ensuing malicious prosecution action, the appellate court rejected the former plaintiffs' contention that denial of the summary judgment motion in the underlying case established probable cause for bringing the action, in part because a summary judgment motion may be denied for reasons other than existence of triable issues: "A motion for summary judgment may be denied for any of several reasons: (1) there may be a triable issue as to a material fact; (2) the supporting affidavits may be insufficient; (3) the only proof as to a material fact may be an affidavit or declaration by the sole witness to the fact; or (4) a material fact may involve an individual's state of mind and that fact is sought to be established solely by that individual's affirmation thereof. [Citations.]" (*Lucchesi, supra,* 158 Cal.App.3d at p. 787; see Code Civ. Proc., § 437c, subds. (b) [motion may be denied if supporting papers do not include a separate statement of undisputed facts], (e) [motion may be denied if the only proof of one or more material facts is the declaration of the sole witness to the fact, or a material fact as to a person's state of mind is sought to be established solely by the person's testimony].)

The *Lucchesi* court's reasoning to this point is indisputably correct. Denial of a summary judgment motion on procedural or technical grounds, rather than for existence of triable issues of material fact, says nothing regarding the potential merit of the action and hence does not establish probable cause for its initiation. A parallel distinction can be made with regard to motions to strike under section 425.16: denial of the motion solely on technical or procedural grounds, for reasons that cannot be determined, or because the cause of action does not "aris[e] from any act of [the defendant] in furtherance of the [defendant's] right of petition or free speech" (§ 425.16, subd. **\*824** (b)(1)), rather than because the plaintiff has shown a probability of success, would say nothing about the action's potential merit and would not establish probable

28 Cal.4th 811                                                                    Page 10
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

cause.

*Lucchesi* continues, however, with the statement that "[e]ven when the denial is based on the first ground that a material issue of fact does exist, this procedure still falls short of a hearing on the merits." (*Lucchesi, supra,* 158 Cal.App.3d at p. 787.) The decision goes on to hold, as well, that denial of a *nonsuit* motion does not establish probable cause because a nonsuit must be denied "if there is any substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case," a conclusion that, like denial of summary judgment, is "not a determination on the merits." (*Ibid.*)

This latter part of *Lucchesi*'s reasoning has been undermined by this court's subsequent decision in *Sheldon Appel*. As discussed above, our decision in that case clarified that probable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable,* i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable. (*Sheldon Appeal, supra,* 47 Cal.3d at pp. 885-886.) Denial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit, while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict. As also discussed above, a claimant or attorney who is in possession of such evidence has the right to bring the claim, even where it is very doubtful the claim will ultimately prevail. (*Id.* at p. 885.) *Lucchesi v. Giannini & Uniak, supra,* 158 Cal.App.3d 777, is disapproved to the extent it holds otherwise.

Our favorable citation of *Lucchesi* in *Crowley* did not amount to approval of all of *Lucchesi*'s reasoning. The issue raised on review in *Crowley* was whether we should retain an existing rule that "a suit for malicious prosecution lies for bringing an action charging multiple grounds of liability when some but not all of those grounds were asserted with malice and without probable cause." (*Crowley,*

*supra,* 8 Cal.4th at p. 671.) In passing, we briefly addressed the defendants' unrelated argument, which they had raised but abandoned during the trial court proceedings, that denial of a defense summary adjudication motion in the underlying case established probable cause. We remarked merely that the point "was without merit for the reasons stated in *Lucchesi.*" (*Id.* at p. 675, fn. 5.) Later in the opinion we again cited *Lucchesi,* this time for the proposition that denial of the summary adjudication motion was not a judgment on the merits for the purposes of the rule *825 "that an interim adverse judgment on the merits, even though subsequently set aside on motion or on appeal, conclusively establishes probable cause for the prior action." (*Crowley, supra,* at pp. 692-693, fn. 15.)

We did not, in *Crowley,* indicate whether we approved the result in *Lucchesi* because, as the *Lucchesi* court had explained, summary judgment may be denied on any of a number of procedural or technical grounds, or whether we agreed with *Lucchesi* that even a determination of the existence of triable issues would not establish probable cause. Our favorable but passing mention of *Lucchesi,* therefore, did not constitute a full endorsement of its reasoning, which we have here disapproved in part for the reasons already given.

Plaintiffs also contend that the determination of probable cause from a finding or ruling in the underlying case is actually an aspect of collateral estoppel, and hence no such determination may be made in circumstances where no collateral estoppel would arise, as where the prior decision was neither final nor on the merits; application of collateral estoppel in these circumstances, plaintiffs argue, violates their due process and jury trial rights. In our view, plaintiffs' invocation of collateral estoppel is a red herring. (5) The determination of probable cause does not operate, like collateral estoppel, to preclude relitigation of an issue of fact. Probable cause, for purposes of a malicious prosecution action, is a legal issue, not a factual one. (*Sheldon Appel, supra,* 47 Cal.3d at pp. 874-877.) The determination arises, moreover, not because the same issue was litigated in the prior case, but because the res-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03795-JW    Document 50    Filed 08/23/2007    Page 28 of 41

28 Cal.4th 811                                                                    Page 11
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

ult in the prior case (whether a verdict or judgment in the plaintiff's favor, or denial of a defense summary judgment or SLAPP motion) establishes the existence of probable cause as a matter of law, absent proof of fraud or perjury. The rule derives from the definition of probable cause-which is framed so as not to infringe on the right to bring nonfrivolous litigation-rather than from the doctrine of res judicata or any of its branches.

Lastly, plaintiffs contend that application of the probable cause determination in these circumstances contravenes the terms, and defeats the intent, of the anti-SLAPP statute. On the first point, plaintiffs cite section 425.16, subdivision (b)(3), which provides that a trial court's determination of a probability that a claim will prevail, in denying a motion to strike, is inadmissible "at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination." This provision, however, clearly addresses the effects of the motion's denial in further proceedings in the same case, not in derivative litigation commenced subsequently. **\*826**

As to legislative intent, plaintiffs suggest that a rule equating denial of the section 425.16 motion to strike with probable cause will deter SLAPP defendants from taking advantage of section 425.16, for fear that denial will bar any malicious prosecution action, thus defeating the legislative intent that the anti-SLAPP procedures are employed to quickly end abusive litigation against public participation and speech. We are not persuaded the statutory scheme will be undermined in this manner. Given the low standard of probable cause under _Sheldon Appel, supra, 47 Cal.3d 863,_ and our holding there that probable cause is decided by the court, defendants can hardly be confident in their ability to maintain a malicious prosecution action even if they forgo the motion to strike and defeat a SLAPP suit at trial. The anti-SLAPP statute, on the other hand, provides for an award of attorney fees and costs to the defendant who makes, and prevails on, a motion to strike. (§ 425.16, subd. (c).) These considerations should provide adequate incentive for a defendant who desires the speedy and low-cost termination of

abusive litigation against him or her, and who is confident the litigation is truly meritless, to employ the statutory procedures even at some risk of losing the opportunity for a subsequent malicious prosecution suit.

(3c) For the above reasons, we conclude the _Kuzmich_ court's denial of the defendants' motion to strike under section 425.16 established probable cause to bring the _Kuzmich_ action. Plaintiffs in the present malicious prosecution action have not attempted to show that that ruling was obtained by fraud or perjured testimony. Probable cause therefore existed as a matter of law for initiation of _Kuzmich_, negating a necessary element of the malicious prosecution action. As the Court of Appeal also concluded, the demurrers to that cause of action were therefore properly sustained.

Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.**, Concurring.

Although I concur with most of the majority's reasoning, I write separately because I find its distinction of _Crowley v. Katleman_ (1994) 8 Cal.4th 666 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (_Crowley_) unpersuasive. (See maj. opn., _ante,_ at pp. 824-825.) According to the majority, "[w]e did not, in _Crowley,_ indicate whether we approved the result in _Lucchesi [v. Giannini & Uniack_ (1984) 158 Cal.App.3d 777 [205 Cal.Rptr. 62]] because ... summary judgment may be denied on any of a number of procedural or technical grounds, or whether we agreed with _Lucchesi_ that even a determination of the existence of triable issues would not establish **\*827** probable cause." (Maj. opn., _ante,_ at p. 825.) Based on this ambiguity in _Crowley,_ the majority concludes that "[o]ur favorable but passing mention of _Lucchesi_ ... did not constitute a full endorsement of its reasoning ...." (_Ibid._) After reviewing _Crowley,_ I disagree.

In _Crowley_, Carole Katleman, represented by coun-

Case 5:07-cv-03795-JW    Document 50    Filed 08/23/2007    Page 29 of 41

28 Cal.4th 811                                                                      Page 12
28 Cal.4th 811, 50 P.3d 733, 123 Cal.Rptr.2d 19, 167 Ed. Law Rep. 934, 02 Cal. Daily Op. Serv. 6910, 2002 Daily
Journal D.A.R. 8635
**(Cite as: 28 Cal.4th 811)**

sel (together, the defendants), filed a will contest, alleging six separate grounds for invalidating the will. (*Crowley, supra,* 8 Cal.4th at p. 673.) Arthur J. Crowley, the principal beneficiary of the will, filed a motion for summary adjudication. (*Ibid.*) The probate court granted the motion as to one of the grounds, but "denied the motion as to the remaining grounds, *ruling there were triable issues of material fact as to each.*" (*Ibid.,* italics added.) After prevailing in the will contest, Crowley sued the defendants for malicious prosecution. (*Id.* at p. 674.) In their demurrer to the malicious prosecution action, the defendants contended, "by denying Crowley's motion for summary adjudication of issues as to all grounds of the will contest except lack of due execution, the probate court 'necessarily determined' there was probable cause for the remaining grounds ...." (*Id.* at p. 675.) We, however, rejected this contention in a footnote, finding it "was without merit for the reasons stated in *Lucchesi* ...." (*Crowley, supra,* 8 Cal.4th at p. 675, fn. 5.)

Because the probate court denied the motion for summary adjudication in the will contest *on the merits,* our footnote in *Crowley* necessarily endorsed *Lucchesi*'s holding that "a determination of the existence of triable issues would not establish probable cause." (Maj. opn., *ante,* at p. 825.) Like the majority, I disagree with this holding. (See *id.* at pp. 824-825.) I would therefore disapprove of *Crowley* to the extent it adopted this holding of *Lucchesi.*

Appellants' petition for a rehearing was denied October 2, 2002. **\*828**

For California Supreme Court Briefs See: 2001 WL 1182810 (Appellate Brief), APPELLANTS' BRIEF ON THE MERITS, (September 18, 2001)

For California Supreme Court Briefs See: 2001 WL 1700428 (Appellate Brief), ANSWER BRIEF ON THE MERITS OF RESPONDENTS PARKER, COVERT & CHIDESTER SPENCER E. COVERT, ESQ. and MARK WILLIAMS, ESQ., (December 17, 2001)

For California Supreme Court Briefs See: 2001 WL 1700429 (Appellate Brief), ANSWER BRIEF ON THE MERITS OF RESPONDENTS, (December 20, 2001)

For California Supreme Court Briefs See: 2001 WL 1700426 (Appellate Brief), ANSWER BRIEF ON THE MERITS OF RESPONDENTS CARL AXUP AND K.T. BOWERS, (October 19, 2001)

Cal. 2002.

RAUL WILSON et al., Plaintiffs and Appellants, v. PARKER, COVERT & CHIDESTER et al., Defendants and Respondents. RAUL WILSON et al., Plaintiffs and Appellants, v. MARK WILLIAMS, Defendant and Respondent. RAUL WILSON et al., Plaintiffs and Appellants, v. CARL AXUP et al., Defendants and Respondents.

END OF DOCUMENT

# EXHIBIT 33
## To Appendix to California State Authorities

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 963282 (E.D.Cal.)
**(Cite as: Slip Copy)**

**H**

Flores v. Emerich & Fike
E.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Joe FLORES, an individual; and Connie Flores, an
individual, Plaintiffs,
v.
EMERICH & FIKE, a professional corporation, et
al., Defendants.
**No. 1:05-CV-0291 OWW DLB.**

March 29, 2007.

Joe Flores, Visalia, CA, pro se.
Connie Flores, Visalia, CA, pro se.
Marshall C. Whitney, Kurt Christopher
Wendlenner, McCormick BarstowSheppard Wayte
and Carruth, Russell Gene Vanrozeboom, Caswell
Bell & Hillison LLP, Fresno, CA, Tracy Tosh Lane,
Wilson Sonsini Goodrich & Rosati P.C., Mark Elise
Crone, Crone Law Group, LLP, San Francisco, CA,
for Defendants.

**MEMORANDUM DECISION AND ORDER: (1)
DENYING PLAINTIFFS' MOTION TO VA-
CATE JUDGMENT (DOC. 169); (2) GRANT-
ING PLAINTIFFS' MOTION FOR CERTIFIC-
ATION OF PARTIAL JUDGMENT FOR AP-
PEAL UNDER RULE 54(b) AND ORDERING
ENTRY OF JUDGMENT IN FAVOR OF THE
FIKE DEFENDANTS ONLY (DOC. 171); AND
(3) STAYING AND TAKING OFF CALENDAR
DEFENDANTS' MOTION FOR ATTORNEY'S
FEES (DOC. 140)**
OLIVER W. WANGER, United States District
Judge.

**I. *BACKGROUND***

*1 This is the third case filed by Joe and Connie
Flores ("Plaintiffs") concerning a series of packing
and marketing agreements entered into between
Plaintiffs and DDJ, Inc., DDJ LLC, and related en-
tities and individuals.

Plaintiffs' filed their initial complaint against DDJ,
Inc., DDJ LLC, and others in 1999, asserting claims
under the Perishable Agricultural Commodities Act
("PACA"), along with state law contract and tort
claims. *See Flores et al v. DDJ, Inc., et al.,*
1:99-cv-5878 AWI DLB ( *"Flores I"* ). In 2003, a
jury found for the Flores' on all claims against DDJ
Inc. and DDJ LLC ("the Judgment Debtors").

On October 15, 2004, the Flores' filed a second
lawsuit, alleging that individual officers of the
Judgment Debtors fraudulently transferred assets
from the Judgment Debtors into their own names.
*See In Re Joe Flores, et a. v. Dennis Hagobian,* et
al., 1:04-cv-6405 OWW DLB ( *"Flores II"* ).

On January 3, 2005, DDJ, Inc. and DDJ, LLC filed
for Chapter 7 bankruptcy protection. Further pro-
ceedings in *Flores I* and *Flores II* were stayed pur-
suant to the automatic stay provision of the Bank-
ruptcy Code. (*Flores I,* Doc. 408 at 2; *Flores II,*
Doc. 19 at 3.)

On March 1, 2005, Plaintiffs filed the initial com-
plaint in this lawsuit ( *Flores III* ), naming as de-
fendants a number of individuals involved with
DDJ and affiliated corporate entities (the "DDJ De-
fendants"). The *Flores III* complaint also named as
defendants the law firm of Emerich & Fike and sev-
eral individual attorneys at that firm (collectively,
the "Fike Defendants") who represent many of the
DDJ Defendants. The complaint contained a single
federal claim, for Civil RICO, and numerous state
law claims alleging, among other things, that the
DDJ Defendants misappropriated funds from the
Judgment Debtors and that the Fike Defendants as-
sisted in this misappropriation.

Because of the pending bankruptcy proceeding,
*Flores III* was briefly stayed as to all claims against
DDJ Defendants and as to certain claims against the
Fike Defendants. Other claims against the Fike De-
fendants were permitted to proceed. (Docs. 72 &
89.) The district court later lifted the stay as to all
claims against all defendants in light of the fact that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 963282 (E.D.Cal.)
(Cite as: Slip Copy)

the Chapter 7 Trustee does not intend to pursue any of the claims in this case. (Doc. 92.) FN1

FN1. The Flores' suggested during oral argument on the instant motions that this ruling, lifting the stay as to all of the remaining claims against the remaining defendants, was subsequently "corrected" (i.e., altered) by the district court. But, the record does not reflect any order (written or oral) containing any subsequent ruling on the status of the stay. It appears that Plaintiffs are referring to a different series of orders regarding the pending attorney's fee petition, filed on October 13, 2006. Plaintiffs filed their appeal on November 19, 2006. On November 13, 2006, the district court erroneously entered a minute order indicating that it no longer had jurisdiction over the fee petition because an appeal was pending. The Fike Defendants moved for reconsideration of that ruling, pointing to Ninth Circuit authority indicating that a district court retained discretion to exercise jurisdiction over a fee petition while an appeal was pending. In light of this authority, the district court granted the motion for reconsideration and set the fee petition for hearing. (See Doc. 157.) This ruling had nothing to do with the operation of the stay as to the remaining claims in this case, which was lifted according to the minute order entered on September 16, 2005.

The Fike Defendants moved to dismiss the single federal claim in *Flores III* (for Civil RICO) and to strike the numerous state law claims against them pursuant to California's Anti-SLAPP statute, Cal.Code Civ. Pro. § 425.16. The district court granted both motions as to all claims. (Doc. 108, filed February 21, 2006.) Specifically, with respect to the Anti-SLAPP motion to strike, the district court found that the Anti-SLAPP statute applied to all of the state law claims against the Fike Defendants, including the malicious prosecution claim. The district court then found that the litigation priv-

ilege, Cal.Code Civ. Pro § 47, barred all of the state law claims as pled, with the exception of the malicious prosecution claim, to which the litigation privilege does not apply. The district court then examined the evidence presented by Plaintiffs regarding the malicious prosecution claim and concluded that Plaintiffs had not met their burden of establishing a prima facie case for malicious prosecution under the Anti-SLAPP burden-shifting framework. At the time, Plaintiffs made no formal request for further time to conduct discovery on this claim, nor did they represent that they had previously propounded any discovery to the Fike Defendants. The district court granted Plaintiffs leave to amend the RICO claim and the state law claim for malicious prosecution. Plaintiffs then filed an amended complaint, re-alleging *all* of their original state claims, without amending the RICO claim as to the Fike Defendants. (Doc. 113, filed March 13, 2006.)

*2 The Fike Defendants again moved to strike all of the state law claims from the amended complaint, arguing that it had been inappropriate for the district court to grant Plaintiffs leave to amend claims stricken pursuant to the Anti-SLAPP statute. Plaintiffs opposed this motion on various grounds, but, again, never raised the issue of pursuing further discovery. (See Doc. 121.) In an August 24, 2006 decision, the district court granted the Fike Defendants' renewed motion to strike the claims *without* leave to amend, agreeing that granting leave to amend state law claims stricken pursuant to the Anti-SLAPP statute undermined the purpose of the Anti-SLAPP statute. Judgement was entered against Plaintiffs and in favor of the Fike Defendants on November 12, 2006. (Doc. 139.)

Plaintiffs timely appealed the August 24, 2006 ruling, but their appeal was dismissed for lack of jurisdiction. The Ninth Circuit explained:
A review of the record demonstrates that this court lacks jurisdiction over this appeal because the order challenged in the appeal is not final or appealable. *See* Fed.R.Civ.P. 54(b); *Chacon v. Babcock,* 640 F.2d 221 (9th Cir.1981) (order is not appealable unless it disposes of all claims as to all parties or judgment is entered in compliance with rule; *see*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

also _Frank Briscoe Co., Inc. v. Morrison-Knudsen Co., Inc._, 776 F.2d 1414, 1416 (9th Cir.1985) (certification of final judgment should contain "express determination that there is no just reason for delay"). Consequently, this appeal is dismissed for lack of jurisdiction.

(_See_ Doc. 158, _Order, Flores v. Emerich & Fike,_ No. 06-17047 (9th Cir., Dec. 26, 2006).) Plaintiff filed a motion for reconsideration with the Court of Appeals, which was denied on February 22, 2007. (_See_ Doc. 179.)

Now before the court for decision are three motions. First, Plaintiffs move to vacate the partial judgment in favor of the Fike Defendants pursuant to Federal Rule of Civil Procedure 60(b)(3). Second, Plaintiffs move for "clarification" of certain "procedural issues still pending before this court," which "are prohibiting Plaintiffs in this matter from perfecting their appeal." Finally, Defendants move for attorneys fees under California Code of Civil Procedure Section 425.16(c).

## II. DISCUSSION

### A. Plaintiffs' Motion to Vacate Judgment.

Pursuant to Federal Rule of Civil Procedure 60(b), Plaintiffs move to vacate the judgment, entered November 12, 2006 in favor of the Fike Defendants. Plaintiffs assert that, for the period of time between November 11, 2002 and July 23, 2003, which included the entire _Flores I_ jury trial, the State of California had stripped DDJ, Inc. of its corporate powers, rights, and privileges for nonpayment of taxes, pursuant to California Revenue and Tax Code § 23301. Under § 23301, a corporation's rights may be suspended for nonpayment of taxes, rendering the corporation incapable of participating in litigation activities. _See Palm Valley Homeowners Ass'n, Inc. v. Design MTC_, 85 Cal.App.4th 553, 560, 102 Cal.Rptr.2d 350 (2000).

*3 In their opening brief, Plaintiffs indicated that they had only recently learned of the temporary suspension. (Doc. 169-3 at 4.) However, in a subsequent filing, Plaintiffs acknowledge that they were aware of the suspension of DDJ's corporate status _during_ the underlying PACA litigation. (Doc. 182.) Specifically, Mr. Flores brought the issue to the attention of Judge Ishii and the Fike Defendants during the PACA trial. (Trial Tr. at 1241, Doc. 183, Request for Judicial Notice, Ex. 4.) Mr. Fike indicated that he had been unaware of the suspension and would undertake to correct the situation immediately. (_Id._ at 1241-42, 102 Cal.Rptr.2d 350.)

Plaintiffs invoke Rule 60(b)(3), asserting that the Fike Defendants committed "fraud or misconduct" justifying relief from the judgment entered in _this_ case, because they defended DDJ Inc. during the _Flores I_ trial, even though DDJ's corporate status had been suspended for a period of time. Federal Rule of Civil Procedure 60(b)(3) provides:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for....fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

Plaintiffs' invocation of Rule 60(b)(3) is misplaced for several reasons. First, Plaintiffs totally fail to explain why the issue of DDJ's corporate status was never raised in _this_ litigation prior to the instant motion to vacate. Mr. Flores explained during oral argument that he had "forgotten." But, this is not a valid legal excuse.

Second, even if this information had been discovered yesterday, the logic of Plaintiffs' argument does not withstand scrutiny. In order to understand Plaintiffs' logic, it is important to note that the district court struck all but one [FN2] of the state law claims against the Fike Defendants on the ground that the Fike Defendants were protected by California's litigation privilege, Cal. Civ.Code § 47(b), which provides an absolute privilege for any "publication or broadcast" made in connection with any judicial proceeding. Plaintiffs argue that the Fike Defendants should not benefit from protection under the litigation privilege because their client, DDJ Inc., did not have standing to sue during at least part of the underlying PACA litigation. This

Slip Copy                                                                                  Page 4
Slip Copy, 2007 WL 963282 (E.D.Cal.)
(Cite as: Slip Copy)

argument is without merit. California courts have held that "the focus of the applicability of the [litigation privilege under § 47] lies in whether the publication was connected to or related to the underlying proceedings ... *even lack of standing does not vitiate the privilege.*" *Obos v. Scripps Psychological Assoc., Inc.,* 59 Cal.App.4th 103, 108, 69 Cal.Rptr.30 (1997) (emphasis added).

> FN2. The remaining state law claim was for malicious prosecution, to which the litigation privilege does not apply as a matter of law. This claim was stricken on other grounds.

We believe that the judicial privilege protects the [ ] motions made here, despite the possible lack of standing. We see no reason why mere lack of standing should have the effect of necessarily vitiating the privilege. The movant's lack of standing can only be relevant to the issue of privilege in two ways.

**\*4** First, lack of standing could constitute such lack of connection with the lawsuit as to make a motion tortious, as for instance if a complete stranger to the action filed irrelevant but scurrilous matter in a proceeding. The lack of connection, not the lack of standing, would be the reason for denying the privilege in such a case. But here, as pointed out, there was ample connection; relevant evidence was offered; but arguably the wrong party did the offering. Accordingly the reason for denying the privilege-lack of connection with the proceeding-does not apply here.

Second, standing could be relevant in the sense that lack of standing could be the reason a filing in an action was unwarranted or "wrongful." But the lack of standing, though making the filing "wrongful," does not necessarily vitiate the privilege. Cases hold that the judicial privilege applies broadly to publications in a proceeding that are connected in some way to that proceeding, to protect the rights of litigants and interested parties to communicate with the court. (See *Silberg v. Anderson,* supra, 50 Cal.3d at pp. 211-212, 266 Cal.Rptr. 638, 786 P.2d 365.) Here, the connection exists, and therefore the privilege applies.

*Adams v. Superior Court,* 2 Cal.App.4th 521, 529-530, 3 Cal.Rptr.2d 49 (1992). Accordingly, actions that would otherwise be covered by the litigation privilege are not stripped of that privilege simply because the litigant lacked standing. The covered action must simply be connected in some way to the proceeding. *Id.* Here, all of the challenged actions taken by the Fike Defendants were directly connected to the underlying PACA litigation and are therefore covered by the litigation privilege, even though DDJ Inc. had been stripped of its corporate privileges for a period of time.

Plaintiffs's reliance on *Palm Valley Homeowners Association v. Design,* 85 Cal.App.4th 553, 102 Cal.Rptr.2d 350 (2000), is also misplaced. In *Palm Valley,* a law firm *admitted* having knowledge that its corporate client's rights had been suspended under the California Corporations Code, yet pursued litigation activities without disclosing this fact to opposing counsel or the court. The *Palm Valley* court affirmed the trial court's imposition of sanctions upon the firm for acting in bad faith because it "knew or should have known that [the company] was disqualified from representing itself in the litigation." *Id.* at 561, 102 Cal.Rptr.2d 350. Here, in light of Plaintiffs' acknowledgment that the suspension was raised by them and discussed during the underlying PACA trial, it is not clear how the Fike Defendants acted in bad faith or made misrepresentations to either Judge Ishii or this court regarding the suspension. Rather, it is Plaintiffs who misrepresented the record to this court in their opening brief.

Plaintiffs emphasize the fact that DDJ Inc did not actually obtain its certificate of corporate revival until after the trial was concluded and the jury returned its special verdict. Plaintiffs cite *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.,* 155 Cal.App.2d 46, 49-51, 317 P.2d 649 (1957). In *Alhambra* judgment was entered in favor of a corporation while its corporate powers were suspended. On appeal, the judgment was reversed because the corporation had not been revived prior to entry of judgment. *Id.* But, *Alhambra* simply stands for the proposition that Plaintiffs could have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 5
Slip Copy, 2007 WL 963282 (E.D.Cal.)
(Cite as: Slip Copy)

*appealed* a jury verdict returned *against* Plaintiffs if such judgment had been entered before DDJ's corporate status was revived. Here, however, judgment was entered *against* DDJ Inc. and in favor of *Plaintiffs.* Plaintiffs cannot challenge the judgment they obtained in the prior case, in *this* case as having been obtained through fraud or misconduct without calling into question their favorable judgment in the underlying PACA litigation.

*5 Plaintiffs next cite language from *Rogers v. Home Shopping Network, Inc.,* 57 F.Supp.2d 973 (C.D.Cal.1999), and *Metabolife v. Int'l, Inc. v. Womick,* 264 F.3d 832 (9th Cir.2001). To the extent that these cases are cited to suggest that the judgment should be vacated because Plaintiffs' were never afforded an opportunity for discovery, this argument is also without merit.[FN3] Plaintiffs are correct that *Rogers* and *Metabolife* stand for the proposition that, where an Anti-SLAPP motion to strike is based on a plaintiff's alleged failure of proof, the motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56, except that the attorney's fee provision of the Anti-SLAPP statute applies. Plaintiffs are also correct that, when a nonmoving party has not had the opportunity to discover information that is essential to their opposition to such an Anti-SLAPP motion to strike, the court must allow such discovery. *See Aeroplate v. Arch Ins. Co.,* 2006 WL 3257487 (E.D.Cal.) (summarizing relevant authorities). Here, at least with respect to the malicious prosecution claim, the Fike Defendant's motion to dismiss was based on an alleged failure of proof. However, at no time prior to the district court granting the motion to strike did Plaintiffs ever formally request a stay to permit them to conduct discovery, nor did they propound discovery requests upon the Fike Defendants or move to compel the Fike Defendants to answer any such discovery requests. Discovery is a process that must be initiated by the parties, not the court. The time for Plaintiffs to have requested discovery was prior to the ruling on the Fike Defendants' first motion to strike.

> FN3. Plaintiffs expressly cite these cases to explain why they should not be punished

for failing to earlier discover information concerning DDJ's suspension. (*See* Doc. 180 at 4-5.) But, as discussed above, Plaintiffs later acknowledged that they knew about DDJ's suspension during the underlying PACA trial, raising the entirely separate question of why they failed to raise the issue in this case prior to this motion to vacate.

Plaintiffs' motion to vacate the judgment under Rule 60(b) is **DENIED.**

### B. *Plaintiffs' Motion for Clarification of Procedural Issues Preventing Plaintiffs' from Perfecting Their Appeal.*

Plaintiffs next request "clarification" of certain procedural issues that are preventing Plaintiffs from perfecting their appeal. In its order indicating that it lacked jurisdiction over Plaintiffs' appeal from the October 10, 2006 judgment in favor of the Fike Defendants and against Plaintiffs, the Ninth Circuit explained:

A review of the record demonstrates that this court lacks jurisdiction over this appeal because the order challenged in the appeal is not final or appealable. *See* Fed.R.Civ.P. 54(b); *Chacon v. Babcock,* 640 F.2d 221 (9th Cir.1981) (order is not appealable unless it disposes of all claims as to all parties or judgment is entered in compliance with rule; *see also Frank Briscoe Co., Inc. v. Morrison-Knudsen Co., Inc.,* 776 F.2d 1414, 1416 (9th Cir.1985) (certification of final judgment should contain "express determination that there is no just reason for delay"). Consequently, this appeal is dismissed for lack of jurisdiction.

(*See* Doc. 158, *Order, Flores v. Emerich & Fike,* No. 06-17047 (9th Cir., Dec. 26, 2006).) The Court of Appeals' order clearly explains that a judgment is not appealable unless it disposes of all claims as to all parties, *or* if judgment is entered in compliance with Federal Rule of Civil Procedure 54(b), which provides:*6 **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Here, partial judgment was entered in favor of the Fike Defendants and against the Plaintiffs, but was not accompanied by the finding required by Rule 54(b) that "there is no just reason for delay." Although Plaintiffs have not formally moved for certification under 54(b), their motion for clarification can reasonably be interpreted as such a request.

In deciding whether there is no just reason to delay the appeal of a partial final judgment, a court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).*
Consideration of the [issue of judicial administrative economy] is necessary to assure that application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." [Citation] It was therefore proper for the District Judge here to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

*Id.* Accordingly, Rule 54(b) certification would be appropriate if the claims to be reviewed are separable from the remaining claims in the case. The claims against the Fike Defendants satisfy this re-

quirement. All of the allegations directed at the Fike Defendants concern acts taken in connection with their role as counsel to the DDJ Defendants and were therefore covered by the Anti-SLAPP statute. For similar reasons, the district court found that the litigation privilege barred all but one of the state law claims against the Fike Defendants. The remaining claim, for malicious prosecution, was stricken because Plaintiffs had not pleaded a prima facie showing that the Fike Defendants lacked probable cause to file counterclaims against Plaintiffs in the underlying PACA lawsuit. Nevertheless, the Anti-SLAPP statute was applied to the malicious prosecution claim, in part because of the Fike Defendants' role as counsel to DDJ. (See Doc. 108 at 18-20.)

*7 In contrast, the allegations against the other Defendants, which include claims of alter ego liability, violation of the uniform fraudulent transfer act, fraud, conversion, and civil RICO, focus on conduct that is only tangentially related to court proceedings, if at all. (*See* First Amended Complaint, Doc. 113.) It is unlikely that either the Anti-SLAPP statute or the litigation privilege would apply to the bulk of these claims.[FN4] The legal issues that will be raised in the imminent appeal from judgment in favor of the Fike Defendants is unlikely to resurface in subsequent or concurrent litigation concerning the claims against the remaining defendants. The interests of judicial economy will not be offended by certification under Rule 54(b).

> FN4. The district court has not thoroughly analyzed the applicability of the Anti-SLAPP statute or the litigation privilege to the remaining claims and need not decide the issue here.

The Fike Defendants oppose certification, either under Rule 54(b) or 28 U.S.C. 1292(b) (interlocutory appeal), primarily because the instant lawsuit has spawned a separate legal dispute between the Fike firm and their former clients, which has been stayed pending resolution of *this* lawsuit. The Fike Defendants are concerned that certification of the Anti-SLAPP decision for imme-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

diate appeal would remove any incentive for Plaintiffs to promptly pursue their claims against the remaining defendants, thereby delaying the ultimate resolution of the separate lawsuit. Although this is a legitimate concern, the Fike Defendants did not suggest that any serious prejudice would result from delaying the outcome of that lawsuit.

In the final analysis, Plaintiffs are pro se litigants facing the possibility of a having a large attorney's fee award entered against them under the Anti-SLAPP statute.[FN5] As noted in the November 29, 2006 order on Fike Defendants' motion for reconsideration, a district court may hear and decide an attorney's fee petition while an appeal is pending. (Doc. 157 citing *Masalosalo v. Stonewall Ins. Co., 718 F.2d 955, 957 (9th Cir.1983).*) But, the parties do not point to any cases suggesting that the district court *must* do so. Here, under the circumstances, fairness suggests that Plaintiffs should be afforded an opportunity to immediately appeal the partial judgment in favor of the Fike Defendants *prior to* resolution of the attorney's fee petition.[FN6]

> FN5. It is well-settled that an award of attorney's fees and costs to a successful Anti-SLAPP movant is *mandatory. Ketchum v. Moses, 24 Cal.4th 1122, 1131, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001).* "[A]bsent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours reasonably spent, including those relating solely to [obtaining] the fee [award]." *Serrano v. Unruh, 32 Cal.3d 621, 624, 186 Cal.Rptr. 754, 652 P.2d 985 (1982)* (applying Cal.Code Civ. Pro § 1021.5) (cited in *Ketchum, 24 Cal.4th at 1141, 104 Cal.Rptr.2d 377, 17 P.3d 735*). The fee provision of the Anti-SLAPP statute has been applied in federal court. *Metabolife Intern., Inc. v. Wornick, 213 F.Supp.2d 1220 (S.D.Cal.2002).*

> FN6. In exercising its discretion to stay decision on the attorney's fee petition, the district court is *not* accepting Plaintiffs' ar-

gument that such a stay is *required* under *Varian Medical Systems, Inc. v. Delfino, 35 Cal.4th 180, 25 Cal.Rptr.3d 298, 106 P.3d 958 (2005),* in which the California Supreme court held that the perfecting of an appeal from the *denial* of an Anti-SLAPP motion to strike automatically stays all further proceedings on the merits. The *Varian* court reasoned that "an appellate reversal of an order denying [an Anti-SLAPP motion] may [ ] result in a dismissal." *Id. at 193, 25 Cal.Rptr.3d 298, 106 P.3d 958.* Therefore, proceeding with the case on the merits while such an appeal is pending would be inconsistent with the appeal "because the appeal seeks to *avoid* that very proceeding. Indeed, the point of the Anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights." *Id.* (internal quotations and citations omitted) (emphasis added). *Varian* is wholly inapplicable to the present circumstances, where Plaintiffs appeal from an order *granting* a motion to dismiss. The purpose of the Anti-SLAPP statute, to prevent parties from being dragged through the courts because they exercised their constitutional rights, does not protect Plaintiffs, who filed the state law claims that are the subject of the Anti-SLAPP motion.

Although Plaintiffs will now be free to appeal the partial judgment entered against the Fike Defendants, there is no stay in effect as to the claims against the remaining defendants. Plaintiffs must move those forward with reasonable dispatch.

### III. *CONCLUSION*

For the reasons set forth above:
(1) Plaintiffs' motion to vacate the partial judgment is **DENIED.**
(2) Plaintiffs' motion for clarification of procedural issues, construed as a motion for certification under Federal Rule of Civil Procedure 54(b), is **GRAN-**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 963282 (E.D.Cal.)
**(Cite as: Slip Copy)**

**TED.** There is no just reason for delay of entry of final judgment in favor of the Fike Defendants. **The Clerk of Court is directed to enter final judgment in favor of the Fike Defendants and against Plaintiffs. This does not close the case, as there are outstanding claims against other defendants.**
**\*8** (3) Plaintiffs' request to delay decision on the Fee Petition while they attempt to perfect their appeal is **GRANTED.** The fee petition is **DENIED WITHOUT PREJUDICE,** but, should the Fike Defendants' prevail on appeal, the fee petition may be re-noticed at that time.

**IT IS SO ORDERED.**

E.D.Cal.,2007.
Flores v. Emerich & Fike
Slip Copy, 2007 WL 963282 (E.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 34
## To Appendix to California State Authorities

to overrule the decisions in *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1387-1390, and *Fair Political Practices Commission v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171, 1174-1178. Stats. 2005 ch. 535 (AB 1158) §3.

**Ref.:** Cal, Fms Pl. & Pr., Ch. 375, "Motions to Strike" §375.24; W. Cal. Pro., "Pleading" §8962, 963; Rutter Civ. P. Before Trial, 7:207–266; MB Prac. Guide: Cal. Pretrial Proc., §§13.01–13.03, 13.05–13.08, 13.10, 13.13, 13.14, 13.16–13.20, 13.22–13.25; MB Prac. Guide: Fed. Pretrial Proc. in Cal., §8.26[6]; MB Prac. Guide: Cal. Unfair Comp. & Bus. Torts, §§2.42[3]; 3.22; 6:38[4]; 9:17.

## §425.17. When Provisions of §425.16 Inapplicable.

(a) The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16.

(b) Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:

(1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.

(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

(c) Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:

(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit

brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.

(d) Subdivisions (b) and (c) do not apply to any of the following:

(1) Any person enumerated in subdivision (b) of Section 2 of Article I of the California Constitution or Section 1070 of the Evidence Code, or any person engaged in the dissemination of ideas or expression in any book or academic journal, while engaged in the gathering, receiving, or processing of information for communication to the public.

(2) Any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation.

(3) Any nonprofit organization that receives more than 50 percent of its annual revenues from federal, state, or local government grants, awards, programs, or reimbursements for services rendered.

(e) If any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt pursuant to this section, the appeal provisions in subdivision (j) of Section 425.16 and paragraph (13) of subdivision (a) of Section 904.1 do not apply to that action or cause of action. Leg.H. 2003 ch. 338 (SB 515).

**Ref.:** Cal. Fms Pl. & Pr., Ch. 375, "Motions to Strike" §375.24; MB Prac. Guide: Cal. Pretrial Proc., §§13.06, 13.17A; MB Prac. Guide: Cal. Unfair Comp. & Bus. Torts, §9.17.

## §425.18. "SLAPPback"; Special Motion to Strike.

(a) The Legislature finds and declares that a SLAPPback is distinguishable in character and origin from the ordinary malicious prosecution action. The Legislature further finds and declares that a SLAPPback cause of action should be treated differently, as provided in this section, from an ordinary malicious prosecution action because a SLAPPback is consistent with the Legislature's intent to protect the valid exercise of the constitutional rights of free speech and petition by its deterrent effect on SLAPP (strategic lawsuit against public participation) litigation, and by its restoration of public confidence in participatory democracy.

(b) For purposes of this section, the following terms have the following meanings:

(1) "SLAPPback" means any cause of action for malicious prosecution or abuse of process arising from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under Section 425.16.

(2) "Special motion to strike" means a motion made pursuant to Section 425.16.

(c) The provisions of subdivisions (c), (f), (g), and (i) of Section 425.16 and paragraph (13) of subdivision (a) of Section 904.1 shall not apply to a special motion to strike a SLAPPback.

(d)(1) A special motion to strike a SLAPPback shall be filed within any one of the following periods of time, as follows:

any action against a nonprofit corporation for any negligent action or omission of a volunteer director or officer occurring within the scope of the person's duties.

(d) For the purposes of this section, "compensation" means remuneration whether by way of salary, fee, or other consideration for services rendered. However, the payment of per diem, mileage, or other reimbursement expenses to a director or officer shall not constitute compensation.

(e)(1) This section applies only to officers and directors of nonprofit corporations that are subject to Part 2 (commencing with Section 5110), Part 3 (commencing with Section 7110), or Part 4 (commencing with Section 9110) of Division 2 of Title 1 of the Corporations Code, that are organized to provide charitable, educational, scientific, social, or other forms of public service and that are exempt from federal income taxation under Section 501(c)(1)), except any municipal, or Section 501(c)(4), 501(c)(5), 501(c)(7), or 501(c)(19) of the Internal Revenue Code.

(2) This section does not apply to any corporation that unlawfully restricts membership, services, or benefits conferred on the basis of race, religious creed, color, national origin, ancestry, sex, marital status, disability, political affiliation, or age. Leg.H. 1992 ch. 726.

Ref.: W. Cal. Sum., "Corporations" §299, "Torts" §35; Rutter Civ. P. Before Trial, 6:377-384.

## §425.16. Claim Arising From Person's Exercise of Constitutional Right of Petition or Free Speech—Special Motion to Strike.

(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court

finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or of the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

(h) For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and, "petitioner," and "defendant" includes "cross-defendant" and "respondent."

(i) An order granting or denying a special motion to strike shall be appealable under Section 904.1.

(j)(1) Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

(2) The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media. Leg.H. 1992 ch. 726, 1993 ch. 1239, 1997 ch. 271, 1999 ch. 960, effective October 10, 1999, 2005 ch. 535 (AB 1158) §1, effective October 5, 2005.

2005 Note: It is the intent of the Legislature, in amending subdivision (f) of Section 425.16 of the Code of Civil Procedure,