STUART C. CLARK (SBN 124152)
clark@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:   (650) 812-3444

Attorneys for Plaintiffs
CORCEPT THERAPEUTICS, INC., JOSEPH
K. BELANOFF, and ALAN F. SCHATZBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORCEPT THERAPEUTICS, INC., JOSEPH K. BELANOFF, and ALAN F. SCHATZBERG,<br><br>                Plaintiffs,<br><br>        v.<br><br>ANTHONY ROTHSCHILD,<br><br>                Defendant. | CASE NO. C07-03795 JW (RS)<br><br>**PLAINTIFFS' OPPOSITION TO ROTHSCHILD'S MOTION TO DISMISS FOR ALLEGED LACK OF PERSONAL JURISDICTION**<br><br>Date:   September 17, 2007<br>Time:   9.00 a.m.<br>Court:  Courtroom 8<br>Judge:  Hon James Ware |

{00266018v1}

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF ISSUES TO BE DECIDED ............................................... 1

III.    PARTIES AND PROCEDURAL HISTORY .................................................. 1

    A.    Rothschild's Defamatory Internet Postings Were Apparently
       Triggered By Corcept's Rejection Of His Claim For Recognition
       As An Inventor Of The Patented Technology On Which
       Corcept's Corlux Drug Is Based ................................................................ 1

    B.    This Action Was Initially Filed In State Court Against Doe
       Defendants, Then Removed To Federal Court After Rothschild
       Was Named As A Defendant ..................................................................... 3

IV.     FACTS ............................................................................................................ 4

    A.    The Facts Show That Rothschild Posted The Defamatory
       Statements ................................................................................................ 4

        1.    Rothschild is "stanfordinsider" .................................................. 4

        2.    Stanfordinsider is also corceptisafraud: therefore Rothschild
           is corceptisafraud .................................................................... 7

        3.    Rothschild is also corcept@hotmail.com and
           corcepttherapeutics@hotmail.com ........................................... 8

    B.    Rothschild Was Engaged In A Vendetta Against Plaintiffs And
       Had The Motivation, Opportunity, And Knowledge To Make The
       Postings .................................................................................................... 9

        1.    Rothschild Engaged In Harassment Of Plaintiffs ..................... 10

        2.    Rothschild Demonstrated Malice In His Reviews Of The
           DeBattista And Posener Manuscripts ....................................... 13

        3.    Rothschild Harbored Ill Will Towards Plaintiffs ...................... 15

        4.    Rothschild Had Personal Knowledge Of The Matters
           Discussed In The Postings ........................................................ 15

        5.    Drs. Rubin and Carroll Probably Did Not Make the Postings ... 16

V.      ARGUMENT ................................................................................................ 17

    A.    Rothschild Purposefully Directed His Conduct To California ..................... 19

    B.    Plaintiffs' Claims Arise Out Of Rothschild's Forum Related
       Activity .................................................................................................. 21

    C.    The Exercise Of Jurisdiction Is Reasonable .............................................. 21

    D.    The Exercise Of Jurisdiction Will Not Unduly Burden Rothschild ............ 22

    E.    No Cases Cited By Rothschild Preclude The Exercise Of
       Jurisdiction ............................................................................................. 22

VI.     CONCLUSION ............................................................................................. 25

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3  *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707 (4th Cir. 2002) .....................24

4  *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir 2000)..........18, 21, 23, 24

5  *Barrett v. Catacombs Press,* 44 F.Supp.2d, 717 (E.D. Pa. 1999) ...............................................23

6  *Brainerd v. Governors of the University of Alberta* 873 F.2d 1257 (9th Cir. 1989).................18

7  *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 .................18, 19, 20, 21, 24, 25

8  *Casualty Assurance Risk Ins. Brokerage Co. v. Dillon,* 976 F.2d 596 (9th Cir. 1992)...............23

9  *Competitive Technologies, Inc. v. Pross,* 836 N.Y.S. 2d 492 ......................................................24

10  *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482 (9th Cir. 1993)...............................18, 22

11  *Dring v. Sullivan,* 423 F.Supp.2d 540 (D. Md. 2006) .................................................................23

12  *Griffis v. Lubin,* 646 N.W. 2d 527 ...............................................................................................24

13  *Hammer v. Trendl,* 2003 WL 21466686 .....................................................................................23

14  *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254 (3d Cir. 1998) ..............................................25

15  *Jackson v. California Newspapers Partnership* 406 F.Supp.2d 893 (N. D. Illinois
     2005).....................................................................................................................................24

16  *Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) ..............................18

17  *Miller v. Ascensio,* 101 F.Supp.2d 395 (D.S.C. 2000) ................................................................24

18  *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998).......................17, 18, 22, 23, 24

19  *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865 (5th Cir. 2001)..............24

20  *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) .............................................................................23

21  *Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797 (9th Cir. 2004) .................................17

22  *Sinatra v. National Enquirer* 854 F. 2d 1191 (9th Cir. 1988)...............................................18, 22

23  *Yahoo! v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) ....................................18

24  *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) ....................................................23

25  *Ziegler v. Indian River County* 64 F.3d 470 (9th Cir. 1995).......................................................18

26  *Zippo Manufacturing Co. v. Zippo Dot Com. Inc.* 952 F.Supp 1119 (W.D. Penn
     1997)......................................................................................................................................24

27

28

# I.    INTRODUCTION

The motion of defendant Anthony Rothschild ("Rothschild") to dismiss this action for alleged lack of personal jurisdiction should be denied, because Rothschild purposefully directed tortious conduct at California residents (i.e. plaintiffs), and caused injury to them in California, knowing that they were California residents and that they would be harmed in California.

Plaintiffs assert claims for defamation based on false and derogatory statements published by Rothschild on the Internet, using a Yahoo message board, and for infliction of emotional distress and interference with prospective business advantage, based primarily on other harassing conduct by Rothschild.  That other conduct includes cancelling plaintiffs' hotel accommodations and speaking engagements, hoax telephone calls, etc.

# II.    STATEMENT OF ISSUES TO BE DECIDED

The issue to be decided is whether this Court has personal jurisdiction based on the fact that Rothschild has committed intentional acts expressly aimed at California, which caused harm that he knew would be suffered in California.

# III.    PARTIES AND PROCEDURAL HISTORY

Corcept is a publicly traded start-up pharmaceutical company, engaged in the development of medications for the treatment of severe psychiatric and metabolic diseases, and which has its principal place of business in Menlo Park, California.[1]  Plaintiffs Schatzberg and Belanoff are two of the co-founders of Corcept, and are shareholders.  Belanoff is the Chief Executive Officer of the company.  Schatzberg is Chairman of Corcept's Scientific Advisory Board.  He is also the Chairman of the Department of Psychiatry and Behavioral Sciences at Stanford University.  Belanoff is a part-time member of the clinical faculty in that department.  Rothschild is a professor and Vice-Chair of Research in the Department of Psychiatry at the University of Massachusetts Medical School, Worcester, Massachusetts.[2]

**A.    Rothschild's Defamatory Internet Postings Were Apparently Triggered By Corcept's Rejection Of His Claim For Recognition As An Inventor Of The Patented Technology On Which Corcept's Corlux Drug Is Based**

Since its inception in May 1998 Corcept has been developing its lead product, Corlux®, for the treatment of the psychotic features of psychotic depression.  This development work is taking

---

[1].   Declaration of Joseph Belanoff dated October 29, 2007 ("Belanoff Dec."), ¶¶ 1-2.  Unless otherwise indicated, the facts set out in these introductory paragraphs are supported by that declaration.

[2].   Declaration of Anthony Rothschild dated August 23, 2007, submitted in support of his anti-SLAPP motion ("Anti-SLAPP Rothschild Dec."), ¶ 2.

place under an exclusive license from Stanford University of the invention under U.S. Patent 6,150,349 (the "'349 patent"), on which Schatzberg and Belanoff are the named inventors. The United States Food and Drug Administration ("FDA") has granted "fast track" status to evaluate the safety and efficacy of Corlux® for the treatment of the psychotic features of psychotic depression. Corlux®'s active ingredient is mifepristone, which is also the main ingredient in RU-486, used for termination of early pregnancy. Mifepristone acts to block the low affinity cortisol receptor in the brain. Corcept believes that Corlux® will be able to treat the psychotic features of psychotic depression more quickly and effectively and with fewer side effects than is possible with currently available treatments.

Schatzberg originally met Rothschild at McLean Hospital in 1979, where Schatzberg was a professor (until 1991) and Rothschild was a resident and later an instructor.[3] Schatzberg and Belanoff formed Corcept in 1998, and it was funded in 1999. One of Corcept's initial activities after being funded was to conduct an early stage clinical trial of Corlux®.[4] In late 1999 Corcept paid Rothschild to be an investigator running one of the sites (at UMass) in this clinical trial. On the successful completion of this trial, Corcept contracted with Rothschild to be a consultant to help design the follow up clinical trials, and Rothschild co-authored (with Belanoff and other investigators involved in the first clinical trial) an article on the findings entitled "An Open Label Trial of C-1073 (Mifepristone) for Psychotic Major Depression."

In late 2001, while Corcept was in the final stages of preparing an initial public offering ("IPO"), Rothschild called Belanoff to complain that he was not getting any shares in the public offering, and that "everyone's getting rich but me."[5] Rothschild told Belanoff that he had learned of the number of shares owned by founders and others from a filing in connection with the IPO, and he objected to the fact that he was not getting any shares. Rothschild warned Belanoff that Corcept "didn't want [him] as an enemy." Belanoff agreed to talk to Schatzberg and the board about Rothschild's demand. Eventually Schatzberg, as Chairman of Corcept's Scientific Advisory Board offered Rothschild a position on the Scientific Advisory Board. With this position came options on 30,000 shares of Corcept stock. Rothschild accepted the offer. However, after the option had actually been authorized, but before Rothschild received them, Rothschild through his attorney

---

[3]. Deposition of Anthony Rothschild ("Rothschild Depo."), 7:6-8:7, 23:18-24:3: Exhibit "F" to declaration of Stuart Clark dated October 29, 2007 ("Clark Dec.").
[4]. Belanoff Dec., ¶ 3.
[5]. Belanoff Dec., ¶ 4.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

wrote to Corcept demanding that Rothschild should receive recognition as a co-inventor (in addition to Schatzberg and Belanoff) on the '349 patent. This demand was made as Corcept was in the final stages of its IPO. Corcept rejected Rothschild's demand. The IPO was not completed.

Immediately following Corcept's rejection of Rothschild's claim to co-inventorship, and until October, 2003, Schatzberg and Belanoff were subjected to the anonymous harassment which forms the subject matter of the third and fourth causes of action (and which is more fully discussed in Part IV(B)(1), below).

In late 2003 McLean Hospital asserted a claim to royalties under the '349 patent, based on Rothschild's alleged co-inventorship and his employment by the hospital at the time of the alleged co-invention. This claim was asserted against Stanford University as patentee, and arbitrated. *While the arbitration was pending the harassment was suspended.* The dispute was resolved in Stanford's favor by an arbitration award issued in January, 2005, which found that Rothschild had no right to be reflected as a co-inventor.

Immediately following the arbitration victory by Stanford, the postings on the Internet of defamatory statements by "corceptisafraud" and "stanfordinsider," which form the basis of the first and second causes of action, started appearing. *And less than two weeks after the filing of this action, the postings ceased.*[6]

**B.    This Action Was Initially Filed In State Court Against Doe Defendants, Then Removed To Federal Court After Rothschild Was Named As A Defendant**

This action was initially filed in the Santa Clara County Superior Court on October 25, 2005, under Case No. 105CV051322.[7] At that time plaintiffs were uncertain as to the identity of the person(s) making the postings which formed the basis for the claims asserted, and therefore only Doe defendants were named. Having conducted certain discovery in the action (including taking the deposition of Rothschild), plaintiffs filed an amended complaint on June 21, 2007, naming Rothschild as the only non-Doe defendant, and adding two causes of action.

The original complaint asserted only two causes of action, for defamation, against what was then believed to be the two persons responsible for making defamatory postings on a Yahoo message board under the names of "stanfordinsider" and "corceptisafraud." Discovery revealed, however, that only one person – Rothschild – was responsible for the postings under both names. Thus, only Rothschild was named as a defendant in the amended complaint. The amended

---

6.    Belanoff Dec., ¶11.
7.    Clark Dec., ¶¶ 2-3.

complaint also added causes of action for intentional infliction of emotional distress, and interference with prospective business advantage, based on a series of events of harassment which included cancelling hotel reservations and speaking engagements of the individual plaintiffs, hoax calls, and other harassment.

## IV.    FACTS

The facts point unequivocally to Rothschild as the person responsible for the defamatory postings on the Yahoo message board which form the basis of the defamation claims, and also as the person who was responsible for the harassment that forms the basis of the emotional distress and tortious interference claims.  The evidential trail leading to Rothschild is described below.

**A.    The Facts Show That Rothschild Posted The Defamatory Statements**

The Yahoo message board postings that are the subject of this action were posted on March 17, 2005 (using the name corceptisafraud), and on August 23, 2005, October 17, 2005, and October 28, 2005 (using the name stanfordinsider).[8]  Except for one posting that was removed by Yahoo, all of those postings are currently still published on the Yahoo website.  The one posting that is no longer posted was removed at the request of Corcept, in response to a complaint to Yahoo by Belanoff: Corcept also objected to other postings, but Yahoo refused to remove them.[9]

Flatly contradicting his assertion under oath that he "never registered nor utilized" the screen names "corceptisafraud" and "stanfordinsider,"[10] irrefutable evidence shows that Rothschild did indeed both register and use those screen names in publishing defamatory statements about Corcept, and in accessing the Internet generally.  However, Rothschild was careful to ensure that he took full advantage of the anonymity provided by the Internet, with the result that proof of his misconduct is necessarily provided by inescapable inference based on the analysis of electronic communications, rather than by direct evidence or a specific "gotcha" moment.

*1.    Rothschild is "stanfordinsider"*

Any connection to the Internet (such as is required to make a posting on a Yahoo message board or to send an email) must be made using an Internet Service Provider ("ISP").[11]  Each ISP has assigned to it, at any particular time, a number of Internet Protocol Addresses ("IP Addresses" or "IPAs") which are unique to each ISP.  When an Internet connection is made, the source of the

---

[8].    First Amended Complaint, ¶¶ 16, 23: Belanoff Dec., ¶ 7 and Exhibits "B" through "H".
[9].    Belanoff Dec., ¶ 7 and Exhibit "H".
[10].   Rothschild Dec., ¶6.
[11].   Declaration of Steve Atkins dated October 25, 2007 ("Atkins Dec."), ¶¶ 6, 10.

connection can be traced back to the IPA.  Then, by using a service such as the Internet site "ERIN," it is possible to determine the identity of the ISP to which the IPA is assigned.  In addition, because IPAs are assigned to different regions of the country (and the world), the IPA also indicates the location from which an Internet connection was made.

Based on his investigation into the IPAs and ISPs involved in the Internet connections of relevance to this case, plaintiff's consultant Steve Atkins ("Atkins") has identified the sources of those connections, and linked them to Rothschild, as we discuss below.  Atkins' investigation was not limited to the specific postings which form the basis of the defamation claims, however: he also investigated the origins of postings that do not form part of this action, and other connections to the Internet by or concerning corceptisafraud and stanfordinsider, thereby identifying a pattern of conduct indisputably identifying Rothschild as the person responsible for the defamatory postings.

The October 16 and 17, 2005 Internet Access Events

Stanfordinsider logged into the Internet on multiple occasions on October 16, 2005 and October 17, 2005, and the IPAs from which he obtained that access were obtained through discovery from Yahoo.[12]  None of those Internet access events on that day was associated with any of the postings at issue in this case, however – their relevance is that they assist in determining the identity of stanfordinsider.  Of those Internet access events by stanfordinsider, the 11.12 p.m. log in on October 16, 2005 and the 7.00 a.m. log in on October 17, 2005 were made using an IP Address which indicates that they were made from the *Hyatt Hotel* in Arlington, Washington D.C.[13] Rothschild spent the night of October 16/17 at that hotel as one of the twenty-five APA committee members who were accommodated there.[14]  While Rothschild the fact of this association of posting and physical presence is not conclusive, it nevertheless provides one of the "dots" that we will now proceed to connect up in the course of showing that Rothschild was the person responsible for the postings under the names of both stanfordinsider and corceptisafraud.

Later on October 17, 2005 stanfordinsider again used that screen name to log into Yahoo another *fifteen* times between 8.21 a.m. and 12.10 p.m.[15]  Most of those log ins were made from IPA 65.120.88.201, which was and is an address assigned to the office of the American Psychiatric

---

[12].  Declaration of Linda Isley dated November 14, 2005 ("Isley Dec."), ¶ 2 and Exhibit (page 9).
[13].  Atkins Dec., ¶ 12.  All arguments and opinions relying on Yahoo log ins are based on that declaration.  (Note that GMT is five hours ahead of Eastern Standard Time: thus 04:12:21 GMT is 11.12 p.m. EST).
[14].  List of APA delegates staying at Hyatt Regency the night of October 16/17, 2005: Exhibit "D" to declaration of Cathy Nash dated September 17, 2007 ("Nash Dec.").
[15].  Isley Dec, ("Yahoo Login Tracker" portion of Exhibit, at page 9).

Association (the "APA") at Suite 1825, 1000 Wilson Boulevard, Arlington.[16]  Rothschild attended the Scientific Program Committee Fall Meeting of the APA at the APA office from 9.00 a.m. to 3.00 p.m. that day, and he actually presented a paper at that meeting.[17]  There were approximately 30 persons present at the meeting.[18]  Thus, once again, the coincidence of Rothschild's presence at the place of transmission is not conclusive, but it connects another dot – especially when account is taken of the fact that *no other posting by stanfordinsider was ever made from either the Hyatt in Arlington or the APA office* (thereby eliminating APA and hotel staff from suspicion).  Moreover, since it is unlikely that APA staff based in the APA office would be staying at the Hyatt for the event, a necessary inference arises that it was one of the twenty-five visiting committee members who made the Internet connections as stanfordinsider.  Thus, once again the location and timing of the postings indicate that they were made by *a visitor to Arlington*, as Rothschild was.

November 4, 2005 Internet Access Events

On November 4, 2005 stanfordinsider used that screen name to post a message on a Yahoo message board, at 11.35 a.m., using the IPA 12.180.114.2.[19]  This IPA is the address of the network of the Holiday Inn in Pittsburgh.  Rothschild admits that he was attending a conference of the International College of Geriatric Psychopharmacology at the University of Pittsburgh at that time, and also that he met certain colleagues in the lobby of a nearby hotel, which he admits may have been the Holiday Inn.[20]  The Holiday Inn is in fact just a few blocks from the venue of the conference.[21]  *No other postings by stanfordinsider or corceptisafraud were ever made from Pittsburgh*.  Thus, once again, the facts indicate that that the posting was made by a visitor to Pittsburgh, and one of the approximately 100 attendees[22] at the conference – as Rothschild was.  Accordingly, a necessary inference arises that Rothschild was also responsible for the posting on November 5.

Other Internet Access Events

The other postings by or related to the use of the stanfordinsider name are also consistent with Rothschild's physical whereabouts at the times that the postings or other Internet access events

---

[16].  Atkins Dec., ¶ 11; Nash Dec., ¶ 1.
[17].  Scientific Program Committee Meeting Agenda and Meeting Summary, Exhibits "C" and "D" to Nash Dec.
[18].  Id.; Anti-SLAPP Rothschild Dec., ¶ 10.
[19].  Belanoff Dec., Exhibit "B"; Isley Dec Exhibit, page 8; Atkins Dec., ¶13.
[20].  Deposition of Rothschild on February 13, 2006 ("Rothschild Depo."), 138:139:22; 141:13-143:10: Exhibit "C" to Clark Dec.
[21].  Clark Dec., Exhibit "C".
[22].  Rothschild Depo., 143:17-22.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

1  occurred, and are wholly inconsistent with the possibility that stanfordinsider was actually an

2  insider at Stanford.

3      Rothschild's principal residence is in Sherborn, Massachusetts, and he has another home in

4  Harrison, Maine.[23]  His office is at the University of Massachusetts Medical School, which is in

5  Worcester, Massachusetts.  Thus, one would expect that if the postings by stanfordinsider were

6  made by Rothschild, they would have originated from an ISP based in New England or other

7  eastern part of the country, rather than the western part of the country.  Connecting some more dots

   on the trail leading to Rothschild, that is exactly what we find to have happened:

8      *    On October 28, 2005 stanfordinsider posted a message on Yahoo using IPA

9           24.60.198.162,[24] which is a Boston, Massachusetts, area address (six Internet connections

10          in all were made from this address, by *both stanfordinsider **and** corceptisafraud* – see

11          summary in Exhibit "B" to this brief);[25] and,

12     *    On October 16 and 17, 2005 (i.e. while also logging in from the Hyatt and APA offices),

13          stanfordinsider also used IPA 66.250.195.82 for two log ins.[26]  The exact location of that

14          IPA at the time of logging in cannot now be determined, but that is now a Maryland

            based ISP, so once again there is no link with California or Stanford.[27]

15     Under the circumstances, Rothschild had the opportunity to make each of the

16  stanfordinsider postings and other Internet access events, since he was physically present at each of

17  the multiple locations from which those postings were made, at the time of the postings.  Thus, an

18  inference arises from Rothschild's presence at the *specific locations from which the postings were*

19  *made* that he was the one who made the postings.  As we now proceed to explain, other facts

    reinforce, and confirm the accuracy of, that inference.

20     2.    *Stanfordinsider is also corceptisafraud: therefore Rothschild is corceptisafraud*

21     As we noted in the preceding section, stanfordinsider used IPA 24.60.198.162 for a posting

22  on October 28, 2005.  On March 17 and 18, 2005 that same IPA had been used by *corceptisafraud*

23  to post messages on a Yahoo message board.[28]  Given that there were over *1.3 billion* IPAs in

24

25

26  [23].  Rothschild Depo., 76:5-16 and 6:6-9; Anti-SLAPP Rothschild Dec., ¶ 2.
    [24].  Exhibit to Isley Dec., page 8.
27  [25].  Atkins Dec., ¶ 14.
    [26].  Exhibit to Isley Dec., page 9.
27  [27].  Atkins Dec., ¶ 7.
28  [28].  Exhibit to Isley Dec., page 4.

existence in 2005,[29] it is highly unlikely that if stanfordinsider and corceptisafraud were different persons that they would coincidentally have been using the same Boston based ISP and also *the identical IP address*.  This demonstrates as a matter of overwhelming probability that the same person was using the names stanfordinsider and corceptisafraud.  This indication is reinforced by the fact that postings by stanfordinsider and corceptisafraud were not made during overlapping time periods – postings by corceptisafraud were made only on March 17 and 18, 2005 and on Sunday, July 24, 2005, and all stanfordinsider postings were made thereafter – from August 23, 2005 through November 4, 2005.[30]  Thus, for some reason Rothschild stopped using the corceptisafraud name and switched to stanfordinsider instead.

That stanfordinsider and corceptisafraud are the same person is further indicated by the inter-related use of those names together with the fake email addresses corcept@hotmail.com and corcepttherapeutics@hotmail.com in connection with postings and registrations.  These inter-relationships are discussed in the next section.  In addition, as is the case with stanfordinsider's postings, all of the postings by corceptisafraud were also made from IPAs located in Massachusetts or elsewhere in the eastern part of the United States.  This too is consistent with Rothschild being both stanfordinsider and corceptisafraud, because it confirms that corceptisafraud was not based in the western United States either (the final corceptisafraud posting was made through an IPA apparently located in Chicago).[31]

Thus, all of the evidence points to the fact that stanfordinsider is also corceptisafraud, and that both are Rothschild.

### 3.    *Rothschild is also corcept@hotmail.com and orcepttherapeutics@hotmail.com*

Further analysis of the IPAs used on certain postings reveals that stanfordinsider/ corceptisafraud, i.e. Rothschild, is also the registrant and the user of the fake email addresses corcept@hotmail.com and corcepttherapeutics@hotmail.com.  The email address corcept@hotmail.com was registered (under the false name Alan Schatzberg) using IPA 24.60.198.162 on March 17, 2005, at 22:07:54 GMT (i.e. 3.07 p.m. EST).[32]  The registration of the name corceptisafraud on Yahoo followed at 5.14 p.m. that day, using the same IPA.[33]  And the first

---

29.  Atkins Dec., ¶ 12.
30.  Exhibit to Isley Dec., pages 4, 9 and 10.
31.  Atkins Dec., ¶ 15.  Plaintiffs have not yet been able to specifically link Rothschild to this location, but investigation and discovery is continuing.
32.  Declaration of Jonathan Bradley dated August 11, 2005 ("Bradley Dec."), Exhibit page MS-SUB 0154.
33.  Exhibit to Isley Dec., page 2 (showing account created time) and page 4 (reflecting that times are given in EDT or EST)

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

posting by corceptisafraud on the Yahoo message board – once again using the same IPA – was also made that day, at 5.32 p.m.[34]  As is noted above, IPA 24.60.198.162 was later used by stanfordinsider for the posting on October 28, 2005.[35]  Thus, the registrant of corcept@hotmail.com is the same person as corceptisafraud and stanfordinsider – Rothschild.

On October 17, 2005 (i.e. the day Rothschild was at the APA offices) the APA IP address 65:120:88.201 was also used to log into corcepttherapeutics@hotmail.com numerous times between 9.55 a.m. EDT (6.55 a.m. PDT) and 11.12 a.m. EDT (8.12 a.m. PDT).[36]  The date and timing of these Internet access events corresponds exactly with the date and timing of the Internet access events of stanfordinsider from the offices of the APA according to Yahoo's records.[37]

That the registrant of corcepttherapeutics@hotmail.com and stanfordinsider are the same person is further demonstrated by the fact that when the stanfordinsider user name was registered with Yahoo the registrant gave his email address as corcepttherapeutics@hotmail.com.[38]  Interestingly, in registering the stanfordinsider screen name the registrant gave his name as Melissa Schatzberg – plaintiff Schatzberg's daughter.[39]  This is a further indicator that stanfordinsider is Rothschild, because a stranger would not have known the name of Schatzberg's daughter, whereas Rothschild knew the Schatzberg family well from his association with Schatzberg going back to McLean Hospital in 1979.

Under the circumstances, the association between stanfordinsider and corceptisafraud, corcept@hotmail.com and corcepttherapeutics@hotmail.com, and the fact that all of those names are alter egos for Rothschild, shows that Rothschild is responsible for all of the misconduct perpetrated using each of those false names.  Accordingly, the evidence as a whole gives rise to an overwhelming inference that Rothschild is stanfordinsider and corceptisafraud and the user of the email addresses corcept@hotmail.com and corcepttherapeutics@hotmail.com.

**B.    Rothschild Was Engaged In A Vendetta Against Plaintiffs And Had The Motivation, Opportunity, And Knowledge To Make The Postings**

In addition to having the opportunity to make the postings on the occasions documented above because of his presence at the widely dispersed locations from which they were made, Rothschild also bore malice towards plaintiffs that motivated him to act in that way.  This malice is

---

34.    Exhibit to Isley Dec., page 4.
35.    Exhibit to Isley Dec., page 8.
36.    Exhibit to Bradley Dec., page MS-SUB 0152.
37.    Exhibit to Isley Dec., page 9.
38.    Exhibit to Isley Dec., page 7.

shown by other misconduct by Rothschild, including harassment in the form of canceling hotel reservations and talks, leaving phony messages calculated to cause emotional distress, etc. This malice is also manifested itself in the form of comments made by Rothschild in reviewing manuscripts that related to Corcept and the field in which it does business. Even the timing of these various events of harassment provides a link to Rothschild – during the arbitration proceedings in which his claim to be recognized as a co-inventor on the '349 patent was pending there was no harassment, but the harassment (in the form of the Yahoo postings) started up almost immediately after Rothschild's positions in the arbitration were rejected by the Arbitrator in January, 2005.[40] Finally, as a former paid investigator and consultant to Corcept, and as an insider in the profession of psychiatry and a member of APA committees, Rothschild possessed the inside information needed to address the technical subjects that are discussed in the postings. Each of those motives for targeting plaintiffs are discussed further below.

      1.     *Rothschild Engaged In Harassment Of Plaintiffs*

      Flatly contradicting Rothschild's assertion under oath that "I was not the person who made any of these alleged telephone calls,"[41] the evidence gives rise to an irrefutable inference that Rothschild did indeed make the calls that cancelled hotel reservations and talks, and otherwise targeted plaintiffs for malicious behavior. The harassing conduct relied on by plaintiffs as part of the basis for the Third and Fourth Causes of Action, and the evidence associating Rothschild with that conduct, are as follows:

November 15, 2002 Incident

      In November, 2005 Schatzberg was scheduled to speak at a meeting of the American Society of Clinical Psychopharmacologists, an organization of which Rothschild was at that time a member and from which he received notice of its functions.[42] On November 15, 2002 when Schatzberg checked in at the Hilton Hotel in New York he was given a message that "Dean Pizzo", the Dean of the Stanford University Medical School, had called to say that the Wall Street Journal was inquiring about an alleged conflict of interest between Corcept and the university.[43] According to the message, Pizzo asked Schatzberg to return the call. Schatzberg called Pizzo, to discover that he had not called, and that the call was a hoax. According to the telephone records produced by

---

[39].   Exhibit to Isley Dec., page 7; Schatzberg Dec., ¶ 13.
[40].   Belanoff Dec., ¶ 6.
[41].   Anti-SLAPP Rothschild Dec., ¶7.
[42].   Rothschild Depo., 149:20-150:16.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

UMass Memorial relating to Rothschild's work phone, Rothschild called 212-586-7000, which is the number of the Hilton Hotel in New York, at 12.45 p.m. on November 15, 2002, and was billed for a two minute call.[44]  Thus, Rothschild's phone records indicate that it was he who left the phony message.

May 27, 2003 Incident

Belanoff was scheduled to give a talk at the annual New Clinical Drug Evaluation Unit conference in Boca Raton, Florida, on May 27, 2003.  Belanoff arrived at the Boca Raton resort in Florida on a business trip.  On arrival he was given a message to "call Dr. Blenko at the hospital – there's been an emergency."[45]  Dr. Blenko is Belanoff's wife, and Belanoff spent an anxious couple of hours attempting to contact her, in the belief that something terrible had happened to one or both of his children.  While – unlike the other instances described in this part – Rothschild's office phone records do not link this specific misconduct to Rothschild, it is entirely consistent with Rothschild' pattern of behavior.

September 8, 2003 Incident

Schatzberg was due to participate in a meeting of the International Society of Psychoneuroendocrinology meeting at Rockefeller University in New York on September 8, 2003.[46]  Dr. Bruce McEwen of Rockefeller University, NYC – the organizer of the meeting– informed Schatzberg that his office had received a call from a "Mel Peterson" of the New York Times, and that Peterson had left a message that wanted to talk to Schatzberg about conflict of interest involving Corcept.  When Schatzberg called the New York Times the number did not connect to any valid line.  However, he noticed that the call back number was one digit off the number of reporter Erica Goode, who was known to Schatzberg as a writer on human behavior.  On calling that number, Schatzberg was infirmed that Ms. Goode was on vacation.  That the hoax caller was Rothschild is indicated by the following series of calls made by Rothschild from his work phone:[47]

* Rothschild called 212-327-8000 at 10.09 a.m. on September 8, 2003, and was billed for a four minute call.  212-327-8000 is the number of the Rockefeller University;

* Rothschild then called 212-556-3586 at 10.13 a.m. and was billed for a two minute call.

---

43.  Schatzberg Dec., ¶ 8.
44.  Clark Dec., ¶¶ 2 and 5, and Exhibit "A".
45.  Belanoff Dec., ¶ 5.
46.  Schatzberg Dec., ¶ 9.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

212-556-3586 is the number of the New York Times.

September 30, 2003 Incident

Schatzberg was due to present a paper at the UT Southwestern Medical Center Grand Rounds on October 1, 2003.[48] He flew to Dallas from California, and on arrival in Dallas he called the office at UT. Schatzberg was thereupon informed by UT that someone claiming to be him had called the Psychiatry Department Chief and cancelled his talk because he allegedly was unable to attend due to a meeting between Corcept and the FDA. That the person who cancelled the talk was Rothschild is indicated by the following information with regard to calls made by Rothschild from his work phone:[49]

* Rothschild called 214-648-2564 at 14.33 p.m. on September 30, 2003, and was billed for a one minute call. 214-648-2564 is a UT Southwestern number.

* Rothschild next called 650-327-3270 at 14.34 p.m., and was billed for a one minute call. 650-327-3270 is the number of Corcept in Palo Alto (perhaps Rothschild was checking to ensure that Alan Schatzberg had actually left for Texas?)

October 16/17, 2003 Incident

Corcept executive Chuck DeBattista was booked to stay at the Grand Hyatt Hotel, Washington DC on October 16, 2003. When he arrived at the hotel he found that his reservation had been cancelled.[50] According to his phone records, Rothschild called 202-582-1234 at 3.32 p.m. on October 16, 2003, and was billed for a one minute call. That is the number of the Grand Hyatt Hotel in Washington DC.[51]

That Rothschild made telephone calls to each of the venues at which harassment occurred, immediately prior to he harassing behavior, is obviously no mere coincidence – especially given the timing and geographic location of the persons and entities called. Moreover, the common theme of alleged conflicts of interest found in the hoax "Peterson" and "Pizzo" calls, and the October 17, 2005 stanfordinsider posting, and in the manuscript reviews (discussed below) indicates that all of this misconduct was perpetrated by *the same* person. On the facts, there is an inescapable inference that this single person was Rothschild.

---

[47]. Clark Dec., ¶¶ 6 and 7, and Exhibit "A".
[48]. Schatzberg Dec., ¶ 10.
[49]. Clark Dec., ¶ 8 and Exhibit "A".
[50]. Declaration of Charles DeBattista dated October 29, 2007, ¶ 2.
[51]. Clark Dec., ¶ 9 and Exhibit "A".

<u>September 5, 2005 Incident</u>

Belanoff was scheduled to stay at the Four Seasons Hotel in Boston for the night of September 6, 2005, where he had a reservation.[52]  When he arrived at the hotel and attempted to check in he was told that his reservation had been cancelled.  According to his phone records, on September 6, 2005 Rothschild called the Four Seasons Hotel in Boston.[53]  Thus, the evidence shows that Rothschild cancelled Belanoff's hotel reservation.

All of the above incidents demonstrate without any possibility of contradiction that Rothschild was engaged in a campaign of harassment against Corcept and its officers.

2.    *Rothschild Demonstrated Malice In His Reviews*
      *Of The DeBattista And Posener Manuscripts*

Rothschild's malice towards Corcept and the individual plaintiffs is further demonstrated by his conduct with respect to two manuscripts that were presented to scientific journals for publication.  The first was a manuscript by J. A. Posener and others entitled "Process Irregularity of Cortisol and Adrenocorticotropin Secretion in Men with Major Depressive Disorder" (the "Posener manuscript").  The second was a manuscript by Charles DeBattista, Belanoff, and others entitled "An Add-on Trial of C-1073 (Mifepristone) vs. Placebo in the Treatment-as-Usual of Patients with Psychotic Major Depression" (the "DeBattista manuscript").  This manuscript related to a second phase of the clinical trial – discussed above – in which Rothschild participated as a paid consultant for Corcept to help design the trial; he was later removed as an investigator when he agreed to join Corcept's Scientific Advisory Board, because continuing as an investigator would have been a conflict of interest.  Rothschild's involvement with each of those manuscripts is discussed in turn:

<u>The Posener Manuscript Incident</u>

At the request of the journal Psychoneuroendocrinology, Rothschild reviewed a manuscript by Posener, Schatzberg, et al entitled "Process Irregularity of Cortisol and Adrenocorticotropin Secretion in Men with Major Depressive Disorder."[54]  Although this manuscript was not about Corlux® or Corcept, in reviewing the Posener manuscript, Rothschild embarked on a tirade about alleged conflicts of interest of the authors, objecting that there "are no disclosures of possible conflicts of interest from the authors," and suggesting that Corcept's purported interest in the subject matter should be disclosed, as should the number of shares owned by Schatzberg in

---

[52].    Belanoff Dec., ¶ 9.
[53].    Clark Dec., ¶ 10 and Exhibit "A".
[54].    Rothschild Depo., 173:14-174:1, and Exhibit 15; and 167:24-168:8, and Exhibit 13; Rothschild affidavit dated August 26, 2006 ("2006 Rothschild Dec."), ¶ 14 and Exhibit "C".

1   Corcept.[55]  Rothschild also recommended that if the manuscript was accepted for publication it

2   should be accompanied by a disclosure that Schatzberg owned 18% of the shares in Corcept.

3   Posener referred to these comment by Rothschild as "obnoxious and unnecessary."[56]  This

4   June/July, 2003 review by Rothschild fell among the various incidents of harassment described in

5   the preceding section – specifically between the May 23, 2003 cancellation of Belanoff's hotel

6   reservation and the September 8, 2003 hoax message for Schatzberg that the New York Times

    wanted to discuss conflicts of interest with him.

7           The DeBattista Manuscript Incident

8           Rothschild reviewed the DeBattista Manuscript (of which Belanoff was a co-author), which

9   had been submitted for publication in *Biological Psychiatry,* sometime in May/June, 2004.[57]  The

10  manuscript was never published, to plaintiffs' surprise [because of comments made in an

    anonymous review].[58]  It later emerged, from discovery in this action directed to Rothschild, that he

11  had written a scathing review of the manuscript, attacking its statistical methods and analysis, and

12  lack of mention of some of the authors' financial interests in Corcept.  Among other comments

13  Rothschild stated that "[t]he paper illustrates some of the worst kind of 'data mining' that I have

14  seen in a long time and is the type of paper that gives both the pharmaceutical industry and the

15  Journals that publish this kind of paper a bad name."[59]  The examiner's comments also repeated

16  objections similar to those that Posener had characterized as "obnoxious and unnecessary" with

17  regard to financial interests in Corcept.  When submitting this review Rothschild failed to disclose

18  to the journal that he was involved in the inventorship dispute pending between Stanford and

19  McLean in which the focus of the dispute was whether or not Rothschild should receive credit as a

20  co-inventor of the invention of the '349 patent – an obvious conflict of interest and one in direct

    violation of the journal's policy for reviewers.

21          Thus, the comments in the reviews provide a further pointer to Rothschild as the origin of

22  the harassment against plaintiffs.

23

24

25
    _____

26  [55].  Comments of Reviewer No. 2: Rothschild Depo., 173:14-174:1, and Exhibit 15.
    [56].  Fax and letter from Dr. Posener to Dr. Schatzberg dated September 9, 2003: Supplemental declaration of Alan
          Schatzberg dated October, 2007 ("Supp. Schatzberg Dec."), ¶ 2 and Exhibit "A".
27  [57].  Undated letter to Rothschild from Eric Nestler, M.D., specifying 5/5/2004 date for submission of review, produced
          by Rothschild in response to subpoena; Clark Dec., ¶ 14 and Exhibit "H".
28  [58].  Belanoff Dec., ¶ 8.
    [59].  *Id.* ___

1

3. _Rothschild Harbored Ill Will Towards Plaintiffs_

2

3

Rothschild appeared to be embittered towards Corcept and its principals, including

Schatzberg and Belanoff.  He was extremely angry because he had not received shares in Corcept's

4

IPO – as is evidenced by his warning to Belanoff that Corcept "didn't want him as an enemy."[60]

5

Indeed, Rothschild was so ill-disposed towards Corcept that he attempted to use his claim to co-

inventorship to extort money and/or stock at the time of Corcept's IPO filing.  This was clearly a

6

claim orchestrated for maximum injurious effect: Rothschild could not possibly have forgotten

7

(until late 2001) the alleged discussions with Schatzberg that he later asserted in the inventorship

8

proceedings entitled him to credit as a co-inventor, and since he was an investigator in the initial

9

trials he must have known that Corlux® was based on the '349 patent and mifepristone.  That the

10

timing of Rothschild's inventorship claim was calculated to sabotage the IPO is further evidenced

11

by the fact that Rothschild's counsel copied his demands to counsel for the underwriter in the

course of asserting the claim.[61]

12

13

When McLean/Rothschild lost the arbitration his bitterness towards Corcept and its

principals apparently multiplied – and soon Rothschild embarked on his campaign of publishing

14

defamatory matter on Yahoo that is discussed in Part III(A), above.[62]  Rothschild was obviously

15

determined to make good his threat that Corcept did not want him as an enemy.

16

That whoever was involved in the postings was motivated by ill will is further evidenced by

17

the nature of the information provided as part of the registration process of the screen names and

18

email addresses in question.  No made up names such as "Tom Jones" were used - the name of the

registrant of the stanfordinsider screen name is given as "Ms. Melissa Schatzberg" (Schatzberg's

19

daughter),[63] while the name given in connection with corceptisafraud is "Mr. Alan Schatzberg."

20

The name of the registrant of the email address corcept@hotmail.com is also given as "Alan

21

Schatzberg," while the registrant of corcepttherapeutics@hotmail.com is given as "Joe Belanoff."

22

The targeting of Corcept and its principals is therefore all embracing, and relentless.

23

4. _Rothschild Had Personal Knowledge Of The Matters Discussed In The Postings_

24

Not only did Rothschild have the inclination and opportunity to make the postings at issue,

25

and to engage in the other malevolent behavior, he also had the industry and inside knowledge to

26

27

[60].  Belanoff Dec., ¶ 4.
[61].  Belanoff Dec., ¶ 4.

28

[62].  Belanoff Dec., ¶ 5.
[63].  Schatzberg Dec., ¶ 12.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

do so.  Rothschild had discussed with Schatzberg the use of mifepristone for psychotic major depression ("PMD") as far back as 1987, and Rothschild's involvement as an investigator in the initial trials and later as a consultant to Corcept gave him the insight of a virtual insider, while his training and experience enabled him to debate the technical, medical issues that are discussed in some of the postings.  Rothschild was also acquainted with at least three members of the faculty of Stanford University's Department of Psychiatry (other than Schatzberg, Belanoff and DeBattista),[64] who might have been a source of information or misinformation.

The postings include some egregious false statements. For example, the October 28, 2005 posting by stanfordinsider, discussing the then-current "Study 06," claims that there were "4 Cardiac-related deaths in trial."  In truth, these deaths were in an earlier trial in which Rothschild was an investigator (not Study 06), and were in a placebo group that *did not take mifepristone.* These deaths were attributable to natural causes, not the ingestion of mifepristone, or a "rise in cortisol in periphery after blockade of central cortisol receptor."[65] Moreover, the fourth death, which did at least occur in a study participant who took mifepristone, was caused by cardiac failure and had nothing whatsoever to do with the ingestion of mifepristone.  Rothschild was one of the few people who knew that deaths had occurred in the course of clinical trials, because he had worked as an investigator in those trials – this was not public information.[66]  This further indicates that it was Rothschild who made the Yahoo postings.

Also indicative of the fact that Rothschild was responsible for the postings is that – as explained in the analysis in Part IV(A), above, whoever made the postings knew the Schatzberg family well enough to know the name of Schatzberg's daughter Melissa, and to use that name as a fake registrant.  Once again, Rothschild had that knowledge.

### 5.    *Drs. Rubin and Carroll Probably Did Not Make the Postings*

Rothschild may seek to support his denial of involvement in the postings and other misconduct directed at Corcept and its principals by suggesting that Drs. Rubin and/or Carroll – who are both known, public critics of Corcept– may be responsible for those postings and misconduct.  As is noted above, Rubin and Carroll were responsible for the "poster" published at the December, 2004 meeting of the American College of Neuropsychopharmacology, which systematically quoted statements by Corcept representatives then attempted to prove the falsity of

---

[64].    Dr. Sarah Yasmin, Dr. Ira Glick, and Dr. Rona Hu:  Rothschild Depo., 128:4-129:22 and 211:5-212:2.
[65].    Belanoff Dec., ¶ 10.
[66].    Belanoff Dec., ¶ 10.

those statements.[67]  Carroll also criticized Corcept publicly in an August 26, 2006 *Mercury News* article.[68]

It seems highly unlikely that either Rubin or Carol are responsible for the postings.  Neither has evidenced any reluctance to go public with their criticisms of Corcept, and has evidenced any inclination to attack plaintiffs anonymously – in contrast to Rothschild, whose directly identifiable attacks have been limited to the context of usually anonymous manuscript reviews, and whose other attacks (by postings and harassing behavior) have been completely anonymous.  Moreover, other objective evidence tends to indicate their non-involvement, e.g. Carroll lives and works in Carmel, California, and Rubin in Los Angeles, California,[69] yet no postings were made from California.  Thus, given their public positions, there is no reason why either Drs. Rubin and/or Carroll, should they wish to engage in attacks on Corcept, would not do so for attribution – as they did in the past.

## V.    ARGUMENT

Rothschild in wrong in asserting that even if he did post the defamatory statements – which the evidence convincingly shows that he did – he would still not be subject to this Court's jurisdiction.  Motion, 8:20-21.  Rothschild argues that such conduct would not satisfy the "purposeful availment" requirement of the test for jurisdiction.  *Id.*  However Rothschild is wrong on the facts and the law, and he is subject to the personal jurisdiction of this Court because he purposefully directed tortious conduct at California residents (i.e. plaintiffs), and caused injury to them in California, knowing that they were California residents and that they would be harmed in the state of California.

Rothschild acknowledges that the purposeful direction requirement[70] is satisfied where the defendant allegedly has: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that defendant knows is likely to be suffered in the forum state.  *Id.*, 9:1-5 (citing *Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797, 803 (9th Cir. 2004) and *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998).  The "express aiming" requirement is satisfied "when the defendant is alleged to have engaged in *wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.*"  *Bancroft & Masters, Inc. v. Augusta Nat.*

---

[67].  Anti-SLAPP Rothschild Dec., Exhibit 1.

[68].  Declaration of Shelley Hurwitz dated August 23, 2006, Exhibit 6.

[69].  Schatzberg Dec., ¶ 15.

[70].  The purposeful availment requirement generally applies in contract cases, and the purposeful direction standard applies in tort cases.  *Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797, 349 (9th Cir. 2004); *Ziegler v. Indian River County* 64 F.3d 470, 473 (9th cir. 1995).  We therefore use the term "purposeful direction" since it is the proper terminology in the context of the tort causes of action asserted in this action.

1    *Inc.*, 223 F.3d 1082, 1087 (9th Cir 2000) (Emphasis added).  All of the harm from the wrongful act

2    need not occur in the target state – "if a jurisdictionally sufficient amount of harm is suffered in the

3    forum state, it does not matter that even more harm might have been suffered in another state."

4    *Yahoo! v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006).

5        Allegations of the complaint are assumed to be true for purposes of determining

6    jurisdiction.  *Ziegler v. Indian River County* 64 F.3d 470, 474 (9th Cir. 1995).  Also to be taken into

7    account is that California "maintains a strong interest in providing an effective means of redress for

8    its residents [who are] tortiously injured."  *Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482,

9    1489 (9th Cir. 1993) (citing *Sinatra v. National Enquirer* 854 F. 2d 1191, 1200 (9th Cir. 1988);

     *Panavision Int'l, L.P. v. Toeppen, supra., 141 F.3d 1323.*

10       Examples of situations in which Ninth Circuit courts have applied the foregoing principles

11   and held that residents of California have been sufficiently targeted for jurisdictional purposes by

12   "express aiming" include where the Augusta National golf club sent a cease and desist letter to the

13   website registering authority demanding that a California business should desist from its use of the

14   domain name "masters.org" (*Bancroft & Masters, supra);* where the National Enquirer published

15   false allegations about California-based singer and film star Frank Sinatra (*Sinatra v. National*

16   *Enquirer* 854 F.2d 1191, 1200 (9th Cir. 1988); where an Alabama resident sent a letter to an

17   insurance company that was intended to defraud a California resident (*Metropolitan Life Insurance*

18   *Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990)); where a defendant engaged in scheme to

19   register a California resident's trademarks as his domain names on the Internet and then extort

20   money from the California resident by trading on the value of those names (*Panavision, supra,* at

21   1327); and where defamatory statements made by telephone were directed against a person known

22   to reside in Arizona, causing harm in that state (*Brainerd v. Governors of the University of Alberta*

23   873 F.2d 1257, 1260 (9th Cir. 1989)).  As the court in *Bancroft & Masters*  noted (at page 1088) in

24   discussing these and the other Ninth Circuit cases discussed in that opinion, "[t]he presence of

25   *individualized targeting* is what separates these cases from others in which we have found the

26   effects test unsatisfied."  (Emphasis added)

27       Similarly, as we discuss below, in *Calder* the court applied the "express aiming"

28   requirement and found that jurisdiction should be exercised where a Florida news article targeted a

     California resident under circumstances in which the writer and editor knew that the article would

     have "a potentially devastating impact" in California.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

1    **A.    Rothschild Purposefully Directed His Conduct To California**

2        The discussion in Part IV(A), above, provides compelling evidence that Rothschild is

3    responsible for the postings by corceptisafraud and stanfordinsider, and also for the related

4    harassing conduct.  Rothschild's protestations of innocence are simply not credible, given the

     overwhelming weight of the evidence of his involvement.

5        Rothschild argues that the October 17, 2005 posting is "the most glaring proof that plaintiffs

6    have targeted the wrong person."[71]  Thus, Rothschild asks the Court to accept that everything that

7    the author of the posting has to say must be accepted as true – and specifically that the poster is

8    indeed an insider at Stanford.  Indisputable evidence shows, however, that stanfordinsider lied in

9    registering that user name with Yahoo, and also lied when setting up the related email address of

10   corcepttherapeutics@hotmail.com.  Such conduct immediately renders suspect anything that

11   stanfordinsider might say about his identity.  Nevertheless, Rothschild expects the Court to accept

     that Rothschild would not have the guile or intelligence to attempt to conceal his identity –

12   suggesting by necessary implication that if Rothschild had made the posting it would necessarily

13   have been sent under the name of "UMassinsider" or "APAinsider" or the like.  Far from being the

14   "most glaring proof" of Rothschild's innocence, therefore, the fact that Rothschild would seek to

15   mislead the Court with regard to his authorship – notwithstanding the overwhelming contrary

16   evidence discussed in Part IV(A), above – merely offers further proof that nothing Rothschild says

17   in support of his denials is worthy of belief.  Thus, the Court should accept that Rothschild

18   conducted himself in the respects alleged by plaintiffs in support of their claims.

19       Similar to the situation in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804,

20   therefore, here Rothschild purposefully directed his conduct towards California activities and

     residents.  He knew that plaintiffs were all resident in California, and from his professional and

21   business relationships with plaintiffs he knew that false accusations directed against them would

22   have their maximum impact in California – and particularly at Stanford University and in Silicon

23   Valley.  In *Calder* the petitioners/defendants were a Florida journalist and a publisher, and the

24   respondent/ plaintiff was a California resident and entertainer.  Petitioners had respectively written

25   and edited an article that was published in the Enquirer that plaintiff alleged to be defamatory.  The

     story "concerned the California activities of a California resident," "impugned [her]

26   professionalism," and was "drawn from California sources," and "the brunt of the harm, in terms

27

28   _____

     [71].   Memorandum in support of Rothschild's Anti-SLAPP Motion to Strike, at 20:8-17.

both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." (at 1486-1487).   Thus, according to the court "California [was] the focal point both of the story and of the harm suffered," and the exercise of jurisdiction was proper.  (*Id.*)

Rothschild's conduct here is virtually identical to that of the defendants in *Calder v. Jones*, except that Rothschild's conduct was more egregious, and except that in the *Calder* case the medium for the defamation was a newspaper rather than a series of Internet postings.  As in *Calder,* here the Internet postings "concerned the California activities of [-] California resident[s]," "impugned [their] professionalism," and were "drawn from California sources," and "the brunt of the harm, in terms both of respondent[s'] emotional distress and the injury to [their] professional reputation, was suffered in California."

All of Rothschild's postings alleged unlawful and/or improper conduct *in California*.  The March 17, 2005 posting by corceptisafraud accused Belanoff and Schatzberg of insider trading and fraud, and of deliberately concealing that "the drug does not work."  The October 17, 2005 and August 23, 2005 postings by stanfordinsider made similar false allegations.  And the October 17, 2005 posting also accused Schatzberg of corruption and abuse of authority by falsely stating that "the dean of the medical school has hired an outside exert panel to review Schatzberg's use of his Psychiatry Chair position at Stanford to promote Corcept's drug."  The October 28, 2005 posting by stanfordinsider, discussing "Study 06," falsely stated that there had been "4 cardiac-related deaths in trial" – a statement manifestly calculated to injure Corcept's Silicon Valley-based business.  The resulting injury to reputation of Schatzberg, Belanoff and Corcept therefore had its primary impact within the Stanford community (given that Schatzberg and Belanoff were and are faculty members, and that Corcept is a Stanford licensee), within the Silicon Valley business community (where Corcept is based and from which it is financed[72], and Schatzberg and Belanoff conduct business), and among those (also in the Silicon Valley community) who know Schatzberg and Belanoff socially and through other non business relationships.  Thus, as in *Calder v. Jones*, "the brunt of the harm, in terms both of respondent[s'] emotional distress and the injury to [their] professional reputation, was suffered in California," and "California [was] the focal point both of the story and of the harm suffered" as the result of the Internet postings.

Not only was California the focal point of the story and the harm, but Rothschild *knew* that the Internet postings would – and *intended* that they should – cause harm in California.  Rothschild

---

[72].    Belanoff Dec., ¶ 11.

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

knew from his prior work for and other contacts with plaintiffs, and the arbitration proceedings, that plaintiffs were California residents, and he also knew about the nature and extent of their business and academic associations in California.  Indeed, by claiming to be a "stanford insider" Rothschild sought to garner credibility for his defamatory statements by misrepresenting that he was in a unique position to know the facts.  By accusing plaintiffs of fraud and deception (including insider trading) and corruption Rothschild "targeted . . . a plaintiff whom [he knew] to be a resident of the forum state."  Thus, Rothschild's conduct satisfied the express aiming requirement of *Calder v. Jones,* discussed above.  Also satisfying that requirement was the conduct of Rothschild in disrupting the accommodations and professional activities of plaintiffs Schatzberg and Belanoff, and in planting fake messages purporting to be from journalists and others – the injuries from which conduct were suffered both in California and elsewhere.

Accordingly, Rothschild's conduct satisfies the purposeful direction requirement.

**B.    Plaintiffs' Claims Arise Out Of Rothschild's Forum Related Activity**

Contrary to Rothschild's contention (Motion, 13:19 – 14:2), plaintiffs' claims do arise out of forum related activities.  The requirement which is the focus of this argument is that "the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc. v. Augusta Nat. Inc., supra,* at 1086.  The test is whether but for the tortious conduct directed to the forum the claims would not have arisen.  *Id.*  That requirement is satisfied here, because plaintiffs' defamation claims are based on exactly the same conduct as the purposeful availment/direction is based on.

**C.    The Exercise Of Jurisdiction Is Reasonable**

Also contrary to Rothschild's contention (Motion, 14:3-15:16), it is not unreasonable to subject him to the jurisdiction of the court in which his mischief-making has foreseeably caused plaintiffs to sustain injury, and which is the focus of his defamatory allegations.  The burden is on Rothschild to "put on a 'compelling case'" demonstrating that jurisdiction is unreasonable, by reference to the seven factors listed in Rothschild's motion.  *Bancroft & Masters, supra,* at 1086. In order to show unreasonableness, Rothschild is required to "focus on the . . . factors and apply them to the particular circumstances of this case."  *Id.*, at 1087.

Rothschild's arguments are frivolous, and do not come close to meeting the "compelling case" requirement.  By targeting plaintiffs in his postings – not just once, but successively and over an extended period of time – Rothschild intentionally sought to harm California residents by means of false allegations of criminal and other improper conduct allegedly engaged in in California.

1   Thus, Rothschild should reasonably have expected to be haled into court in California.

2   **D.       The Exercise Of Jurisdiction Will Not Unduly Burden Rothschild**

3          Especially given the conduct that led to his being sued in California. Rothschild's burden

4   arguments are groundless.  His absence from his practice for a day's deposition – whether it occurs

5   in California or Massachusetts – will have exactly the same effect on his patients and

6   responsibilities irrespective of where it occurs.  Only travel time will be implicated.  Thus, there is

    no additional burden *on Rothschild's patients* from his having to litigate in California.  Moreover,

7   the evidence discussed in Part IV(A), above, establishes that Rothschild is frequently away from his

8   patients attending conferences in places such as Pittsburgh and Arlington, and traveling around the

9   country for other reasons – and it presumably not his position that these absences from his office

10  prejudice his patients.  Moreover, Rothschild has competent counsel in California whom he can

11  readily communicate with, and his personal attendance in California will be infrequent and limited.

12  Thus, he is not being subjected to any greater burden that any other litigant whose conduct

    targeting another jurisdiction permits him to be sued in other than his home jurisdiction.

13         Moreover, California has an interest in providing a forum for its residents injured by the

14  misconduct of non residents, and "maintains a strong interest in providing an effective means of

15  redress for its residents [who are] tortiously injured."  *Core-Vent Corp. v. Nobel Industries AB,* 11

16  F.3d 1482, 1489 (9th Cir. 1993) (citing *Sinatra v. National Enquirer,* 854 F.2d 1191, 1200 (9th Cir.

17  1988)).  In this regard Rothschild mis-cites *Panavision Int'l, L.P. v. Toeppen, supra.,* 141 F.3d

18  1323, which does not hold that "little weight" should be given to plaintiff's inconvenience, but

19  merely states that *in reaching its decision* the court *gave little weight to that factor.*  And on the

    remaining criteria, there are no special features which Rothschild has presented that rise to the level

20  of a "compelling case" for a change of venue.  These considerations are further discussed in

21  Corcept's simultaneously filed opposition to Rothschild's change of venue motion, which the Court

22  is respectfully requested to treat as incorporated herein by this reference.

23         Under the circumstances, Rothschild has failed to show that it is unreasonable for him to be

24  haled into court in California, thereby satisfying the third requirement for the exercise by this Court

25  of personal jurisdiction.

    **E.       No Cases Cited By Rothschild Preclude The Exercise Of Jurisdiction**

26         Rothschild's invocation of multiple cases as purported support for his position does not

27  detract from the foregoing analysis, because – unlike this case –  in all of those cases the plaintiff

28  failed to satisfy one or more of the criteria that give rise to jurisdiction.  In *Revell v. Lidov,* 317 F.3d

467 (5th Cir. 2002) there was no targeting of Texas because defendant did not even know that plaintiff lived in Texas (at 469, 475), and the allegedly defamatory article published on the Internet made no reference to any alleged conduct in Texas (at 473).  Thus, the court found that it lacked jurisdiction because it had not been shown that defendant was "chargeable with knowledge of the forum at which is conduct is directed in order to be haled into court in that forum."  In contrast to that case, here Rothschild knew that plaintiffs resided in California, and focused his defamatory postings on alleged conduct by California residents in California.

Also unhelpful to Rothschild is his invocation of the cases of *Barrett v. Catacombs Press*, 44 F.Supp.2d, 717, 731 (E.D. Pa. 1999), *Dring v. Sullivan,* 423 F.Supp.2d 540, 548 (D. Md. 2006), and *Hammer v. Trendl,* 2003 WL 21466686, because unlike the situation in this case the conduct described in the defamatory statements which were at issue in those cases were also unrelated to the forum state.  In *Barrett* the court declined to exercise jurisdiction in an Internet defamation case because the alleged defamatory statements concerned plaintiff's activities as a "nationally-recognized consumer health advocate," not his activities "as a psychiatrist practicing in Pennsylvania."  Similarly, the court in *Dring* declined to exercise jurisdiction in an Internet defamation case because the alleged defamatory statements "focused on Plaintiff's activities at the national and international level," not his activities in Maryland.  And in *Hammer* – in which the relief claimed by a crackpot *pro se* plaintiff included a motion for the arrest of opposing counsel – the court declined jurisdiction on the grounds that defendant merely published a book review on Amazon.com, and did not target the state of New York.   Moreover, in *Hammer* the court did not even discuss the *Calder* issues that have been found to be determinative with regard to "express aiming," so the analysis is also unhelpful for this reason.

The decision of the court in *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) does not assist Rothschild either, because it does not comport with California law (though it cites *Panavision Int'l, L.P. v. Toeppen* with apparent approval).  According to *Young* an Internet posting must "manifest an intent to target and focus on Virginia *readers"* (emphasis added).  Ninth Circuit law contains no such requirement: rather, the proper criterion under Ninth Circuit law is whether the publication targets the *plaintiff. Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F. 3d 1082, 1087 (9th Cir 2000).  Thus, *Young* has no application to California.

*Casualty Assurance Risk Ins. Brokerage Co. v. Dillon,* 976 F.2d 596 (9th Cir. 1992) does not support Rothschild's position either.  In that case allegedly defamatory correspondence was published only in places *other than* the island of Guam (in which court the action had been filed),

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

and did not result in any injury in Guam because plaintiff was merely incorporated there but had no business on the island. (at 598 and 599-600).  Nor does *Jackson v. California Newspapers Partnership* 406 F.Supp.2d 893, 896 (N. D. Illinois 2005) assist Rothschild.  In that case the court – *contrasting* the factual situation before it with that in *Calder v. Jones* – held that nationally known sports personality Bo Jackson had not sustained damage in Illinois, but nationally, so that Illinois was not the focal point of the defamation (the court also found that harm in Illinois was not foreseeable, and that defendants did not even know that plaintiff resided in Illinois).

That Rothschild does not conduct business over the Internet is not relevant to the determination of this motion, and cases discussing such business activities are of marginal relevance at best.  Thus, *Zippo Manufacturing Co. v. Zippo Dot Com. Inc.* 952 F.Supp 1119 (W.D. Penn 1997) is not helpful to the analysis, because it addresses degrees of interactivity of websites and whether transactions are conducted via a website, rather than directly addressing whether tortious conduct is aimed at a particular jurisdiction.  Similarly, the case of *Miller v. Ascensio,* 101 F.Supp.2d 395 (D.S.C. 2000), also cited by Rothschild, is unhelpful to him because it concerns the finding that, without "something more," a passive website does not provide grounds for the exercise of personal jurisdiction.  *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002) is unhelpful because it is to the same effect.  And the unreported (and non-citable) decision in *Competitive Technologies, Inc. v. Pross,* 836 N.Y.S. 2d 492 does not assist Rothschild either, because there the court was applying New York statutes rather than California law, and did not discuss whether the tortious conduct in question had caused injury in New York or been directed at New York.  Thus– unlike the facts here – the court found that the "something more" of purposeful direction as required by *Calder v. Jones* had not been established.

Also unhelpful to Rothschild are the other cases cited in footnotes 3 and 4 of his brief, and not already discussed above.  In *Griffis v. Lubin,* 646 N.W.2d 527, 536 (another case not binding on this Court) the court found that defendant's defamatory statements were not expressly aimed at the state of Alabama, where the action had been filed.  Significantly, the *Griffis* court *declined* to follow the Ninth Circuit cases of *Bancroft* and *Panavision* in defining what constituted "express aiming," explaining that the Ninth Circuit standard "cast[s] too wide a net and incorrectly disregard[s] the factual underpinnings of the Court's holding in *Calder.*" (at 535).  Thus, *Griffis* does not even purport to apply Ninth Circuit law, and it is irrelevant for this reason also.

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 870 (5th Cir. 2001) does not assist Rothschild either, because there the court simply stated the unremarkable

1  proposition that foreseeability alone is not sufficient for jurisdictional purposes – purposeful
2  direction is also required, but was not proven.  Finally, the case of *IMO Industries, Inc. v. Kiekert*
3  *AG,* 155 F.3d 254 (3d Cir. 1998) is also inapplicable because the Third Circuit's interpretation of
4  *Calder v. Jones* differs from the interpretation of the Ninth Circuit (as discussed above in the
5  context of the *Griffis* case), and also because the court in *IMO Industries* found that – unlike here –
   New Jersey was not the "focal point" of the tort committed.
6
                                    **VI.    CONCLUSION**
7
              For the foregoing reasons Rothschild is indeed subject to the personal jurisdiction of this
8
   Court, because he purposefully directed tortious conduct at California residents (i.e. plaintiffs), and
9
   caused injury to them in California, knowing that they were California residents and that they
10
   would be harmed in the state of California.  Thus, Rothschild had every reason to reasonably expect
11
   that he would be haled into court in California to answer for his misconduct.  Under the
   circumstances, the motion to dismiss for alleged lack of personal jurisdiction must be denied.
12
13  Dated:  October 29, 2007                          CARR & FERRELL *LLP*

14

15                                     By:  /s/ Stuart C. Clark
                                             STUART C. CLARK
16                                           CHRISTINE S. WATSON

17                                           Attorneys for Plaintiffs
                                             CORCEPT THERAPEUTICS, INC., JOSEPH
18                                           K. BELANOFF, and ALAN F. SCHATZBERG

19

20

21

22

23

24

25

26

27

28

Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

EXHIBIT "A"

## SUMMARY OF POSTINGS AND OTHER INTERNET ACCESS

| Date/Time (EDT/EST) | Event | Comment |
|---|---|---|
| March 17, 2005 5.07 p.m. | Email address corcept@hotmail.com registered, giving user name of Alan Schatzberg.  (Exhibit MS-SUB 0154 to Bradley Dec) | Log in using IPA 24.60.198.162 (i.e. Boston area address). |
| March 17, 2005 5.17 p.m. | *corceptisafraud* registered, giving email address as corcept@hotmail.com. (Exhibit to Isley Dec., page 2) | Also using IPA 24.60.198.162 (i.e. Boston area address). |
| March 17, 2005 5.32 p.m. | First posting on Yahoo message board by *corceptisafraud* ("**I feel sorry for all you people who bought Corcept. . . .**"). (Exhibit to Isley Dec., page 4; Belanoff Dec., Exhibit "H") | Also using IPA 24.60.198.162 (i.e. Boston area address). |
| March 18, 2005 5.14 p.m. | Further posting on Yahoo message board by *corceptisafraud*: **"*Don't waste your money buying this stock . . . .*".** (Exhibit to Isley Dec., page 4; Belanoff Dec., Exhibit "G") | Also using IPA 24.60.198.162 (i.e. Boston area address). |
| July 24, 2005 10.07 a.m. | Further posting on Yahoo message board by *corceptisafraud*: **posted message commencing with statement "*To obtain a copy of the poster . ..*"** (Exhibit to Isley Dec., page 4; Belanoff Dec., Exhibit "F") | Last *corceptisafraud* posting.  Log in using IP Address 68.75.36.50.  As yet unable to establish identity or location of ISP as of July 24, 2005. (Located in Chicago area, February 2007) |
| August 23, 2005 10.43 p.m. | Posting on Yahoo message board by *stanfordinsider*: **posted message commencing with statement "*I agree with Shockman.*"** (Exhibit to Isley Dec., page 8; Belanoff Dec., Exhibit "E") | First *stanfordinsider* posting.  Log in using IP Address 24.60.198.162 (IP Address also used for *stanfordinsider* posting on 10/28/05 and *corceptisafraud* postings of 3/17/05 and 3/18/05. |

Exhibit "A" to Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

| Date/Time (EDT/EST) | Event | Comment |
|---|---|---|
| August 23, 205 11.15 p.m. | Log in as corcepttherapeutics@hotmail failed. (Exhibit MS-SUB 0153 to Bradley Dec) | Log in using IP Address 24.60.198.162 (IP Address used for *stanfordinsider* posting on 10/28/05 and *corceptisafraud* postings of 3/17/05 and 3/18/05. |
| August 24, 2005 5.26 a.m. | Registered email address corcepttherapeutics@hotmail.com in the name of "Joe Belanoff" of "New York" state, in "Pacific Time - PST" time zone. (Exhibit MS-SUB 0153 to Bradley Dec) | Log in using IP Address 12.46.102.125. As yet unable to establish identity or location of ISP as of August 24, 2005. |
| October 16, 2005 11.12 p.m. | Log in to Yahoo as *stanfordinsider* (no message posted) (Exhibit to Isley Dec., page 9) | Log in using wireless network of Hyatt Hotel, Washington D.C., where Rothschild was a guest the night of October 16/17, 2005 |
| October 16, 2005 11.48 p.m. | Log in to Yahoo as *stanfordinsider* (no message posted) (Exhibit to Isley Dec., page 9) | Log in using IP Address 66.250.195.82. As yet unable to establish identity or location of ISP as of October 16, 2005. (Located in Maryland in February, 2007) |
| October 17, 2005 6.58 a.m. | Log in to Yahoo as *stanfordinsider* (no message posted) (Exhibit to Isley Dec., page 9) | Log in using IP Address 66.250195.82. As yet unable to establish identity or location of ISP as of October 17, 2005. (Located in Maryland in February, 2007) |
| October 17, 2005 7.00 a.m. | Log in to Yahoo as *stanfordinsider* (no message posted) (Exhibit to Isley Dec., page 9) | Log in using wireless network of Hyatt Hotel, Washington D.C., where Rothschild was a guest the night of October 16/17, 2005 |
| October 17, 2005 8.21 a.m. | Log in to Yahoo as *stanfordinsider* (no message posted) (Exhibit to Isley Dec., page 9) | Log in using Internet access provided by the American Psychiatric Association in Washington D.C., where Rothschild attended a committee meeting. |

Exhibit "A" to Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS)

| Date/Time (EDT/EST) | Event | Comment |
|---|---|---|
| October 17, 2005 8.22 a.m. | Log in to Yahoo as *stanfordinsider*: **posted message commencing with statement "*I worry about my position here at Stanford . . .*"** (Exhibit to Isley Dec., page 9; Belanoff Dec., Exhibit "D"). | Log in using Internet access provided by the American Psychiatric Association in Washington D.C., where Rothschild attended a committee meeting. |
| October 17, 2005 8.31 a.m. through 12.10 p.m. | Multiple log ins (11 in all) to Yahoo as *stanfordinsider* (no messages posted) (Exhibit to Isley Dec., page 9 | Log ins using Internet access provided by the American Psychiatric Association in Washington D.C., where Rothschild attended a committee meeting. |
| October 17, 2005 8.55 a.m. | Log in as corcepttherapeutics@hotmail.com in the name of "Joe Belanoff" of "New York" state, in "America/Los Angeles" time zone. (Exhibit MS-SUB 0153 to Bradley Dec) | Log in using Internet access provided by the American Psychiatric Association in Washington D.C., where Rothschild attended a committee meeting. |
| October 17, 2005 10.04 a.m. to 12.12 p.m. | Multiple log ins to Microsoft/ Hotmail using corcepttherapeutics@hotmail.com email address. (Exhibit MS-SUB 0152 to Bradley Dec) | Log in using Internet access provided by the American Psychiatric Association in Washington D.C., where Rothschild attended a committee meeting. |
| October 28, 2005 3.51 p.m. | Log in to Yahoo as *stanfordinsider*: **posted message commencing with statement "*Study 06 has recruited 140 patients.*"** (Exhibit to Isley Dec., page 8; Belanoff Dec., Exhibit "C"). | Log in using Internet access provided by Massachusetts ISP (probably Boston area). [This ISP/IP Address was also used to register the screen name *corceptisafraud*} |
| November 11, 2005 11.27 a.m. | Log in to Yahoo as *stanfordinsider* (no message posted) | of -------------- |

{00266018v1}

Exhibit "A" to Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS)

| Date/Time (EDT/EST) | Event | Comment |
|---|---|---|
| November 11, 2005 11.35 a.m. | Log in to Yahoo as *stanfordinsider*: **posted message commencing with statement "*Sorry I was not clear.*"** ." (Exhibit to Isley Dec., page 8; Belanoff Dec., Exhibit "B"). | Log in using wireless Internet access provided by the Holiday Inn, Pittsburgh, where Rothschild attended a meeting. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit "A" to Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))

EXHIBIT "B"

## SUMMARY OF IP ADDRESS INFORMATION

<u>12.46.102.98</u>  (New Jersey area)

Used to register *stanfordinsider* name on 8/23/05 at 10.37 p.m.
Used for *stanfordinsider* posting on 8/23/05 at 10.43 p.m.

<u>12.46.102.125</u>

Used for registering corceptthrapeutics@hotmail.com

<u>12-180-114-2</u>  (Holiday Inn, Pittsburgh)

Used for posting as *stanfordinsider* on 11/4/05 at 11.35 a.m.

<u>24.60.198.162</u>  (Boston area)

Used for registration of Corcept@hotmail email address on 3/17/2005, at 5.07 p.m.
Used to register *corceptisafraud* name with Yahoo on 3/17/05 at 5.17 p.m.
Used for *corceptisafraud* posting on 3/17/05 at 5.32 p.m.
Used for *corceptisafraud* posting on 3/18/05 at 5.14 p.m.
Used for failed log in using corcept@hotmail email address on 8/24/2005
Used for *stanfordinsider* posting on 10/28/05 at 3.51 p.m.

<u>65.120.88.201 & 65.120.88.152</u>  (American Psychiatric Association, Arlington)

Used for registration/modification of corcepttherapeutics@hotmail.com email address on 10/17/2005 at 9.55 a.m.
Used for multiple log ins as *stanfordinsider* on 10/17/05, between 8.21 a.m. and 10.14 12.10 p.m.

<u>66.250.195.82</u>  (Unknown – currently Maryland)

Used for *stanfordinsider* log in on 10/16/05 at 11.48 p.m.
Used for *stanfordinsider* log in on 10/17/05 at 6.58 a.m.

<u>68.75.36.50</u>  (Chicago area)

Used for *corceptisafraud* posting on 7/24/05 at 10.07 a.m. (Sunday)

<u>146.82.18.10</u>  (Hyatt Hotel, Arlington)

Used for log in as *stanfordinsider* on 10/16/05 at 11.12 p.m.
Used for log in as *stanfordinsider* on 10/17/05 at 7.00 a.m.

Exhibit "B" to Opposition To Motion To Dismiss For Alleged Lack Of Personal Jurisdiction
(Case No. C07-03795 JW (RS))