Robert A. Bleicher (Bar No. 111334)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, California 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910

Shelley G. Hurwitz (SBN 217566)
HOLLAND & KNIGHT LLP
633 W. Fifth Street, 21st Floor
Los Angeles, California 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450

Attorneys for Defendant
Anthony Rothschild

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORCEPT THERAPEUTICS, INC., Corporation, JOSEPH K. BELANOFF, an individual, ALAN F. SCHATZBERG, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHONY ROTHSCHILD, DOE 1, an individual, DOE 2, an individual, and DOES 3 through 20, inclusive,<br><br>Defendants. | Case No.: C 07-03795 JW<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DR. ANTHONY ROTHSCHILD'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA'S STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION (ANTI-SLAPP) STATUTE**<br><br>**Date:** November 19, 2007<br>**Time:** 9:00 am<br>**Courtroom:** 8<br>**Judge:** Hon. James Ware |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................... 1

II. THE YAHOO POSTINGS CONCERN A MATTER OF PUBLIC INTEREST. .............. 2

III. PLAINTIFFS HAVE NOT DEMONSTRATED A PROBABILITY OF SUCCESS. ........................................................................................................... 6

    A. Plaintiffs' "Evidence" That Dr. Rothschild Made The Postings Does Not Satisfy Their Burden Of Demonstrating A Probability Of Success On The Merits. ........................................................................................................... 6

    B. The Yahoo Postings Are Not Actionable. ............................................................. 7

        1. The March 17, 2005 Posting. ............................................................. 7
        2. The August 23, 2005 Posting. ............................................................. 8
        3. The October 17, 2005 Posting. ............................................................. 9
        4. The October 28, 2005 Posting. ............................................................. 9

IV. PLAINTIFFS ARE LIMITED PURPOSE PUBLIC FIGURES AND THE ACTUAL MALICE STANDARD APPLIES TO THEIR DEFAMATION CLAIMS. ........................................................................................................... 10

    A. Plaintiffs Are Undoubtedly Limited Purpose Public Figures. .............................. 11

        1. The Efficacy of Corlux and the Conduct of its Insiders Was, and Is, A Matter of Public Controversy. ............................................................. 11
        2. Plaintiffs Have Undertaken Voluntary Acts In An Effort To Prove That Corlux Is Safe And Effective. ............................................................. 12

    B. Plaintiffs Cannot Establish That They Have A Reasonable Probability Of Presenting Clear And Convincing Evidence That Dr. Rothschild Acted With Actual Malice. ............................................................................................. 13

V. PLAINTIFFS EMOTIONAL DISTRESS AND INTERFERENCE CLAIMS SHOULD ALSO BE DISMISSED. ............................................................................. 15

VI. CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*D.A.R.E America v. Rolling Stone Magazine,*
   101 F. Supp. 2d 1270 (C.D. Cal. 2000) ................................................................10

*Global Telemedia Intern., Inc. v. Doe 1,*
   132 F. Supp. 2d 1261 (C.D.Cal. 2001) ..................................................................6

*Haynes v. Alfred,*
   8 F.3d 1222, 1227 (7th Cir. 1993) .........................................................................9

*Murray v. Bailey,*
   613 F. Supp. 1276, 1280 (N.D. Cal. 1985) .........................................................14

*Thomas v. Los Angeles Times Communications, LLC,*
   189 F. Supp. 2d 1005, 1015 (C.D. Cal. 2002) .....................................................8

*Troy Group, Inc. v. Tilson,*
   364 F. Supp. 2d 1149, 1153-1154 (C.D. Cal. 2005) ............................................5


**STATE CASES**

*Ampex Corp. v. Cargle,*
   128 Cal. App. 4th 1569 (2000) ............................................................................11

*Annette F. v. Sharon S.,*
   119 Cal. App. 4th 1146, 1162 (2004) ..................................................................13

*Briggs v. Eden Council for Hope & Opportunity,*
   19 Cal.4th 1106 (1999) ..........................................................................................6

*Campanelli v. Regents of the University of California,*
   44 Cal. App. 4th 572 (1996) ................................................................................10

*ComputerXpress, Inc. v. Jackson,*
   93 Cal. App. 4th 993 (2001) ..................................................................................6

*Damon v. Ocean Hills Journalism Club,*
   85 Cal. App. 4th 468, 474-75 (2000) ....................................................................3

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,*
   47 Cal. App. 4th 777, 784 (1996) ..........................................................................3

*DuPont Merck Pharmaceuticals Co. v. Superior Court,*
  78 Cal. App. 4th 562 (2000) ..................................................................................................4

*Gilbert v. Sykes,*
  147 Cal. App. 4th 13, 25 (2007) ..............................................................................2, 3, 11, 13

*Hall v. Time Warner, Inc.,*
  153 Cal. App. 4th 1337 (2007) ...............................................................................................3

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons,*
  140 Cal. App. 4th 515 (2006) .................................................................................................3

*Kirby v. Sega of America, Inc.,*
  144 Cal. App. 4th 47, 58 (2006) .............................................................................................4

*Live Oak Publ'g Co. v. Cohagan,*
  234 Cal. App. 3d 1277, 1290 (1991) ....................................................................................14

*Ludwig v. Superior Court,*
  37 Cal. App.4th 8, 15 (1995) ..................................................................................................3

*McCoy v. Hearst Corp.,*
  42 Cal.3d 835 (1986) ............................................................................................................14

*Sipple v. Foundation for Nat. Progress,*
  71 Cal. App. 4th 226 (1999) ...................................................................................................3

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,*
  106 Cal. App. 4th 1219, 1234 (2003) .....................................................................................3

*Weingarten v. Block,*
  102 Cal. App. 3d 129, 150-151 (1980) .................................................................................14

*Widener v. Pacific Gas & Electric*
  Co., 75 Cal. App. 3d 415 (1977) ...........................................................................................14

**STATE STATUTES**

C.C.P.§ 425.16(e)(3) .........................................................................................................2, 6, 15

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

While vainly attempting to drape themselves in innocence and obscurity, plaintiffs evade the fact that this lawsuit is precisely the type of litigation the anti-SLAPP statute seeks to impede. With apparent seriousness, plaintiffs claim that Dr. Rothschild is not a critic, and, in any event, that they have not attempted to silence their other critics, such as Drs. Carroll and Rubin. (Opposition, 14:8-13). Nothing could be further from the truth. Beginning in 2003 and continuing to today, Dr. Rothschild has vocalized his criticism of mifepristone as a treatment for PMD in both scientific journals and in the press.[1] Moreover, the press reported the statement of Corcept's lawyers that the American College of Neuropsychopharmacology ("ACNP") admonished Rubin and Carroll for their conduct, prompting Rubin and Carroll to respond that they were faulted for making their criticisms public, not for the content of the presentation. (Exh. 6 to Hurwitz Decl.). Indeed, Dr. Schatzberg's icy threat to his critics published in the *San Jose Mercury News* could not have been clearer: "Even now, Schatzberg can hardly contain his anger. 'Those that are critical,' he said, 'ought to be careful about impugning others.'" *Id.* Just as Dr. Schatzberg acted on his threat by exploiting the ACNP to silence Drs. Rubin and Carroll, he now seeks to use this court to silence Dr. Rothschild.

Plaintiffs' motivation is clear. Drs. Schatzberg and Belanoff each own approximately 2.8 million shares of Corcept stock, currently worth $20 million.[2] Clearly, if Corlux receives FDA approval, their wealth will skyrocket exponentially. While Corlux's other critics have certainly made themselves heard, Dr. Rothschild's voice alone carries more force in the industry than all of

---

[1] See e.g., Freinkel, Susan, *The case of the notorious depression drug*, San Francisco Magazine, May 2007; Exh. A to Rothschild Declaration in Support of Reply ("Rothschild Reply Decl.")("Even Rothschild, coauthor of the cortisol hypothesis, questions the claim that mifepristone can have a long-term effect by 'resetting' the stress hormone axis. 'From what I know of the theory, I'm skeptical the drug would work beyond seven days,' he says."); Sit, Dorothy, Rothschild, Anthony, et. al., *Psychiatric outcomes following medical and surgical abortion*, Human Reproduction, Vol.22, No. 3, pp.878-884, 2007 (discussing mifepristone in depression in a study on the anti-depressant effects in women who had abortions), Rothschild Reply Decl., Exh. B; Rothschild, Anthony, *Placebo Response in Psychotic Depression*, J Clin Psychiatry 66(12):1615, December 2005, Rothschild Reply Decl. Exh. C; Rothschild, Anthony, *Challenges in the Treatment of Depression with Psychotic Features*, Biol Psychiatry 2003; 53; 680-690 (2003), Exh. 16 to Hurwitz Decl.

[2] See Rothschild Reply Decl., ¶5, Exh. D ,Yahoo Stock Quotes, and Exhibit 28 to Hurwitz Declaration filed with Moving Papers ("Hurwitz Decl.").

-1-

Reply ISO Defendant Anthony Rothschild's  
Special Motion To Strike

Case No.: C 07-03795 JW

plaintiffs' other critics because, as discussed by plaintiffs, Dr. Rothschild was one of the architects of the use of mifepristone to treat PMD. If the architect does not support the integrity of the foundation, neither will the masses. More importantly, neither will the venture capitalists that plaintiffs rely upon to fund their continued failed clinical trials. Dr. Rothschild's insider criticism raises a potentially significant impediment to plaintiffs' goal of vast riches; as Dr. Schatzberg threatened, plaintiffs will not allow him to do so. Because plaintiffs cannot sue Dr. Rothschild for his academic criticism, they have instead clutched onto four trivial, anonymous postings on a Yahoo message board and made baseless claims of "prank" telephone calls, erroneously attributed them to Dr. Rothschild, and invoked the powers of the legal system to stop a critic who might hamper their financial dreams. The California Legislature enacted the anti-SLAPP statute to stop just such censorship efforts; Dr. Rothschild respectfully submits that the Court should use it here.

## II. THE YAHOO POSTINGS CONCERN A MATTER OF PUBLIC INTEREST.

Plaintiffs' opposition confuses two separate assertions and legal standards: (1) the subject postings involve a matter of public interest and thus the anti-SLAPP statute applies (Moving papers, 8-11), and (2) because plaintiffs are limited purpose public figures, they must establish actual malice in order to recover for the tort of defamation. (Moving papers, 21:19-24:22). Plaintiffs' arguments that they are not involved in a public controversy, have not thrust themselves into the public eye, and that the postings are not germane, are all factors for imposing the actual malice standard to the tort of defamation, discussed in Section IV below. *See Gilbert v. Sykes,* 147 Cal. App. 4th 13, 25 (2007). However, to invoke the anti-SLAPP statute, the only threshold showing that Dr. Rothschild need make, and indeed has made, is that the postings are "in connection with an issue of public interest." C.C.P. §425.16(e)(3).

"The public interest requirement of section 425.16, subdivision (e)(3) must be construed broadly so as to encourage participation by all segments of our society in vigorous public debate related to issues of public interest....The Legislature inserted the 'broad construction' provision out of concern that judicial decisions were construing that element of the statute too narrowly." *Gilbert v. Sykes,* 147 Cal. App. 4th 13 (2007)(internal citations and quotations omitted). While

-2-

plaintiffs attempt to grossly narrow the class of "public interest" matters to those that pervade every segment of society – such as the Iraq war – neither the statute nor case law supports such a tapered construction. Rather, courts have found the requisite "public interest" in a vast array of situations, none of which reach the high threshold espoused by plaintiffs. For example:

- Developer's proposed development of bayfront property was a matter of "public interest." *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,* 106 Cal. App. 4th 1219, 1234 (2003).

- Allegedly defamatory statements that were critical of performance by manager of homeowners association, as spoken by members of association's board of directors at board meetings or published in newsletter distributed to 3,000 community residents, involved "public issues" within meaning of SLAPP statute. *Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 474-75 (2000).

- The development of a mall, with potential environmental effects such as increased traffic and impact on natural drainage, was a matter of "public interest." *Ludwig v. Superior Court,* 37 Cal. App.4th 8, 15 (1995).

- Letter sent by law firm to celebrities who made charity recording, stating that little or no money had gone to celebrities' designated charities and announcing intention to file complaint with state Attorney General, raised questions of public interest. *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal. App. 4th 777, 784 (1996).

- Television show producers' acts of entering private retirement home room of Marlon Brando's housekeeper named as beneficiary in the actor's will, interviewing her on camera, and broadcasting interview on national television were "in furtherance of the right of petition or free speech in connection with a public issue." *Hall v. Time Warner, Inc.,* 153 Cal. App. 4th 1337 (2007).

- Plastic surgery patient's website created to relate her bad experience with well known surgeon concerned "matter of public interest." *Gilbert v. Sykes,* 147 Cal. App. 4th 13 (2007).

- Allegations of domestic abuse against political consultant that arose during child custody dispute, but did not involve statement made during custody hearing, were public statements concerning issues of public interest. *Sipple v. Foundation for Nat. Progress,* 71 Cal. App. 4th 226 (1999).

- Disparaging e-mail sent by hospital's medical executive committee member, who opposed medical holding company's proposed purchase of four hospitals, concerned issue of public interest. *Integrated Healthcare Holdings, Inc. v. Fitzgibbons,* 140 Cal. App. 4th 515 (2006).

While plaintiffs parse and categorize the words of the postings into "Rothschild issues," the postings all boil down to the same integrated subjects of widespread interest -- whether

-3-

Corlux, a drug currently in the FDA approval process, is safe and effective for the treatment of PMD and the related conduct of Corcept's insiders. FAC, ¶¶16, 23 ("the drug doesn't work and is not practical," "there is no scientific evidence that [Corlux] works," etc.). The notion that the happenings of a residential community of 3,000, traffic near a mall, and Marlon Brando's will constitute topics of broad public interest, while a widely touted groundbreaking treatment for millions of people suffering from a debilitating and potentially fatal disease[3] does not, is simply insulting. Plaintiffs' contention that the postings only "relate to matters of interest to Corcept and its less than 100 stockholders" (Opposition, 18: 10-11) only further illustrates Dr. Rothschild's point that plaintiffs disregard and trivialize the 3 million people they purport to seek to cure, in favor of those who stand to reap millions is financial benefits—primarily themselves.

Plaintiffs' attempt to distinguish *DuPont Merck Pharmaceuticals Co. v. Superior Court*, 78 Cal. App. 4th 562 (2000) proffers the odious notion that public debate can be open to sufferers of one disease, but not to the sufferers of another. By doing so, plaintiffs implicitly urge the improper notion that it is their role to decide when and on what terms that debate will be open or closed. Plaintiffs' argument that unlike Coumadin in *DuPont,* Corlux "could" not affect large numbers of people (Opposition, 20:6-7) is simply unbelievable. *Plaintiffs themselves* estimate the number of PMD sufferers, and potential Corlux users, at 3 million people[4] – approaching twice the 1.8 million users of Coumadin. Clearly, whether the drug is effective is a question that "could" affect many people. Moreover, the fact that FDA approval is pending and that Corlux is not yet on the market *increases* the need for it to be discussed and analyzed in the marketplace of free ideas contemplated by the First Amendment and protected by the anti-SLAPP statute. *See Kirby v. Sega of America, Inc.,* 144 Cal. App. 4th 47, 58 (2006). A "public interest" is clearly implicated here, as confirmed by the scores of scientific articles, internet postings, analyst reports, press releases, presentations, and news articles, ***some before and some after the date of the alleged postings,*** that debate Corlux's efficacy and the related activities of

---

[3] See Exh. 19 to Hurwitz Decl. in which Corcept reports that individuals with PMD are 70 times more likely to commit suicide than the general population.
[4] See Exh. 19 to Hurwitz Decl.

-4-

Corcept's insiders.[5]

As a *separate and independent* basis to apply the anti-SLAPP statute, the postings' statements regarding the corporate activities of Corcept's insiders also constitute issues of "public interest." In response, Corcept attempts to paint itself as a "mom and pop" operation with "only" half a million dollars in revenue for a six month period *prior to FDA approval.* (Opposition, 15:13-18). This argument is not only patently untrue (Corcept is a publicly traded pharmaceutical company that has raised close to $100 million through public and private stock offerings!),[6] but it does not provide an escape from the anti-SLAPP statute in any event. *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1153-1154 (C.D. Cal. 2005)(finding that a statement about defendant's corporate activities was a matter of public interest where: (1) only one-third of Troy's 10.6 million outstanding shares were held by investors outside the Dirk family, (2) outside investors only added up to 200 shareholders, and (3) the press releases issued by the corporation promoted the corporation.) Despite plaintiffs' contention, the fact that Corcept has 94 shareholders of record does not avoid the anti-SLAPP statute:

> [T]he Court rejects the Troy Parties' argument that *Global Telemedia* and *ComputerXpress* are distinguishable on the ground that the companies in those cases had more shareholders than Troy. Although the courts in those cases did refer to the companies' numerous outstanding shares, in neither case did the court establish a strict cut-off on the number of shareholders required for a company's transactions to be of public interest.

*Id.* at 1154.

Moreover, no court has determined the number of press releases that a corporation need distribute in order to fall within the ambit of the statute, and Corcept has not cited any authority for the proposition that 24 press releases in a 21 month period[7] is insufficient. Here, where the entire business purpose of a corporation is to produce, test and promote a drug touted to offer

---

[5] See Exhs. 2-18, 29-33 to Hurwitz Decl.; Exhs. L-O to Belanoff Decl.; Exhs. E & F to Rothschild Reply Decl.; See also Exh. A to Rothschild Reply Decl., Freinkel, Susan, *The case of the notorious depression drug,* San Francisco Magazine, May 2007, reflecting an interview of Dr. Belanoff in which it was reported that prior to 2001, "The New York Times and other papers picked up the story" about the initial trial of Corlux.
[6] Freinkel, Susan, *The case of the notorious depression drug,* San Francisco Magazine, May 2007; Exh. A to Rothschild Reply Decl.
[7] According to its website, Corcept's first press release was on February 10, 2004, 21 months before the November 4, 2005 posting. Exh. 2 to Hurwitz Decl.

-5-

quality of life to 3 million seriously and chronically ill people, statements about its corporate activities surely arouse more public interest than a corporation selling computer products (*ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993 (2001)), or one involved in telecom (*Global Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D.Cal. 2001)).

Finally, the fact that Corlux is currently being considered by the FDA provides an additional basis for applying the anti-SLAPP statute. C.C.P. §425.16(e)(2)(anti-SLAPP statute applies to "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive or judicial body, *or any other official proceeding authorized by law*.")(emphasis added); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106 (1999). Plaintiffs do not and cannot deny this fact.

## III.     PLAINTIFFS HAVE NOT DEMONSTRATED A PROBABILITY OF SUCCESS.

### A.    Plaintiffs' "Evidence" That Dr. Rothschild Made The Postings Does Not Satisfy Their Burden Of Demonstrating A Probability Of Success On The Merits.

Acknowledging that they can only offer argumentative, speculative and conclusory "evidence" that Dr. Rothschild even made the alleged postings, which is wholly insufficient to meet their burden of establishing a probability of success on the merits, plaintiffs instead contend "that Rothschild published the statements is established by inescapable *inference*[.]" (Opposition, 21:1-3)(emphasis added). This "inference" is based upon plaintiffs' speculative assertion that Dr. Rothschild was 1 of 25 people in the vicinity of one posting, 1 of 100 people in the vicinity of another posting, and 1 of 6.5 million people in the state of Massachusetts at the time of another posting.[8] (Opposition, 3:1-19). Further, Dr. Rothschild is obviously not the only person who knows Dr. Schatzberg's daughter's name. This conjecture will not overcome a motion for summary judgment and therefore cannot remove this action from the purview of the anti-SLAPP statute. (See Moving Papers, Section V). Surely, the California Legislature, who crafted a statute specifically to prevent speech-chilling lawsuits such as this one, would deem it improper to deny First Amendment rights on the basis of such attenuated guesswork.

---

[8] See Exh. G to Rothschild Reply Decl., US Census Bureau information.

1    Moreover, plaintiffs have selected only a few postings in a futile effort to pin them to Dr.
2 Rothschild, completely ignoring the other postings which, apparently, do not narrow Dr.
3 Rothschild's involvement down to 1 in 6.5 million. According to plaintiffs' analysis, on one
4 occasion Dr. Rothschild logged on in Maryland and then logged on again two minutes later in
5 Virginia.[9] Clearly, he could not physically have done so. Notably, while plaintiffs have
6 forensically analyzed Dr. Rothschild's laptop and work computers, and are thus certainly aware
7 of their IP addresses, none of the postings can be traced to any computer owned by Dr.
8 Rothschild. The reason is simple: Dr. Rothschild did not post the subject Yahoo messages.[10]
9    Finally, plaintiffs' inability to establish that Dr. Rothschild made the alleged postings is
10 highlighted by plaintiffs' statement that "Drs. Rubin and Carroll *probably* did not make the
11 postings." (Opp. to Pers. Juris. Motion, 16:20)(emphasis added)). How can plaintiffs possibly
12 establish a probability of success on the merits when all they can offer is that one of their other
13 critics "probably" did not do it? In any event, whoever made the postings, they are not
14 actionable.

### B. The Yahoo Postings Are Not Actionable.

#### 1. The March 17, 2005 Posting.

17    Plaintiffs misconstrue Dr. Rothschild's arguments regarding the statement in the March
18 17, 2005 posting that there "is no scientific evidence that [Corcept's] drug" is effective. Dr.
19 Rothschild does not contend that this is a true statement of fact nor disputes the legal principles
20 of defamation per se. Rather, Dr. Rothschild contends that this statement is *protected opinion.*
21 Plaintiffs' presentation of various scientific papers indicating that Corlux showed promise
22 (Opposition, 7:11-8:9), juxtaposed against the publications referenced in the moving papers
23 concluding that such evidence does not exist, only furthers Dr. Rothschild's point: there is a

---

[9] Exhibit A, page COR00014 to the Atkins Declaration indicates that "stanfordinsider" logged on through IP address 66.250.195.82 on October 10, 2005 at 11:58 GMT, and then logged on again from IP address 146.82.18.10 at 12:00 GMT. Mr. Atkins determined that IP address 66.250.195.82 was in use in the Maryland area (Atkins Decl., ¶17), while IP address 146.82.18.10 was assigned to the Hyatt Regency in Arlington, Virginia. (Atkins Decl., ¶12).

[10] Plaintiffs suggest that the fact that the posting ceased after they filed this lawsuit in October 2005 somehow indicates that Dr. Rothschild must have been the poster. However, the original Complaint in this matter was stated against DOE defendants, and Dr. Rothschild only became aware of the lawsuit on January 4, 2006 when he was served with a subpoena. Rothschild Reply Decl., ¶9.

-7-

vigorous public debate regarding the implications of the clinical trial results, and the statement at issue reflects the author's *opinion* that these studies did not establish that Corlux is effective for PMD and that Corcept, necessarily, was aware of it. If this is actionable, then the notions of fair comment, academic peer review, and candid debate are obsolete.

Regardless, plaintiffs' attempt to examine these few words in a vacuum, apart from the entire tenor, setting and format of the posting, directly contradicts California law. *Thomas v. Los Angeles Times Communications, LLC*, 189 F. Supp. 2d 1005, 1015 (C.D. Cal. 2002). The colorful language, the explicit disclosure that the postings constitute "only the opinion of the poster," the fact that they appear on a Yahoo message board, the user names, etc., are all the hallmarks of one speaker's perspective, not a statement of objective fact.

Focusing on the Rubin and Carroll presentation, which reported that "RU-486 does not separate from placebo,"[11] plaintiffs acknowledge that the poster actually disclosed the foundational facts of his (her?) post on Yahoo. Tellingly, however, plaintiffs' issue is with the *opinion* that the poster formed based on those facts. (Opposition, 8:16-9:14). Indeed, in an invitation to the reader to form his or her own *opinion*, the Yahoo poster advised and invited the reader that "[y]ou should try and obtain a copy of the Abstract or Poster from the Annual Meeting." (Exh. 10 to Hurwitz Decl.). Plaintiffs' effort to adjudicate the formulations of a person's opinion when it is based upon undisputed facts presents their most glaring affront to the First Amendment.

Finally, the opposition does not dispute that the "gist" or "sting" of the statements regarding Drs. Belanoff and Schatzberg's sale of Corcept stock is true. Therefore, plaintiffs cannot establish a probability of success with regard to the March 17, 2005 posting and the First Cause of Action should be dismissed.

### 2. The August 23, 2005 Posting.

Besides conclusory statements, plaintiffs again ignore the entire tenor of the August 23,

---

[11] The Opposition curiously argues that the March 17, 2005 posting reported that the Rubin and Carroll poster stated that "no scientific evidence at all exists of its efficacy." (Opposition, 8:23-9:2). The posting does not so state. Rather, it accurately states that the Rubin and Carroll presentation reported that RU-486 does not separate from placebo. Exh. 9 to Hurwitz Decl. ("Thus, all the published data on mifepristone to date indicate it is no significantly better for treating the primary symptoms of psychotic depression.")

-8-

2005 posting and do not address Dr. Rothschild's contentions that the posting contains protected exaggerated expression, or that the "gist" and "sting" of the statement that Belanoff was selling his shares is true. Rather, plaintiffs merely posit that introductory words such as "in my opinion" do not "*necessarily*" preclude liability for defamation. (Opposition, 10:21-24). Dr. Rothschild agrees. The *entire* work in its broad context must be considered to determine whether a particular statement is defamatory, something plaintiffs refuse to do. Indeed, in the case cited by plaintiffs for this proposition, *Haynes v. Alfred,* 8 F.3d 1222, 1227 (7th Cir. 1993), the Court ultimately affirmed summary judgment for the defendant on plaintiffs' libel claim. As explained in the moving papers, in the broad context of the entire posting, the statements contained in the August 23, 2005 posting are nonactionable opinion.

### 3. The October 17, 2005 Posting.

Plaintiffs accuse Dr. Rothschild of "deviously" concealing his identity in the October 17, 2005 posting by using the username "stanfordinsider" and discussing a made-up position at Stanford to "cunning[ly] . . . conceal his true identity." (Opposition, 11:15-21). In other words, plaintiffs contend that Dr. Rothschild, a well respected and well published clinician, researcher and professor, who has publicly criticized the use of mifepristone for PMD, concocted a secret identity for the sole purpose of posting an anonymous and worthless message on a Yahoo message board. "Absurd" does not do this contention justice.

In any event, plaintiffs again ignore the entire tenor of the October 17, 2005 posting and focus instead on various phrases within a sentence. The poster clearly was reporting on a *rumor* at Stanford – the "word here" -- that an outside expert panel had been hired, not asserting a statement of fact. (Exh. 10 to Hurwitz Decl.). Moreover, plaintiffs have not presented any basis to contradict Dr. Rothschild's assertion that the balance of the October 17, 2005 posting is protected opinion.

### 4. The October 28, 2005 Posting.

Plaintiffs do not dispute that four people who were engaged in clinical trials of Corlux died during trials. Belanoff Decl., ¶10. Plaintiffs contend that the "gist" and "sting" of this statement is not true because three of those volunteers took a placebo rather than mifepristone

-9-

when they died. (Opposition, 13:4-12). However four people undeniably died in the clinical trial; that is precisely what the posting says, and exactly what plaintiffs admit is true.[12]

In any event, the statement need not be true in every respect. The "gist" and "sting" of a statement must only be "substantially true" to be afforded constitutional protection. *D.A.R.E America v. Rolling Stone Magazine,* 101 F. Supp. 2d 1270 (C.D. Cal. 2000)("Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge can be justified"). In *Campanelli v. Regents of the University of California,* 44 Cal. App. 4th 572 (1996), a former university basketball coach sued his athletic director for libel over a quote by the director in a New York Times article recalling the allegedly abusive coach's final tirade, "[t]he players were beaten down and in trouble psychologically." *Id.* at 576. In holding that the "gist" and "sting" of the statement was substantially true, the Court explained that the coach had admitted he engaged in temper tantrums directed at his players, and that seven members of the team wanted to transfer unless he was fired. *Id.* at 582. Although there was no indication that the players actually had psychological troubles, "[t]hrough these concessions, Campanelli has admitted the essential accuracy of Bockrath's statement that the players were 'in trouble psychologically'." *Id.* at 582. Similarly, plaintiffs' admission that four of its trial volunteers died during those trials "admits the essential accuracy" of the posting's statement that there were "4 Cardiac-related deaths in trial."

Finally, the statement that the deaths were "believed" to be secondary to a rise in cortisol is, at best, the poster's opinion regarding the cause of the deaths. Indeed, the poster does not even state who had that belief. Plaintiffs' focus on this phrase is yet another improper attempt to control the right to form an opinion and to manage the content of that opinion.

IV. **PLAINTIFFS ARE LIMITED PURPOSE PUBLIC FIGURES AND THE ACTUAL MALICE STANDARD APPLIES TO THEIR DEFAMATION CLAIMS.**

Jumbled among their assertions, plaintiffs apparently claim that they are not limited

---

[12] Plaintiffs appear to assert that the statement is untrue because the four deaths were not in Study 06. However, the posting does not state that the deaths were in Study 06, only that they were "in trial." (Exh. 10 to Hurwitz Decl.). Moreover, despite plaintiffs' contention, Dr. Rothschild was not previously aware that there were four deaths in trials of mifepristone. Rothschild Reply Decl., ¶10.

-10-

Reply ISO Defendant Anthony Rothschild's
Special Motion To Strike

Case No.: C 07-03795 JW

purpose public figures and therefore the actual malice standard should not apply to their defamation causes of action. Plaintiffs' arguments are fatally flawed.

### A. Plaintiffs Are Undoubtedly Limited Purpose Public Figures.

A plaintiff becomes a limited purpose public figure by interjecting himself into the public debate about a topic concerning a substantial number of people. *Gilbert v. Sykes, supra,* 47 Cal. App. 4th at 25. First, there must be a public controversy. *Id.* at 24. Second, the plaintiff must undertake some voluntary act through which he sought to influence resolution of the public issue. *Id.* It is sufficient if the plaintiff attempts to thrust himself into the public eye. *Id.* Finally, the alleged defamation must be germane to the plaintiff's participation in the controversy. *Id.*

#### 1. The Efficacy of Corlux and the Conduct of its Insiders Was, and Is, A Matter of Public Controversy.

First, undeniably, Corlux's performance and the conduct of Corcept's insiders is a matter of public controversy. Despite plaintiffs' wishes, a "public controversy" is not one that pervades and polarizes every segment of society. *See e.g., Ampex Corp. v. Cargle,* 128 Cal. App. 4th 1569 (2000). Rather, the only requirement is that the issue is debated publicly, and that it has foreseeable and substantial ramifications for nonparticipants. *Gilbert v. Sykes,* 147 Cal. App. 4th 13, 25 (2007). As discussed, Corlux's efficacy and the actions of Corcept's insiders were and are "debated publicly," *e.g.,* in internet postings, academic publications, newspaper and magazine articles, analyst reports, presentations, etc. Plaintiffs attempt to sidestep this reality by asserting that Dr. Rothschild must demonstrate that there has been public debate regarding four narrow subjects – the so-called "Rothschild issues." (Opposition, 15:3-11). Plaintiffs have no authority for this novel and speech restrictive proposition; there is none. The postings all boil down to the same topic: whether Corcept has developed a safe and effective drug for the treatment of PMD. That is precisely what the numerous internet postings, articles, etc. concern.

Plaintiffs argue that 281 Yahoo postings, some of which relate to the stock price of Corcept,[13] do not constitute a "public debate." (Opposition, 16:12-23). However, plaintiffs

---

[13] In support of their proposition that most of the Yahoo postings related to Corcept's stock price, plaintiffs present a download of the titles of the 281 postings. Exh. K to Belanoff Declaration. However, there is no way to ascertain, as

-11-

cannot cite any authority that sets a threshold for, essentially, how much free speech is "enough." Plaintiffs do not even address the numerous other outlets where this matter has been debated – other internet sites, scientific journals, newspaper articles, poster presentations, etc., – other than to state, disingenuously and without any authority, that such activities are "*de minimis.*" In today's environment, the public's interest in the insider activity and stock price fluctuation of a public company is self-evident and hardly *de minimis*.

Plaintiffs also float the utterly implausible claim that Corlux's efficacy has foreseeable and substantial ramifications only "to a select group of academics" and Corcept stockholders (Opposition, 18:9-11, 20:10-19). In doing so, they completely ignore the 3 million (now in plaintiffs' view inconsequential?) people who suffer from PMD – whose ramifications include freedom from a crippling disease, freedom from electric shock therapy, and the avoidance of death. Corcept's own words sink plaintiffs' blatantly self-serving proposition:

> What is known is that clinical depression has become ***one of America's biggest health burdens and the enormous cost in human suffering and disruption of personal, family and work life is formidable.*** According to the National Mental Health Association, major depression costs the nation about $44 billion in lost work days (more than 200 million days a year), lost productivity and direct treatment costs. ***Depressive illnesses cause pain not only to those who have the disorder, but also to the individuals who care about them.***

Corcept Website, Exh. 19 to Hurwitz Decl. (emphasis added).

There is no doubt that Corlux's performance and the related conduct of its insiders has been debated publicly and has substantial ramifications for the 3 million suffers of PMD. Hence, a public controversy existed and continues to exist.

### 2. <u>Plaintiffs Have Undertaken Voluntary Acts In An Effort To Prove That Corlux Is Safe And Effective.</u>

Second, Plaintiffs argue that they did not thrust themselves into the public eye because they are not "known personalities outside of their professional peer group" (Opposition, 15:19-20), and because they claim that Corcept's press releases only relate to corporate matters (Opposition, 15:24-16:11). However, plaintiffs completely disregard the evidence demonstrating

---

plaintiffs purport to do, from this download what the subject of each posting was. For example, the Court cannot ascertain the topic of postings with titles such as "too friggen nuts," "WTF," "Desert Rose," "what is going on?????," etc.

-12-

that they have published numerous articles, given interviews, and made presentations all over the world promoting mifepristone for the treatment of PMD. (Exhs. 7, 8, 15, 29, 31-33 to Hurwitz Decl.; Exhs. L, O to Belanoff Decl.; See also Exh. A to Rothschild Reply Decl.: *San Francisco Magazine* article reflecting the latest interview given by Dr. Belanoff). These documents establish that plaintiffs thrust themselves into the public eye. *See e.g., Gilbert v. Sykes,* 147 Cal. App. 4th 13, 25 (2007)(surgeon thrust himself into the public debate by appearing on local T.V. shows, writing numerous articles in medical journals and beauty magazines).

In any event, to satisfy the second element of the limited purpose public figure test "the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue." *Gilbert v. Sykes, supra,* 147 Cal. App. 4th at 25. Plaintiffs cannot legitimately deny that they have undertaken "some voluntary act" to persuade the FDA, the scientific community, potential investors, and the sufferers of PMD that Corlux is safe and effective. They have fought for the patent, raised millions, hired employees, established a website, issued press releases, written articles, made presentations nationwide, sought and were granted FDA "fast track approval" (the first time the agency had ever done so for a psychiatric drug)[14], conducted six clinical trials, etc., all intended to support and promote Corlux.

Finally, the alleged postings regarding Corlux's safety and efficacy and plaintiffs' own related conduct are indeed germane, *i.e.,* relevant and connected to, plaintiffs' efforts to promote Corlux. Besides a conclusory statement and an unsupported reference to "Rothschild's issues," plaintiffs have not provided any grounds to deny this obvious conclusion. Thus, plaintiffs are public figures for the purposes of the applicability of the actual malice standard.

B. **Plaintiffs Cannot Establish That They Have A Reasonable Probability Of Presenting Clear And Convincing Evidence That Dr. Rothschild Acted With Actual Malice.**

As discussed, to survive an anti-SLAPP motion, public figures like plaintiffs must establish actual malice by clear and convincing evidence. *Annette F. v. Sharon S.,* 119 Cal. App.

---

[14] Freinkel, Susan, *The case of the notorious depression drug,* San Francisco Magazine, May 2007; Exh. A to Rothschild Reply Decl.

-13-

4th 1146, 1162 (2004). If plaintiffs fail to do so, the anti-SLAPP statute requires dismissal of their claims. While certainly unclear, and extrapolated entirely from the Opposition's reference to facts in plaintiffs' opposition to the jurisdictional motion, plaintiffs seem to assert that Dr. Rothschild acted with actual malice in allegedly posting the Yahoo messages because (1) he also allegedly made unrelated prank telephone calls to the plaintiffs, (2) plaintiffs rejected his claim for inventorship recognition, and (3) Dr. Rothschild allegedly gave unfavorable peer reviews to drafts of certain articles.[15] (Opp. to Pers. Juris. Motion, 9:23-15:22).

Even if all these allegations were true (which they are not), they are not evidence that Dr. Rothschild posted the allegedly defamatory statements with the requisite "actual malice." At best, these allegations demonstrate bias against plaintiffs, which alone does not constitute evidence of malice as a matter of law. *See Widener v. Pacific Gas & Electric* Co., 75 Cal. App. 3d 415, 444 (1977)(disapproved of on other grounds in *McCoy v. Hearst Corp.*, 42 Cal.3d 835 (1986)("Actual malice, under *New York Times [v. Sullivan]* concentrates on the defendant's attitude toward the truth or falsity of the material published, and does not focus on the defendant's attitude toward the plaintiff."); *Weingarten v. Block,* 102 Cal. App. 3d 129, 150-151 (1980)(holding that the evidence presented, including that the defendant author's sources were biased, did not meet the "the stringent requirements for actionable libel of a public figure."); *See also Murray v. Bailey,* 613 F. Supp. 1276, 1280 (N.D. Cal. 1985).

Rather, plaintiffs must also proffer clear and convincing evidence that if any of the statements are untrue statements of fact (which, as discussed above, is not the case here), Dr. Rothschild "realized that his statement was false," he "subjectively entertained serious doubt as to the truth," or that he made the postings with a "high degree of awareness of . . . probable falsity." *Live Oak Publ'g Co. v. Cohagan,* 234 Cal. App. 3d 1277, 1290 (1991). No other evidence will satisfy the rigorous First Amendment test for actual malice. Plaintiffs have simply

---

[15] The peer review process is intended to be anonymous in order to encourage those who review other's scientific analysis to do so honestly and without concern of being bullied into providing a certain opinion. Plaintiffs should know better than to breach the wall and even *seek* the identity of their peer reviewers. Plaintiffs' successful efforts in doing so are yet another example of the lengths they will go to silence their critics. While Dr. Rothschild does not agree with plaintiffs' characterization of these reviews, because they are not relevant to the instant motion, Dr. Rothschild will not waste the court's time by proffering his account of events.

-14-

not satisfied this standard.

## V. PLAINTIFFS EMOTIONAL DISTRESS AND INTERFERENCE CLAIMS SHOULD ALSO BE DISMISSED.

Plaintiffs ludicrously portray themselves as thin-skinned executives of a publicly traded company who have raised millions from venture capitalists and have been intensely scrutinized by professionals, investors, and the media. Their apparently straight-faced claim that cancelled hotel reservations have gravely injured them only further highlights plaintiffs' improper use of the judicial process. As set forth in Dr. Rothschild's Reply Declaration (¶¶ 11-17), plaintiffs' "prank call" allegations have absolutely no credibility. Their claims over these petty events are thus part and parcel of their attack on their most credible critic, Dr. Rothschild; the express purpose of the anti-SLAPP statute is to prevent such speech-chilling lawsuits. Nonetheless, if the court chooses not to dismiss the telephone call-based emotional distress and interference claims under the anti-SLAPP statute, Dr. Rothschild respectfully submits that the first and second causes of action for defamation that relate only to the alleged Yahoo postings must be dismissed. C.C.P. §425.16(b)(1)("A *cause of action* against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike....")(emphasis added).

## VI. CONCLUSION

For the reasons stated above, Dr. Rothschild respectfully requests that the Court grant the instant motion, striking the First Amended Complaint, and award him his fees and costs.

Dated: November 5, 2007

HOLLAND & KNIGHT LLP

*/s/ Robert A. Bleicher*

Robert A. Bleicher
Shelley G. Hurwitz
Attorneys for Defendant
ANTHONY ROTHSCHILD