Robert A. Bleicher (Bar No. 111334)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, California 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910

Shelley G. Hurwitz (SBN 217566)
HOLLAND & KNIGHT LLP
633 W. Fifth Street, 21st Floor
Los Angeles, California 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450

Attorneys for Defendant
Anthony Rothschild

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORCEPT THERAPEUTICS, INC., Corporation, JOSEPH K. BELANOFF, an individual, ALAN F. SCHATZBERG, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHONY ROTHSCHILD, DOE 1, an individual, DOE 2, an individual, and DOES 3 through 20, inclusive,<br><br>Defendants. | Case No.: C 07-03795 JW<br><br>**DEFENDANT DR. ANTHONY ROTHSCHILD'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:   November 19, 2007<br>Time:   9:00 AM<br>Court:  8<br>Judge:  Honorable James Ware |

Defendant Dr. Anthony Rothschild submits the following Reply Memorandum in Support of his Motion to Dismiss for Lack of Personal Jurisdiction.

### I.    INTRODUCTION

Plaintiffs' inaccurate and misleading opposition can be distilled into the following salient jurisdictional points: Dr. Rothschild's allegedly tortious conduct occurred on a passive website regarding matters of nationwide interest and did not specifically target these plaintiffs in California.

-1-

DEF. DR. ANTHONY ROTHSCHILD'S REPLY MEMORANDUM ISO
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Case No.: C 07-03795 JW

There is no personal jurisdiction over Dr. Rothschild simply because he knows that plaintiffs reside in Northern California. These insurmountable jurisdictional facts require that plaintiffs' complaint be dismissed for lack of in personam jurisdiction.

Plaintiffs do not – because even they realize that they cannot – contest the fact that the Yahoo message board where the alleged postings were made is a passive site available to anyone, anywhere in the world. Further, the subject matter of the postings concerned the business of Corcept and the activities of Drs. Belanoff and Schatzberg in their capacities as Corcept officers and major shareholders. Accordingly, even if Dr. Rothschild made the alleged postings, which he vehemently denies, they were not targeted to California. The form, location, and content of the posting confirm that they are insufficient to warrant the exercise of jurisdiction over Dr. Rothschild.

The same is true regarding the alleged telephone calls (which Dr. Rothschild just as vigorously denies making). Those calls were made from and to jurisdictions outside the state of California and consequently provide no basis for jurisdiction, either.

Plaintiffs' nearly 20 pages of "facts" attempting to "prove" that Dr. Rothschild authored both the postings and initiated the telephone calls are simply irrelevant for the analysis of personal jurisdiction under a Rule 12(b)(6) motion. Dr. Rothschild nonetheless feels compelled to respond to at least a few of plaintiffs' most egregious claims:

- If Dr. Rothschild is "stanfordinsider," how could he have made a posting at the Hyatt Hotel in *Arlington, Virginia* at 11:12 p.m. on October 16, 2005 and then make another posting 36 minutes later in another state, *Maryland*? (See Plaintiffs' "Exhibit A" to their Opposition Memorandum and paragraphs 12 and 17 of the Declaration of Steve Atkins in Support of Plaintiffs' Opposition.) Dr. Rothschild cannot drive that fast.

- If Dr. Rothschild is "stanfordinsider," how did he manage to make a posting on October 17, 2005 at 6:58 a.m. in *Maryland* and then make another posting *two minutes later* at 7:00 a.m., in *Arlington, Virginia*? (See Plaintiffs' "Exhibit A" to their Opposition Memorandum and paragraphs 12 and 17 of the Declaration of Steve Atkins in Support of Plaintiffs' Opposition.) Need Dr. Rothschild even address the implausibility of this claim any further?

- Plaintiffs' suggestion that Dr. Rothschild was somehow acting in the shadows (perhaps from a closet with a 40 watt light bulb?) is preposterous and plaintiffs know it. In a 2007 puff piece on Corcept, Dr. Schatzberg, and Dr. Belanoff published in *San Francisco Magazine*, where the *wife of one of Corcept's founding investors is employed no less*, Dr. Rothschild told the world, "From what I know of the theory, I'm skeptical the drug would work beyond seven days." (Declaration of Dr. Rothschild in Support of Reply Memoranda, ¶ 2, Exhibit A.) Dr. Rothschild has also published detailed critiques of mifepristone's ability to treat psychological disorders in leading professional journals that most of the academic and psychiatric community read on a regular basis. (Rothschild Declaration in Support of Reply Memoranda, ¶¶ 3-4, Exhibits B and C; Declaration of Shelley Hurwitz in Support of Dr. Rothschild's Special Motion to Strike, ¶ 17, Exhibit 16).

- The notion that criticism of plaintiffs and their scientific methods has stopped is equally false. Drs. Carroll and Rubin very recently engaged in a vigorous public debate with Corcept's Dr. Charles DeBattista (Rothschild Declaration in Support of Reply Memoranda, ¶ 7, Exhibit F).

Plaintiffs' accusations of "motivation" regarding Dr. Rothschild are breathtaking in their arrogance. The adage "follow the money" could not be more apt in this instance: Plaintiffs stand to make *hundreds of millions of dollars* if Corlux gains FDA approval. The FDA certification process requires vast quantities of cash. Plainly, the last thing Plaintiffs want is a well-respected scientist with first-hand knowledge questioning their methods and thus potentially slowing their quest. Plaintiffs' desire to silence Dr. Rothschild with a punitive and harassing lawsuit--and thus send a frightening message to other skeptics--could not be clearer.

The essential inquiries necessary to determine whether this court has personal jurisdiction over Dr. Rothschild are few and, for purposes of this motion, readily identifiable. There is no basis for general or specific jurisdiction over Dr. Rothschild, and plaintiffs' complaint must therefore be dismissed.

///
///
///

## II. LEGAL ARGUMENT

### A. Plaintiffs Cannot Establish a Basis to Exercise General Jurisdiction Over Dr. Rothschild.

Plaintiffs' opposition concedes that Dr. Rothschild does not have continuous and systematic contacts with California sufficient to establish general jurisdiction. Accordingly, for the reasons set forth in Dr. Rothschild's moving papers, no grounds exist for the imposition of general jurisdiction over Dr. Rothschild.

### B. The Passive Internet Postings and Out-of-State Telephone Calls Fail to Satisfy the "Purposeful Direction" and "Express Aiming" Standard Necessary to Support Specific Jurisdiction.

Plaintiffs' opposition effectively stands for the discredited notion that an act with foreseeable effects in the forum state gives rise to specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The mere posting of information on an otherwise passive website is insufficient to confer specific jurisdiction; rather, "something more" is required. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).

The Ninth Circuit recently underscored the factual significance of a passive website in a tort claim seeking to assert specific jurisdiction over an out-of-state defendant: "An Internet domain name and passive website alone are not 'something more,' and, therefore, alone are not enough to subject a party to jurisdiction." *Pebble Beach Company v. Caddy*, 453 F.3d. 1151, 1158 (9th Cir. 2006). Here, the undisputed fact is that all of the postings occurred on a passive website. Plaintiffs concede that the Yahoo Message Board is simply a place where individuals can post messages on a variety of commercial topics. Fundamentally, Dr. Rothschild's motion demonstrates that the topic of Corcept was, and continues to be, a matter of significant general interest across the United States. (See Declaration of Shelly Hurwitz in support of Dr. Rothschild's Special Motion to Strike, paragraph 12, Exhibit 11, attaching multiple Yahoo postings about Corcept and its lead product.) Indeed, blunt statements such as "Corcept being run by crooks" exceed anything stated about plaintiffs in the four postings that are at issue in this lawsuit. Reviewing the subject matter of the four postings in 2005 that plaintiffs are trying to pin on Dr. Rothschild, their content demonstrates that the issue is *not* Dr. Schatzberg's or Dr. Belanoff's competency as practicing psychiatrists. Rather, the postings concern the corporate activity of Corcept, Inc., its lead product, Corlux, and the

-4-

actions of Drs. Schatzberg and Belanoff *in their capacities as officers and major shareholders* of Corcept, Inc. The national focus of the four postings is underscored by the fact that Wall Street investment firms follow plaintiffs' activities in recommending whether the investing public should buy, hold or sell Corcept shares, plaintiffs tout that Corlux could benefit three million seriously ill PMD sufferers, and the FDA's insistence that Corcept undertake years of clinical trials. For plaintiffs to claim that the postings are "aimed at them" in California is simply not true and self-serving.

The District Court in Nevada examined the jurisdictional effect of passive website postings on issues of national interest in an internet defamation case that parallels the considerations at issue here. In *Medinah, Inc. v. Amunategui*, 237 F. Supp.2d 1132 (D. Nev. 2002), a publicly traded Nevada corporation and its senior executive sued the defendant for defamation. The tortious acts involved the posting of 1,932 allegedly false and defamatory statements on a Terra Lycos website under the moniker, "Lucky 2505." *Id.* at 1133. The website was an interactive site that reported financial news and maintained information on publicly traded companies. Anyone could access the website, read its content, and post information about any publicly traded company. In assessing the effects test developed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), the District Court expressly rejected plaintiff's argument that the alleged defamatory postings alone were enough to subject the defendant to jurisdiction. The Court observed that the Internet's effect on notions of personal jurisdiction have been evolving at a fast pace and "the law has since developed and the requirements for establishing jurisdiction on this limitless medium have become more stringent." *Id.* at 1137. Looking to analogous Internet defamation cases, the court in *Medinah* expressly relied on *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717 (E.D. PA 1999), a case blithely dismissed by plaintiffs in their opposition. The *Medinah* court agreed that in Internet defamation cases, "there must be evidence that defamation actually had an effect *on residents* of the forum or that the alleged defamation actually targeted the forum in order for the 'express aiming' requirement to be satisfied." *Id.* at 1137-1138 (emphasis added). The Court rejected an argument made by plaintiffs here, that the defamatory statements could devalue and financially harm the corporation in its forum state, stating "[w]e do not find that this 'harm' is anything more than a potential offshoot

-5-

of Medinah being incorporated in Nevada, which Plaintiffs have already conceded is not enough to satisfy the effects test." *Id.* at 1138. As in *Medinah*, the postings and alleged defamatory statements do not turn on plaintiffs' state of residence (indeed, Corcept is a Delaware corporation). Rather, the fact that Corcept is headquartered in California and that its CEO and one of its major shareholders and lead scientist are California residents is purely incidental.

Like the defendant in *Medinah*, Dr. Rothschild does not conduct business in California and he did not direct the alleged comments to California in particular. Even if Dr. Rothschild made the postings (which he denies), the messages were accessible world-wide, and there remains no proof that he intended to cause injury specifically in California or to these plaintiffs. Dr. Rothschild did not avail himself of the privilege of doing business in California and he did not purposefully direct and aim the alleged postings to this state or to plaintiffs individually. *See Medinah* at 1134-37. The topics of the defamation concerned Corcept, Dr. Belanoff, and Dr. Schatzberg's *national* role and impact: Were they selling ahead of bad news? Were the clinical trials of Corlux failing and flawed? Are there conflicts of interest? All of these issues, which in tone and content are consistent with other Internet postings, publications, and articles about Corcept, confirm that the California locus of the plaintiffs was not the express aim of the postings; rather, it is incidental. *See Forever Living Products U.S. Inc. v. Geyman*, 471 F. Supp. 2d 980, 984 (D. Ariz. 2006)(In a defamation claim based on passive Internet website postings, the court, relying on *Medinah*, refused to exercise jurisdiction, stating "Allegedly tortious conduct on a passive website will not vest jurisdiction in a forum merely because the Defendant knows that the alleged victim of the alleged wrong resides in that forum.")

The subject matter of the postings and their presence on a passive, nationally accessible website closely aligns Dr. Rothschild's alleged activity with the jurisdictionally insufficient acts in *Barrett v. Catacombs Press, supra*. Just as in this case, the plaintiff in *Barrett* was a psychiatrist who claimed that Internet postings on a passive site concerning his business activities were defamatory and sufficient to warrant the exercise of personal jurisdiction over the defendant in Pennsylvania. In declining to apply the "effects test" of *Calder*, the District Court in *Barrett* observed, "[a]ll of the defamatory statements made by the Defendant attacked Plaintiff in his

-6-

national capacity as a physician who had spoken out against healthcare fraud in support of the fluoridation of water sources." *Id*. at 730.  Like the defendant's postings in *Barrett*, the alleged defamatory statements here associate plaintiffs with their corporate activities related to and on behalf of Corcept, Inc.  As in *Barrett*, plaintiffs here cannot point to any defamatory statements attacking them in their capacities as California psychiatrists or that any of the postings were intended to target Internet users in California.  *Id*. at 729.  Even though it is certainly foreseeable that some of the harm plaintiffs allege would be felt in California because they live and work here, such foreseeability is insufficient to support the exercise of personal jurisdiction.  *Id*. at 730, citing *World-Wide Volkswagen Corp.*, 444 U.S. 286, 295 (1980); *Rush v. Savchuk*, 444 U.S. 320, 328-329 (1980).  Thus, unless there is evidence that California was deliberately and knowingly targeted by Dr. Rothschild, the possible fact of harm to plaintiffs in California from conduct occurring elsewhere is insufficient to satisfy due process.  *Id*. at 730.

Reconciling language in cases like *Bancroft & Masters, supra,* with decisions like *Medinah*, defendant would agree, is not an easy task.  Yet, the facts in cases like *Bancroft & Masters* submit to a fundamental and logical distinction.  In *Bancroft & Masters*, the genesis of the out-of-state act had no purpose other than to specifically target a specific California resident in this state.  *Calder*, with the *National Enquirer's* direct aim at a prominent Californian through knowing and *controllable* targeted publication in this state, is similarly distinguishable from an open-ended Internet posting on matters of nation-wide interest.  Nor are the alleged postings akin to the focused extortion of a California resident, *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990), the intentional violation of a California company's intellectual property rights, *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), or placing a lien on plaintiff's real property in the forum state, *Menken v. EMM*, ___ F.3d ___, 2007 WL 2713139 (9th Cir. 2007).  Unlike those cases, here Dr. Rothschild's alleged actions, including the out-of-state "prank calls" made to other states, do not constitute the specifically focused "individualized targeting" to this state in a "clear attempt to force plaintiff[s] to act." *Pebble Beach Company v. Caddy, supra,* at 1157.  Plaintiffs are arguing for the application of a foreseeability/effects test that simply is not the law and therefore there is no jurisdiction over Dr. Rothschild in this matter.

-7-

DEF. DR. ANTHONY ROTHSCHILD'S REPLY MEMORANDUM ISO
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Case No.: C 07-03795 JW

C. The Exercise of Jurisdiction Over Dr. Rothschild is Unduly Burdensome and Unreasonable.

The burden and unreasonableness of jurisdiction over Dr. Rothschild in this instance has been set forth and discussed in his moving papers and in his companion motion to dismiss for improper venue, as well. Having an individual like Dr. Rothschild litigate nearly 3000 miles from his home, students, and patients is indisputable. Further, key witnesses are outside this jurisdiction. Plaintiffs' dismissal of the needs of Dr. Rothschild's patients simply because he periodically attends conferences is equally flawed: deciding to attend a conference is a very different decision from having to defend litigation in California. Dr. Rothschild can work around the needs of his patients when he considers whether to attend a conference. Plaintiffs are wealthy individuals backed by the resources of their corporation. Dr. Rothschild has no such advantage. His infrequent contacts with California and the burden of litigating here weigh in favor of dismissal, as well.

### III. CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Dr. Rothschild's moving papers, defendant respectfully submits that its motion to dismiss plaintiffs' complaint for lack of personal jurisdiction should be granted.

Dated: November 5, 2007

HOLLAND & KNIGHT LLP

*/s/ Robert A. Bleicher*

Robert A. Bleicher
Shelley G. Hurwitz
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, California 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910

Attorneys for Defendant
ANTHONY ROTHSCHILD

# 4903161_v1

-8-

DEF. DR. ANTHONY ROTHSCHILD'S REPLY MEMORANDUM ISO
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Case No.: C 07-03795 JW