Robert A. Bleicher (SBN 111334)
HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
San Francisco, California 94111
Telephone: (415) 743-6900
Facsimile: (415) 743-6910

Shelley G. Hurwitz (SBN 217566)
HOLLAND & KNIGHT LLP
633 W. Fifth Street, 21st Floor
Los Angeles, California 90071
Telephone: (213) 896-2400
Facsimile: (213) 896-2450

Attorneys for Defendant
Anthony Rothschild

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORCEPT THERAPEUTICS, INC., Corporation, JOSEPH K. BELANOFF, an individual, ALAN F. SCHATZBERG, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DOE 1, an individual, DOE 2, an individual, and DOES 3 though 20, inclusive,<br><br>Defendants. | Case No.: C 07-03795 JW<br><br>**DECLARATION OF DR. ANTHONY ROTHSCHILD, MD IN SUPPORT OF:**<br><br>**1. DEFENDANT DR. ANTHONY ROTHSCHILD'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>**2. REPLY MEMORANDUM IN SUPPORT OF DR. ANTHONY ROTHSCHILD'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA'S STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION (ANTI-SLAPP) STATUTE**<br><br>Date:        November 19, 2007<br>Time:       9:00 am<br>Courtroom: 8<br>Judge:      Hon. James Ware |

## DECLARATION OF DR. ANTHONY ROTHSCHILD, MD

I, Anthony Rothschild, declare as follows:

1. I have personal knowledge of the facts stated herein, except for those stated on information and belief, which I am informed and believe are true. I could and would testify to these facts under oath if called upon to do so.

2. Attached hereto as Exhibit A is a true and correct copy of an article by Susan Freinkel entitled *The case of the notorious depression drug,* that appeared in *San Francisco Magazine* in May 2007. I am quoted in the article as follows: "Even Rothschild, coauthor of the cortisol hypothesis, questions the claim that mifepristone can have a long-term effect by 'resetting' the stress hormone axis. 'From what I know of the theory, I'm skeptical the drug would work beyond seven days,' he says." This article quotes me accurately.

3. Attached hereto as Exhibit B is a true and correct copy of Sit, Dorothy, Rothschild, Anthony, et. al., *Psychiatric outcomes following medical and surgical abortion,* Human Reproduction, Vol.22, No. 3, pp.878-884, 2007.

4. Attached hereto as Exhibit C is a true and correct copy of Rothschild, Anthony, *Placebo Response in Psychotic Depression*, J Clin Psychiatry 66 (12):1615, December 2005.

5. Attached hereto as Exhibit D is a true and correct copy of a print out from www.yahoo.com indicating that as of November 2, 2007, Corcept's stock (CORT) was trading at $3.63.

6. Attached hereto as Exhibit E is a true and correct copy of Posener, Joel, *Process irregularity of cortisol and adrenocorticotropin secretion in men with major depressive disorder,* Psychoneuroendocrinology, 29, 1129-1137 (2004). Dr. Alan Schatzberg and Dr. Charles DeBattista are co-authors of this article.

7. Attached hereto as Exhibit F is a true and correct copy of a critique of the use of mifepristone to treat psychotic depression by Drs. Bernard Carroll and Robert Rubin that appeared in Biological Psychiatry in 2007. Also included in Exhibit F is a printed reply from Dr. Charles DeBattista.

8. Attached hereto as Exhibit G is a true and correct copy of a print out from the website of the US Census Bureau available at http://quickfacts.census.gov/qfd/states/25000.html, discussing the statistics, including the population, for the State of Massachusetts.

9. The first time that I became aware that plaintiffs had filed this action against unknown, or so-called DOE defendants, was January 4, 2006, when I came home from work and was served with a subpoena seeking discovery from me as a non-party witness.

10. I understand that plaintiffs in this matter assert that I was aware of 4 deaths in the clinical trials of Corlux prior to October 28, 2005, the date of one of the postings at issue in this case. However, I was not aware of these deaths until I learned of them through proceedings in this lawsuit. My involvement with Corcept ended in January of 2002 when I resigned as an investigator. These deaths must have occurred after January of 2002.

11. In plaintiffs' Complaint at paragraph 30 (d), Dr. Schatzberg claims that on October 8, 2003, I impersonated him and called the University of Texas, cancelling his speaking engagement, airport pickup, and hotel reservation. His lawyers evidently further explain that allegation in their opposition brief at 12:2-13 under the heading, "September 30, 2003 Incident" (I assume they stated the wrong date in their Complaint). Their "evidence" against me is two calls I made, one to (214) 648-2564 and the other to (650) 327-3270. I did make those calls for the simple reason that my secretary received a telephone call that day from someone saying he was Dr. Clifford Schold and asking me to call him at (214) 648-2564 or (650) 327-3270. She sent me an e-mail at 12:11 pm on September 30, 2003, passing along Dr. Schold's message and giving me the telephone numbers I should call. Since my 2:30 appointment was cancelled, as reflected in my secretary's e-mail, I had time to make those calls on that date and I did so. I did not cancel any speaking engagement of Dr. Schatzberg, nor did I cancel his airport ride or hotel; in fact, I had absolutely no knowledge of his plans or whereabouts for that day. A true and correct copy of my secretary's September 30, 2003 e-mail to me is attached Exhibit H (I have redacted the names of patients and telephone numbers of others that are not relevant). If one Google's Dr. Schold's telephone number, (214) 648-2564, a number of listings come up, including one for Dr. Schold.

12. Plaintiffs' Complaint at paragraph 30 (b) accuses me of making a prank call on May 27, 2003, to Dr. Belanoff in Boca Raton Florida regarding his family. I had absolutely no knowledge of Dr. Belanoff's plans and whereabouts for that day or that time period and I did not call his hotel. May 27, 2003 was a Tuesday and I was in my office that day. My office telephone records show that I did not call Florida on that date.

13. Plaintiffs' Complaint at paragraph 30 (f) claims that on October 16, 2003, I called Amy Boyle at SCIREX Corporation (located in Pennsylvania) and, posing as "Dr. Patel," asked about Corcept drug tests and alleged conflicts between SCIREX and Corcept. My office telephone records, which I understand plaintiffs have submitted under seal to the court, confirm that I did not call Pennsylvania on that date, and I did not do so.

14. Plaintiffs claim that I called the Grand Hyatt Hotel in Washigton, D.C. on October 16, 2003 to cancel Dr. DeBattista's hotel reservation. I did call the Hyatt on that date, but the purpose had absolutely nothing to do with Dr. DeBattista. Rather, during this time I was seeking tenure and one of my sponsors was Dr. Maurizio Fava, the Vice Chair, Department of Psychiatry, Massachusetts General Hospital and Professor of Psychiatry, Harvard Medical School. Dr. Fava was at the Hyatt on October 16, 2003, and I called him to discuss my tenure and his sponsorship of me. I had absolutely no knowledge of Dr. DeBattista's travel plans or whereabouts on or around that date and I did not cancel or interfere with his reservation in any way.

15. My call to the New York Hilton on November 15, 2002 was to a trainee who was attending the American Society of Clinical Psychopharmacologists meeting. I did not pose as "Dean Pizzo" or otherwise leave a message for Dr. Schatzberg. I had no knowledge of his travel plans or whereabouts on or around that date.

16. I called Rockefeller University on September 8, 2003 in an attempt to reach Dr. Owen Wolkowitz, who I believed was attending the ISPNE meeting, to discuss whether the American Psychiatric Press had a book display of our book, *Psychoneuroendocrinology*, at the meeting. I had no knowledge that Dr. Schatzberg was at the meeting and I did not leave any

-4-

messages for him under my name or anyone else's. I frequently receive calls from Ms. Goode at the *New York Times,* and most likely I called her number on that date to return a message.

17. I have no specific recollection at this time of why I may have called the Four Season Hotel in Boston on September 5, 2005, other than perhaps to contact a patient (I have several out-of-town patients who will stay overnight when in Boston and who, I believe, have the means to stay at the Four Seasons). I also have a patient who works at that hotel, so I could have been calling for that reason, as well. I certainly had no knowledge of Dr. Belanoff's travel plans or whereabouts, let alone choice of accommodations, on or around that date. I did not leave any message with or make any call to the Four Seasons cancelling Dr. Belanoff's reservations.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed the ___ day of November, 2007 at _____, Massachusetts

_____
Anthony J. Rothschild, M.D.

messages for him under my name or anyone else's. I frequently receive calls from Ms. Goode at the *New York Times*, and most likely I called her number on that date to return a message.

17. I have no specific recollection at this time of why I may have called the Four Season Hotel in Boston on September 5, 2005, other than perhaps to contact a patient (I have several out-of-town patients who will stay overnight when in Boston and who, I believe, have the means to stay at the Four Seasons). I also have a patient who works at that hotel, so I could have been calling for that reason, as well. I certainly had no knowledge of Dr. Belanoff's travel plans or whereabouts, let alone choice of accommodations, on or around that date. I did not leave any message with or make any call to the Four Seasons cancelling Dr. Belanoff's reservations.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed the 4th day of November, 2007 at Worcester, Massachusetts

Anthony J. Rothschild, M.D.