IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Corcept Therapeutics, Inc., et al., | NO. C 07-03795 JW |
| Plaintiffs, <br> v. | **ORDER DENYING DEFENDANT'S VARIOUS MOTIONS** |
| Anthony Rothschild, | |
| Defendant. | |

## I. INTRODUCTION

Corcept Therapeutics, Inc., Dr. Joseph K. Belanoff, and Dr. Alan F. Schatzberg (collectively, "Plaintiffs") bring this diversity action against Dr. Anthony Rothschild ("Defendant") for alleged defamation, intentional infliction of emotional distress, and interference with prospective business relations. Plaintiffs allege they were injured when Defendant made certain internet postings regarding Plaintiffs and their products.

Presently before the Court are Defendant's motions to 1) dismiss for lack of personal jurisdiction, 2) dismiss for improper venue or to transfer, and 3) strike under California's Strategic Lawsuit Against Public Participation statute.[1] The Court conducted a hearing on November 19,

---

[1] (Defendant Dr. Anthony Rothschild's Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Personal Jurisidiction, hereafter, "Motion to Dismiss," Docket Item No. 15; Defendant Dr. Anthony Rothschild's Memorandum of Points and Authorities in Support of Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer for Improper Venue or Convenience, hereafter, "Motion to Transfer," Docket Item No. 12; Motion to Strike Pursuant to California's Strategic Lawsuit Against Public Participation (Anti-SLAPP) Statute, hereafter, "Motion to Strike," Docket Item No. 22.)

2007. Based on the papers submitted to date and oral arguments of counsel, the Court DENIES Defendant's various motions.

## II. BACKGROUND

In an Amended Complaint[2] filed on June 21, 2007, Plaintiffs allege as follows:

Plaintiffs Belanoff and Schatzberg, both California residents, are co-founders of Plaintiff Corcept Therapeutics, Inc.[3] Corcept Therapeutics, Inc. ("Corcept"), is a Delaware Corporation with its principal place of business in Menlo Park, California. (Id. ¶ 2.) Corcept develops drugs for the treatment of severe psychiatric and metabolic diseases. (Id. ¶ 9.) Corcept's lead product is Corlux, targeted for the treatment of psychotic major depression. (Id.)

Defendant Rothschild is a Professor of Psychiatry at the University of Massachusetts Medical School. (Id. ¶ 5.) Rothschild resides and works in Massachusetts. (Id.)

Between November 2002 and September 2005, Rothschild made several prank phone calls.[4] During some of these phone calls, Rothschild cancelled hotel reservations and

---

[2] On October 25, 2005, Plaintiffs filed an action in California State Court against an unknown number of Defendants. (Plaintiffs' Opposition to Rothschild's Motion to Dismiss for Alleged Lack of Personal Jurisdiction at 3, hereafter, "Opposition to Dismiss," Docket Item No. 59.) After conducting certain discovery, Plaintiffs named Rothschild as a Defendant and filed an amended complaint. On July 24, 2007, Defendant timely removed the action to the Northern District of California based on the federal court's diversity jurisdiction. (See Docket Item No. 1.)

[3] (First Amended Complaint for Defamation, Intentional Infliction of Emotional Distress, and Interference with Prospective Economic Relations ¶¶ 3-4, hereafter, "FAC," Docket Item No. 1.)

[4] To put the Complaint in context, Plaintiffs represent as follows:
In 1999, Belanoff hired Rothschild to conduct early stage and follow up clinical trials of Corlux. (Belanoff Decl. ¶ 3.) In 2001, while Corcept was preparing for an Initial Public Offering, Rothschild complained to Belanoff that he had not received any shares in the company and later demanded recognition as a co-inventor of Corlux. (Id. ¶ 4.) Corcept offered Rothschild stock options but rejected his inventorship claims. (Id.) Due to market conditions, Corcept did not complete its IPO at that time. (Id.) The telephone harassment began soon after. (Id. ¶ 5.)
In 2003, McClean Hospital, where Rothschild conducted the clinical trials for Corcept, also asserted a patent claim on behalf of Rothschild against Stanford University, as patentee of Corlux. (Id. ¶ 6.) That dispute was arbitrated in Stanford's favor. (Id.) After the arbitration, the internet postings began. (Id. ¶ 7.)

2

speaking engagements for Belanoff, Schatzberg, and other Corcept employees. (FAC ¶ 30.) During other phone calls, Rothschild impersonated doctors and news reporters, and left messages regarding feigned investigations into conflicts of interest between Belanoff, Schatzberg, Corcept, and other companies. During one phone call, Rothschild left a false message for Belanoff instructing Belanoff to contact his wife at the hospital in connection with an emergency. (Id.)

On March 17, 2005, Rothschild created an account with Yahoo! Inc. under the user name "corceptisafraud" and the registered name, "Mr. Alan Schatzberg." (Id. ¶ 11.) On that same date, Rothschild also created the email account "corcept@hotmail.com" under the name "Mr. Alan Schatzberg." (Id. ¶ 13.)

On August 23, 2005, Rothschild created a second account with Yahoo! Inc. under the user name "stanfordinsider"[5] and the registered name, "Ms. Melissa Schatzberg."[6] (Id. ¶ 12.) On that same date, Rothschild also created the email account "corcepttherapeutics@hotmail.com" under the name "Ms. Melissa Schatzberg." (Id. ¶ 14.)

Using the "corceptisafraud" and "stanfordinsider" accounts, Rothschild posted several defamatory statements on Yahoo! internet message boards regarding Corlux.

On the basis of the allegations outlined above, Plaintiffs allege four causes of actions: 1) defamation for internet postings made under the user name "corceptisafraud;" 2) defamation for internet postings made under the user name "stanfordinsider;" 3) intentional infliction of emotion distress; and 4) interference with prospective economic relations.

---

[5] Corlux is developed under an exclusive license from Stanford University. (Declaration of Joseph Belanoff in Support of Plaintiffs' Opposition to Rothschild's Motions to Dismiss and for Change of Venue ¶ 2, hereafter, "Belanoff Decl.," Docket Item No. 66.) Belanoff and Schatzberg are faculty members of the Department of Psychiatry and Behavioral Sciences at Stanford University. (Opposition to Dismiss at 1.)

[6] Melissa Schatzberg is Alan Schatzberg's daughter. (Complaint ¶ 12.)

3

Presently before the Court are Defendant's motions to 1) dismiss for lack of personal jurisdiction, 2) dismiss for improper venue or transfer, and 3) strike under California's Strategic Lawsuit Against Public Participation statute.

### III. STANDARDS

**A.    Motion to Dismiss for Lack of Personal Jurisdiction**

Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Although the defendant ordinarily files such a motion, it is the plaintiff that bears the burden of proof as to the necessary jurisdictional facts. Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984) . However, the plaintiff need only make a prima facie showing that personal jurisdiction exists if the defendant files its motion to dismiss as an initial response. Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). To make a prima facie showing, the plaintiff must demonstrate facts that if true would support jurisdiction over the defendant. Data Disc, 557 F.2d at 1285. The plaintiff must make a prima facie showing as to each defendant. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

A federal district court may exercise personal jurisdiction to the same extent as a state court of the state in which the district court sits. Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 108 (1987). Since California courts extend jurisdiction to the very limits of the federal Constitution, federal courts are only required to determine whether the exercise of jurisdiction would comport with due process. See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986)

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

**B.    Motion to Dismiss for Improper Venue or to Transfer**

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a complaint may be dismissed if it is brought in an improper venue. The plaintiff bears the burden of showing that venue is proper in the

4

chosen district. Koresko v. Realnetworks, Inc., 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003); McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001); American Homecare Fed'n v. Paragon Sci. Corp., 27 F. Supp. 2d 109, 112 (D. Conn. 1998).

Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the pleadings need not be accepted as true and the court may consider supplemental written materials and consider facts outside of the pleadings in deciding a Rule 12(b)(3) motion. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1337 (9th Cir. 2004); Walker v. Carnival Cruise Lines, 107 F. Supp. 2d 1135, 1137 n.2 (N.D. Cal. 2000). If genuine contested factual issues are presented, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. Murphy, 362 F.3d at 1138-1140. Alternatively, the district court may hold a pre-trial evidentiary hearing on the disputed facts or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. Id. at 1139.

Where venue is improper, the district court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). See King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992); District No. 1 Pacific Coast District v. Alaska, 682 F.2d 797, 799 (9th Cir. 1982); Citizens For A Better Environment v. Union Oil Co., 861 F. Supp. 889, 897 (N.D. Cal. 1994). In determining whether to transfer or dismiss a case, the court may consider: the applicable statute of limitations, the relative injustice imposed on the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper. See Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 588 (9th Cir. 1992). "A determination of improper venue does not go to the merits of the case and therefore must be without prejudice." See In re Hall, Bayoutree Assocs., Ltd., 939 F.2d 802, 804 (9th Cir. 1991).

Whether a transfer or a dismissal is in the interest of justice rests within the discretion of the district court. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983) (citing Cook v. Fox, 537 F.2d 370, 371 (9th Cir. 1976)).

5

### IV. DISCUSSION

**A.  Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant moves to dismiss on the ground that the Northern District lacks personal jurisdiction over him because his contacts with California are minimal and he has not purposefully availed himself of the protection of California law. (Motion to Dismiss at 1.) The Court proceeds to consider whether it has general or specific jurisdiction over Defendant.

**1.  General Jurisdiction**

General jurisdiction is appropriate when a defendant engages in continuous and systematic contacts that "approximate physical presence in the forum state," even if the underlying cause of action is unrelated to those general activities. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). The inquiry is fact-intensive; the court should consider a number of factors, including "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163 (9th Cir. 2006). The necessary level of contacts with a forum state necessary to establish general jurisdiction is "quite high." Shute v. Carnival Cruise Lines, 897 F.2d 377, 380 (9th Cir. 1990).

With respect to his activities in California, Defendant declares that he has never 1) lived in California, 2) owned nor rented real property in California, 3) owned personal property in California, 3) held any ownership stake in a California entity, 4) maintained any bank accounts in California, 5) paid taxes in California, or 6) maintained a mailing address or telephone number in California.[7] Defendant has visited California three times in the last ten years, staying for no more than three days on each visit. (Rothschild Decl. ¶ 5.) Further, other than the attorneys retained to defend this lawsuit, Defendant does not have any representatives in California. (Id. ¶ 3.) Plaintiffs fail to refute Defendant's declaration. Since Plaintiffs bear the burden of proof as to the necessary

---

[7] (Declaration of Dr. Anthony Rothschild, MD in Support of Motions to Dismiss for Lack of Personal Jurisdiction and Improper Venue ¶ 3, hereafter, "Rothschild Decl.," Docket Item No. 17.)

6

jurisdictional facts, and have failed to do so, the Court finds that Defendant does not have continuous and systematic contacts with California sufficient for general jurisdiction.

### 2. Specific Jurisdiction

Absent general jurisdiction, a court may still hear a case where specific jurisdiction is established. The Ninth Circuit uses the following test to evaluate a defendant's contacts for purposes of determining whether specific jurisdiction applies:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802. The first prong of the test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

In tort cases, the Ninth Circuit requires courts to focus on whether a defendant "purposefully directs" conduct at the forum state by applying an "effects test" that considers where the defendant's actions were felt, regardless of whether the actions themselves occurred within the forum. See Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). To meet the effects test, "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo!, 433 F.3d at 1206-07 (noting that "the 'brunt' of the harm need not be suffered in the forum state").

The first element of the effects test is an allegation that a defendant committed an "intentional act." Here, Defendant is alleged to have made the following postings under the "corceptisafraud" user name:

7

1) There is no scientific evidence that [Corcept's] drug, RU-486 works for psychotic depression or anything else for that matter.
2) Corcept knows all of this, namely, that there is no scientific evidence that [Corcept's] drug, RU-486 works for psychotic depression or anything else for that matter.
3) Belanoff and Schatzberg . . . and other insiders are selling despite the stock selling at record lows. They know the drug does not work and will never be proven to work.

(FAC ¶ 16.) Defendant is also alleged to have made the following posting under the "stanfordinsider" user name:

1) The insiders in Corcept know the data, have seen the data. The CEO is a psychiatrist. He has been selling shares as fast as he can. The CEO and the company create press releases to raise the price of the stock and then sell on the news. It strikes me as fraudulent.
2) The word here at Stanford is that the Dean of the medical school has hired an outside expert panel to review Schatzberg's use of his Psychiatry Chair position to promote Corcepts' drug. My guess is the SEC will soon follow. Most of the Psyhiatric community believes the drug doesn't work and is not practical; it is unlikely the FDA will ever approve it. The Corcept founders realize this and . . . have been selling since the IPO (or having their proxy friends and family selling).
3) 4 cardiac related deaths in trial. Believed to be secondary to rise in cortisol in periphery after blockade of central cortisol receptor.

(Id. ¶ 23.) Plaintiffs allege that these statements are false and defamatory. (Id. ¶¶ 17, 24.) Defamation is an intentional tort and thus, Plaintiffs have satisfied the first prong of the effects test.

The second element of the effects test is "express aiming." The Ninth Circuit has held that "expressly aimed" means "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). However, the court has cautioned that any foreign act with foreseeable effects in the forum state does not always give rise to personal jurisdiction. Id. at 1087; see also Schwarzenegger, 374 F.3d at 804-05.

In this case, on the face of the Complaint, it is clear that Defendant's alleged defamatory postings were directed toward Plaintiffs. The impact of these statements was to injure Belanoff and Schatzberg at Stanford, where they are employed, and in California, where Corcept is located. Thus, a substantial effect of Defendant's alleged tort was to damage Plaintiffs' reputations in California. Plaintiffs have presented circumstantial evidence that Defendant knew Plaintiffs were residents of California at the time he made the postings. (See Balanoff Decl.)

8

In sum, the Court finds that Plaintiffs' allegations establish a prima facie case for jurisdiction under the effects test. Plaintiffs have alleged: (1) intentional conduct because Defendant indirectly and directly is alleged to have committed an intentional tort against Plaintiffs; (2) conduct that was expressly aimed at the forum because Defendant's tortious statements were directed at Plaintiffs in California; and (3) conduct that caused harm that Defendant knew was likely to be suffered in the forum state because California is Plaintiffs' residence and Corcept's principal place of business.

Once a plaintiff has shown that the defendant purposefully directed its actions at forum residents, the defendant bears the burden of demonstrating that the court's exercise of jurisdiction would be unreasonable. Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). Here, Defendant has failed to demonstrate that the Court's exercise of jurisdiction would be unreasonable.

Accordingly, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction.

### B.    Motion to Dismiss for Improper Venue or to Transfer Venue

Defendant moves to dismiss on the ground that the Northern District of California is an improper venue. (Motion to Transfer at 1.) In the alternative, Defendant moves to transfer the action to the District of Massachusetts for the convenience of the parties and in the interests of justice. (Motion to Transfer at 10.)

In a diversity action, venue is generally proper where the defendant resides or where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(a). However, when the defendant removes an action from state court, 28 U.S.C. § 1441(a), which governs removal of actions, determines whether venue is proper. See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953). Under § 1441(a), venue is proper if the case is removed to the district in which the state action was pending.[8]

---

[8] Section 1441(a) provides, in pertinent part, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

9

In this case, Defendant removed this action from the Superior Court of Santa Clara County, which is located in the Northern District of California. (See FAC.) Therefore, venue is proper in the Northern District. The Court proceeds to consider whether the case should be transferred to the District of Massachusetts for the convenience of the parties.

Under 28 U.S.C. § 1404(a), a district court may transfer a case pending before it to "any other district or division where it might have been brought." A plaintiff's choice of forum, however, is accorded substantial weight, and a court will not grant a motion under 1404(a) unless the defendant makes a strong showing of inconvenience. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The decision of whether to grant a motion under § 1404(a) turns on the facts of the particular case. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). Factors to be weighed in deciding such a motion include: (1) the location where the relevant agreements were negotiated and executed; (2) the state which is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contact relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state. Id. at 498-99.

In this case, Plaintiffs' claims arise under California law. Plaintiffs chose this forum because the impact of Defendant's alleged tort was felt here. Plaintiffs' alleged stock sales and the alleged evaluation by the Stanford panel occurred in California. Further, many witnesses and sources of proof are located in California. On balance, the Court finds that the Jones factors weigh against transfer to the District of Massachusetts. Accordingly, the Court DENIES Defendant's motion to transfer venue.

**D.     Motion to Strike Under California's Anti-SLAPP Statute**

Defendant moves to strike Plaintiffs' Complaint on the ground that the postings are protected by California's anti-SLAPP statute. (Motion to Strike at 3.)

10

The Ninth Circuit has "determined that California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court, and that these provisions do not conflict with the Federal Rules of Civil Procedure." Thomas v. Fry's Electronics, Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (citing United States ex rel Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972-73 (9th Cir. 1999)). The anti-SLAPP statute was passed in response to concern over an increase in meritless lawsuits brought against private individuals to gain economic advantage and to deter them from exercising their political and legal rights. Wilcox v. Superior Court, 27 Cal. App. 4th 809, 816 (1994). The anti-SLAPP statute permits a special motion to strike such claims; it provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

To prevail on an Anti-SLAPP motion to strike, a defendant must first demonstrate that plaintiff's defamation claim arises from a protected activity; that is, defendant must show that the act of which plaintiff complains was taken "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue" as defined in the Anti-SLAPP statute. Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Id. Although not defined in the anti-SLAPP statute, a matter of public interest is one that is "something of concern to a substantial number of people." Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1132 (2003) (citing Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 762 (1985)). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." Martinez v. Metabolife Internat. Inc., 113 Cal. App. 4th 181, 188 (2003). "[W]here a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on any part of its claim, the cause of action is not meritless and will not be subject to the anti-SLAPP

procedure." Mann v. Quality Old Time Service, Inc., 120 Cal. App. 4th 90, 106 (2004) (internal citation omitted).

In this case, Defendant contends that Plaintiffs' drug is an issue of public interest and therefore statements about it are protected. However, since the case is at the pleading stage, the Court does not have sufficient information to determine whether (1) Plaintiffs are persons in the public eye; (2) Defendant's postings are about subjects that could affect large numbers of people beyond the direct participants; and (3) Defendant's postings are about subjects that involve a topic of widespread public interest. Further, from the four corners of the Complaint, it appears that Plaintiffs' causes of action refer to at least some unprotected activity and Plaintiffs have demonstrated a probability of prevailing on those claims.

Accordingly, the Court DENIES Defendant's motion to strike under California's anti-SLAPP statute.

### V. CONCLUSION

The Court DENIES Defendant's Motions to (1) Dismiss for Lack of Personal Jurisdiction, (2) Dismiss for Improper Venue or to Transfer, and (3) Strike under California's anti-SLAPP statute.

The parties shall appear for a Case Management Conference on **May 5, 2008 at 10 a.m.** Pursuant to the Civil Local Rules of Court, the parties shall meet and confer and file a Joint Case Management Conference Statement on or before **April 25, 2008.**

Dated: March 31, 2008

JAMES WARE
United States District Judge

12

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Christine S. Watson cwatson@carrferrell.com
Robert A. Bleicher robert.bleicher@hklaw.com
3  Shelley Gershon Hurwitz shelley.hurwitz@hklaw.com
Stuart C. Clark sclark@carrferrell.com

**Dated: March 31, 2008**                    **Richard W. Wieking, Clerk**

**By:  /s/ JW Chambers**
       **Elizabeth Garcia**
       **Courtroom Deputy**

**United States District Court**
For the Northern District of California