1   Robert A. Bleicher (Bar No. 111334)
    HOLLAND & KNIGHT LLP
2   50 California Street, 28th Floor
    San Francisco, California 94111
3   Telephone: (415) 743-6900
    Facsimile: (415) 743-6910
4
    Shelley G. Hurwitz (SBN 217566)
5   HOLLAND & KNIGHT LLP
    633 W. Fifth Street, 21st Floor
6   Los Angeles, California 90071
    Telephone: (213) 896-2400
7   Facsimile: (213) 896-2450

8   Attorneys for Defendant
    Anthony Rothschild
9

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                   **SAN JOSE DIVISION**

14  CORCEPT THERAPEUTICS, INC.,          Case No.: C 07-03795 JW
    Corporation, JOSEPH K. BELANOFF, an
15  individual, ALAN F. SCHATZBERG, an   **DECLARATION OF ROBERT A.**
    individual                            **BLEICHER IN SUPPORT OF MOTION**
16                                        **TO STAY PENDING THE DISPOSITION**
                                          **OF DEFENDANT DR. ANTHONY**
17         Plaintiffs,                    **ROTHSCHILD'S APPEAL TO THE**
                                          **NINTH CIRCUIT**
18         vs.

19  ANTHONY ROTHSCHILD, DOE 1, an        **Date:** June 9, 2008
    individual, DOE 2, an individual, and DOES 3   **Time:** 9:00 am
20  through 20, inclusive,               **Courtroom:** 8
                                          **Judge:** Hon. James Ware
21         Defendants.
                                          [Filed concurrently with Notice of Motion,
22                                        Memorandum of Points and Authorities, Non-
                                          Federal Authorities, [Proposed] Order]
23  ///
24  ///
25  ///
26  ///
27  ///
28

                                  1

1    I, Robert A. Bleicher, declare as follows:

2    1.    I am a Partner with Holland & Knight LLP and one of the attorneys currently

3    responsible for the representation of Defendant Dr. Anthony Rothschild ("Dr. Rothschild") in

4    this matter. I am licensed to practice law in the State of California and before this Court. I have

5    personal knowledge of the facts stated herein, except for those stated on information and belief,

6    which I am informed and believe are true. I could and would testify to these facts under oath if

7    called upon to do so.

8    2.    This matter was originally filed in the Superior Court on October 25, 2005, and

9    timely removed to this Court on July 24, 2007.

10    3.    On August 8, 2007, Dr. Rothschild filed a Special Motion To Strike Pursuant To

11    California's Strategic Lawsuit Against Public Participation (Anti-Slapp) Statute (the "SLAPP

12    Motion"). On March 31, 2008, this Court issued an order denying the SLAPP Motion. Attached

13    hereto as Exhibit 1 is a true and correct copy of this Court's order denying the SLAPP Motion.

14    4.    Dr. Rothschild filed a timely Notice of Appeal on April 16, 2008. Attached

15    hereto as Exhibit 2 is a true and correct copy of the Notice of Appeal.

16    5.    No trial date has yet been set in this matter, and, other than the instant motion,

17    there are no pending motions. The parties will attend a Case Management Conference on May 5,

18    2008.

19    6.    The parties are assigned to Court Mediation, before Debra Mellinkoff, Esq., on

20    June 11, 2008. All parties have agreed to continue with the mediation as scheduled.

21    7.    Attached hereto as Exhibit 3 is a true and correct copy of an article dated March

22    26, 2008 that appeared on CNNMoney.com entitled "Corcept Therapeutics Complete $25

23    Million Private Equity Financing and Secures Committed Equity Financing Facility for up to $60

24    million." The article explains that "Kingsbridge [Capital Limited] has committed to provide up

25    to $60 million of capital during the next three years . . .. Corcept [also] sold approximately 8.9

26    million shares of its common stock . . . resulting in gross proceeds of approximately $25.3

27    million."

28

Decl. of Robert A. Bleicher ISO Motion to Stay Pending the Disposition    Case No.: C 07-03795 JW
Of Def. Dr. Anthony Rothschild's Appeal to the Ninth Circuit

1        8.      On or about March 10, 2008, Plaintiff Dr. Alan Schatzberg was elected President

2    of the American Psychiatric Association.

3        I declare under penalty of perjury under the laws of the United States that the foregoing is

4    true and correct.  Executed on April 28, 2008, at San Francisco, California.

5

6                                            _____

7                                          Robert A. Bleicher

8

9    # 5284409_v2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. of Robert A. Bleicher ISO Motion to Stay Pending the Disposition        Case No.: C 07-03795 JW
Of Def. Dr. Anthony Rothschild's Appeal to the Ninth Circuit

# EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Corcept Therapeutics, Inc., et al.,

                Plaintiffs,

    v.

Anthony Rothschild,

                Defendant.

NO. C 07-03795 JW

**ORDER DENYING DEFENDANT'S VARIOUS MOTIONS**

## I. INTRODUCTION

Corcept Therapeutics, Inc., Dr. Joseph K. Belanoff, and Dr. Alan F. Schatzberg (collectively, "Plaintiffs") bring this diversity action against Dr. Anthony Rothschild ("Defendant") for alleged defamation, intentional infliction of emotional distress, and interference with prospective business relations. Plaintiffs allege they were injured when Defendant made certain internet postings regarding Plaintiffs and their products.

Presently before the Court are Defendant's motions to 1) dismiss for lack of personal jurisdiction, 2) dismiss for improper venue or to transfer, and 3) strike under California's Strategic Lawsuit Against Public Participation statute.[1] The Court conducted a hearing on November 19,

---

[1] (Defendant Dr. Anthony Rothschild's Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Personal Jurisdiction, hereafter, "Motion to Dismiss," Docket Item No. 15; Defendant Dr. Anthony Rothschild's Memorandum of Points and Authorities in Support of Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer for Improper Venue or Convenience, hereafter, "Motion to Transfer," Docket Item No. 12; Motion to Strike Pursuant to California's Strategic Lawsuit Against Public Participation (Anti-SLAPP) Statute, hereafter, "Motion to Strike," Docket Item No. 22.)

United States District Court
For the Northern District of California

1    2007. Based on the papers submitted to date and oral arguments of counsel, the Court DENIES

2    Defendant's various motions.

3                                    **II. BACKGROUND**

4        In an Amended Complaint[2] filed on June 21, 2007, Plaintiffs allege as follows:

5            Plaintiffs Belanoff and Schatzberg, both California residents, are co-founders of

6    Plaintiff Corcept Therapeutics, Inc.[3] Corcept Therapeutics, Inc. ("Corcept"), is a Delaware

7    Corporation with its principal place of business in Menlo Park, California. (Id. ¶ 2.) Corcept

8    develops drugs for the treatment of severe psychiatric and metabolic diseases. (Id. ¶ 9.)

9    Corcept's lead product is Corlux, targeted for the treatment of psychotic major depression.

10   (Id.)

11           Defendant Rothschild is a Professor of Psychiatry at the University of Massachusetts

12   Medical School. (Id. ¶ 5.) Rothschild resides and works in Massachusetts. (Id.)

13           Between November 2002 and September 2005, Rothschild made several prank phone

14   calls.[4] During some of these phone calls, Rothschild cancelled hotel reservations and

15

16       [2] On October 25, 2005, Plaintiffs filed an action in California State Court against an
     unknown number of Defendants. (Plaintiffs' Opposition to Rothschild's Motion to Dismiss for
17   Alleged Lack of Personal Jurisdiction at 3, hereafter, "Opposition to Dismiss," Docket Item No. 59.)
     After conducting certain discovery, Plaintiffs named Rothschild as a Defendant and filed an
18   amended complaint. On July 24, 2007, Defendant timely removed the action to the Northern
     District of California based on the federal court's diversity jurisdiction. (See Docket Item No. 1.)
19

20       [3] (First Amended Complaint for Defamation, Intentional Infliction of Emotional Distress,
     and Interference with Prospective Economic Relations ¶¶ 3-4, hereafter, "FAC," Docket Item No.
21   1.)

22       [4] To put the Complaint in context, Plaintiffs represent as follows:
             In 1999, Belanoff hired Rothschild to conduct early stage and follow up clinical trials
23   of Corlux. (Belanoff Decl. ¶ 3.) In 2001, while Corcept was preparing for an Initial Public
     Offering, Rothschild complained to Belanoff that he had not received any shares in the
24   company and later demanded recognition as a co-inventor of Corlux. (Id. ¶ 4.) Corcept
     offered Rothschild stock options but rejected his inventorship claims. (Id.) Due to market
25   conditions, Corcept did not complete its IPO at that time. (Id.) The telephone harassment
     began soon after. (Id. ¶ 5.)
26           In 2003, McClean Hospital, where Rothschild conducted the clinical trials for
     Corcept, also asserted a patent claim on behalf of Rothschild against Stanford University, as
27   patentee of Corlux. (Id. ¶ 6.) That dispute was arbitrated in Stanford's favor. (Id.) After the
     arbitration, the internet postings began. (Id. ¶ 7.)

28
                                        2

1    speaking engagements for Belanoff, Schatzberg, and other Corcept employees. (FAC ¶ 30.)

2    During other phone calls, Rothschild impersonated doctors and news reporters, and left

3    messages regarding feigned investigations into conflicts of interest between Belanoff,

4    Schatzberg, Corcept, and other companies. During one phone call, Rothschild left a false

5    message for Belanoff instructing Belanoff to contact his wife at the hospital in connection

6    with an emergency. (Id.)

7           On March 17, 2005, Rothschild created an account with Yahoo! Inc. under the user

8    name "corceptisafraud" and the registered name, "Mr. Alan Schatzberg." (Id. ¶ 11.) On that

9    same date, Rothschild also created the email account "corcept@hotmail.com" under the

10   name "Mr. Alan Schatzberg." (Id. ¶ 13.)

11          On August 23, 2005, Rothschild created a second account with Yahoo! Inc. under the

12   user name "stanfordinsider"[5] and the registered name, "Ms. Melissa Schatzberg."[6] (Id. ¶ 12.)

13   On that same date, Rothschild also created the email account

14   "corcepttherapeutics@hotmail.com" under the name "Ms. Melissa Schatzberg." (Id. ¶ 14.)

15          Using the "corceptisafraud" and "stanfordinsider" accounts, Rothschild posted

16   several defamatory statements on Yahoo! internet message boards regarding Corlux.

17   On the basis of the allegations outlined above, Plaintiffs allege four causes of actions: 1)

18   defamation for internet postings made under the user name "corceptisafraud;" 2) defamation for

19   internet postings made under the user name "stanfordinsider;" 3) intentional infliction of emotion

20   distress; and 4) interference with prospective economic relations.

21

22

23

---

24          [5] Corlux is developed under an exclusive license from Stanford University. (Declaration of
25   Joseph Belanoff in Support of Plaintiffs' Opposition to Rothschild's Motions to Dismiss and for
     Change of Venue ¶ 2, hereafter, "Belanoff Decl.," Docket Item No. 66.) Belanoff and Schatzberg
26   are faculty members of the Department of Psychiatry and Behavioral Sciences at Stanford
     University. (Opposition to Dismiss at 1.)

27          [6] Melissa Schatzberg is Alan Schatzberg's daughter. (Complaint ¶ 12.)

28

3

United States District Court
For the Northern District of California

1    Presently before the Court are Defendant's motions to 1) dismiss for lack of personal

2    jurisdiction, 2) dismiss for improper venue or transfer, and 3) strike under California's Strategic

3    Lawsuit Against Public Participation statute.

4    ### III. STANDARDS

5    **A.    Motion to Dismiss for Lack of Personal Jurisdiction**

6    Motions to dismiss for lack of personal jurisdiction are brought pursuant to Rule 12(b)(2) of

7    the Federal Rules of Civil Procedure. Although the defendant ordinarily files such a motion, it is the

8    plaintiff that bears the burden of proof as to the necessary jurisdictional facts. Flynt Distrib. Co. v.

9    Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984) . However, the plaintiff need only make a prima facie

10   showing that personal jurisdiction exists if the defendant files its motion to dismiss as an initial

11   response. Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

12   To make a prima facie showing, the plaintiff must demonstrate facts that if true would support

13   jurisdiction over the defendant. Data Disc, 557 F.2d at 1285. The plaintiff must make a prima facie

14   showing as to each defendant. Rush v. Savchuk, 444 U.S. 320, 332 (1980).

15   A federal district court may exercise personal jurisdiction to the same extent as a state court

16   of the state in which the district court sits. Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd., 484

17   U.S. 97, 108 (1987). Since California courts extend jurisdiction to the very limits of the federal

18   Constitution, federal courts are only required to determine whether the exercise of jurisdiction would

19   comport with due process. See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784

20   F.2d 1392, 1396 (9th Cir. 1986)

21   Constitutional due process concerns are satisfied when a nonresident defendant has "certain

22   minimum contacts with the forum such that the maintenance of the suit does not offend traditional

23   notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310,

24   316 (1945).

25   **B.    Motion to Dismiss for Improper Venue or to Transfer**

26   Pursuant to Federal Rule of Civil Procedure 12(b)(3), a complaint may be dismissed if it is

27   brought in an improper venue. The plaintiff bears the burden of showing that venue is proper in the

28

4

1   chosen district. <u>Koresko v. Realnetworks, Inc.</u>, 291 F. Supp.2d 1157, 1160 (E.D. Cal. 2003);

2   <u>McCaskey v. Continental Airlines, Inc.</u>, 133 F. Supp.2d 514, 523 (S.D. Tex. 2001); <u>American

3   Homecare Fed'n v. Paragon Sci. Corp.</u>, 27 F. Supp.2d 109, 112 (D. Conn. 1998).

4        Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the pleadings

5   need not be accepted as true and the court may consider supplemental written materials and consider

6   facts outside of the pleadings in deciding a Rule 12(b)(3) motion. <u>Murphy v. Schneider Nat'l, Inc.</u>,

7   362 F.3d 1133, 1337 (9th Cir. 2004); <u>Walker v. Carnival Cruise Lines</u>, 107 F. Supp.2d 1135, 1137

8   n.2 (N.D. Cal. 2000). If genuine contested factual issues are presented, the court is obligated to

9   draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party.

10   <u>Murphy</u>, 362 F.3d at 1138-1140. Alternatively, the district court may hold a pre-trial evidentiary

11   hearing on the disputed facts or may deny the motion with leave to re-file if further development of

12   the record would eliminate any genuine factual issues. <u>Id.</u> at 1139.

13        Where venue is improper, the district court has the discretion to dismiss the case under Rule

14   12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C.

15   § 1406(a). <u>See King v. Russell</u>, 963 F.2d 1301, 1304 (9th Cir. 1992); <u>District No. 1 Pacific Coast

16   District v. Alaska</u>, 682 F.2d 797, 799 (9th Cir. 1982); <u>Citizens For A Better Environment v. Union

17   Oil Co.</u>, 861 F. Supp. 889, 897 (N.D. Cal. 1994). In determining whether to transfer or dismiss a

18   case, the court may consider: the applicable statute of limitations, the relative injustice imposed on

19   the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has

20   requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously

21   improper. <u>See Johnson v. Payless Drug Stores Northwest, Inc.</u>, 950 F.2d 586, 588 (9th Cir. 1992).

22   "A determination of improper venue does not go to the merits of the case and therefore must be

23   without prejudice." <u>See In re Hall, Bayoutree Assocs., Ltd.</u>, 939 F.2d 802, 804 (9th Cir. 1991).

24        Whether a transfer or a dismissal is in the interest of justice rests within the discretion of the

25   district court. <u>Naartex Consulting Corp. v. Watt</u>, 722 F.2d 779, 789 (D.C. Cir. 1983) (citing <u>Cook v.

26   Fox</u>, 537 F.2d 370, 371 (9th Cir. 1976)).

27

28

5

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1

### IV.  DISCUSSION

2    **A.    <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>**

3    Defendant moves to dismiss on the ground that the Northern District lacks personal

4    jurisdiction over him because his contacts with California are minimal and he has not purposefully

5    availed himself of the protection of California law.  (Motion to Dismiss at 1.)  The Court proceeds to

6    consider whether it has general or specific jurisdiction over Defendant.

7    **1.    General Jurisdiction**

8    General jurisdiction is appropriate when a defendant engages in continuous and systematic

9    contacts that "approximate physical presence in the forum state," even if the underlying cause of

10   action is unrelated to those general activities.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>,

11   466 U.S. 408, 416 (1984); <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801 (9th Cir.

12   2004).  The inquiry is fact-intensive; the court should consider a number of factors, including

13   "whether the defendant makes sales, solicits or engages in business in the state, serves the state's

14   markets, designates an agent for service of process, holds a license, or is incorporated there."

15   <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433 F.3d 1163 (9th Cir. 2006).  The necessary level of

16   contacts with a forum state necessary to establish general jurisdiction is "quite high."  <u>Shute v.</u>

17   <u>Carnival Cruise Lines</u>, 897 F.2d 377, 380 (9th Cir. 1990).

18   With respect to his activities in California, Defendant declares that he has never 1) lived in

19   California, 2) owned nor rented real property in California, 3) owned personal property in

20   California, 3) held any ownership stake in a California entity, 4) maintained any bank accounts in

21   California, 5) paid taxes in California, or 6) maintained a mailing address or telephone number in

22   California.[7]  Defendant has visited California three times in the last ten years, staying for no more

23   than three days on each visit.  (Rothschild Decl. ¶ 5.)  Further, other than the attorneys retained to

24   defend this lawsuit, Defendant does not have any representatives in California.  (<u>Id.</u> ¶ 3.)  Plaintiffs

25   fail to refute Defendant's declaration.  Since Plaintiffs bear the burden of proof as to the necessary

26   _____

27   [7] (Declaration of Dr. Anthony Rothschild, MD in Support of Motions to Dismiss for Lack of
Personal Jurisdiction and Improper Venue ¶ 3, hereafter, "Rothschild Decl.," Docket Item No. 17.)

28

1  jurisdictional facts, and have failed to do so, the Court finds that Defendant does not have

2  continuous and systematic contacts with California sufficient for general jurisdiction.

3      **2.    Specific Jurisdiction**

4      Absent general jurisdiction, a court may still hear a case where specific jurisdiction is

5  established.  The Ninth Circuit uses the following test to evaluate a defendant's contacts for

6  purposes of determining whether specific jurisdiction applies:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2)  The claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3)  The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

11  Schwarzenegger, 374 F.3d at 802.  The first prong of the test "may be satisfied by purposeful

12  availment of the privilege of doing business in the forum; by purposeful direction of activities at the

13  forum; or by some combination thereof."  Yahoo! Inc. v. La Ligue Contre Le Racisme Et

14  L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

16      In tort cases, the Ninth Circuit requires courts to focus on whether a defendant "purposefully

17  directs" conduct at the forum state by applying an "effects test" that considers where the defendant's

18  actions were felt, regardless of whether the actions themselves occurred within the forum.  See

19  Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)).  To meet

20  the effects test, "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly

21  aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

22  forum state."  Yahoo!, 433 F.3d at 1206-07 (noting that "the 'brunt' of the harm need not be suffered

23  in the forum state").

24      The first element of the effects test is an allegation that a defendant committed an

25  "intentional act."  Here, Defendant is alleged to have made the following postings under the

26  "corceptisafraud" user name:

United States District Court
For the Northern District of California

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

1)    There is no scientific evidence that [Corcept's] drug, RU-486 works for psychotic depression or anything else for that matter.
2)    Corcept knows all of this, namely, that there is no scientific evidence that [Corcept's] drug, RU-486 works for psychotic depression or anything else for that matter.
3)    Belanoff and Schatzberg . . . and other insiders are selling despite the stock selling at record lows. They know the drug does not work and will never be proven to work.

(FAC ¶ 16.) Defendant is also alleged to have made the following posting under the "stanfordinsider" user name:

1)    The insiders in Corcept know the data, have seen the data. The CEO is a psychiatrist. He has been selling shares as fast as he can. The CEO and the company create press releases to raise the price of the stock and then sell on the news. It strikes me as fraudulent.
2)    The word here at Stanford is that the Dean of the medical school has hired an outside expert panel to review Schatzberg's use of his Psychiatry Chair position to promote Corcepts' drug. My guess is the SEC will soon follow. Most of the Psyhiatric community believes the drug doesn't work and is not practical; it is unlikely the FDA will ever approve it. The Corcept founders realize this and . . . have been selling since the IPO (or having their proxy friends and family selling).
3)    4 cardiac related deaths in trial. Believed to be secondary to rise in cortisol in periphery after blockade of central cortisol receptor.

(Id. ¶ 23.) Plaintiffs allege that these statements are false and defamatory. (Id. ¶¶ 17, 24.) Defamation is an intentional tort and thus, Plaintiffs have satisfied the first prong of the effects test.

The second element of the effects test is "express aiming." The Ninth Circuit has held that "expressly aimed" means "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). However, the court has cautioned that any foreign act with foreseeable effects in the forum state does not always give rise to personal jurisdiction. Id. at 1087; see also Schwarzenegger, 374 F.3d at 804-05.

In this case, on the face of the Complaint, it is clear that Defendant's alleged defamatory postings were directed toward Plaintiffs. The impact of these statements was to injure Belanoff and Schatzberg at Stanford, where they are employed, and in California, where Corcept is located. Thus, a substantial effect of Defendant's alleged tort was to damage Plaintiffs' reputations in California. Plaintiffs have presented circumstantial evidence that Defendant knew Plaintiffs were residents of California at the time he made the postings. (See Balanoff Decl.)

8

**United States District Court**
For the Northern District of California

1    In sum, the Court finds that Plaintiffs' allegations establish a prima facie case for jurisdiction

2    under the effects test. Plaintiffs have alleged: (1) intentional conduct because Defendant indirectly

3    and directly is alleged to have committed an intentional tort against Plaintiffs; (2) conduct that was

4    expressly aimed at the forum because Defendant's tortious statements were directed at Plaintiffs in

5    California; and (3) conduct that caused harm that Defendant knew was likely to be suffered in the

6    forum state because California is Plaintiffs' residence and Corcept's principal place of business.

7        Once a plaintiff has shown that the defendant purposefully directed its actions at forum

8    residents, the defendant bears the burden of demonstrating that the court's exercise of jurisdiction

9    would be unreasonable. Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392,

10    1397 (9th Cir. 1986). Here, Defendant has failed to demonstrate that the Court's exercise of

11    jurisdiction would be unreasonable.

12        Accordingly, the Court DENIES Defendant's motion to dismiss for lack of personal

13    jurisdiction.

14    **B.    Motion to Dismiss for Improper Venue or to Transfer Venue**

15        Defendant moves to dismiss on the ground that the Northern District of California is an

16    improper venue. (Motion to Transfer at 1.) In the alternative, Defendant moves to transfer the

17    action to the District of Massachusetts for the convenience of the parties and in the interests of

18    justice. (Motion to Transfer at 10.)

19        In a diversity action, venue is generally proper where the defendant resides or where a

20    substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(a).

21    However, when the defendant removes an action from state court, 28 U.S.C. § 1441(a), which

22    governs removal of actions, determines whether venue is proper. See Polizzi v. Cowles Magazines,

23    Inc., 345 U.S. 663, 665 (1953). Under § 1441(a), venue is proper if the case is removed to the

24    district in which the state action was pending.[8]

25    _____

26    [8] Section 1441(a) provides, in pertinent part, "[e]xcept as otherwise expressly provided by
Act of Congress, any civil action brought in a State court of which the district courts of the United
27    States have original jurisdiction, may be removed by the defendant or the defendants, to the district
court of the United States for the district and division embracing the place where such action is
28    pending."

1    In this case, Defendant removed this action from the Superior Court of Santa Clara County,

2    which is located in the Northern District of California. (See FAC.) Therefore, venue is proper in the

3    Northern District. The Court proceeds to consider whether the case should be transferred to the

4    District of Massachusetts for the convenience of the parties.

5    Under 28 U.S.C. § 1404(a), a district court may transfer a case pending before it to "any

6    other district or division where it might have been brought." A plaintiff's choice of forum, however,

7    is accorded substantial weight, and a court will not grant a motion under 1404(a) unless the

8    defendant makes a strong showing of inconvenience. See Decker Coal Co. v. Commonwealth

9    Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The decision of whether to grant a motion under §

10   1404(a) turns on the facts of the particular case. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498

11   (9th Cir. 2000). Factors to be weighed in deciding such a motion include: (1) the location where the

12   relevant agreements were negotiated and executed; (2) the state which is most familiar with the

13   governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the

14   forum; (5) the contact relating to the plaintiff's cause of action in the chosen forum; (6) the

15   differences in the costs of litigation in the two forums; (7) the availability of compulsory process to

16   compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9)

17   the presence of a forum selection clause; and (10) the relevant public policy of the forum state. Id.

18   at 498-99.

19   In this case, Plaintiffs' claims arise under California law. Plaintiffs chose this forum because

20   the impact of Defendant's alleged tort was felt here. Plaintiffs' alleged stock sales and the alleged

21   evaluation by the Stanford panel occurred in California. Further, many witnesses and sources of

22   proof are located in California. On balance, the Court finds that the Jones factors weigh against

23   transfer to the District of Massachusetts. Accordingly, the Court DENIES Defendant's motion to

24   transfer venue.

25   **D.    Motion to Strike Under California's Anti-SLAPP Statute**

26   Defendant moves to strike Plaintiffs' Complaint on the ground that the postings are protected

27   by California's anti-SLAPP statute. (Motion to Strike at 3.)

28

10

1         The Ninth Circuit has "determined that California anti-SLAPP motions to strike and

2    entitlement to fees and costs are available to litigants proceeding in federal court, and that these

3    provisions do not conflict with the Federal Rules of Civil Procedure." Thomas v. Fry's Electronics,

4    Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (citing United States ex rel Newsham v. Lockheed

5    Missiles & Space Co., 190 F.3d 963, 972-73 (9th Cir. 1999)).  The anti-SLAPP statute was passed in

6    response to concern over an increase in meritless lawsuits brought against private individuals to gain

7    economic advantage and to deter them from exercising their political and legal rights. Wilcox v.

8    Superior Court, 27 Cal. App. 4th 809, 816 (1994).  The anti-SLAPP statute permits a special motion

9    to strike such claims; it provides:

10       A cause of action against a person arising from any act of that person in furtherance of the
     person's right of petition or free speech under the United States or California Constitution in
11   connection with a public issue shall be subject to a special motion to strike, unless the court
     determines that the plaintiff has established that there is a probability that the plaintiff will
12   prevail on the claim.

13   Cal. Civ. Proc. Code § 425.16(b)(1).

14        To prevail on an Anti-SLAPP motion to strike, a defendant must first demonstrate that

15   plaintiff's defamation claim arises from a protected activity; that is, defendant must show that the act

16   of which plaintiff complains was taken "in furtherance of the [defendant's] right of petition or free

17   speech under the United States or California Constitution in connection with a public issue" as

18   defined in the Anti-SLAPP statute. Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67

19   (2002).  Second, "[i]f the court finds such a showing has been made, it then determines whether the

20   plaintiff has demonstrated a probability of prevailing on the claim." Id.  Although not defined in the

21   anti-SLAPP statute, a matter of public interest is one that is "something of concern to a substantial

22   number of people." Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1132 (2003) (citing Dun &

23   Bradstreet v. Greenmoss Builders, 472 U.S. 749, 762 (1985)).  "[I]t is the principal thrust or

24   gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies."

25   Martinez v. Metabolife Internat. Inc., 113 Cal. App. 4th 181, 188 (2003).  "[W]here a cause of action

26   refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing

27   on any part of its claim, the cause of action is not meritless and will not be subject to the anti-SLAPP

28

United States District Court
For the Northern District of California

1  procedure." <u>Mann v. Quality Old Time Service, Inc.</u>, 120 Cal. App. 4th 90, 106 (2004) (internal

2  citation omitted).

3        In this case, Defendant contends that Plaintiffs' drug is an issue of public interest and

4  therefore statements about it are protected.  However, since the case is at the pleading stage, the

5  Court does not have sufficient information to determine whether (1) Plaintiffs are persons in the

6  public eye; (2) Defendant's postings are about subjects that could affect large numbers of people

7  beyond the direct participants; and (3) Defendant's postings are about subjects that involve a topic

8  of widespread public interest.  Further, from the four corners of the Complaint, it appears that

9  Plaintiffs' causes of action refer to at least some unprotected activity and Plaintiffs have

10  demonstrated a probability of prevailing on those claims.

11        Accordingly, the Court DENIES Defendant's motion to strike under California's anti-SLAPP

12  statute.

13                          **V.  CONCLUSION**

14        The Court DENIES Defendant's Motions to (1) Dismiss for Lack of Personal Jurisdiction,

15  (2) Dismiss for Improper Venue or to Transfer, and (3) Strike under California's anti-SLAPP statute.

16        The parties shall appear for a Case Management Conference on **May 5, 2008 at 10 a.m.**

17  Pursuant to the Civil Local Rules of Court, the parties shall meet and confer and file a Joint Case

18  Management Conference Statement on or before **April 25, 2008.**

19

20

Dated: March 31, 2008

21                                        _James Ware_____

                                          JAMES WARE
22                                        United States District Judge

23

24

25

26

27

28

                              12

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Christine S. Watson cwatson@carrferrell.com
Robert A. Bleicher robert.bleicher@hklaw.com
Shelley Gershon Hurwitz shelley.hurwitz@hklaw.com
Stuart C. Clark sclark@carrferrell.com


Dated: March 31, 2008                           Richard W. Wieking, Clerk


                                    By:    /s/ JW Chambers
                                           Elizabeth Garcia
                                           Courtroom Deputy

**United States District Court**
For the Northern District of California

# EXHIBIT 2



1  Robert A. Bleicher (Bar No. 111334)
   HOLLAND & KNIGHT LLP
2  50 California Street, 28th Floor
   San Francisco, California 94111
3  Telephone: (415) 743-6900
   Facsimile: (415) 743-6910
4
   Shelley G. Hurwitz (SBN 217566)
5  HOLLAND & KNIGHT LLP
   633 W. Fifth Street, 21st Floor
6  Los Angeles, California 90071
   Telephone: (213) 896-2400
7  Facsimile: (213) 896-2450

8  Attorneys for Defendant
   Anthony Rothschild
9

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                   SAN JOSE DIVISION

14  CORCEPT THERAPEUTICS, INC.,        No._____
    Corporation, JOSEPH K. BELANOFF, an
15  individual, ALAN F. SCHATZBERG, an  Case No.: C 07-03795 JW
    individual
16                                      NOTICE OF APPEAL TO THE UNITED
17         Plaintiffs/Appellees,        STATES COURT OF APPEAL FOR THE
                                        NINTH CIRCUIT
18         vs.

19  ANTHONY ROTHSCHILD, DOE 1, an
    individual, DOE 2, an individual, and DOES 3
20  through 20, inclusive,

21         Defendant/Appellant.

22

23

24

25

26

27

28



ORIGINAL
FILED

08 APR 16 PM 3: 44

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA S.J.



## NOTICE OF APPEAL

Defendant Dr. Anthony Rothschild, the defendant herein, ("defendant"), appeals to the United States Court of Appeals for the Ninth Circuit from the order of the district court denying defendant's Motion to Strike Under California's Anti-SLAPP Statute, entered in this case on March 31, 2008 by the Hon. James Ware, Judge, United States District Court, Northern District California, San Jose Division.

DATED: April 16, 2008

                                HOLLAND & KNIGHT LLP

                                Robert A. Bleicher
                                Shelley G. Hurwitz

                        Attorneys for Defendant Dr. Anthony Rothschild

# 5270360_v1

-i-

Notice of Appeal                                    Case No.: C 07-03795 JW



1   Robert A. Bleicher (Bar No. 111334)
    HOLLAND & KNIGHT LLP
2   50 California Street, 28th Floor
    San Francisco, California 94111
3   Telephone: (415) 743-6900
    Facsimile: (415) 743-6910
4
    Shelley G. Hurwitz (SBN 217566)
5   HOLLAND & KNIGHT LLP
    633 W. Fifth Street, 21st Floor
6   Los Angeles, California 90071
    Telephone: (213) 896-2400
7   Facsimile: (213) 896-2450

8   Attorneys for Defendant
    Anthony Rothschild
9

10

11                  UNITED STATES COURT OF APPEALS

12                       FOR THE NINTH CIRCUIT

13  ANTHONY ROTHSCHILD

14          Defendant and Appellant          No._____

15                                           Dist. Ct. Case No.: C 07-03795 JW
                                             (N.D. San Jose)
16            v.
                                             REPRESENTATION STATEMENT
17  CORCEPT THERAPEUTICS, INC.,
    Corporation, JOSEPH K. BELANOFF, an
18  individual, ALAN F. SCHATZBERG, an
    individual
19
            Plaintiffs and Respondents
20

21

22

23

24

25

26

27

28

Representation Statement                              Case No.: C 07-03795 JW




1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPRESENTATION STATEMENT

The undersigned represents Dr. Anthony Rothschild, defendant and appellant in this matter, and no other party.  Attached is a service list that shows all of the parties to the action below, and identifies their counsel by name, firm, address, and telephone number (FRAP 12(b); Circuit Rule 3-2(b)).

DATED:  April 16, 2008

HOLLAND & KNIGHT LLP

Robert A. Bleicher
Shelley G. Hurwitz
Attorneys for Defendant Dr. Anthony Rothschild

-1-

Representation Statement

Case No.: C 07-03795 JW

 

1

## Parties and Counsel

2

3    Plaintiffs and Respondents: Corcept Therapeutics, Inc., Joseph K. Belanoff, and Alan F.

Schatzberg.  Represented by:
4

5    Stuart C. Clark
Christine S. Watson
6    CARR & FERRELL LLP
2200 Geng Road
7    Palo Alto, CA  94303
Telephone: (650) 812-3400
8    Facsimile: (650) 812-3444

9

10    Defendant and Appellant: Dr. Anthony Rothschild.  Represented by:

11

Robert A. Bleicher
12    HOLLAND & KNIGHT LLP
50 California Street, 28th Floor
13    San Francisco, California  94111
Telephone: (415) 743-6900
14    Facsimile: (415) 743-6910

15    Shelley G. Hurwitz
HOLLAND & KNIGHT LLP
16    633 W. Fifth Street, 21st Floor
Los Angeles, California  90071
17    Telephone: (213) 896-2400
Facsimile: (213) 896-2450

18

19

20

21

22

23

24    # 5270769_v1

25

26

27

28

-2-

Representation Statement

Case No.: C 07-03795 JW

# EXHIBIT 3



A Service of CNN, Fortune & Money

| Symbol | | Get Quote | Keyword |

Home    Business News    Markets    Personal Finance    Real Estate    Technology    Small Business    Luxury

# Corcept Therapeutics Completes $25 Million Private Equity Financing and Secures Committed Equity Financing Facility for up to $60 Million

March 26, 2008: 09:00 AM EST

**marketwire**

Corcept Therapeutics Incorporated (NASDAQ: CORT) today confirmed that its previously announced private placement of Corcept common stock and warrants has been completed. Corcept sold approximately 8.9 million shares of its common stock at $2.77 per share, and warrants to purchase approximately 4.5 million shares of its common stock at $0.125 per warrant, resulting in gross proceeds of approximately $25.3 million.

The shares and warrants sold in the private placement and the shares issuable upon the exercise of the related warrants have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or state securities laws, and may not be offered or sold in the United States without being registered with the Securities and Exchange Commission ("SEC") or through an applicable exemption from SEC registration requirements. The shares and warrants were offered and sold only to accredited investors. Corcept has agreed to file a registration statement with the SEC covering the resale of the shares issued in the private placement and the shares issuable upon the exercise of the warrants.

Corcept also announced today that it has entered into a Committed Equity Financing Facility (CEFF) with Kingsbridge Capital Limited (Kingsbridge), a private investment group. Under the terms of the agreement, Kingsbridge has committed to provide up to $60 million of capital during the next three years through the purchase of newly-issued shares of Corcept's common stock. The maximum number of shares that can be sold by Corcept under this agreement is approximately 9.6 million shares. Under the terms of the agreement, the determination of the exact timing and amount of any CEFF financings will be made solely by Corcept, subject to certain conditions. The actual amount of funds that can be raised under this agreement will be dependent on the number of shares actually sold under the agreement and the market value of Corcept's stock during the pricing periods of each sale.

Certain details of the CEFF are as follows:

    --   Under the terms of the agreement, Corcept has access to up to $60
         million from Kingsbridge in exchange for newly-issued shares of Corcept's
         common stock for a period of up to three years after the Securities and
         Exchange Commission declares effective the registration statement to be

filed by Corcept covering the resale of the shares of common stock issuable in connection with the CEFF and the shares of common stock underlying the warrant discussed below.

-- Corcept can access capital under the CEFF in tranches of up to 1.25% of Corcept's market capitalization at the time of the initiation of the draw down period, or, at Corcept's option, the lesser of (a) 2.5% of Corcept's market capitalization at the time of the initiation of the draw down period, and (b) an alternative draw down amount as defined in the agreement; provided, however, that in no event may the maximum draw down amount exceed $10 million per tranche, subject to certain conditions.

-- Each tranche will be issued and priced over an eight-day pricing period. Kingsbridge will purchase shares of common stock pursuant to the CEFF at discounts ranging from 6% to 10%, depending on the volume weighted average price of the common stock during the eight-day pricing period, provided that the minimum acceptable purchase price for any shares to be issued to Kingsbridge during the eight-day period is determined by the higher of $1.50 or 90% of Corcept's common stock closing price the day before the commencement of each draw down.

-- Throughout the term of the agreement, Kingsbridge has agreed that neither it, nor any of affiliates, will enter into or execute a short sale of any of Corcept's securities.

-- Corcept is not obligated to utilize any of the $60 million available under the CEFF and there are no minimum commitments or minimum use penalties. The CEFF agreement does not contain any restrictions on Corcept's operating activities, automatic pricing resets or minimum market volume restrictions.

-- The agreement does not prohibit Corcept from conducting additional debt or equity financing, other than financings similar to the CEFF and other future priced securities.

-- In connection with the CEFF, Corcept issued a warrant to Kingsbridge to purchase up to 330,000 shares of common stock at an exercise price of $3.525 per share which represents a 125% premium over the average of the closing bid prices of Corcept's common stock during the 5 trading days preceding the signing of the agreement. The warrant will become exercisable after the six month anniversary of the date of the agreement. The warrant will remain exercisable, subject to certain exceptions, until five years after the date it becomes exercisable.

The warrant issued to Kingsbridge and the shares of common stock issuable under the CEFF, and the shares issuable upon the exercise of the warrant, have not been registered under the Securities Act, or state securities laws, and may not be offered or sold in the United States without being registered with the SEC or through an applicable exemption from SEC registration requirements. Corcept has agreed to file a registration statement with the SEC covering the resale of the shares issuable under the CEFF and the shares issuable upon the exercise of the warrant within 60 days of the date of the agreement.

Corcept intends to use the proceeds of these financings to conduct its new Phase 3 clinical trial evaluating CORLUX® for the treatment of the psychotic features of psychotic depression, to conduct a Phase 3 clinical trial for CORLUX for the treatment of Cushing's Syndrome, to conduct clinical trials to further evaluate the management of weight gain induced by antipsychotic medications, to continue development of its proprietary, selective GR-II antagonists and for general corporate purposes, including working capital.

This news release shall not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of any of the securities referred to in this news release in any state in which such offer, solicitation or sale would be unlawful prior to the registration or qualification under the securities laws of any such state. Any offering of Corcept Therapeutics Incorporated common stock under the resale registration statements referred to in this news release will be made only by means of a prospectus.

Statements made in this news release, other than statements of historical fact, are forward-looking statements. Such statements include, without limitation, the projected date for the filing of registration statements for resale of the shares referred to in this news release, the projected use of the proceeds from the financings referred to in this news release and the estimation of funds that might be raised under the CEFF. Forward-looking statements are subject to a number of known and unknown risks and uncertainties that might cause actual results to differ materially from those expressed or implied by such statements. These and other risk factors are set forth in Corcept's SEC filings, all of which are available from our website (www.corcept.com) or from the SEC's website (www.sec.gov). We disclaim any intention or duty to update any forward-looking statement made in this news release.

CONTACT:
Joseph K. Belanoff, M.D.
Chief Executive Officer
Corcept Therapeutics
650-327-3270
Email Contact
www.corcept.com

■

### More Markets

Big advance on Wall Street

Rich old men get their way, but...

Oil retreats, but gas continues to rise

### The Hot List

100 best places to start a business

Diesel: The truck stops here

'You're working for gas now'

© 2008 Cable News Network. A Time Warner Company. All Rights Reserved. Terms under which this ser

| Home | Portfolio | Calculators | Contact Us | Newsletters | Podcasts | RSS | Mobile |
| Advertise with Us | Magazine Customer Service | Download Fortune Lists | Reprints | Career Opportunities | Spec |

Live Quotes automatically refresh, but individual equities are delayed 15 minutes for Nasdaq, and 20 minutes for other exchange: which is delayed by two minutes. All times are ET.
* : Time reflects local markets trading time. † - Intraday data delayed 15 minutes for Nasdaq, and 20 min Copyright © 2008 BigCharts.com Inc. All rights reserved. Please see our Terms of Use.MarketWatch, the MarketWatch logo, Inc.Intraday data delayed 15 minutes for Nasdaq, and 20 minutes for other exchanges. All Times are ET.Intraday data provided b Terms of Use.Historical, current end-of-day data, and splits data provided by FT Interactive Data.Fundamental data provided Inc..Earnings data provided by FactSet CallStreet, LLC.