1  Robert A. Bleicher (Bar No. 111334)
   HOLLAND & KNIGHT LLP
2  50 California Street, 28th Floor
   San Francisco, California 94111
3  Telephone: (415) 743-6900
   Facsimile: (415) 743-6910
4
   Shelley G. Hurwitz (SBN 217566)
5  HOLLAND & KNIGHT LLP
   633 W. Fifth Street, 21st Floor
6  Los Angeles, California 90071
   Telephone: (213) 896-2400
7  Facsimile: (213) 896-2450
8  Attorneys for Defendant
   Anthony Rothschild
9

10                 UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                      SAN JOSE DIVISION

13

14  CORCEPT THERAPEUTICS, INC.,            Case No.: C 07-03795 JW
    Corporation, JOSEPH K. BELANOFF, an
15  individual, ALAN F. SCHATZBERG, an     **APPENDIX OF NON-FEDERAL**
    individual                            **AUTHORITIES IN SUPPORT OF**
16                                         **MOTION TO STAY PENDING THE**
                                           **DISPOSITION OF DEFENDANT DR.**
17              Plaintiffs,                **ANTHONY ROTHSCHILD'S APPEAL TO**
                                           **THE NINTH CIRCUIT E**
18       vs.
                                           **Date:** June 9, 2008
19  ANTHONY ROTHSCHILD, DOE 1, an          **Time:** 9:00 am
    individual, DOE 2, an individual, and DOES 3   **Courtroom:** 8
20  through 20, inclusive,                 **Judge:** Hon. James Ware

21              Defendants.                [Filed concurrently with Memo of Points &
                                           Authorities, Notice of Motion, and [Proposed]
22                                         Order]

23

24

25

26

27

28

                              - 1 -

## APPENDIX OF NON-FEDERAL AUTHORITIES

Dr. Anthony Rothschild respectfully submits the following appendix of California state authorities in support of the Motion To Stay Pending The Disposition Of Defendant Dr. Anthony Rothschild's Appeal To The Ninth Circuit as follows:

1.    *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2002).

2.    *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*, 99 Cal. App. 4th 1179 (2002).

3.    *People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th 1315 (2004).

4.    *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068 (2001).

5.    *Varian Medical Systems, Inc. v. Delfino*, 35 Cal. 4th 180 (2005).

6.    California Code of Civil Procedure §425.16.

DATED: April 28, 2008

Respectfully submitted,
HOLLAND & KNIGHT LLP

By: _____
Robert A. Bleicher
Shelley G. Hurwitz
Attorneys for Defendant Anthony Rothschild

# 5297366_v1

Non-Federal Authorities                                        Case No.: C 07-03795 JW

**EXHIBIT 1**



52 P.3d 685                                                                    Page 1
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
**(Cite as: 29 Cal.4th 53)**

▷
EQUILON ENTERPRISES, LLC, Plaintiff and Appellant, v. CONSUMER CAUSE, INC., Defendant and Respondent.
Cal. 2002.

Supreme Court of California
EQUILON ENTERPRISES, LLC, Plaintiff and Appellant,
v.
CONSUMER CAUSE, INC., Defendant and Respondent.
**No. S094877.**

Aug. 29, 2002.

## SUMMARY

The successor-in-interest to two oil companies brought an action against a consumer group for declaratory and injunctive relief, seeking to invalidate defendant's notice of its intent to sue plaintiff's predecessors for pollution of groundwater under Prop. 65 and to bar defendant from proceeding with such action. The trial court granted defendant's motion to strike the complaint on the ground that it was a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) and entered a judgment of dismissal. (Superior Court of Los Angeles County, No. BC202502, Barbara Ann Meiers, Judge.) The Court of Appeal, Second Dist., Div. Two, No. B130701, affirmed.

The Supreme Court affirmed the judgment of the Court of Appeal. The court held that the trial court properly granted defendant's motion to strike plaintiff's complaint. The pleadings and the affidavits submitted by the parties established that plaintiff's action for declaratory and injunctive relief arose from defendant's activity in furtherance of its constitutional rights of speech or petition-the filing of Prop. 65 intent-to-sue notices. Since the trial court also found that plaintiff had not established a probability of prevailing on its claim, the trial court properly granted defendant's motion. The court further held that defendant faced no additional requirement of proving plaintiff's subjective intent. Interpreting Code Civ. Proc., § 425.16, in accordance with its plain language, as encompassing unsubstantiated causes of action arising from protected speech or petitioning, without regard to the subjective intent of the plaintiff, both maximizes the statute's tendency to encourage continued participation in matters of public significance and conforms to the Legislature's express requirement of broad construction. Imposition of a requirement that the defendant prove that the plaintiff intended to chill the defendant's constitutional rights would contravene public policy by adding a needless burden to defendants seeking relief from SLAPP suits. (Opinion by Werdegar, J., expressing the unanimous view of the court.)

## HEADNOTES

Classified to California Digest of Official Reports

**(1a, 1b, 1c, 1d, 1e) Pleading § 93--Motion to Strike Pleading as SLAPP Suit--Whether Defendant Must Demonstrate Plaintiff's Intent to Chill Defendant's Constitutional Rights.**
A defendant moving to strike a cause of action on the ground that it is a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) need not demonstrate that the plaintiff brought the action with the intent of chilling the defendant's exercise of constitutional speech or petition rights. There is nothing in the statute that requires a court to engage in an inquiry as to the plaintiff's subjective motivations. Interpreting Code Civ. Proc., § 425.16, in accordance with its plain language, as encompassing unsubstantiated causes of action arising from protected speech or petitioning, without regard to the subjective intent of the plaintiff, both maximizes the statute's tendency to encourage continued participation in matters of public significance and conforms to the Legis-

52 P.3d 685                                                                                                Page 2
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
(Cite as: 29 Cal.4th 53)

lature's express requirement of broad construction. When a defendant establishes that the challenged lawsuit arose from an act in furtherance of the defendant's right of petition or free speech, the court may presume the purpose of the action was to chill the defendant's exercise of his or her constitutional rights under U.S. Const., 1st Amend. The plaintiff must then rebut the presumption by showing a reasonable probability of success on the merits. An intent-to-chill proof requirement is not constitutionally compelled. Further, the fee-shifting provisions (Code Civ. Proc., § 425.16, subd. (c)) do not overburden plaintiffs who exercise their First Amendment right of petition by filing lawsuits. Finally, imposition of an intent-to-chill proof requirement would contravene public policy by adding a needless burden to defendants seeking relief from SLAPP suits.

(2a,     2b,     2c)     Statutes     § 30--Construction--Language--Plain Meaning Rule.
When interpreting a statute, the court follows the Legislature's intent as exhibited by the plain meaning of the statute's actual words. A court has no power to rewrite a statute so as to make it conform to a presumed intention that is not expressed. When legislative intent is expressed in unambiguous terms, the court must treat the statutory language as conclusive; no resort to extrinsic aids is necessary or proper. Finally, statutes should be construed to avoid anomalies.

(3) Pleading § 93--Motion to Strike Pleading as SLAPP Suit--Defendant's Burden--Proof That Action Arose from Act in Furtherance of Defendant's Right of Petition or Free Speech.
A defendant moving to strike a cause of action on the ground that it is a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16) must establish that the challenged lawsuit arose from an act in furtherance of the defendant's right of petition or free speech. The mere fact that an action was filed after protected activity took place does not mean it arose from that activity. Rather, the act that forms the basis for the plaintiff's

cause of action must itself have been an act in furtherance of the right of petition or free speech.

(4) Pleading § 93--Motion to Strike Pleading as SLAPP Suit--Defendant's Burden of Proof--Subjective Intent of Plaintiff in Filing Lawsuit.
In an action against a consumers group by the successor-in-interest to two oil companies, which sought declaratory and injunctive relief to invalidate defendant's notice of its intent to sue plaintiff's predecessors for pollution of groundwater under Prop. 65 and to bar defendant from proceeding with such action, the trial court properly granted defendant's motion to strike the complaint on the ground that it was a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16). The pleadings and the affidavits submitted by the parties established that plaintiff's action for declaratory and injunctive relief arose from defendant's activity in furtherance of its constitutional rights of speech or petition-the filing of Prop. 65 intent-to-sue notices. Since the trial court also found that plaintiff had not established a probability of prevailing on its claim, the court properly granted defendant's motion. Further, plaintiff's intent in filing its lawsuit was irrelevant, and thus defendant was not required to prove that intent. (Disapproving, to the extent they hold to the contrary, *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364[102 Cal.Rptr.2d 864],*Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 696[76 Cal.Rptr.2d 516],*Linsco/Private Ledger, Inc. v. Investors Arbitration Services, Inc.* (1996) 50 Cal.App.4th 1633, 1639[58 Cal.Rptr.2d 613],*Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1600[57 Cal.Rptr.2d 491],*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 648-649[49 Cal.Rptr.2d 620], and *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 819[33 Cal.Rptr.2d 446].)
[See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 963; West's Key Number Digest, Pleading ☞ 360.]

52 P.3d 685                                                                                                        Page 3
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
**(Cite as: 29 Cal.4th 53)**

COUNSEL

McCutchen, Doyle, Brown & Enersen, Leslie G. Landau, Colleen P. Doyle, Deborah A. Nolan, Matthew Moran, Robert A. Brundage, Margaret Prinzing and Alison R. Beck for Plaintiff and Appellant. **\*56**

Pillsbury, Madison & Sutro and Michael J. Steel for California Chamber of Commerce and Chemical Industry Council of California as Amici Curiae on behalf of Plaintiff and Appellant.

Mehrban, Ghalchi & Yeroushalmi, Yeroushalmi & Ghalchi, Kamran Ghalchi, Reuben Yeroushalmi; Law Offices of Morsé Mehrban and Morsé Mehrban for Defendant and Respondent.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Craig C. Thompson, Acting Assistant Attorney General, Theodora Berger, Assistant Attorney General, Matthew F. Lintner and Edward G. Weil, Deputy Attorneys General, for the People as Amicus Curiae on behalf of Defendant and Respondent.

Law Office of James J. Moneer and James J. Moneer as Amici Curiae on behalf of Defendant and Respondent.

Levy, Ram, Olson & Rossi, Karl Olson; Karlene W. Goller; Gray Cary Ware & Freidenrich, Edward P. Davis, Jr., James Chadwick; Thomas W. Newton; Levine Sullivan & Koch, James Grossberg; Harold Fuson; Stephen J. Burns; Steinhart & Falconer, Roger R. Myers and Rachel E. Boehm for California Newspaper Publishers Association, Los Angeles Times, Copley Press, Inc., McClatchy Newspapers, San Jose Mercury, Freedom Communications, Inc., The Hearst Corporation, Media News Group and The Recorder as Amici Curiae on behalf of Defendant and Respondent.

R. S. Radford and Meriem L. Hubbard for Pacific Legal Foundation as Amicus Curiae on behalf of Defendant and Respondent.

Mark Goldowitz for California Anti-SLAPP Project as Amicus Curiae on behalf of Defendant and Respondent.

Margaret C. Crosby for American Civil Liberties Union Foundation of Northern California, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Daniel Tokaji and Peter Eliasberg for ACLU Foundation of Southern California as Amicus Curiae on behalf of Defendant and Respondent.

Jordan Budd for American Civil Liberties Union Foundation of San Diego and Imperial Counties as Amicus Curiae on behalf of Defendant and Respondent.

Law Office of Fredric Evenson and Fredric Evenson for Ecological Rights Foundation as Amicus Curiae on behalf of Defendant and Respondent. **\*57**

Law Office of Elizabeth Bader and Elizabeth E. Bader for Kairos Project as Amicus Curiae on behalf of Defendant and Respondent.

James R. Wheaton and Iryna A. Kwasny for Environmental Law Foundation as Amicus Curiae on behalf of Defendant and Respondent.

**WERDEGAR, J.**

Must a defendant, in order to obtain a dismissal of a strategic lawsuit against public participation (SLAPP) [FN1] under Code of Civil Procedure section 425.16 (section 425.16; the anti-SLAPP statute), demonstrate that the action was brought with the intent to chill the defendant's exercise of constitutional speech or petition rights? For the following reasons, we conclude not. [FN2]

> FN1 The acronym was coined by Penelope Canan and George W. Pring, professors at the University of Denver. (See generally Canan & Pring, *Strategic Lawsuits Against Public Participation* (1988) 35 Soc. Probs. 506.)

> FN2 This case has two companions. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69[124 Cal.Rptr.2d 519, 52 P.3d 695]; *Navellier v. Sletten* (2002) 29 Cal.4th 82[124 Cal.Rptr.2d 530, 52 P.3d 703].)

Background

As the Court of Appeal explained, defendant Consumer Cause, Inc., served on Shell Pipe Line Corporation and Texaco, Inc., predecessors in interest to plaintiff Equilon Enterprises, LLC (Equilon), a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                                                          Page 4
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
**(Cite as: 29 Cal.4th 53)**

notice of its intent to sue for alleged violations of Proposition 65. (See Health & Saf. Code, § 25249.7, subd. (d).) Consumer Cause's notice asserted that numerous Shell and Texaco gas stations in Southern California had, since 1994, been polluting groundwater by discharging benzene, lead, and toluene into the soil. Consumer Cause sent copies of its notice to the state Attorney General, the Los Angeles County District Attorney, and the Los Angeles City Attorney.

Equilon did not ask Consumer Cause to clarify its Proposition 65 notice. Instead, it filed this lawsuit for declaratory and injunctive relief, seeking a declaration that the notice failed to comply with the California Code of Regulations. Specifically, Equilon claimed the notice had not been served on the proper parties and that it failed to describe the alleged toxic discharges with sufficient particularity. Equilon also sought an injunction barring Consumer Cause from filing a Proposition 65 enforcement action.

Consumer Cause moved under the anti-SLAPP statute to strike Equilon's complaint. The trial court granted the motion and dismissed the action. The Court of Appeal affirmed. We granted Equilon's petition for review. **\*58**

## Discussion

Section 425.16 provides, inter alia, that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id.*, subd. (b)(1).) "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, ex-

ecutive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law ...." (*Id.*, subd. (e).)

(1a) Courts of Appeal reviewing the application of section 425.16 have divided over the question whether a defendant who moves under the statute to strike a cause of action must, in order to prevail, demonstrate that the cause of action was brought with the intent of chilling the defendant's exercise of constitutional speech or petition rights. (Compare, e.g., *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 480[102 Cal.Rptr.2d 205] [no] with *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 696[76 Cal.Rptr.2d 516] [yes].) As will appear, the defendant has no such burden.

### A. *Statute's Plain Language*

Section 425.16 nowhere states that, in order to prevail on an anti-SLAPP motion, a defendant must demonstrate that the plaintiff brought the cause of action complained of with the intent of chilling the defendant's exercise of speech or petition rights. There simply is "nothing in the statute requiring the court to engage in an inquiry as to the plaintiff's subjective motivations before it may determine [whether] the anti-SLAPP statute is applicable." (*Damon v. Ocean Hills Journalism Club, supra*, 85 Cal.App.4th at p. 480.)Section 425.16, rather, unambiguously makes subject to a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as to which the plaintiff has not "established that there is a probability that [he or she] will prevail on the claim." (§ 425.16, subd. (b)(1); see *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 648\***59**[49 Cal.Rptr.2d 620](*Church of Scientology*)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                                                              Page 5
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
(Cite as: 29 Cal.4th 53)

[anti-SLAPP statute "clear and unambiguous" in applying to all claims "arising from" protected activity].)

Nor is there anything in section 425.16's operative sections implying or even suggesting an intent-to-chill proof requirement. "The legislative concern," rather, "is that the cause of action 'aris[e] from' an act in furtherance of the constitutional right to petition or free speech." (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 307[106 Cal.Rptr.2d 906].)

When on previous occasions we have construed the anti-SLAPP statute, we have done so strictly by its terms (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131[104 Cal.Rptr.2d 377, 17 P.3d 735] [calculation of anti-SLAPP attorney fees]; see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113-1117[81 Cal.Rptr.2d 471, 969 P.2d 564](*Briggs*) [construction of § 425.16, subd. (e)]), and no reason appears why we should proceed otherwise in this case. Since section 425.16 neither states nor implies an intent-to-chill proof requirement, for us judicially to impose one, as Equilon urges, would violate the foremost rule of statutory construction. (2a) When interpreting statutes, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law .... 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633[59 Cal.Rptr.2d 671, 927 P.2d 1175].)

### B. *Legislative Intent*

(1b) Citing the Legislature's finding, set out in the statute's preamble, that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" and its declaration "that it is in the public interest to encourage continued participation in mat-

ters of public significance" (§ 425.16, subd. (a)), Equilon argues that the anti-SLAPP statute was intended by the Legislature to combat only actions brought with an intent to chill speech. For the following reasons we conclude that, to the contrary, judicial imposition on section 425.16 of an intent-to-chill proof requirement would contravene the legislative intent expressly stated in section 425.16, as well as that implied by the statute's legislative history.

The anti-SLAPP statute has since its enactment contained a preamble setting forth the Legislature's desire "to encourage continued participation in matters of public significance" (§ 425.16, subd. (a), as added by Stats. 1992, *60 ch. 726, § 2, p. 3523). In 1997, the Legislature amended section 425.16, effecting no substantive changes to the anti-SLAPP scheme, but adding to the preamble a requirement that the statute, to achieve its stated ends, "shall be construed broadly." (§ 425.16, subd. (a), as amended by Stats. 1997, ch. 271, § 1.)[FN3] Interpreting section 425.16, in accordance with its plain language, as encompassing unsubstantiated causes of action arising from protected speech or petitioning, without regard to the subjective intent of the plaintiff, both maximizes the statute's tendency "to encourage continued participation in matters of public significance" and conforms to the Legislature's express requirement of broad construction.

> FN3 "The Legislature's 1997 amendment of the statute to mandate that it be broadly construed apparently was prompted by judicial decisions ... that had narrowly construed it to include an overall 'public issue' limitation." (*Briggs, supra,* 19 Cal.4th at p. 1120; see also *id.* at p. 1123 [holding there is no such limitation].) Section 425.16, subdivision (a) now provides, in its entirety: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the re-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                                      Page 6
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
(Cite as: 29 Cal.4th 53)

dress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

On the other hand, judicial imposition of an intent-to-chill proof requirement would undermine the Legislature's expressed aim that public participation "not be chilled" (§ 425.16, subd. (a)) by SLAPP's. Obviously, not only when a plaintiff *intends* to chill speech may the filing of a lawsuit have that result. "Intimidation will naturally exist anytime a community member is sued by an organization for millions of dollars even if it is probable that the suit will be dismissed" (Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions* (1991) 27 Cal. Western L.Rev. 399, 405, fn. omitted). "Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights" (*Church of Scientology, supra,* 42 Cal.App.4th at p. 652). "The Legislature recognized that 'all kinds of claims could achieve the objective of a SLAPP suit-to interfere with and burden the defendant's exercise of his or her rights.' " (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 949[52 Cal.Rptr.2d 357].) For us to bar use of the anti-SLAPP device against nonmeritorious speech-burdening claims whenever a defendant cannot prove the plaintiff's improper intent would fly in the face of that legislative recognition.

We previously have stated that the legislative intent underlying section 425.16 must be " 'gleaned from the statute as a whole' " (*Briggs, supra,* 19 Cal.4th at p. 1118). "The fact the Legislature expressed a concern in the *61 statute's preamble with lawsuits brought 'primarily' to chill First Amendment rights does not mean that a court may add this concept as a separate requirement in the operative sections of the statute." (*Damon v. Ocean Hills Journalism*

*Club, supra,* 85 Cal.App.4th at p. 480; see also *Briggs, supra,* at p. 1118.)Any such requirement would be "too restrictive" (*Church of Scientology, supra,* 42 Cal.App.4th at p. 648) in light of the Legislature's unqualified desire to "encourage continued participation in matters of public significance" (§ 425.16, subd. (a)).

Judicial imposition of an intent-to-chill proof requirement also would contravene legislative intent by modifying the detailed remedial scheme the Legislature laid out in the statute's operative sections. That scheme, as noted, makes subject to a special motion to strike any cause of action against a person arising from constitutionally protected speech or petitioning activity, as defined in section 425.16, subdivision (e), "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim" (*id.,* subd. (b)). Such terms are "inconsistent with a requirement the defendant prove the challenged lawsuit was brought to chill her First Amendment rights.... [T]he only thing the defendant needs to establish to invoke the [potential] protection of the SLAPP statute is that the challenged lawsuit arose from an act on the part of the defendant in furtherance of her right of petition or free speech. From that fact the court may [effectively] presume the purpose of the action was to chill the defendant's exercise of First Amendment rights. It is then up to the plaintiff to rebut the presumption by showing a reasonable probability of success on the merits." (*Fox Searchlight Pictures, Inc. v. Paladino, supra,* 89 Cal.App.4th at p. 307.)

(2b) Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; "no resort to extrinsic aids is necessary or proper." (*People v. Otto* (1992) 2 Cal.4th 1088, 1108[9 Cal.Rptr.2d 596, 831 P.2d 1178].) Nevertheless, we may observe that available legislative history buttresses our conclusion.

(1c) As we observed in *Briggs:* "Legislative history materials respecting the origins of section 425.16 indicate the statute was intended broadly to protect,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                                                          Page 7
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
(Cite as: 29 Cal.4th 53)

inter alia, direct petitioning of the government and petition-related statements and writings.... The seminal academic research on which the original version of the statute was based used 'an operational definition of SLAPP suits as implicating "behavior protected by the Petition Clause." ' " (*Briggs, supra,* 19 Cal.4th at p. 1120, quoting Canan & Pring, *Studying Strategic Lawsuits Against Public Participation: Mixing Quantitative and Qualitative Approaches* (1988) 22 L. & Soc'y Rev. 385, 387.)As Professors *62 Canan and Pring have explained, a neutral, easily applied definition for SLAPP's "avoids subjective judgments" about filers' or targets' motives, good faith, or intent. (Canan & Pring, SLAPPs: Getting Sued for Speaking Out (1996) p. 8.)

In short, the Legislature has in the anti-SLAPP statute expressly stated both its understanding of the problem to be addressed (see § 425.16, subd. (a)) and a detailed and specific remedy for addressing it (see *id.*, subd. (b)). "We have no reason to suppose the Legislature failed to consider the need for reasonable limitations on the use of special motions to strike." (*Briggs, supra,* 19 Cal.4th at p. 1123.)

### C. Constitutional Considerations

Equilon argues that an intent-to-chill proof requirement is a constitutionally compelled element of the anti-SLAPP statutory scheme. Citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993) 508 U.S. 49, 60-62 [113 S.Ct. 1920, 1928-1929, 123 L.Ed.2d 611](*Professional Real Estate Investors*), Equilon asserts that the First Amendment generally bars liability for filing lawsuits, the only exception being for "sham" lawsuits. More particularly, Equilon contends that by contemplating the award of attorney fees without assessing intent to chill (§ 425.16, subd. (c)), the anti-SLAPP statute treads in a constitutional "minefield."

Equilon fails to demonstrate that its proffered construction of section 425.16 is constitutionally com-

pelled. Hundreds of California statutes provide for an award of attorney fees to the prevailing party. (See Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 2001) § 2.1, p. 12; see also *id.*, ch. 17 [charting many such statutes].) Fee shifting simply requires the party that creates the costs to bear them. (*Premier Elec. Const. Co. v. N.E.C.A., Inc.* (7th Cir. 1987) 814 F.2d 358, 373.)It does not make a party "liable" for filing a lawsuit. This distinguishes *Professional Real Estate Investors, supra,* 508 U.S. 49, Equilon's central authority, which concerns not fee shifting but the scope of antitrust liability for engaging in litigation. There, when movie studios challenging the rental of videodiscs to hotel guests brought a copyright infringement action against certain hotel operators, the operators filed counterclaims alleging the studios' action was intended illegally to restrain trade. The high court held that one who initiates litigation is immune from antitrust liability for doing so unless the litigation is a "sham." (*Id.* at pp. 60-61 [113 S.Ct. at pp. 1928-1929].) The case did not involve a fee-shifting provision nor did the court anywhere suggest that its "sham" litigation rationale might apply in the fee-shifting context. Equilon cites no case in *63 which a fee-shifting provision has been held unconstitutional under *Professional Real Estate Investors* or its rationale. (See generally *Alyeska Pipeline Co. v. Wilderness Society* (1975) 421 U.S. 240, 262 [95 S.Ct. 1612, 1624, 44 L.Ed.2d 141] [finding it "apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine"].)

In any event, *Professional Real Estate Investors*-wherein the high court was at pains expressly "to reject a purely subjective definition of 'sham' " (*Professional Real Estate Investors, supra,* 508 U.S. at p. 60 [113 S.Ct. at p. 1928])-does not support Equilon's contention that the anti-SLAPP statute must be engrafted with an intent-to-chill proof requirement in order to pass constitutional muster. (See generally *Columbia v. Omni Outdoor Advertising, Inc.* (1991) 499 U.S. 365, 380 [111 S.Ct.

52 P.2d 685                                                                                                                      Page 8
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
(Cite as: 29 Cal.4th 53)

1344, 1354, 113 L.Ed.2d 382] [private party's selfish motives are irrelevant to doctrine precluding liability for petitioning government].) On the other hand, the United States Supreme Court has held that a defendant may obtain an attorney fee award where the plaintiff's suit is objectively "without foundation," noting that to permit such awards in cases of vexatious litigation "in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 421 [98 S.Ct. 694, 700, 54 L.Ed.2d 648] [title VII case].)

Contrary to Equilon's implication, section 425.16 does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning. It subjects to potential dismissal only those causes of action as to which the plaintiff is unable to show a probability of prevailing on the merits (§ 425.16, subd. (b)), a provision we have read as "requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412[58 Cal.Rptr.2d 875, 926 P.2d 1061](*Rosenthal*)). So construed, "section 425.16 provides an efficient means of dispatching, early on in a lawsuit, [and discouraging, insofar as fees may be shifted,] a plaintiff's meritless claims." (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364[102 Cal.Rptr.2d 864].)

Nor do the anti-SLAPP statute's fee-shifting provisions inappropriately punish plaintiffs. Plaintiffs as well as defendants may recover fees: defendants, as discussed, only when the plaintiff burdens free speech with an unsubstantiated claim (*Rosenthal, supra,* 14 Cal.4th at p. 412); plaintiffs whenever a defendant's motion to strike is "frivolous or is solely intended to cause unnecessary delay" (§ 425.16, subd. (c)). Equilon fails to persuade us that such a fee-shifting provision overburdens those who exercise the First *64 Amendment right of petition by filing lawsuits. "The right to petition is not

absolute, providing little or no protection for baseless litigation" (*Church of Scientology, supra,* 42 Cal.App.4th at p. 648, fn. 4).

Equilon also cites *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327[84 Cal.Rptr.2d 425, 975 P.2d 622](*California Teachers*) for the proposition that "a party cannot be held liable or punished for genuine petitioning," but for at least two reasons *California Teachers* is not apposite. First, in *California Teachers* we addressed the "unique and virtually unprecedented" requirement (*id.* at p. 333) that a teacher who does not prevail on a reasonable and good faith challenge to a disciplinary suspension or dismissal pay to the state one-half the cost of the administrative law judge. Contrary to Equilon's implication, *California Teachers* nowhere discusses or calls into question fee-shifting provisions such as the one found in the anti-SLAPP statute.

Second, whereas the proponent of a speech-burdening claim may avoid an anti-SLAPP dismissal by submitting an affidavit substantiating the claim's legal sufficiency (§ 425.16, subd. (b)(2); *Rosenthal, supra,* 14 Cal.4th at p. 412), the disciplinary scheme at issue in *California Teachers* incorporated no such safety valve to diminish constitutional concerns. Section 425.16 "is one of several California statutes providing a procedure for exposing and dismissing certain causes of action lacking merit." (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 866[44 Cal.Rptr.2d 46].) "In varying language, all of these statutes literally require the trial court, at a preliminary stage of the litigation, to determine by examining affidavits the 'substantial probability' of plaintiff's prevailing on a claim, whether evidence 'substantiates' a standard of proof the plaintiff must meet, or whether plaintiff has 'established ... a reasonable probability' of recovery" (*ibid.*). Equilon has failed to identify any support for the proposition that the constitutionality of such provisions depends upon their requiring proof of subjective intent.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                                                          Page 9
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
(Cite as: 29 Cal.4th 53)

### D. *Congruence with Privilege Law*

(2c) "It is a fundamental rule of statutory construction that statutes should be construed to avoid anomalies." (*State of South Dakota v. Brown* (1978) 20 Cal.3d 765, 775[144 Cal.Rptr. 758, 576 P.2d 473]; see also *People v. Ledesma* (1997) 16 Cal.4th 90, 101[65 Cal.Rptr.2d 610, 939 P.2d 1310].) (1d) In accordance with this principle, we previously have declined to construe the anti-SLAPP statute so as to produce "the anomalous result that much direct petition activity ... [,] while absolutely privileged under the litigation privilege ... and under the federal and state Constitutions, would *not* be entitled to the procedural protections of the anti-SLAPP *65 law, even though section 425.16 expressly states the Legislature's intent thereby 'broadly' to protect the right of petition (§ 425.16, subd. (a))." (*Briggs, supra*, 19 Cal.4th at p. 1121.)

Similarly here. Were we to impose an intent-to-chill proof requirement, petitioning that is absolutely privileged under the litigation privilege would be deprived of anti-SLAPP protection whenever a moving defendant could not prove that the plaintiff harbored an intent to chill that activity. Our construction avoids that anomalous result.

### E. *Public Policy*

Considerations of public policy buttress the foregoing legal arguments against judicially imposing an intent-to-chill proof requirement on California's anti-SLAPP statute. A requirement that courts confronted with anti-SLAPP motions inquire into the plaintiff's subjective intent would commit scarce judicial resources to an inquiry inimical to the legislative purpose that unjustified SLAPP's be terminated at an early stage. "Imposing a requirement of establishing bad faith or ulterior motive adds a needless burden to SLAPP targets seeking relief, and destroys the relatively value-free nature of existing anti-SLAPP structures under which actions become suspect because of the circumstances of their arising and the relief sought, without need to litigate motive." (Braun, *Increasing SLAPP Protection: Unburdening the Right of Petition in California* (1999) 32 U.C. Davis L.Rev. 965, 969, fn. 9.) By requiring that a moving defendant demonstrate that the targeted cause of action is one arising from protected speech or petitioning (§ 425.16, subd. (b)), our anti-SLAPP statute utilizes a reasonable, objective test that lends itself to adjudication on pretrial motion. Such early resolution is consistent with the statutory design "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" (Tate, *California's Anti-SLAPP Legislation: A Summary of and Commentary on Its Operation and Scope* (2000) 33 Loyola L.A. L.Rev. 801), a purpose reflected in the statute's short time frame for anti-SLAPP filings and hearings (§ 425.16, subd. (f)) and provision for a stay of discovery (*id.*, subd. (g)).

Contrary to Equilon's assertion, our conclusion will not allow the anti-SLAPP statute itself to become a weapon to chill the exercise of protected petitioning activity by people with legitimate grievances. The anti-SLAPP remedy is not available where a probability exists that the plaintiff will prevail on the merits. (§ 425.16, subd. (b).) "The Legislature, moreover, has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism." (*Briggs, supra*, 19 Cal.4th at pp. 1122-1123.)*66

Courts deciding anti-SLAPP motions, for example, are empowered to mitigate their impact by ordering, where appropriate, "that specified discovery be conducted notwithstanding" the motion's pendency. (§ 425.16, subd. (g).) And if "the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion" (*id.*, subd. (c)). Most importantly, section 425.16 requires every defendant seeking its protection to demonstrate that the subject cause of action is in fact one "arising from" the defendant's protected speech or petition-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                                    Page 10
29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945
**(Cite as: 29 Cal.4th 53)**

ing activity. (§ 425.16, subd. (b).)

As courts applying the anti-SLAPP statute have recognized, the "arising from" requirement is not always easily met. (See, e.g., *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002[113 Cal.Rptr.2d 625]; *Church of Scientology, supra,* 42 Cal.App.4th at p. 651.)The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e), defining subdivision (b)'s phrase, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (See *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417[103 Cal.Rptr.2d 174].)

(3) As discussed more fully in the companion case *City of Cotati v. Cashman, supra,* 29 Cal.4th 69, the mere fact an action was filed after protected activity took place does not mean it arose from that activity. (*ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th at p. 1002.)Rather, " 'the act underlying the plaintiff's cause' or 'the act which forms the basis for the plaintiff's cause of action' must *itself* have been an act in furtherance of the right of petition or free speech." (*Id.* at p. 1003.)

(1e) In sum, as section 425.16 already contains express limitations on the availability and impact of anti-SLAPP motions, courts confronting such motions are well equipped to deny, mitigate, or even sanction them when appropriate. Contrary to Equilon's suggestion, therefore, it is not necessary that we impose an additional intent-to-chill limitation in order to avoid jeopardizing meritorious lawsuits. (See *Briggs, supra,* 19 Cal.4th at p. 1122.)

We are well advised not to upset the Legislature's carefully crafted scheme for disposing of SLAPP's quickly and at minimal expense to taxpayers and litigants. Our Legislature apparently adjudged the anti-SLAPP statute's two-pronged test ("arising from" and minimal merit) and the statute's other ex-

press limitations to be adequate, finding it unnecessary to add *67 an intent-to-chill or similar proof requirement such as Equilon proposes. We discern no grounds for second-guessing the Legislature's considered policy judgment.

### F. *Application*

(4) In light of the foregoing, we may summarize a court's task in ruling on an anti-SLAPP motion to strike as follows. Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

When analyzed in this manner, the Court of Appeal's ruling is correct. The pleadings and the affidavits submitted by the parties establish that Equilon's action for declaratory and injunctive relief is one arising from Consumer Cause's activity in furtherance of its constitutional rights of speech or petition-viz., the filing of Proposition 65 intent-to-sue notices. (Health & Saf. Code, § 25249.7, subd. (d).) Since the trial court also found that Equilon had not established a probability of prevailing on its claim, the court properly granted the motion. (§ 425.16, subd. (b)(1); see also *Briggs, supra,* 19 Cal.4th at p. 1115, fn. 6.)

While it may well be, as Equilon asserts, that it had

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

52 P.3d 685                                                                    Page 11

29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945

**(Cite as: 29 Cal.4th 53)**

pure intentions when suing Consumer Cause, such intentions are ultimately beside the point.[FN4] As demonstrated, Equilon's action for declaratory and injunctive relief expressly was based on Consumer Cause's activity in furtherance of its petition *68 rights. The Court of Appeal correctly held that Consumer Cause, having satisfied its initial burden under the anti-SLAPP statute of demonstrating that Equilon's action was one arising from protected activity (§ 425.16, subd. (b)(1)), faced no additional requirement of proving Equilon's subjective intent. FN5

> FN4 Equilon purports to have sought declaratory relief solely in order to "get clarification of what it had to do" to avoid Proposition 65 liability after receiving Consumer Cause's notices. Equilon neglects to mention, when arguing in this vein, that it also sought injunctive relief that expressly would restrict Consumer Cause's exercise of petition rights. We need not in this case, therefore, decide whether or when a pure declaratory relief action seeking mere clarification of past speech or petitioning, but alleging no "liability or defense" (§ 425.16, subd. (b)(2)) or remedy "against a person" (*id.*, subd. (b)(1)) that significantly would burden future exercise of such rights, might evade anti-SLAPP scrutiny. Such questions in any event lie beyond the scope of our review.

> FN5 To the extent they hold to the contrary, *Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th at page 1364,*Foothills Townhome Assn. v. Christiansen, supra*, 65 Cal.App.4th at page 696,*Linsco/Private Ledger, Inc. v. Investors Arbitration Services, Inc.* (1996) 50 Cal.App.4th 1633, 1639[58 Cal.Rptr.2d 613],*Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1600[57 Cal.Rptr.2d 491],*Church of Scientology v.*

, *supra*, 42 Cal.App.4th at pages 648-649, and *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 819[33 Cal.Rptr.2d 446], are disapproved.

Disposition

For the foregoing reasons, the judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred. *69 053 cent-Y cent-R found without first cent-Y.

Cal. 2002.

Equilon Enterprises v. Consumer Cause, Inc.

29 Cal.4th 53, 52 P.3d 685, 124 Cal.Rptr.2d 507, 02 Cal. Daily Op. Serv. 7960, 2002 Daily Journal D.A.R. 9945

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 2**



99 Cal.App.4th 1179                                                                                    Page 1
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
**(Cite as: 99 Cal.App.4th 1179)**

▷

MATTEL, INC., Plaintiff and Respondent, v.
LUCE, FORWARD, HAMILTON & SCRIPPS et
al., Defendants and Appellants.
Cal.App.2.Dist.

MATTEL, INC., Plaintiff and Respondent,
v.
LUCE, FORWARD, HAMILTON & SCRIPPS et
al., Defendants and Appellants.
**No. B151826.**

Court of Appeal, Second District, Division 4, Cali-
fornia.
June 28, 2002.

SUMMARY

A toy company that had been sued in federal court
for copyright infringement brought a malicious pro-
secution action against the law firm that had repres-
ented the party that initiated the federal suit. The
trial court denied the law firm's motion to strike the
company's malicious prosecution complaint as a
SLAPP suit (strategic lawsuit against public parti-
cipation) (Code Civ. Proc., § 425.16). The trial
court initially stayed the action pending the firm's
appeal of its order denying the motion to strike, but
subsequently vacated its stay order and set the mat-
ter for trial. (Superior Court of Los Angeles
County, No. BC244549, Alexander H. Williams III,
Judge.)

The Court of Appeal affirmed. The court held that
the trial court properly denied the law firm's motion
to strike the company's complaint as a SLAPP suit,
since the company successfully defended against
the motion by demonstrating the requisite probabil-
ity it would prevail on the merits. The company
presented evidence that supported all of the essen-
tial elements of malicious prosecution, including
the element that the underlying action had been ter-
minated in the company's favor. Further, the federal
court's findings in that underlying action, which
supported imposition of sanctions on the law firm,

were evidence that the underlying action was filed
without probable cause, from which malice could
be inferred. The court also held that the trial court
erred in vacating its stay order, since the law firm's
appeal from the trial court's denial of its SLAPP
motion triggered the automatic stay of Code Civ.
Proc., § 916. Finally, the court held that the com-
pany's malicious prosecution action was not pree-
mpted by federal law, since this tort claim arose un-
der state common law, not federal copyright law.
(Opinion by Hastings, J., with Epstein, Acting P. J.,
and Curry, J., concurring.)

HEADNOTES

Classified to California Digest of Official Reports

(1a,       1b)     Malicious       Prosecution       §
8--Actions--Where Underlying Action in Federal
Court--Federal Preemption:Copyright and Literary
and Artistic Property § 11--Actions.
Federal law did not preempt a toy company's mali-
cious prosecution action against the law firm that
had represented an individual that brought an un-
derlying copyright infringement action against the
company in federal court. Even though federal rem-
edies exist for the wrongful filing and maintenance
of copyright infringement actions, this malicious
prosecution action arose under state common law,
not federal copyright law, so that federal preemp-
tion did not apply.

(2) Copyright and Literary and Artistic Property §
11--Actions--Federal Preemption--Whether Tort
and Contract Claims May Be Litigated in State
Court.
Even though the federal district courts have exclus-
ive jurisdiction in patent and copyright cases, not
every action that involves a United States patent is
governed exclusively by federal law. Patent matters
primarily concerned with either consensual rela-
tions or tortious wrongdoing may be tried in state
courts and where such a suit is brought, validity of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

99 Cal.App.4th 1179                                                                                    Page 2
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
**(Cite as: 99 Cal.App.4th 1179)**

a patent or its infringement may properly be considered by a state court. Jurisdiction of the state court founded on contract or tort is not defeated merely because the existence, validity, or construction of a patent may be involved. The state courts are fully competent to adjudicate patent questions that come before them in contract, property, and tort cases so long as the case itself does not arise under the patent laws.

(3) Pleading § 93--Motion to Strike Pleading as SLAPP Suit--Application to Corporation as Moving Party--Trial Court Determination--Burden of Nonmoving Party.

Code Civ. Proc., § 425.16, provides that a person may bring a special motion to strike a cause of action against him or her as a SLAPP suit (strategic lawsuit against public participation). In this context, the term "person" includes a corporation. The moving party has the initial burden of establishing that the action challenged qualifies for treatment under § 425.16. A cause of action arising from a defendant's alleged improper filing of an underlying lawsuit may appropriately be the subject of a § 425.16 motion to strike. The process the trial court uses in determining the merits of the motion is similar to the process used in approaching summary judgment motions. The evidence presented must be admissible and the trial court does not weigh the evidence. The plaintiff must demonstrate a probability of prevailing on the merits by presenting evidence that establishes a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff. If the plaintiff meets its burden the motion to strike must be denied.

(4) Appellate Review § 71--Supersedeas and Stay--Automatic Stay Pending Appeal:Pleading § 93--Motion to Strike Pleading as SLAPP Suit--Appeal from Denial of Motion--Effect.

In a malicious prosecution action, in which defendant appealed from the trial court's denial of its motion to strike the complaint as a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16), the trial court erred in

setting a trial date and vacating its initial order staying the action. Pursuant to Code Civ. Proc., § 916, the perfecting of an appeal stays proceedings in the trial court that would affect the judgment or order that is the subject of the appeal. Further, in enacting the anti-SLAPP legislation, the Legislature intended not only to minimize the potential costs of protracted litigation, but also to protect the moving party from the burden of traditional discovery pending resolution of the motion. In this case, since the motion to strike was directed to the only cause of action asserted, the appeal embraced the entirety of the action and the automatic stay was triggered. Thus, the trial court was divested of jurisdiction upon perfection of the appeal, and it acted in excess of jurisdiction by setting a trial date.

(5a, 5b) Malicious Prosecution § 7--Essentials to Maintenance of Action--Favorable Termination.

A claim for malicious prosecution is established by showing that the action was (1) commenced by or at the direction of the defendant and was pursued to a legal termination in favor of the plaintiff, (2) was brought without probable cause, and (3) was initiated with malice. The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused and, coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge against an innocent person. A verdict or final determination upon the merits of the malicious civil suit or criminal prosecution complained of is not necessary to the maintenance of an action for malicious prosecution, but it is sufficient to show that the former proceeding had been legally terminated. If the termination is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with the accused's guilt, it does not constitute a favorable termination.

(6a,       6b)       Malicious       Prosecution       §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

99 Cal.App.4th 1179                                                                 Page 3
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
(Cite as: 99 Cal.App.4th 1179)

10--Actions--Evidence and Proof-- Essential Elements:Pleading § 93--Motion to Strike Pleading as SLAPP Suit-- Burden of Nonmoving Party to Demonstrate Probability of Prevailing on Merits.

In a malicious prosecution action brought by a toy company that had been sued in federal court for copyright infringement against the law firm that had represented the party that initiated the underlying federal suit, the trial court properly denied the law firm's motion to strike the company's malicious prosecution complaint as a SLAPP suit (strategic lawsuit against public participation) (Code Civ. Proc., § 425.16). In successfully defending against the motion to strike, the company demonstrated the requisite probability that it would prevail on the merits of its action, by presenting evidence that supported all of the essential elements of malicious prosecution, including the element that the underlying action had been terminated in the company's favor. In that underlying action, summary judgment had been granted in favor of the company on the merits and that court had issued sanctions against the law firm and made a finding that it had filed a meritless claim. Those findings were evidence that that action was filed without probable cause, from which malice could be inferred.

[See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 963; West's Key Number Digest, Appeal and Error ⌐⇒ 460(1).]

COUNSEL

Jeffer, Mangels, Butler & Marmaro, Marc Marmaro and Robert P. Baker for Defendant and Appellant Luce, Forward, Hamilton & Scripps.

White, O'Connor, Curry, Giatti & Avanzado, Lee S. Brenner, Carl R. Benedetti and James E. Curry for Defendant and Appellant James B. Hicks.

Quinn, Emanuel, Urquhart, Oliver & Hedges, Edith Ramirez, Michael T. Zeller and Adrian M. Pruetz for Plaintiff and Respondent.

HASTINGS, J.

This action for malicious prosecution was filed by plaintiff/respondent Mattel, Inc., following entry of a judgment in favor of respondent against Harry R. Christian, plaintiff in an action for trademark *1183

infringement against respondent filed in the United States District Court, Central District of California, case No. CV 99-2820 NM (BQRx). Respondents Luce, Forward, Hamilton & Scripps, a limited liability partnership, and James B. Hicks, a former partner of Luce, Forward represented Hicks in the district court and are named as defendants in this action, but Christian is not.

Appellants filed a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16.[FN1] The motion was denied when the trial court concluded that respondent presented sufficient evidence to establish a probability of prevailing on the action. It temporarily stayed proceedings when appellants filed a timely appeal, but later ordered the stay vacated and set a trial date. We stayed the trial court proceedings, set a hearing on a petition for supersedeas and ordered the appeal set for hearing immediately.

> FN1 All further statutory references are to this code unless otherwise noted.

We conclude that this action for malicious prosecution qualifies for treatment under section 425.16; that the trial court did not err in finding that respondent demonstrated a probability of prevailing on the action; and that perfection of the appeal from denial of the special motion to strike automatically stayed proceedings in the trial court pending outcome of the appeal.

Summary of Facts

A summary of the tenor and background of this action is set out in the recent opinion from the Ninth Circuit Court of Appeals addressing an appeal by Hicks from an award of sanctions levied against him in the underlying action: *Christian v. Mattel, Inc.* (9th Cir. 2002) 286 F.3d 1118:

"It is difficult to imagine that the Barbie doll, so perfect in her sculpture and presentation, and so comfortable in every setting, from 'California girl' to 'Chief Executive Officer Barbie,' could spawn

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

99 Cal.App.4th 1179                                                                    Page 4
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
**(Cite as: 99 Cal.App.4th 1179)**

such acrimonious litigation and such egregious conduct on the part of her challenger. In her wildest dreams, Barbie could not have imagined herself in the middle of Rule 11 proceedings. But the intersection of copyrights on Barbie sculptures and the scope of Rule 11 is precisely what defines this case.

"James Hicks appeals from a district court order requiring him, pursuant to Federal Rule of Civil Procedure 11, to pay Mattel, Inc. $501,565 in attorneys' fees that it incurred in defending against what the district court determined to be a frivolous action. Hicks brought suit on behalf of Harry Christian, claiming that Mattel's Barbie dolls infringed Christian's Claudene doll sculpture copyright. In its sanctions orders, the district court found that *1184 Hicks should have discovered prior to commencing the civil action that Mattel's dolls could not have infringed Christian's copyright because, among other things, the Mattel dolls had been created well prior to the Claudene doll and the Mattel dolls had clearly visible copyright notices on their heads. After determining that Hicks had behaved 'boorishly' during discovery and had a lengthy rap sheet of prior litigation misconduct, the district court imposed sanctions." (*Christian v. Mattel, Inc., supra,* 286 F.3d at p. 1121.)

The Ninth Circuit affirmed the finding of the trial court that Hicks had " 'filed a case without factual foundation' " (*Christian v. Mattel, Inc., supra,* 286 F.3d at p. 1129) and concluded that "the district court did not abuse its discretion by ruling that the complaint was frivolous." (*Ibid.*) But it remanded the matter to the trial court for review of the amount of sanctions awarded and for an opportunity "to delineate the factual and legal basis for its sanctions orders." (*Id.* at p. 1131.)

Predictably, after resolution of the underlying action, this action for malicious prosecution was filed against appellants.

Appellants filed a special motion to strike pursuant to section 425.16. The thrust of the motion was that respondent would not be able to prevail on its claim

for malicious prosecution because the underlying action had ultimately been concluded between respondent and Christian by a settlement, which, it argued, did not qualify as a final termination favorable to respondent.

Respondent opposed the motion. It presented evidence that various "other" claims between Christian and respondent, not connected to the underlying Christian copyright infringement action, which was the subject of the Ninth Circuit opinion, had been resolved by settlement. But not the underlying Christian copyright infringement claim. Rather, judgment had been entered in favor of respondent and against Christian on that claim resulting from the grant of summary judgment. The various district court documents evidencing the judgment and findings in connection with the rule 11 (Fed. Rules Civ. Proc., rule 11, 28 U.S.C.) proceedings against Hicks, referenced above, were also presented to the trial court in opposition.

The trial court denied the special motion to strike and appellants filed a timely notice of appeal. Appellants also obtained an order from the trial court staying proceedings in the trial court pending outcome of the appeal.

The trial court conducted a status conference on March 21, 2002. It ordered that the stay be vacated in its entirety, but delayed the effective date *1185 of the order to April 22, 2002, to allow appellants time to seek review from us. It also set a trial date of January 13, 2003.

Appellants immediately filed petitions for writ of supersedeas or in the alternative for a stay of trial court proceedings pending outcome of the appeal. We granted the stay, requested opposition, and then set a hearing on the petition for writ of supersedeas for June 14, 2002. Noting that briefing on the appeal would be concluded with filing of the reply brief no later than May 28, we ordered that no requests for extensions would be granted and set the appeal for hearing on the same date.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

99 Cal.App.4th 1179                                                     Page 5
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
**(Cite as: 99 Cal.App.4th 1179)**

Further facts will be presented in addressing the issues.

### Discussion

#### 1. *Federal Preemption of Appellants' Action*

(1a) On appeal, appellant Luce, Forward raises an argument not presented to the trial court: "[Respondent's] malicious prosecution complaint is predicated on the filing and prosecution of The Underlying Federal Lawsuit, a copyright infringement action brought in federal court pursuant to exclusive federal jurisdiction under the Copyright Act, 17 U.S.C. § 101.... Accordingly, [respondent's] malicious prosecution action is preempted by federal law because The Underlying Federal Lawsuit could *only* have been brought in federal court and because federal remedies exist for the wrongful filing and maintenance of copyright infringement actions. *Idell v. Goodman* (1990) 224 Cal.App.3d 262, 271, fn. 3[273 Cal.Rptr. 605],*Gonzales v. Parks* (9th Cir. 1987) 830 F.2d 1033, 1035.Therefore, the state court lacks subject matter jurisdiction over this action, which should now be dismissed." We disagree.

Title 28 United States Code section 1338(a) states: "The district courts shall have original jurisdiction of any civil action *arising under* any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." (Italics added.)

The action against Luce, Forward is a tort claim "arising under" the common law of California, it is not a claim "arising under" the federal Copyright Act. That action has already been concluded in favor of respondent, one of the essential elements of the common law claim for malicious prosecution. *1186

(2) A similar argument was made and rejected in *Miller v. Lucas* (1975) 51 Cal.App.3d 774[124 Cal.Rptr. 500] in connection with nine tort claims, one of which was malicious prosecution, based on interference with plaintiff's rights in a patent. The Court of Appeal concluded the trial court erred when it sustained a demurrer on the ground of preemption, although it affirmed the trial court on another ground. In connection with the preemption argument, the court stated:

"Although the federal district courts have exclusive jurisdiction in patent and copyright cases (28 U.S.C. § 1338(a)), 'every action that involves, no matter how incidentally, a United States Patent is not for that reason governed exclusively by federal law.' (*Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208[308 P.2d 732, 66 A.L.R.2d 590].) Patent matters primarily concerned with either consensual relations or tortious wrongdoing may be tried in state courts and where such a suit is brought, validity of a patent or its infringement may properly be considered by a state court. [Citation.] Jurisdiction of the state court founded on contract or tort is not defeated because the existence, validity or construction of a patent may be involved. [Citation.] An aggrieved competitor can sue for damages in the state court for trade libel and unfair competition [citation] and a tort claim for deceit in the sale of patent rights is controlled by state law. [Citation.] State law also controls claims that plaintiff was fraudulently induced to forego asserting patent rights [citation] and state law controls a claim for wrongfully delaying issuance of a patent by the patent office. [Citation.]

"Thus, there is broad state jurisdiction over matters affecting patents, the 'Supreme Court has clearly blessed such state power,' [citation] and the federal courts have shown a clear lack of concern with state adjudication of such matters. [Citation.] The federal courts have exclusive jurisdiction only over cases arising under the federal patent laws and not over patent questions. The state courts are said to be fully competent to adjudicate patent questions that

99 Cal.App.4th 1179                                                                           Page 6
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
**(Cite as: 99 Cal.App.4th 1179)**

come before them in contract, property and tort cases so long as the case itself does not arise under the patent laws. [Citation.]" (*Miller v. Lucas, supra,* 51 Cal.App.3d at pp. 776-777.)

The cases relied upon by Luce, Forward each deal with state claims for malicious prosecution and abuse of process based upon pending bankruptcy filings, a distinction with significance as explained by the Ninth Circuit in *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (9th Cir. 1996) 74 F.3d 910, 915: "It is true that in many circumstances state courts can, and do, resolve questions of federal law 'with no difficulty.' [Citation.] Nevertheless, *1187 the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone. Of course, Congress did provide a number of remedies designed to preclude the misuse of the bankruptcy process. [Citations.] That, too, suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents. [Citations.]"

The same court has recognized that the scope of preemption for claims based on patents or copyrights is not so broad: "Long before the enactment of the Federal Declaratory Judgments Act the Supreme Court had established two correlative rules relating to jurisdiction in patent matters. The first is that a case is within the exclusive federal jurisdiction when it seeks to enforce a patent against an infringer, even though the complaint may show, in anticipation of a defense, the existence of an agreement between the parties relating to the patent. The second is that if the suit is to enforce or to revoke a patent licensing or other similar agreement, it 'is not a suit under the patent laws of the United States, and cannot be maintained in a federal court as such.' [Citations.] It follows, and the Court has held in *Pratt* [*v. Paris Gaslight & Coke Co.* (1897) 168 U.S. 255 [18 S.Ct. 62, 42 L.Ed. 458]] and in *Becher* [*v. Contoure Labs. Inc.* (1929) 279 U.S. 388 [49

S.Ct. 356, 73 L.Ed. 752]], that in an action in a state court based upon such an agreement, the state court can, where it becomes necessary for it to do so in order to decide the case before it, pass upon the meaning, the scope, the validity, or the infringement of the patent. As the court said in *Pratt:* 'Section 711 does not deprive the state courts of the power to determine questions arising under the patent laws, *but only of assuming jurisdiction of "cases" arising under those laws.*' [Citation.]" (*Lear Siegler, Inc. v. Adkins* (9th Cir. 1964) 330 F.2d 595, 599-600, fn. omitted, italics added.)

(1b) In short, respondent's action is not preempted by federal law.

### 2. *Section 425.16, Generally*

(3) In 1992, the Legislature enacted section 425.16 in response to its perception "that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a); *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 817[33 Cal.Rptr.2d 446].) Such lawsuits have earned the acronym SLAPP, which stands for *1188 "strategic lawsuits against public participation." (*Wilcox v. Superior Court, supra,* 27 Cal.App.4th at p. 813.)

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The term "person" includes a corporation. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 862-863[44 Cal.Rptr.2d 46].)

The moving party has the initial burden of establishing that the action challenged qualifies for treat-

ment under section 425.16. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365[102 Cal.Rptr.2d 864].) Subdivision (e) describes four specific types of activity that so qualify, the first of which is pertinent here: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." This language contemplates the filing and prosecution of a lawsuit. "It is well established that filing a lawsuit is an exercise of a party's constitutional right of petition. [Citations.] ' " '[T]he constitutional right to petition ... includes the basic act of filing litigation or otherwise seeking administrative action.' " ' [Citations.] Further, the filing of a judicial complaint satisfies the 'in connection with a public issue' component of section 425.16, subdivision (b)(1) because it pertains to an official proceeding. [Citations.]" (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087[114 Cal.Rptr.2d 825].) It follows that "a cause of action arising from a defendant's alleged improper filing of a lawsuit may appropriately be the subject of a section 425.16 motion to strike. [Citation.]" (*Id.* at p. 1087.)

When the moving party establishes that the action qualifies for treatment under section 425.16, the burden shifts to the plaintiff to demonstrate the "probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The process the court uses in determining the merits of the motion is similar to the process used in approaching summary judgment motions. The evidence presented must be admissible (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654[49 Cal.Rptr.2d 620]) and the trial court does not weigh the evidence. (*Paul for City Council v. Hanyecz, supra,* 85 Cal.App.4th at p. 1365.) Rather, a probability of prevailing is established if the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff. (*Ibid.*)*1189 If the plaintiff meets its burden the motion must be denied. (*M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 627[107 Cal.Rptr.2d 504]; *Dixon*

*v. Superior Court* (1994) 30 Cal.App.4th 733, 745-746[36 Cal.Rptr.2d 687].)

Subdivision (j) of section 425.16 provides for an immediate appeal pursuant to section 904.1 from an "order granting or denying a special motion to strike."

### 3. *The Automatic Stay of Section 916*

(4) The trial court initially issued an order staying the action after it denied the special motion to strike, but later vacated it with the intent to proceed to trial. We entertained and scheduled for hearing appellants' petition for supersedeas because no reported case has yet directly addressed whether an automatic stay results when the moving party appeals from denial of a special motion to strike.

Section 916, subdivision (a) states: "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810 [none of which are applicable], the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

The effect of section 916 is described in *Gold v. Superior Court* (1970) 3 Cal.3d 275, 280[90 Cal.Rptr. 161, 475 P.2d 193]: " 'Generally speaking, the taking of an appeal deprives the trial court of jurisdiction of the cause.' [Citation.] In some instances the mere perfecting of an appeal stays the proceedings in the trial court upon the order or judgment appealed from. [(Citing § 916, among other authorities.)]"

In enacting section 425.16, it was the intent of the Legislature to provide for an early resolution of the special motion to strike in aid of vindicating an appropriate exercise of free speech rights of defendants. (*Dixon v. Superior Court, supra,* 30 Cal.App.4th at p. 741.)Thus, the motion may be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

99 Cal.App.4th 1179                                                                                     Page 8
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
**(Cite as: 99 Cal.App.4th 1179)**

filed within 60 days from service of the initial action and it must be heard no later than 30 days from notice of the hearing unless the docket conditions of the court require a later hearing. (§ 425.16, subd. (f).) Discovery is also stayed until notice of entry of the order ruling on the motion, unless the court "on *1190 noticed motion and for good cause shown, ... order[s] that specified discovery be conducted." (§ 425.16, subd. (g).) Further discovery should be limited to the issues raised in the special motion to strike. (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 247[83 Cal.Rptr.2d 677].) In other words, not only did the Legislature desire early resolution to minimize the potential costs of protracted litigation, it also sought to protect defendants from the burden of traditional discovery pending resolution of the motion.

Here, the language significant within section 916 for purposes of our discussion is the phrase "upon the matters embraced therein or affected thereby." The special motion to strike was directed to the only cause of action asserted, malicious prosecution, and challenged its legal viability. That is also the focus on appeal. It follows that the appeal embraces the entirety of the action and the automatic stay is triggered. Thus, the trial court was divested of jurisdiction upon perfection of the appeal and it acted in excess of jurisdiction by setting a trial date.

### 4. The Merits of the Malicious Prosecution Claim

(5a) A claim for malicious prosecution is established by showing that the action was (1) commenced by or at the direction of defendant and was pursued to a legal termination in favor of the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50[118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

(6a) Appellants' motions were directed at the first element, favorable legal termination. The necessary focus on this element is whether the plaintiff has prevailed on the merits of the underlying claim: "It

is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits. However, termination must *reflect* on the merits of the underlying action. [Citation.]" (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750[159 Cal.Rptr. 693, 602 P.2d 393].)

(5b) The rationale and its application are explained in *Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 826[145 Cal.Rptr. 829]: " 'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and *1191 unfounded charge ... against an innocent person. If the accused were actually convicted, the presumption of his guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge.' [Citation.] '[I]t is now the well-established rule that a verdict or final determination upon the merits of the malicious civil suit or criminal prosecution complained of is not necessary to the maintenance of an action for malicious prosecution, but that it is sufficient to show that the former proceeding had been *legally terminated.*' (Original italics.) [Citations.] Of course where the termination of the former proceeding is not on the merits it is somewhat more difficult to ascertain whether it indicates the innocence of the defendant in the action. Nevertheless, the theory is the same in testing a dismissal or other termination without a trial on the merits. '*If it is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement.* If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination.' [Citation.]" (Italics added, fn. omitted.)

(6b) Appellants argue that respondent cannot meet this requirement because Christian terminated the underlying litigation by settlement, citing various

99 Cal.App.4th 1179                                                                    Page 9
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475
(Cite as: 99 Cal.App.4th 1179)

cases standing for that proposition. While the concept recognized in those cases is valid, it has no application to the facts of this case. Summary judgment was granted in favor of respondent and against Christian on the merits of the underlying claim for copyright infringement and judgment was ultimately entered based on that determination. At the same time, the trial court issued rule 11 (Fed. Rules Civ. Proc., rule 11, 28 U.S.C.) sanctions against Hicks and made a finding that "[Christian's] counsel has filed a meritless claim against [respondent]." The fact that Christian ultimately resolved *his* participation in the underlying action does not alter the fact that judgment on the merits was entered in favor of respondent or change the finding, now affirmed on appeal, that Hicks prosecuted a meritless claim. (*Christian v. Mattel, Inc.,* *supra,* 286 F.3d 1118.)

The findings made in connection with the rule 11 (Fed. Rules Civ. Proc., rule 11, 28 U.S.C.) sanctions, the appropriate subject of judicial notice requested of the trial court (Evid. Code, § 451, subd. (a)), are evidence that the underlying action was filed without probable cause. Malice may be inferred from the lack of probable cause. (*Weaver v. Superior Court* (1979) 95 Cal.App.3d 166, 192-193[156 Cal.Rptr. 745],disapproved on other grounds in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882-883[254 Cal.Rptr. 336, 765 P.2d 498].)

We conclude that respondent presented sufficient evidence to establish a probability of prevailing on the cause of action for malicious prosecution. *1192

### Disposition

The order denying the special motion to strike is affirmed. Respondent is awarded costs on appeal.

Epstein, Acting P. J., and Curry, J., concurred. *1193
Cal.App.2.Dist.

Mattel, Inc. v. Luce, Forward, Hamilton & Scripps
99 Cal.App.4th 1179, 121 Cal.Rptr.2d 794, 02 Cal. Daily Op. Serv. 5963, 2002 Daily Journal D.A.R. 7475

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 3**



▷
People ex rel. Lockyer v. Brar
Cal.App. 4 Dist.,2004.

Court of Appeal, Fourth District, Division 3, California.
The PEOPLE ex rel. Bill LOCKYER as Attorney General., Plaintiff and Respondent,
v.
Harpreet BRAR, Defendant and Appellant.
**No. G033116.**

Feb. 24, 2004.

**Background:** Attorney General filed complaint against attorney to obtain order to make him stop filing lawsuits under California's unfair competition law. The Superior Court, Orange County, No. 03CC08825,Kim Dunning, J., denied attorney's motion to dismiss complaint as SLAPP suit (strategic lawsuit against public participation). Attorney appealed.

**Holdings:** The Court of Appeal, Sills, P.J., held that:
(1) attorney's appeal was frivolous, and
(2) dismissal of appeal was proper procedure.

Appeal dismissed.

West Headnotes

**[1] Pleading 302 ⟜358**

302 Pleading
    302XVI Motions
        302k351 Striking Out Pleading or Defense
            302k358 k. Frivolous Pleading. Most Cited Cases

**Torts 379 ⟜437**

379 Torts
    379V Other Miscellaneous Torts
        379k437 k. Resort to or Conduct of Legal

Remedies. Most Cited Cases
    (Formerly 379k14)
For purpose of anti-SLAPP statute (strategic lawsuit against public participation), the exercise of petition rights can include the filing of lawsuits. West's Ann.Cal.C.C.P. § 425.16.

**[2] Appeal and Error 30 ⟜786**

30 Appeal and Error
    30XIII Dismissal, Withdrawal, or Abandonment
        30k779 Grounds for Dismissal
            30k786 k. Proceedings Frivolous or for Delay. Most Cited Cases
Attorney's appeal from denial of his SLAPP (strategic lawsuit against public participation) motion, made in response to Attorney General's complaint for order to stop attorney from filing lawsuits under unfair competition law, was frivolous; SLAPP statute exempted actions by Attorney General, attorney's ad hominem argument alleging Attorney General's political motives was irrelevant, and there was ample circumstantial evidence of attorney's motivation to delay proceedings. West's Ann.Cal.C.C.P. § 425.16.
*See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 640, 831 et seq.; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2003) ¶ 11:97 (CACIVAPP Ch. 11-E); Cal. Jur. 3d, Appellate Review, § 491.*
**[3] Appeal and Error 30 ⟜786**

30 Appeal and Error
    30XIII Dismissal, Withdrawal, or Abandonment
        30k779 Grounds for Dismissal
            30k786 k. Proceedings Frivolous or for Delay. Most Cited Cases
California courts have the inherent power to dismiss frivolous appeals.

**[4] Appeal and Error 30 ⟜786**

30 Appeal and Error
    30XIII Dismissal, Withdrawal, or Abandonment

115 Cal.App.4th 1315                                                                 Page 2
115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844, 04 Cal. Daily Op. Serv. 1624, 2004 Daily Journal D.A.R. 2424
**(Cite as: 115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844)**

30k779 Grounds for Dismissal
30k786 k. Proceedings Frivolous or for Delay. Most Cited Cases
Court's power to dismiss frivolous appeals should not be used except in the absolutely clearest cases.

**[5] Appeal and Error 30 ☞786**

30 Appeal and Error
30XIII Dismissal, Withdrawal, or Abandonment
30k779 Grounds for Dismissal
30k786 k. Proceedings Frivolous or for Delay. Most Cited Cases
Dismissal, rather than affirmance, was proper procedure for attorney's frivolous appeal from trial court's denial of his SLAPP (strategic lawsuit against public participation) motion, where evidence showed that appeal was motivated by attempt to delay, especially in light of automatic stay of proceedings during appeal from a denial of a SLAPP motion. West's Ann.Cal.C.C.P. § 425.16(j).

**845 *1316 Harpreet Brar, in pro. per., for Defendant and Appellant.
Bill Lockyer, Attorney General, Herschel T. Elkins, Senior Assistant Attorney General, Albert Norman Shelden and Howard Wayne, Deputies Attorney General, for Plaintiff and Respondent.

OPINION

SILLS, P.J.
In July 2003 the Attorney General filed a complaint against attorney Harpreet Brar to obtain an order to make him stop filing lawsuits under California's unfair competition law (Bus. & Prof.Code, § 17200). Allegedly, Brar has engaged in the sort of abuse of California's unfair *1317 competition law which made the Trevor Law Group a household name in California in 2002 and 2003. The abuse is a kind of legal shakedown scheme: Attorneys form a front "watchdog" or "consumer" organization. They scour public records on the Internet for what are often ridiculously minor violations of some regulation or law by a small business, and sue that business in the name of the front organization. Since even

frivolous lawsuits can have economic nuisance value, the attorneys then contact the business (often owned by immigrants for whom English is a second language), and point out that a quick settlement (usually around a few thousand dollars) would be in the business's long-term interest. For the Trevor Law Group, the usual targets were auto repair shops. Brar's main targets are nail salons.

California also has another law which is designed to put a quick end to lawsuits when they are based on the exercise of free speech and petition rights, generally known as the anti-SLAPP suit statute. (Code Civ. Proc., § 425.16.)SLAPP stands for "strategic lawsuit against public participation." The archetype is when a developer sues neighborhood activists for having spoken out against the developer's project in some public forum. The developer will often sue the activists for the torts of defamation or intentional interference with economic advantage. The anti-**846 SLAPP law allows the activists to obtain quick relief by filing an "anti-SLAPP suit" motion under the statute. If it is determined that the suit really is one based on the exercise of free speech or petition rights, then the plaintiff, say our hypothetical developer, bears the burden of coming forward with some evidence showing it has a viable case. If not, the suit is quickly kicked out of court.

[1] Ironically, Brar, the sue-er, decided to use the anti-SLAPP suit law to his own advantage to try to dismiss the Attorney's General lawsuit against him. It is established that the exercise of petition rights can include the filing of lawsuits. (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77-78, 124 Cal.Rptr.2d 519, 52 P.3d 695.) So he filed an anti-SLAPP suit motion. It was, of course, denied. As we discuss below, a provision of the anti-SLAPP statute specifically exempts actions by the Attorney General from anti-SLAPP motions.

But the anti-SLAPP suit law has an interesting feature-the right to appeal even the *denial* of the motion. (Code Civ. Proc., § 425.16, subd. (j).) Typically, if you lose a motion in the trial court, you have

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Cal.App.4th 1315                                                   Page 3
115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844, 04 Cal. Daily Op. Serv. 1624, 2004 Daily Journal D.A.R. 2424
**(Cite as: 115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844)**

to wait until the suit is over and there is a final judgment before you have the *right* to appeal.

The right to appeal has a certain logic to it. After all, what use is a mechanism to allow you to get out of a case *early* if it is undercut by an erroneous decision of the trial judge? The point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights. The right to appeal a denial of an *1318 anti-SLAPP motion is important because it protects the interest validated by the anti-SLAPP statute.

But the right to appeal has its own consequences. As we write, at least one appellate court has drawn the correlative conclusion that an appeal from the denial of anti-SLAPP motion also *stays* proceedings in the trial court. (See *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1190, 121 Cal.Rptr.2d 794.) You don't just get the right to go to the appellate court, you also get a free time-out in the trial court.^FN1

> FN1. There is, as we write, one nonfinal decision which disagrees with *Mattel* on the point, *Varian Medical Systems, Inc. v. Delfino* (2003) 113 Cal.App.4th 273, 309-311 footnote 16, 6 Cal.Rptr.3d 325, petition for review filed December 23, 2003 (S121400).* Depending on what the Supreme Court does, that case may, or may not, disappear from the Official Reports any day now. In any event, however, *Mattel* will remain at least competing authority for the short term.
>
> * Reporter's Note: Review granted March 4, 2004.

[2][3][4] That brings us to the reason for this opinion, which is the Attorney General's motion to dismiss the appeal, as frivolous, now pending before us. California courts have the inherent power to *dismiss* frivolous appeals. (See *Ferguson v. Keays* (1971) 4 Cal.3d 649, 658, 94 Cal.Rptr. 398, 484

P.2d 70 ["we emphasize that the appellate courts possess the further inherent power to summarily dismiss any action or appeal which has as its object to delay, vex, or harass the opposing party or the court, or is based upon wholly sham or frivolous grounds"]; *Zimmerman v. Drexel Burnham* (1988) 205 Cal.App.3d 153, 161, 252 Cal.Rptr. 115 ["Appellate courts have an inherent power to summarily dismiss any appeal which is designed for delay or which is based on sham or frivolous grounds."].) Of course, it is a power that should not be used except in the absolutely clearest cases. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, 183 Cal.Rptr. 508, 646 P.2d 179, quoting **847*People v. Sumner* (1968) 262 Cal.App.2d 409, 415, 69 Cal.Rptr. 15.)

The motion must be granted. This is about as patently frivolous an appeal taken for purposes of delay as is imaginable.

The anti-SLAPP statute *specifically exempts* actions brought by public prosecutors, including the Attorney General: "This section shall not apply to any enforcement action brought in the name of the People of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor." (Code Civ.Proc., § 425.16, subd. (d).)

Against this plain statutory language, Brar posits only an ad hominem argument. (For a discussion of ad hominem arguments in legal and other rhetorical contexts, see *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1430, 115 Cal.Rptr.2d 439 [e.g., "Jane, you ignorant etcetera...."].) It goes like this: Brar is doing nothing more than the unfair competition law allows, but the unfair competition law, as written, has *1319 become an embarrassment to what might be called in general terms "the plaintiff's bar." (Who are often referred to as "trial lawyers" when discussed on newspaper op.-ed. pages; one can log onto to many Internet discussions of California's unfair competition law and see that whether the law should be reformed is currently a hot topic indeed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

115 Cal.App.4th 1315                                                                    Page 4
115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844, 04 Cal. Daily Op. Serv. 1624, 2004 Daily Journal D.A.R. 2424
**(Cite as: 115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844)**

in the legal and business communities.) The Attorney General, according to Brar, is merely trying to curry the favor of the plaintiff's bar by taking this action against him, so as to defuse public (and particularly business) pressure to reform the unfair competition law. Brar thus argues that he is being made scapegoat for the Attorney General's ulterior political motives.

It is, like all ad hominem arguments, quite irrelevant. Neither the statute nor anything in the Constitution contains an implied exception for times when the public prosecutor acts with a political motive. Surely it is safe to say that public prosecutors sometimes act with political motives, and if the Legislature had wanted to insert a "political motive" exception to the public prosecutor exemption in the anti-SLAPP statute it most certainly could have done so. We may therefore readily conclude that Brar's one substantive argument is a loser, at a "mere glance." (Cf. *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650, fn. 6, 183 Cal.Rptr. 508, 646 P.2d 179.)

One of the reasons that the power to dismiss an appeal must be used with extreme rarity is that determination of whether an appeal is frivolous entails at least a peek at the merits-if not, as is usually the case, a thorough review of the record-and, having taken that look, the appellate court is in a position to affirm whatever was appealed rather than dismiss the appeal. As our Supreme Court said in *People v. Wende* (1979) 25 Cal.3d 436, 443, 158 Cal.Rptr. 839, 600 P.2d 1071,"[W]e deem it appropriate to affirm the judgment rather than to dismiss the appeal as frivolous. Once the record has been reviewed thoroughly, little appears to be gained by dismissing the appeal rather than deciding it on its merits."

[5] In the case before us, though, much appears to be gained by dismissal rather than affirmance-specifically, prevention of the abuse of the anti-SLAPP statute to buy time from the day of reckoning in the trial court. Here, Brar's appeal practically has the words "brought for reasons of delay" virtually tattooed on its forehead. Consider that under a rule of automatic stay, as envisioned by the *Mattel* case, the incentive to appeal even the denial of a patently *frivolous* anti-SLAPP motion is overwhelming. As we have noted, the defendant gets a very cheap hiatus in the proceedings, and that hiatus becomes doubly important in a situation where, as here, **848 a public prosecutor is seeking an injunction to prevent the defendant from *continuing* the ongoing abuse of the legal system. Review on the merits, after briefing (as distinct from review, as here, of the papers on a motion to dismiss) only rewards a frivolous appeal.

*1320 As we said, if this appeal is not frivolous at a glance, no appeal is. A statute directly on point, an ad hominem argument to try to avoid that statute's clear application, and ample circumstantial evidence of a motivation to delay proceedings in the trial court all demand immediate dismissal.

One more point: This court has the power to shorten the finality of this decision to "prevent frustration of the relief granted." (Cal. Rules of Court, rule 24(b)(3).) Accordingly, to prevent further delay occasioned by Brar's appeal, this decision shall be final five days after its filing date. Our opinion is also without prejudice to the Attorney General to seek sanctions in the trial court against Brar for taking a frivolous appeal. It is to there that the case should now return.

WE CONCUR: RYLAARSDAM and IKOLA, JJ.
Cal.App. 4 Dist.,2004.
People ex rel. Lockyer v. Brar
115 Cal.App.4th 1315, 9 Cal.Rptr.3d 844, 04 Cal. Daily Op. Serv. 1624, 2004 Daily Journal D.A.R. 2424

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.