STUART C. CLARK (SBN 124152)
clark@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL LLP
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:   (650) 812-3444

Attorneys for Plaintiffs
CORCEPT THERAPEUTICS, INC., JOSEPH
K. BELANOFF, and ALAN F. SCHATZBERG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORCEPT THERAPEUTICS, INC., JOSEPH K. BELANOFF, and ALAN F. SCHATZBERG,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHONY ROTHSCHILD,<br><br>Defendant. | CASE NO. C07-03795 JW (RS)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ANTHONY ROTHSCHILD'S SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA'S STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION (ANTI-SLAPP) STATUTE**<br><br>Date:       November 19, 2007<br>Time:      9.00 a.m.<br>Court:     Courtroom 8<br>Judge:    Hon James Ware |

{00266493v1}

1

**TABLE OF CONTENTS**

2    I.      INTRODUCTION ..................................................................................... 1

3    II.     STATEMENT OF ISSUES TO BE DECIDED ............................................ 1

4    III.    FACTS ...................................................................................................... 2

5    IV.     ARGUMENT ............................................................................................. 4

6           A.      The Motion Must Be Denied Because Rothschild Has Failed To
                    Make The Threshold Showing That Plaintiffs' Claims Arise
7                   From Protected Activity ............................................................... 5

8                   1.      Rothschild's Statements Are Defamatory And Are Therefore
                            Not Protected ................................................................... 6
9
                    2.      Rothschild's Statements Do Not Relate To A Matter Of
10                          Public Interest ................................................................ 13

11                          (a)     Plaintiffs are not persons in the public eye .................. 14

12                                  i.      Plaintiffs are not involved in any public
                                            controversy with substantial ramifications for
13                                          nonparticipants .................................................... 15

14                                  ii.     Plaintiffs have not thrust themselves into the
                                            public eye ............................................................ 15
15
                                    iii.    The defamatory statements are not germane to
16                                          any public controversy ........................................ 18

17                          (b)     Rothschild's postings are not about subjects that could
                                    affect large numbers of people beyond the direct
18                                  participants ................................................................. 18

19                          (c)     Rothschild's postings are not about subjects that
                                    involve a topic of widespread public interest............... 20
20
            B.      The Motion Must Also Be Denied As To The Defamation Claims
21                  Because Even If Rothschild Had Shown That Those Claims Arise
                    From Protected Activity, Plaintiffs Have Demonstrated A
22                  Probability Of Success ................................................................ 20

23          C.      The Motion Must Also Be Denied As To The Interference And
                    Emotional Distress Claims Because They Do Not Implicate The
24                  Right To Petition Or The Right To Free Speech............................ 21

25          D.      Plaintiffs Are Entitled To Recover Their Costs And Attorney
                    Fees Of Opposing This Motion .................................................... 22
26
     V.     CONCLUSION........................................................................................ 23
27

28

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569................................................................17

4

*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036.................................................5

5

*Chapin v. Knight-Ridder, Inc.* 993 F.2d 1087 (4th Cir. 1993) .....................................................9

6

*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110
    Cal.App.4th 26 ........................................................................................................................18

7

8

*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993 ...................................................17

9

*Douglas v. Janis* (1974) 43 Cal.App.3d 931 ...............................................................................6

10

*DuPont Merck Pharmaceuticals Co. v. Superior Court* (2000) 78 Cal.App.4th 562 ...............19

11

*Flatley v. Mauro* 39 Cal.4th 299, 316 ........................................................................................6

12

*Foundation for Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th
    1375.........................................................................................................................................22

13

14

*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375................................................8

15

*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13 .............................................................................14

16

*Global Telemedia v. Doe 1* 132 F.Supp.2d 1261 (C.D. Cal. 2001) ..........................................17

17

*Haynes v. Alfred A. Knopf, Inc.* 8 F.3d 1222, 1227 (7th Cir. 1993)..........................................10

18

*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90.........................................6

19

*Navellier v. Sletten* (2002) 29 Cal.4th 82 ..................................................................................5

20

*Partington v. Bugliosi* 56 F.3d 1147 (9th Cir. 1995) .............................................................9, 10

21

*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 .......................................................5

22

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133
    Cal.App.4th 658 .....................................................................................................................21

23

24

*Rivero v. American Federation of State, County and Municipal Employees, AFL-
    CIO* (2003) 105 Cal.App.4th 913...........................................................................................14

25

26

*Troy Group, Inc. v. Tilson* 364 F.Supp.2d 1149 (C.D. Cal. 2005)..................................14, 17, 20

27

28

1

**STATUTES**

2

Civil Code section 45(c)........................................................................................6

3

Code of Civil Procedure section 128.5...............................................................22

4

Code of Civil Procedure section 425.16..............................................................5

5

Code of Civil Procedure section 425.16(a) .........................................................5

6

Code of Civil Procedure section 425.16(b)(1) ....................................................5

7

Code of Civil Procedure section 425.16(c).........................................................22

8

Code of Civil Procedure section 425.16(e)(3)-(4) ..............................................5

9

10

11

**OTHER AUTHORITIES**

12

Schwarzer, Tashima and Wagstaffe, *Federal Civil Procedure Before Trial,* §3:91
   (TRG 2007) .......................................................................................................22

13

Witkin, <u>Summary of California Law, Torts</u>, §§ 542, 543 (10th Edition)......................6

14

Witkin, <u>Summary of California Law, Torts</u>, §529 (10th Edition)..................................6

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition to Defendant Rothschild's Motion to Dismiss Under CCP § 425.16
(Case No. C07-03795 JW (RS))

1

## I.    INTRODUCTION

2    Defendant Anthony Rothschild's ("Rothschild") special motion to strike under California's

3    strategic lawsuit against public participation statute ("anti-SLAPP motion") should be denied for

4    multiple reasons.  First, notwithstanding Rothschild's denials, the evidence convincingly shows that

5    he did indeed make the anonymous, defamatory Internet postings, and did engage in the other

6    misconduct on which plaintiffs' claims are based.  Second, Rothschild cannot show that the

7    statements which form the basis of plaintiffs' defamation claims arise from protected activities,

8    because defamatory statements are not constitutionally protected, and his statements were indeed

9    defamatory.  Thus, Rothschild's misconduct is not protected by the constitutional guarantees of free

10    speech and petition.  Third, and irrespective of whether or not his statements were defamatory,

11    Rothschild cannot show that his statements were made "in connection with a public issue or an

12    issue of public interest."  Rather, they relate to the alleged activities of a small start up company

13    and its non-public figure principals, the debate among a small group of academics and psychiatrists

14    about the efficacy of Corcept's drug Corlux®, and other matters of no interest to the public at large.

15    Fourth, plaintiffs can demonstrate a probability of success on their claims, which necessarily

16    precludes relief.  And, finally, the anti-SLAPP statute does not apply to plaintiffs' claims for

17    intentional infliction of emotional distress and interference with prospective business advantage,

18    because it is not Rothschild's speech but his conduct that forms the principal basis of those claims.

19    Thus, Rothschild's anti-SLAPP motion must be denied in its entirety.  Moreover, because the

20    motion is frivolous and/or was filed solely for the purposes of causing unnecessary delay, the Court

21    should require Rothschild to pay plaintiffs' costs and reasonable attorney fees of opposition.

22

## II.    STATEMENT OF ISSUES TO BE DECIDED

23    The issues to be decided with respect to this motion are:

24    1.    whether or not there is a prima facie case that Rothschild made certain statements

25        about plaintiffs on Yahoo message boards under the user names "corceptisafraud"

26        and "stanfordinsider;"

27    2.    whether or not the statements made by Rothschild are defamatory, or whether such

28        statements constitute protected speech made in furtherance of Rothschild's right of

1    free speech, and, if so;

2    3.    whether Rothschild's statements relate to a matter of public interest;

3    4.    whether plaintiffs can establish that there is a probability that they will prevail on

4         their defamation claims;

5    5.    whether plaintiffs' claims for infliction of emotional distress and interference with

6         prospective business advantage are subject to dismissal; and,

7    6.    whether Rothschild should be ordered to pay plaintiffs' costs.

8    It is plaintiffs' position that all of the foregoing issues should be determined in their favor.

9                                    **III.    FACTS**

10        The evidence of Rothschild's conduct in making the postings and engaging in the other

11   misconduct of which he is accused is set out in detail in the opposition to Rothschild's personal

12   jurisdiction motion,[1] which motion is set for hearing simultaneously with this motion.  Rather than

13   repeat, either verbatim or in summary, the facts set out in that opposition, plaintiffs respectfully

14   request that the Court should treat those facts (the "Personal Jurisdiction Motion Facts") as being

15   incorporated herein by this reference.  Based on this incorporation by reference, the Personal

16   Jurisdiction Motion facts will generally not be repeated except where relevant to the arguments

17   presented in Part IV, below.

18        There are however some facts that need to be separately and immediately stated for

19   purposes of this motion.  For example, there is simply no truth to Rothschild's assertion that

20   plaintiffs "are powerful public figures attempting to sue their critics into silence."  Motion, 1:2-5.

21   Nor is there any truth to Rothschild's assertion that there is a "vast and heated public debate and

22   criticism of plaintiffs and the drug they have developed."  *Id.*, 1:7-8.  Similarly, there is no truth to

23   Rothschild's assertion that "plaintiffs have *inexplicably* chosen to target" him.  *Id.*, 1:13-14

24   (Emphasis added).  To the contrary, the evidence convincingly shows that Rothschild *did* make the

25   Internet postings at issue in the case, and did engage in the other harassment of which he stands

26   accused, and that he is liable on each of the claims asserted against him.

27   _____

28   [1].    Part III of Plaintiffs' Opposition To Rothschild's Motion To Dismiss For Alleged Lack Of Personal Jurisdiction,
         filed on October 29, 2007.

{00266493v1}                                    -2-

1    Rothschild's motion wisely does not directly deny the allegations against him (although his

2   declaration does formally include such a denial),[2] and instead takes the position that plaintiffs

3   *cannot prove* that he made the postings, and that he engaged in the other misconduct which forms

4   the basis of plaintiffs' claims.[3]   However, Rothschild's "you can't prove that I did it" defense

5   simply does not work, because the weight of the evidence of his misconduct is so overwhelming.

6   For example, Rothschild was one of the only thirty (30) attendees at the Scientific Committee

7   Program Meeting at the offices of the American Psychiatric Association ("APA") at the time that

8   stanfordinsider made the October 17, 2005 posting *from the APA offices in Arlington, Virginia*.

9   And Rothschild was also one of the only twenty-five (25) APA meeting attendees who stayed at the

10  Hyatt Arlington when stanfordinsider logged in from the hotel's IP address on the same day.

11  Moreover, Rothschild was one of only 100 attendees at the International College of Geriatric

12  Psychoneuropharmacology meeting in Pittsburgh, PA when stanfordinsider made the November 4,

13  2005 posting.   Other Internet connections by corceptisafraud and stanfordinsider were primarily

14  made from Massachusetts, where Rothschild lives and works.   And no such connections were ever

15  made from California, or even the West Coast – where stanfordinsider, according to Rothschild

16  (Motion, 20:8-13) must necessarily be found by the Court to have been resident.   Rothschild's

17  presence at each of the locations from which the postings were made, together with other evidence

18  associating him with the use of the names corceptisafraud and stanfordinsider generally, gives rise

19  to an overwhelming inference that Rothschild made the Internet postings at issue.

20    Rothschild's telephone records also unambiguously show that he engaged in the harassment

21  of which he stands accused as the basis for the emotional distress and interference claims, because

22  each incident of harassment was preceded by a telephone call from Rothschild to the hotel or other

23  venue at which the incident of harassment occurred.   And the proven relationships between the

24  phone calls and the incidents of harassment are so numerous that there is no possibility of the

25  relationship between the calls and the incident being merely coincidental.   For example,

26  Rothschild's phone records show that when Schatzberg received a hoax telephone message at the

27

28  [2].   Rothschild Dec., ¶ 3.
    [3].   See, for example, Memo. at 1:21-23; 4:11-13; 12:15-16; 12:22-26; 13:2-3; 13:11-12; and 24:14-15.

1    Hilton in New York Rothschild had called the Hilton that day.  And when Schatzberg's speaking

2    engagement at the University of Texas Medical School was mysteriously cancelled, Rothschild had

3    also called the medical school that day.  Other incidents of harassment were also preceded by calls

4    from Rothschild.  Each of these indisputable links back to Rothschild make it impossible for his

5    "you can't prove that I did it" defense to succeed, and he must be held accountable for his actions.

6           Rothschild's involvement in the harassment of plaintiffs is also demonstrated by other

7    evidence.  For example, it is obviously also not a coincidence that the harassing cancellations and

8    hoax telephone calls ceased while Rothschild and McLean University were engaged in their

9    inventorship dispute with Stanford University, and resumed (in the form of the Yahoo message

10   board postings) within weeks of Rothschild's and McLean's claims being rejected by the arbitrator.

11   Nor is it a coincidence that the postings ceased after this action was filed.

12          That Rothschild was responsible for the postings is further indicated by the fact that the

13   October 28, 2005 posting referenced information about deaths related to clinical trials – which was

14   non-public information that Rothschild happened to be privy to because he had worked for Corcept

15   as an investigator in the early trials.  Thus, it is inevitable that the trier of fact will find that

16   Rothschild was responsible for the defamatory Internet postings and the other incidents of

17   harassment on which this action is based.

18                            **IV.    ARGUMENT**

19          Rothschild's motion should be denied as to the defamation causes of action because: (1)

20   defamatory speech is not constitutionally protected, and Rothschild's speech which is at issue was

21   defamatory; and (2) in any event, Rothschild's statements were not made in connection with a

22   public issue or an issue of public interest.  The motion must also be denied because plaintiffs are

23   able to make out a prima facie case in support of their defamation claims.

24          Rothschild's motion should also be denied as to the intentional infliction of emotional

25   distress and interference with prospective business advantage causes of action because those causes

26   of action are not based on either protected speech or the right to petition, and also do not relate to a

27   matter of public interest.

28

**A.    The Motion Must Be Denied Because Rothschild Has Failed To Make The Threshold Showing That Plaintiffs' Claims Arise From Protected Activity**

Rothschild's statements published on the Yahoo message board do not make the threshold showing required under Code of Civil Procedure section 425.16, because they are defamatory and therefore do not constitute protected speech.  In addition, those statements were not made in connection with a public issue or an issue of public interest.  Section 425.16 is intended – as its findings and declaration expressly state – to terminate frivolous lawsuits brought to deter "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  C.C.P. §425.16(a).  Only causes of action arising from a person's acts in furtherance of constitutionally protected speech or petition activity are protected.  C.C.P. §425.16(b)(1).  Moreover, the person's acts must be "in connection with a public issue or an issue of public interest."  *Id*.; Code of Civil Procedure section 425.16(e)(3)-(4).  Plainly, therefore, not all oral or written statements or conduct come within the ambit of section 425.16.

As the moving party on an anti-SLAPP motion Rothschild bears the burden of making a threshold showing that the conduct upon which the claims against him are based constituted the valid exercise by him of constitutional rights of petition or free speech in connection with a public issue.  *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365; *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (The focus of the inquiry is not the form of the action but "the defendant's *activity* that gives rise to his or her asserted liability" – emphasis in original).  Section 425.16 posits a two-step process for determining whether an action is a strategic lawsuit against public participation ("SLAPP").  First, the court must determine whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity.  C.C.P. §425.16(b)(1); *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 22.  A defendant may meet this burden by demonstrating that the act underlying the plaintiff's cause of action falls within one of the four enumerated categories in Section 425.16(e).  *Braun, supra,* 52 Cal.App.4th at 1043.  If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.  *Navellier v. Sletten*, 29 Cal.4th at 88.

1    In determining if a plaintiff has demonstrated the probability of prevailing the court takes

2    into account the pleadings and evidentiary submissions, and "considers whether the plaintiff has

3    made a prima facie showing of facts . . . . that would, if proved, support a judgment in plaintiff's

4    favor." *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 105.  In that

5    determination, the court may not weigh the credibility or comparative strength of the competing

6    evidence.  *Id.*  Nor may the court reject, or strike portions of, a cause of action that is in part

7    supported by protected conduct, or which cannot be substantiated in the motion proceedings.  *Id.*, at

8    106.

9        ***1.    Rothschild's Statements Are Defamatory And Are Therefore Not Protected***

10    Statements that are unlawful such as defamatory or extortionate speech do not constitute

11    speech protected by the First Amendment of the U.S. Constitution or Article 1, section 2 of the

12    California Constitution.  *Flatley v. Mauro,* 39 Cal.4th 299, 316, 333.  Thus, Rothschild's motion

13    must be denied to the extent that any of his statements are defamatory.

14    The elements of a defamation claim are: "(a) a publication that is (b) false, (c) defamatory,

15    and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."

16    Witkin, <u>Summary of California Law, Torts</u>, §529 (10th Edition).   It constitutes libel per se to charge

17    someone with the commission of a crime, or an act of dishonesty.  *Id.,* §§ 542, 543.  And it

18    constitutes slander per se to accuse someone of cheating investors out of their money.  *Douglas v.*

19    *Janis* (1974) 43 Cal.App.3d 931, 939.  Moreover, under Civil Code section 45(c) it constitutes

20    slander per se to make a statement that tends to injure a person by "imputing something with

21    reference to his . . . business that has a natural tendency to lessen its profits."  Thus, for example, a

22    false allegation that a plaintiff was using illegal chemicals and dumping them in storm drains

23    constituted slander per se because it "tend[ed] to injure [plaintiff] in its business reputation."  *Mann*

24    *v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 107.

25    Rothschild's statements made in postings on the Yahoo message board are not protected

26    speech because they were defamatory, in that they were false and tended to disparage the plaintiffs

27    and to injure their reputations.  Analyzing each of those statements in turn, they are defamatory for

28    the following reasons:

1    <u>March 17, 2005 Posting Under The Name Corceptisafraud</u>

2    On March 17, Rothschild published the following statements on the Yahoo Message Board

3    portion of the Internet under the name corceptisafraud:[4]

    (a)   *that "there is absolutely no scientific evidence that [Corcept's] drug, RU-486, works for psychotic depression or anything else for that matter;"*

    (b)   *that "Corcept knows all of this," namely that "there is absolutely no scientific evidence that [Corcept's] drug, RU-486, works for psychotic depression or anything else for that matter" and is "hushing it up",*

    (c)   *that "Belanoff [and] Schatzberg . . . and other insiders are selling despite the stock selling at record lows. They know the drug does not work and will never be proven to work."*

11    The foregoing statements are false because there is indeed scientific evidence that Corcept's

12    drug is effective for the treatment of psychotic major depression and other conditions. For

13    example, Rothschild himself was a co-author of the April, 2002 paper entitled "*An Open Label*

14    *Trial of C-1073 (Mifepristone) for Psychotic Major Depression,*"[5] which noted that, among other

15    things, of 19 subjects in a clinical trial, 13 had a 30% or greater decline in the Brief Psychiatric

16    Rating Scale scores. Thus, Rothschild's own paper proves the falsity of his statement that "there is

17    absolutely no scientific evidence . . .". In addition, other scientific research indicated that

18    mifepristone could be useful in treating psychiatric illnesses, e.g. the August, 2004 paper by Young,

19    et al. entitled "*Improvements in Neurocognitive Function and Mood Following Adjunctive*

20    *Treatment With Mifepristone (RU-486) In Bipolar Disorder,*" which found that research data

21    "provide preliminary evidence that glucocorticoid receptor antagonists may have useful cognitive-

22    enhancing and possibly antidepressant properties in bipolar disorder."[6] And in May, 2005 a paper

23    by Simpson, et al. entitled "*An 8-week Open-label Trial of 6-day Course of Mifepristone for the*

24    *Treatment of Psychotic Depression*" concluded that "Mifepristone appears to be a useful

25    intervention for psychotic depression, leading to significant improvements even after a 1-week

---

27    [4].   Declaration of Joseph Belanoff dated October 29, 2007 ("Belanoff Dec."), Exhibit "H".

    [5].   Belanoff Dec., ¶17 and Exhibit "L".

28    [6].   Belanoff Dec., Exhibit "M".

1   course of administration."[7]  And in June, 2004 DeBattista and others published a poster at the New

2   Clinical Drug Evaluation Unit ("NCDEU") annual meeting that accurately noted the conclusions

3   that a 7-day course of mifepristone (Corlux) appeared to rapidly and significantly reduce symptoms

4   in psychotic major depression, and that the effects of the drug appeared to be sustained for at least 3

5   weeks after the drug is stopped.[8]  Thus, even though it became apparent during 2006 that Corcept's

6   clinical trials did not meet their primary endpoints, the trials did nevertheless show a significant

7   benefit on the primary endpoint and several secondary endpoints on psychotic symptoms in patients

8   who achieved a higher plasma level of Corlux®.[9]  Under the circumstances, whether the falsity of

9   Rothschild's statement is evaluated either before or after he made the statement, it is simply false.

10        Since "Corcept" obviously could not "know" an alleged fact that does not exist, the

11   statement that Corcept and Schatzberg and Belanoff knew that there was "absolutely no scientific

12   evidence" of the efficacy of Corcept's drug is also a false statement.  Similarly, the statement or

13   implication that Belanoff and Schatzberg are selling shares *because they knew that Corcept's drug*

14   *does not work* must necessarily also be false.  Thus, *all* of the statements in the March 17, 2005

15   posting that are quoted above are false.

16        Rothschild's reliance on the reference to the Rubin/Carroll poster as part of his Internet

17   posting does not render the statement truthful as a matter of fact or law.  As a matter of fact, the

18   Rubin/Carroll poster does not claim that there is *no scientific evidence* that Corcept's product does

19   not work, as Rothschild's statement asserts – the poster merely says that "mifepristone is of

20   *questionable* efficacy."[10]  And as a matter of law, Rothschild's invocation of *Franklin v. Dynamic*

21   *Details, Inc.* (2004) 116 Cal.App.4th 375 does not help him either, as it concerns situations in

22   which *opinions* are expressed based on disclosed facts – and here Rothschild made a statement of

23   fact, and did not merely express an opinion.  Moreover, even if Rothschild's statement could be

24   considered an opinion, it did not accurately reflect Rubin's and Carroll's statement that Corcept's

25

26   7.   Belanoff Dec, Exhibit "N".
      8.   Belanoff Dec., ¶ 20 and Exhibit "O".

27   9.   Belanoff Dec., ¶13, Exhibit "I"; see also article entitled "Response to Rubin and Carroll," by Charles DeBattista and Joseph K. Belanoff, page 1, column 1: Declaration of Shelley Hurwitz dated August 23, 2007 ("Hurwitz Dec."), Exhibit 29.

28   10.   Declaration of Anthony Rothschild dated August 23, 2007 ("Rothschild Dec."), Exhibit 1, at page 7.

1   drug was "of questionable efficacy," but went further to say that *no scientific evidence at all* exists

2   of its efficacy.  The cases of *Partington v. Bugliosi* 56 F.3d 1147 (9th Cir. 1995) and *Chapin v.*

3   *Knight-Ridder, Inc.* 993 F.2d 1087 (4th Cir. 1993), also relied on by Rothschild, do not assist him

4   either, since they apply to a situation where "a speaker outlines the factual basis for his

5   conclusion."  *Partington, supra,* at 1156.  Here the "outlined" basis for Rothschild's conclusion

6   was that "RU-486 does not separate from placebo," and no information in the posting supports the

7   assertion that there is no scientific evidence that Corcept's drug works for psychotic depression or

8   anything else.  Thus, this is *not* a situation in which "no reasonable reader would consider the

9   [allegation of lack of scientific support] anything but the opinion of the author drawn from

10  circumstances related."  *Partington, supra,* at 1156.  In contrast to Rubin/Carroll's conclusions,

11  Rothschild's statements did not merely assert a difference of academic opinion about mifepristone's

12  efficacy: rather, Rothschild affirmatively stated, *falsely*, that there was *no* scientific evidence of

13  efficacy, then falsely implied that Rubin/Carroll supported his false statement.  Thus, Rothschild's

14  statements are statements of fact, not opinions.

15          Rothschild's statement that mifepristone is effectively worthless for treating any psychiatric

16  illness is also contradicted by his own conduct in seeking to obtain inventorship credit on U.S.

17  Patent 6,150,349 (the "349 patent"),[11] relating to an invention of a method for using mifepristone to

18  ameliorate psychotic major depression.  In trying to get himself included as an inventor on that

19  patent Rothschild argued that he had jointly conceived the use of mifepristone "as a potential

20  treatment for severe depression," and had played a "critical role . . . in the development of

21  mifepristone as a treatment for severe depression"[12] – positions which are wholly inconsistent with

22  his statement in his posting that there was "absolutely no scientific evidence" of the efficacy of

23  mifepristone for those purposes.  Thus, having previously taken the position that he participated in

24  the valuable contribution to an invention using mifepristone that advanced medical science, when

25  Rothschild failed in his quest to be recognized as an inventor in January, 2005[13] he took the

26

27  _____
    [11].   Declaration of Stuart Clark dated October 29, 2007 ("Clark Dec."), Exhibit "H".
28  [12].   Letter dated April 1, 2002 from counsel for Rothschild to counsel for Corcept: Exhibit "A" to Belanoff Dec.
    [13].   The award finding against McLean Hospital and Rothschild was issued on January 24, 2005: Belanoff Dec., ¶ 6.

1    opposite position that there was "absolutely no scientific evidence" of the invention's usefulness.

2            Rothschild's statements in his March 17, 2005 posting are, therefore, indisputably false.

3    They are also defamatory, because they disparage Corcept's product by asserting that it will not

4    work for its intended purpose, and also because they accuse Schatzberg and Belanoff of fraud

5    and/or insider trading, by concealing from shareholders the alleged fact that Corcept's drug does

6    not work, and thereby enriching themselves by insider trading.  This latter conduct, had it occurred

7    as alleged, would constitute a criminal offence, among other things.  And, as we noted above,

8    falsely accusing someone of criminal conduct constitutes defamation per se.  Thus, none of the

9    statements made in the March 17, 2005 posting are constitutionally protected, because they

10   constitute defamation.  Not surprisingly under the circumstances, Yahoo therefore removed the

11   posting from its message board in response to a complaint by Corcept.[14]

12           <u>August 23, 2005 Posting Under The Name Stanfordinsider</u>

13           On August 23, 2005, Rothschild published the following statement on the Yahoo Message

14   Board portion of the Internet:[15]

15               I agree with Shockman.  The insiders in Corcept know the data, have seen
16               the data.  The CEO is a psychiatrist.  He has been selling shares as fast as
                 he can.  The CEO and the company create press releases to raise the price
17               of the stock and then sell on the news.  It strikes me as fraudulent.

18           The foregoing statement is defamatory for essentially the same reasons as the preceding

19   posting, because it also falsely asserts that Corcept's insiders are selling shares based on their

20   knowledge that Corcept's drug does not work.  Contrary to Rothschild's contention, introductory

21   words such as "in my opinion" (or, similarly, words such as "it strikes me") do not necessarily

22   shield the speaker from liability for defamation.  *Haynes v. Alfred A. Knopf, Inc.* 8 F.3d 1222, 1227

23   (7th Cir. 1993) ("A statement of fact is not shielded from an action for defamation by prefaced with

24   the words "in my opinion" . . .". – cited with approval in *Partington, supra,* at 1156).  Rather, it is

25   necessary to look at the substance of the statement to determine whether the writer or speaker

26   claims to be reciting objectively verifiable facts, or expressing an opinion.  *Id.*

27   _____

28   [14].  Belanoff Dec., ¶ 7.
     [15].  Belanoff Dec., Exhibit "E".

1    The substance of Rothschild's statements in the August 23, 2005 posting are all presented as

2    statements of fact with regard to what the "insiders" allegedly knew, that the CEO is a psychiatrist,

3    what he has been doing (i.e. allegedly making misleading press reports and then selling shares at

4    inflated prices knowing that the "data" shows that Corcept's drug does not work) – not a single

5    *opinion* is expressed.  Thus, the statements are false and disparaging, and are therefore also

6    defamatory and not protected by constitutional free speech rights.

7    <u>October 17, 2005 Posting Under The Name Stanfordinsider</u>

8    On October 17, 2005, Rothschild published a further statement on the Yahoo Message

9    Board portion of the Internet, parts of which read as follows:[16]

10

11    . . .  The word here at Stanford in that the Dean of the medical school has hired an outside expert panel to review Schatzberg's use of his Psychiatry Chair position to promote Corcept's drug.  My guess is the SEC will soon follow.  Most of the Psychiatric community believes the drug doesn't work and is not practical; it is unlikely the FDA will ever approve it.  The Corcept founders realize this and . . . have been selling since the IPO (or having their proxy friends and family selling).

12

13

14

15    Curiously, Rothschild argues that the fact that he is not a Stanford insider constitutes "*the*

16    *most glaring proof*" that plaintiffs have intentionally targeted the wrong person."  Motion, 20:8-9

17    (Emphasis added).  Apparently Rothschild expects the Court to believe that he is not smart enough

18    or devious enough to realize that the user name "stanfordinsider" is more likely to conceal his true

19    identity – and misrepresent that he speaks with authority based on inside information – than, for

20    example, if he acted honestly and used a name such as "UMassinsider" or "APAInsider."  One only

21    has to state Rothschild's proposition to appreciate its absurdity.

22    Rothschild's statements in the quoted posting are false in multiple respects.  First, it is

23    simply not true that "the Dean of the medical school has hired an outside expert panel to review

24    Schatzberg's use of his Psychiatry Chair position to promote Corcept's drug."[17]  Rothschild's

25    speculation about the reason use of the word "specifically" in the amended complaint leads him to

26    make an argument that has no basis in fact, namely "that a panel did review Dr. Schatzberg, but the

27

28    16.    Belanoff Dec., Exhibit "D".
       17.    Declaration of Alan Schatzberg dated October 26, 2007 ("Schatzberg Dec."), ¶ 14.

1   panel may have had other duties as well." Motion, 20:18-21:3. In fact there was no outside panel,

2   nor was there any panel appointed to investigate Schatzberg alone or Schatzberg *and other matters.*

3   The word "specifically" was inserted to take into account the fact that the Stanford University

4   School of Medicine has an internal committee that routinely monitors possible conflicts of interest

5   of all faculty in all its departments, not only the Department of Psychiatry.[18]

6          Further – as discussed earlier – is it also not true that the "Corcept founders" knew that the

7   "drug doesn't work," nor is it true that they had been "selling since the IPO" because they "realize

8   this." Each of those statements is presented as one of fact, and no statement purports to be an

9   opinion based on stated facts. Moreover, with this posting Rothschild seeks to increase the impact

10  of his false statements on readers first by pretending that he is a Stanford insider, and second by

11  asserting that he is relaying facts that he has obtained access to as a Stanford insider. And, as was

12  discussed in the context of the preceding posting, contrary to Rothschild's assertion (Motion,

13  20:24-25) the use of the phrase "the word here at Stanford" does not indicate that an opinion is

14  being expressed. A reasonable reader would not consider that any opinion is being expressed, only

15  statements of alleged fact. Indeed, as if to reinforce this misperception that he is a Stanford insider

16  with knowledge of facts Rothschild added the further misrepresentation that he "worr[ies] about

17  [his] position here at Stanford." Rothschild was no doubt very satisfied with himself in coming up

18  with that cunning additional attempt at deception!

19         In addition, as is the case with the postings discussed earlier, this posting is defamatory

20  because it repeats the allegation that the "Corcept founders," i.e. Schatzberg and Belanoff, are

21  engaging in criminal conduct, namely illegal insider trading. Rothschild's false statements are also

22  defamatory because they assert that Schatzberg has conducted himself unethically in his capacity as

23  the Chairman of the Department of Psychiatry, and that such unethical conduct justified the

24  appointment of an *outside* review panel *specifically to investigate Schatzberg.*

25         October 28, 2005 Posting By Stanfordinsider

26         On October 28, 2005, Rothschild published yet another statement on the Yahoo Message

27

28  _____
    [18].   Schatzberg Dec., ¶ 14.

1    Board with regard to clinical trials being conducted by Corcept, parts of which read as follows:[19]

2          Study 06 has recruited 140 patients. . .  4 cardiac related deaths in
3          trial.  Believed to be secondary to rise in cortisol in periphery after
      blockade of central cortisol receptor. . . .

4         The foregoing statement is false because it is not true that four patients who took

5    mifepristone as part of Study 06 – or as part of any other study – died as a result of doing so.  The

6    posting then compounds that false statement by asserting that the deaths are attributable to a "rise in

7    cortisol in periphery after blockade of central cortisol receptor."  In fact three of the deaths were in

8    an earlier trial in which Rothschild was an investigator (not Study 06), and were in a placebo group

9    that *did not take mifepristone.*  These deaths were attributable to natural causes, not the ingestion of

10    mifepristone, or a "rise in cortisol in periphery after blockade of central cortisol receptor."[20]

11    Moreover, the fourth death, which did at least occur in a study participant who took mifepristone,

12    was caused by cardiac failure and had nothing whatsoever to do with the ingestion of mifepristone.

13         The foregoing false statements were manifestly defamatory of Corcept, in that – once again

14    – Rothschild's posting asserted that Corcept's product was not capable of being used for its

15    intended purpose.  Indeed, it is hard to imagine any more damaging statement about a potential new

16    drug than to make the false accusation that patients taking it greatly increase their risk of death.

17         The reference in the posting to deaths in clinical trials also provides yet another indicator

18    that Rothschild was the person responsible for the posting, because as an investigator in the early

19    trials he directly knew of the deaths – which were not public knowledge.[21]   Thus, the universe of

20    persons with knowledge of the deaths was small – and Rothschild was within it.

21         **2.**    ***Rothschild's Statements Do Not Relate To A Matter Of Public Interest***

22         Rothschild's motion must also be denied because he also cannot make the requisite

23    threshold showing that his statements are "in connection with a public issue or issue of public

24    interest."  In order to render conduct a matter of public interest it is necessary that the conduct

25    should "impact a broad segment of society or affect a community in a manner similar to that of a

26    

27    ---
[19].  Belanoff Dec., Exhibit "C".
[20].  Belanoff Dec., ¶ 10.
28    [21].  Belanoff Dec., ¶ 10.

{00266493v1}            -13-
Plaintiffs' Opposition to Defendant Rothschild's Motion to Dismiss Under CCP § 425.16
(Case No. C07-03795 JW (RS))

1  governmental entity." *Troy Group, Inc. v. Tilson,* 364 F.Supp.2d 1149, 1153 (C.D. Cal. 2005).[22]

2  Three general categories of situations satisfy the requirement of being in the public interest, namely

3  situations where: (1) the *subject* of the statement or activity is a person in the public eye; (2) the

4  statement or activity precipitating the claim involved conduct that could affect *large numbers of*

5  *people beyond the direct participants*; and (3) the statement or activity involved a topic of

6  widespread public interest. *Id.* (citing *Rivero v. American Federation of State, County and*

7  *Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924).

8          Contrary to Rothschild's assertions (Motion 1:4-5), plaintiffs are not "public figures" –

9  whether "powerful" or otherwise – nor are they attempting to sue Rothschild into silence.  Indeed,

10  Rothschild has never even revealed himself as a "critic" of Corcept or of Schatzberg or of Belanoff.

11  Rather, Rothschild's attacks on plaintiffs have been in the form of the anonymous postings and the

12  other harassing conduct on which plaintiffs' claims are based, as the Personal Jurisdiction Motion

13  Facts describe.  Moreover, no plaintiff has ever taken legal action against anyone else whom

14  Rothschild might regard as a "critic," e.g. persons such as Drs. Carroll and Rubin, who have

15  published under their own names their reservations about the efficacy of Corcept's product.[23]

16          (a)      Plaintiffs are not persons in the public eye

17          Rothschild cannot satisfy the first of the above criteria for determining whether an issue is a

18  matter of public interest, namely that plaintiffs are "in the public eye," i.e. a limited purpose public

19  figure.  Three criteria must be satisfied for a plaintiff to be considered a limited purpose public

20  figure, namely: (1) there must be a *public controversy*, i.e. an issue must be debated *publicly* and

21  have *foreseeable and substantial ramifications for nonparticipants;* (2) the plaintiff must have

22  undertaken some *voluntary act*, e.g. by thrusting itself into the public eye, through which it sought

23  to *influence resolution* of the public issue; and (3) the alleged defamation must be *germane to the*

24  *plaintiff's participation in the controversy.*  *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 24.  *None*

25  of these criteria are satisfied in this case.

26

27  [22].  *Troy Group* cites as authority *O'Meara v. Palomar-Pomerado Health Sys.* (2005) 125 Cal. App. 4th 1324, which
        the California Supreme Court has granted review of.  However, the proposition for which *O'Meara* is cited is also
        directly supported by *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal. App. 4th 468, 479.

28  [23].  See pamphlet distributed at December, 2004 annual meeting of the American College of
        Neuropsychopharmacology : Exhibit 9 to Hurwitz Dec.; Belanoff Dec., ¶ 23.

1        *i.*      *Plaintiffs are not involved in any public controversy with*

2                  *substantial ramifications for nonparticipants*

3         As the above analysis of Rothschild's postings demonstrates, the issues raised by him are:

4    (1) the allegation that no scientific evidence supported the usefulness of Corlux®; (2) that plaintiffs

5    knew this and were therefore selling their shares to obtain insider profits before the alleged facts

6    were revealed; (3) that Stanford had set up an "outside expert panel" to review Schatzberg and

7    alleged conflicts of interest involving Corcept; and (4) that four patients who took Corlux® in

8    clinical trials had died. Those issues, therefore, define the parameters of what Rothschild must

9    necessarily establish is a "public controversy" if he is to make the requisite threshold showing.

10   However, on the indisputable facts none of those issues can fairly be described as "public" or as

11   involving "substantial numbers of nonparticipants."

12        Plaintiffs have not involved themselves in any public debate of any of the issues identified

13   in the preceding paragraph. And plaintiffs themselves are not publicly controversial either. Rather,

14   Corcept is a small (11 employees as of the date of this opposition) start-up pharmaceutical

15   company.[24] Corcept is a closely held corporation with approximately 94 shareholders of record.[25]

16   The company does not yet have any revenue from operations – its revenues are (and have to date

17   been) limited to reimbursement of certain research expenses, which for the first half of

18   2007amounted to a mere $482,000.[26] And, while plaintiffs Schatzberg and Belanoff are well-

19   respected physicians in the Silicon-Valley and national medical communities – but they are not

20   nationally or even locally known personalities outside of their professional peer group.[27]

21        Thus, no plaintiff is involved in any public controversy with *any* ramifications – let alone

22   substantial ramifications – for nonparticipants.

23       *ii.*      *Plaintiffs have not thrust themselves into the public eye*

24        Plaintiffs have not thrust themselves into the public eye, e.g. by issuing press releases

25   rebutting Rothschild's postings, or by appearing on television to debate those issues, or by in any

26   
27   [24]. Belanoff Dec., ¶¶ 2, 3, and 12.
    [25]. Belanoff Dec., ¶ 12.
28   [26]. Belanoff Dec., ¶ 12.
    [27]. Schatzberg Dec., ¶ 17; Belanoff Dec., ¶ 22.

1    other way contributing to any *public* debate of Rothschild's issues.  To the contrary, Corcept's

2    press releases have been limited in number and focused on matters other than Rothschild's issues.

3    Between its inception and the date of Rothschild's most recent posting as stanfordinsider (on

4    November 4, 2005) Corcept had issued only 24 press releases,[28] all of which related to the kind of

5    matters that start-up companies typically communicate to their shareholders and other interested

6    parties, e.g. quarterly results, board and staff appointments, reports on clinical trials, attendance at

7    medical conferences, etc.  None of those press releases commented on or in any way responded to

8    or even mentioned the Internet postings or the allegations made in those postings.  And

9    Rothschild's postings did not respond to or otherwise discuss any of those press releases either.

10   Thus, it is impossible for Rothschild to show that his postings are germane to any alleged public

11   controversy into which plaintiffs might be alleged to have inserted themselves.

12           There has not been any significant debate on the Internet involving Rothschild's issues

13   either.  As of the time of Rothschild's last stanfordinsider posting on November 4, 2005, there had

14   been 281 postings on the Yahoo message board relating to Corcept since mid 2004.[29]  Seven of

15   these postings were from either corceptisafraud or stanfordinsider, and less than a dozen of the

16   other messages were in response to these postings by either corceptisafraud or stanfordinsider.  The

17   overwhelming majority of the postings related to Corcept's stock price and speculation whether it

18   was likely to move higher or lower, and whether those posting messages should buy or sell or had

19   bought or sold, and whether or not they had made a profit.  The debate with regard to Corcept's

20   products and clinical trials, alleged insider trading, and alleged conflicts of interest was limited to

21   less than about 30 postings, mostly prompted by or associated with Rothschild's postings.  (By

22   comparison, the message board for Apple, Inc. – an entity which is arguably in the public eye – at

23   approximately 10.20 a.m. on October 16, 2007 had received 42 postings *within an hour.*[30]

24           Given the foregoing facts, plaintiffs clearly have not thrust themselves into the public eye,

25   or sought to influence resolution of any public issue.  Rothschild disagrees, of course, arguing that

26

27   [28].  Belanoff Dec., Exhibit "J".

     [29].  Belanoff Dec., Exhibit "K".

28   [30].  Clark Dec., ¶ 8.

1    Corcept's corporate activities are an issue of public interest because postings have been made about

2    Corcept on the Internet, because Corcept has issued press releases about its business, because

3    Corcept allegedly had 34,741,766 shares outstanding as of April 30, 2007, and because Stanford

4    University's licensing practices in general and Corcept in particular were the focus of a Mercury

5    News article.  However, those factors do not make Corcept's business and activities generally a

6    public issue or a matter of public interest, because the scale of the activities is *de minimis* compared

7    with entities that have been held to be matters of public interest.   Nor does the fact that Schatzberg

8    and Belanoff have made presentations to medical conferences, and contributed to academic and

9    professional publications, create *public* interest either, since those activities have been directly

10   related to their non-public duties as Corcept officers and Stanford faculty members – and not used

11   to promote themselves as persons "in the public eye."

12        Rothschild's invocation of the cases of *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th

13   1569, *Global Telemedia v. Doe 1* 132 F.Supp.2d 1261 (C.D. Cal. 2001), *ComputerXpress, Inc. v.*

14   *Jackson* (2001) 93 Cal.App.4th 993 and *Troy Group v. Tilson* 364 F.Supp.2d 1149 (C.D. Cal. 2005)

15   does not support his conclusory statement that Corcept's business is a matter of public interest,

16   because the facts in each of those cases differ vastly from Corcept's situation.  In *Ampex* the

17   plaintiff and its officers had inserted themselves into the debate about the subject matter of

18   defendants' postings by addressing that subject matter in press releases, and that subject matter had

19   generated *over 112,000 Internet postings* by the time defendant made his *first* posting.  These

20   factors are wholly absent from this case.  And in *Global Telemedia* plaintiff had 18,000 investors[31]

21   (compared with Corcept's 94), and likewise was found to have inserted itself into the public arena

22   by issuing press releases *about the subject matter of the postings*.  Similarly, the court in

23   *ComputerXpress* found that the plaintiff's activities were a matter of public interest because it was

24   "at least comparable to . . . the plaintiff in *Global Telemedia*," – i.e. another 18,000 shareholder-

25   type situation (at 1008).  Finally, in *Troy Group* the court held that plaintiff's activities were a

26

27

28

[31].   "[T]he point is that GTMI is not a matter of public interest merely because of 'media attention' or 'sensation' but rather because it has had over 18,000 public investors and is the topic of literally tens of thousands of Internet postings."  (at 1265).

1   matter of public interest because of the media attention surrounding its going public – including

2   shareholder objections and lawsuits – and that under the circumstances the statement at issue

3   concerned a matter of public interest "notwithstanding the fact that Troy's beneficial shareholders

4   *numbered only 1,634*." (at 1154). None of those circumstances are present here either.

5       *iii.    The defamatory statements are not germane to any public controversy*

6           In determining the applicability of the anti-SLAPP statute a court must focus on the

7   "specific nature" of the challenged protected conduct, rather than "the generalities that might be

8   abstracted from it." *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110

9   Cal.App.4th 26, 34. As we have noted above, the four issues addressed by Rothschild's postings do

10  not involve any public controversy – they relate to matters of interest to Corcept and its less than

11  100 stockholders. Thus, Rothschild cannot show that his statements are germane to any *public*

12  controversy, and his postings accordingly do not relate to a matter of public interest.

13      (b)    Rothschild's postings are not about subjects that could affect
14             large numbers of people beyond the direct participants

15          Rothschild's statements in his Internet postings are not about conduct that could affect *large*

16  *numbers of people beyond the direct participants*, and accordingly do not satisfy that criterion for

17  being a matter of public interest. None of Rothschild's issues, identified above, was even vaguely

18  of interest to the public at large, i.e. the "broad segment of society" or "community" that is required

19  to be affected in order to make a subject one of public interest. Thus, there was never any *public*

20  controversy about whether or not scientific evidence shows that Corlux® works for psychotic

21  depression – either at the time Rothschild made his postings or at any time thereafter. Nor was

22  there any *public* controversy about whether or not Schatzberg and Belanoff were selling shares

23  because they allegedly knew that there was no such scientific evidence.

24          The only discussion of the efficacy of Corcept's drug involved academic debate such as the

25  Rubin/Carroll "poster" presented at the December, 2004 annual meeting of the American College

26  of Neuropsychopharmacology,[32] whatever discussion occurred with regard to the "poster" at that

27

28  _____

[32].   Hurwitz Dec., Exhibit 9.

1   meeting of a select group of medical professionals, and a few papers published in specialist medical

2   journals, e.g. the paper that Rothschild participated in publishing in 2002.[33]  Thus, *at the time of*

3   *publication of Rothschild's defamatory statements even the academic debate was limited to a*

4   *handful of persons.*  A subject that was not a matter of public interest *at the time of publication*

5   manifestly cannot somehow retroactively became a matter of public interest based on post-

6   publication activities.  But even if this were not so, the post-publication activities relied on by

7   Rothschild still would not be capable of constituting the efficacy of Corlux® a matter of public

8   interest. [34]

9          Similarly, there is no evidence that at the time of Rothschild's posting the alleged review of

10  whether Schatzberg had used his Psychiatry Chair position to promote Corlux® was a matter of

11  public interest, or even a topic of public discussion.  Clearly the mere fact that *eight months later*

12  the Mercury News ran an article on the subject of possible conflicts of interest arising where

13  universities license their patented technology does not retroactively make that subject a matter of

14  public interest if it was not a subject of public interest *when the Internet posting occurred.*

15  Moreover, there is no evidence that this issue affected "large numbers of people beyond the

16  participants" *at any time.*

17          Whether or not there had been deaths in clinical trials was not a subject of public interest

18  either.  Once again, Rothschild has offered no evidence to suggest that deaths in clinical trials had

19  been publicly discussed by anyone at all (apart from himself).  Nor is there any evidence that

20  Rothschild's raising of this point led to a discussion which "impact[ed] a broad segment of society

21  or affect[ed] a community in a matter similar to that of a governmental entity."  Rothschild's

22  attempt to analogize the facts of this case to those of the <u>Coumadin</u> product in *DuPont Merck*

23  *Pharmaceuticals Co. v. Superior Court* (2000) 78 Cal.App.4th 562, is specious.  First, Corlux® is

24  not yet on the market, and is unlikely to be on the market until 2011 at the earliest,[35] and there is no

---

[33]   "An Open Label Trial of C-1073 (Mifepristone) for Psychotic Major Depression": Belanoff Dec., Exhibit "L".

[34].   Namely Hurwitz Dec. Exhibits 3 (published after August 2006), 4 (published June 2006), 13 (published November 2006), 15 (published April 2006), 18 (published October 2006), 29 (published October 2006) and 30 (published October 2006).

[35].   Belanoff Dec., ¶ 16.

1   evidence that the general public has any perception or concern whatsoever of its existence or of its

2   efficacy.  Second, Coumadin was a drug that had been on the market long enough for *1.8 million*

3   Americans to have purchased the product.  Thus, the circumstances of Corlux® and Coumadin are

4   completely different, and the efficacy of Corlux® was simply not a matter that affected a large

5   number of people at the time of the postings, or at any time thereafter.

6       Under the circumstances, Rothschild cannot satisfy his burden of showing that his postings

7   were about a subject that could affect large numbers of people beyond the direct participants.

8       (c)     Rothschild's postings are not about subjects that
9               involve a topic of widespread public interest

10      Rothschild cannot satisfy the criterion of the third category for being a public interest

11  activity either, because none of his postings concerned a topic involving a large number of people.

12  As we have noted, the issues covered by the postings were, at best for Rothschild, partially of

13  interest to a select group of academics who, at the time of the postings, had engaged in minimal

14  discussion of some aspects related to some of those issues.  And even if events following the

15  publications are impermissibly taken into account, none of the issues ever constituted an event

16  which "impact(s) a broad segment of society or affect(s) a community in a manner similar to that of

17  a governmental entity," as the *Troy Group, Inc.* case requires.  Thus, Rothschild absolutely fails to

18  make the showing that the subject matters of his postings satisfied any of the public interest criteria.

19      Rothschild's motion must therefore be denied as to those postings for this further reason.

20

21      **B.    The Motion Must Also Be Denied As To The Defamation Claims Because
22              Even If Rothschild Had Shown That Those Claims Arise From Protected
                Activity, Plaintiffs Have Demonstrated A Probability Of Success**

23      Rothschild has failed to meet his burden of showing that plaintiffs' claims arise from

24  protected activity, and as a result the burden has not shifted to plaintiffs' to prove a probability of

25  prevailing on their claims.  Even *assuming arguendo* that the burden has shifted to plaintiffs,

26  however, the evidence supports a finding that plaintiffs will prevail on the merits of their claims.

27      As has been shown in Part IV(A)(1), above, each of the statements relied on by plaintiffs as

28  the basis for their defamation claims contain false statements that are defamatory in nature.  The

1  actual content of those statements is beyond dispute.  Moreover, that Rothschild published the

2  statements is established by inescapable inference, as is explained in the Personal Jurisdiction

3  Motion Facts.  Thus, and to the extent that this may be necessary, plaintiffs have made the requisite

4  showing that it is probable that they will prevail on their defamation claims.

5

6  **C.    The Motion Must Also Be Denied As To The Interference And**
   **Emotional Distress Claims Because They Do Not Implicate The**

7  **Right To Petition Or The Right To Free Speech**

8       Plaintiffs' causes of action for infliction of emotional distress and interference with

9  prospective business advantage are primarily based on a series of events involving deliberate

10  harassment of plaintiffs, such as hoax messages about alleged conflicts of interest and an alleged

11  family emergency, and the cancellation of hotel accommodations and an academic presentation (the

12  "harassment activity").  Amended Complaint, ¶¶ 30(a) through (g), and 36.  Those causes of action

13  are also based in part on the Internet postings that form the basis of the defamation claims.  *Id*, ¶¶

14  30(h) and 36.

15       The harassment activity does not involve any conduct that may even arguably be considered

16  to implicate any "person's right of petition or free speech."  It is not Rothschild's speech, but his

17  conduct that forms the basis of those claims.  And that conduct consists entirely of mischief-making

18  that is not entitled to any constitutional protection.  Therefore, to the extent that the emotional

19  distress and interference claims are based on harassment activity, section 425.16 is manifestly

20  inapplicable.  Thus, since these causes of action are *at minimum* based in part on conduct that is not

21  constitutionally protected, they may not be dismissed under section 425.16.  *Peregrine Funding,*

22  *Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (Where

23  protected activity is merely incidental to unprotected activity section 425.16 does not operate to

24  require dismissal of the action.)

25       Rothschild's motion should also be dismissed as to the emotional distress and interference

26  claims to the extent that they are also partly based on the Internet postings.  As is explained above,

27  those postings are defamatory and therefore not constitutionally protected.  Those postings provide

28  the basis for the Court to exercise incidental jurisdiction over the harassment claims.  Schwarzer,

1    Tashima and Wagstaffe, *Federal Civil Procedure Before Trial,* §3:91 (TRG 2007).  Therefore, the

2    emotional distress and interference causes of action are also not subject to being stricken to the

3    extent that they are based on the postings.

4

        D.    **Plaintiffs Are Entitled To Recover Their Costs And**
5              **Attorney Fees Of Opposing This Motion**

6        Code of Civil Procedure section 425.16(c) provides that a defendant shall be required to pay

7    the plaintiff's fees and costs if the motion is frivolous or solely intended to cause unnecessary

8    delay.  Such an award is to be made "pursuant to Section 128.5," which defines "frivolous" as

9    conduct "totally and completely without merit," or "for the sole purpose of harassing an opposing

10   party."  The first of these standards is measured by whether or not it can be said that "any

11   reasonable attorney would agree [that] such motion is totally devoid of any merit."  *Foundation for*

12   *Taxpayer & Consumer Rights v. Garamendi* (2005) 132 Cal.App.4th 1375, 1388.

13       Rothschild's anti-SLAPP motion was filed as part of an all out assault on the complaint that

14   included two other motions respectively attacking personal jurisdiction and venue.  Thus, it is

15   apparent that Rothschild's objective was to inflict the maximum expense and inconvenience on

16   plaintiffs, in the opening salvoes of what appears likely to be a litigation war of attrition.  The other

17   motions will be separately adjudicated, but as for the anti-SLAPP motion, it is indeed "totally

18   devoid of any merit."  This is because it is apparent on the face of the Internet postings that they

19   include defamatory content, and therefore fail to qualify for protection under section 425.16.

20   Moreover, it is also clear that the subject matter of the postings does not concern any public issue

21   or matter in the public interest.  And, finally, since the interference and emotional distress claims

22   plainly do not involve any right of petition or speech, it was frivolous to include those claims as a

23   focus of the motion.  Thus, the motion was indeed one that no reasonable attorney should have

24   filed, based on the law and the facts.

25       Under the circumstances, plaintiffs are entitled to their attorney fees and other costs of

26   opposing the motion.

27

28

1

## V.    CONCLUSION

2

Plaintiffs defamation claims are not subject to dismissal under section 425.16, because the

3

defamatory Internet postings do not constitute protected speech or relate to a public issue or matter

4

of public interest, and because plaintiffs are able to carry their burden of showing a probability of

5

success.  Nor are the emotional distress and interference causes of action subject to dismissal,

6

because they are not based on a right to petition or free speech, and because Rothschild's motion

7

otherwise also suffers from the same flaws as his challenge to the defamation claims.  Accordingly,

8

plaintiffs respectfully request that Rothschild's special motion to dismiss be denied, and that he

9

should be ordered to pay their attorney's fees and other costs.

10

11

Dated:  October 29, 2007                        CARR & FERRELL *LLP*

12

13

By:  /s/ Stuart Clark
STUART C. CLARK
CHRISTINE S. WATSON

14

15

Attorneys for Plaintiffs
CORCEPT THERAPEUTICS, INC., JOSEPH
K. BELANOFF, and ALAN F. SCHATZBERG

16

17

18

19

20

21

22

23

24

25

26

27

28

**Responses and Replies**

5:07-cv-03795-JW Corcept Therapeutics, Inc. et al v. Belanoff et al

ADRMOP, E-Filing, MEDIATION

U.S. District Court

Northern District of California

**Notice of Electronic Filing or Other Case Activity**

---

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

---

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.

***If there is no second hyperlink, there is no electronic document available .***

See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at for more information.

---

The following transaction was received from by Clark, Stuart entered on 10/29/2007 5:03 PM and filed on 10/29/2007

| | |
|---|---|
| **Case Name:** | Corcept Therapeutics, Inc. et al v. Belanoff et al |
| **Case Number:** | 5:07-cv-3795 |
| **Filer:** | Corcept Therapeutics, Inc. |
| | Joseph K Belanoff |
| | Alan F Schatzberg |
| **Document Number:** | 65 |

**Docket Text:**
Memorandum in Opposition *to Defendant Anthony Rothschild's Special Motion to Strike Pursuant to California's Strategic Lawsuit Against Public Participation (Anti-SLAPP) Statute* filed byCorcept Therapeutics, Inc., Joseph K Belanoff, Alan F Schatzberg. (Clark, Stuart) (Filed on 10/29/2007)

**5:07-cv-3795 Notice has been electronically mailed to:**

Robert A. Bleicher     robert.bleicher@hklaw.com, beverley.huppert@hklaw.com

Stuart C. Clark     sclark@carrferrell.com, mpeterson@carrferrell.com

Shelley Gershon Hurwitz     shelley.hurwitz@hklaw.com

Christine S. Watson     cwatson@carrferrell.com, mpeterson@carrferrell.com

**5:07-cv-3795 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\DOCUME~1\MPETER~1\LOCALS~1\TEMP\WDGX\CB8\OPEN\0001
\Opposition - Anti-SLAPP (00266870).PDF
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=10/29/2007] [FileNumber=3869958-0]
[91028dd33d73bb8c49a5d861124d87b98e014d4d83eb786470e2c91b1c32a70c3c00
95384bdfe5788fb3fb5c0a1064957f3838c3e0f6dfb89846eb9d46a2ca92]]